Cause No. _____

ACCEPTED
15-25-00207-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
11/14/2025 4:30 PM
CHRISTOPHER A. PRINE
CLERK

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
11/14/2025 4:30:06 PM
CHRISTOPHER A. PRINE
Clerk

IN THE

# Court of Appeals for the 15th District of Texas

IN RE NOVARTIS PHARMACEUTICALS CORPORATION,
*Relator.*

_____

ORIGINAL PROCEEDING FROM THE 71ST DISTRICT COURT,
IN HARRISON COUNTY, TEXAS • CAUSE NO. 23-0276,
THE HONORABLE BRAD MORIN PRESIDING

## PETITION FOR WRIT OF MANDAMUS
### (ORAL ARGUMENT REQUESTED)

DANNY S. ASHBY
(Texas Bar No. 01370960)
**O'MELVENY & MYERS LLP**
2801 N. Harwood Street, Suite 1600
Dallas, Texas 75201
Telephone: +1 972.360.1900

DERON R. DACUS
(Texas Bar No. 00790553)
**THE DACUS FIRM, P.C.**
821 ESE Loop 323, Suite 430
Tyler, Texas 75701
Telephone: +1 903.705.1117

ANTON METLITSKY
ROSS B. GALIN
**O'MELVENY & MYERS LLP**
1301 Avenue of the Americas,
   Suite 1700
New York, New York 10019
Telephone: +1 212.326.2000
(Applications for *pro hac vice*
admission pending)

*Counsel for Relator Novartis Pharmaceuticals Corporation*

**TEMPORARY STAY REQUESTED**

CP COUNSEL PRESS    (800) 4-APPEAL • (814349)

## IDENTITY OF PARTIES AND COUNSEL

Pursuant to Texas Rule of Appellate Procedure 52.3(a), Relator Novartis Pharmaceuticals Corporation certifies that the following is a complete list of all parties and the names and firms of all counsel appearing in the trial or appellate courts, as well as the mailing address, telephone number, and email address for counsel currently appearing.

| | |
|---|---|
| **Relator**<br><br>Defendant Novartis Pharmaceuticals Corporation | Danny S. Ashby<br>dashby@omm.com<br>O'MELVENY & MYERS LLP<br>2801 N. Harwood Street, Suite 1600<br>Dallas, Texas 75201<br>Telephone:  +1 972 360 1900<br><br>Anton Metlitsky<br>ametlitsky@omm.com<br>Ross Galin<br>rgalin@omm.com<br>O'MELVENY & MYERS LLP<br>1301 Avenue of the Americas<br>Suite 1700<br>New York, New York 10019<br>Telephone: +1 212 326 2000<br><br>Deron R. Dacus<br>ddacus@dacusfirm.com<br>THE DACUS FIRM, P.C.<br>821 ESE Loop 323, Suite 430<br>Tyler, Texas 75701<br>Telephone: +1 903 705 1117 |
| **Real Party in Interest** | Samuel F. Baxter<br>sbaxter@mckoolsmith.com<br>Jennifer L. Truelove |

| Plaintiff Health Selection Group, LLC | jtruelove@mckoolsmith.com<br>MCKOOL SMITH P.C.<br>104 East Houston, Suite 300<br>Marshall, Texas 75670<br><br>Eric B. Halper<br>ehalper@mckoolsmith.com<br>Radu A. Lelutiu<br>rlelutiu@mckoolsmith.com<br>MCKOOL SMITH P.C.<br>One Manhattan West<br>395 Ninth Avenue, 50th Floor<br>New York, New York 10001<br><br>W. Mark Lanier<br>WML@LanierLawFirm.com<br>Harvey Brown<br>Harvey.Brown@LanierLawFirm.com<br>Benjamin Major<br>Benjamin.Major@LanierLawFirm.com<br>Zeke DeRose III<br>Zeke.DeRose@LanierLawFirm.com<br>Jonathan Wilkerson<br>Jonathan.Wilkerson@LanierLawFirm.com<br>THE LANIER FIRM<br>10940 W. Sam Houston Pkwy N, Suite 100<br>Houston, Texas 77064 |
|---|---|
| **Real Party in Interest**<br>State of Texas | Evan S. Greene<br>Evan.Greene@oag.texas.gov<br>OFFICE OF THE<br>TEXAS ATTORNEY GENERAL<br>Civil Medicaid Fraud Division<br>P.O. Box 12548, Capitol Station<br>Austin, Texas 78711<br>Telephone: (512) 475-4196 |
| | |

| **Respondent** | |
|---|---|
| The Hon. Brad Morin, 71st District Court, Harrison County | |

# TABLE OF CONTENTS

**Page**

IDENTITY OF PARTIES AND COUNSEL.............................................i

INDEX TO APPENDIX.............................................................vi

STATEMENT OF THE CASE ....................................................... 1

STATEMENT OF JURISDICTION.................................................3

STATEMENT REGARDING ORAL ARGUMENT ................................3

ISSUES PRESENTED .............................................................. 4

THE MANDAMUS RECORD AND APPENDIX...................................4

STATEMENT OF FACTS ........................................................... 5

      A.    Statutory Background..................................................... 5

      B.    Facts and Trial Court Proceedings............................. 9

      C.    Prior Court of Appeals and Supreme Court Proceedings ................................................................ 13

SUMMARY OF THE ARGUMENT .............................................. 16

ARGUMENT ...................................................................... 19

      I.    HSG Lacks Standing To Bring This *Qui Tam* Action......... 19

      A.    The Constitution requires that a plaintiff demonstrate injury.................................................. 20

      B.    HSG has not suffered any injury. ............................ 21

      C.    HSG cannot sue as an assignee or representative of the State. .......................................................... 23

            1.    There is no damages claim to assign. ................ 23

            2.    Statutory standing does not satisfy or displace constitutional standing principles....... 28

            3.    Representative standing has no application here.................................................................... 30

      II.    The TMFPA's *Qui Tam* Provisions Offend The Separation Of Powers ....................................................... 32

A. The Texas Constitution exclusively assigns to State attorneys the power to bring and maintain suits for the State......................................................34

B. The TMFPA impermissibly authorizes private individuals to press suits that State attorneys decline to control. ......................................................43

1. The TMFPA allows for litigation that State attorneys affirmatively choose not to bring. ..... 43

2. There is no possible saving construction. .......... 48

3. The State does not maintain control over qui tam actions that it does not bring. .............. 50

C. History cannot salvage the TMFPA. .........................52

III. Section 51-A Of The Constitution Does Not Override Basic Separation-Of-Powers Principles ..............................55

IV. The Court Should Grant Mandamus Relief ........................59

PRAYER ...................................................................................62

DECLARATION OF DANNY S. ASHBY ...........................................64

CERTIFICATE OF COMPLIANCE....................................................66

CERTIFICATION...........................................................................67

CERTIFICATE OF SERVICE............................................................67

| Document | Page |
|---|---|
| Order Denying Defendant's Plea to Jurisdiction and Motion to Dismiss | 001 |
| Order Denying Petition for Writ of Mandamus | 004 |
| Memorandum Opinion Denying Petition for Writ of Mandamus | 006 |
| Judgment Denying Petition for Writ of Mandamus | 009 |
| Novartis's Petition for Writ of Mandamus in the Supreme Court of the State of Texas | 010 |
| HSG's Combined Response to Petition for Writ of Mandamus and Motion for Temporary Stay | 080 |
| State's Response to Relator's Petition for Writ of Mandamus | 106 |
| Novartis's Reply In Support of Petition for Writ of Mandamus | 139 |
| Novartis's Brief on the Merits | 158 |
| Amicus Curiae Brief of US Chamber of Commerce In Support of Petitioner | 227 |
| HSG's Responsive Brief on the Merits | 267 |
| State's Responsive Brief on the Merits | 344 |
| Amicus Curiae Brief of Pharmaceutical Research and Manufacturers of America In Support of Relator Novartis Pharmaceutical Corporation | 383 |
| Novartis's Reply Brief on the Merits | 413 |
| SCOTx Order Denying Petition | 456 |
| SCOTx Statement of Justices Young and Sullivan Respecting the Denial of Writ of Mandamus | 485 |

# TABLE OF CONTENTS
(continued)

| | Page |
|---|---|
| Tex. Const. Art. I, § 13 | 495 |
| Tex. Const. Art. II, § 1 | 496 |
| Tex. Const. Art. IV, § 22 | 497 |
| Tex. Const. Art. V, § 21 | 498 |
| Tex. Hum. Res. Code § 36.101 | 499 |
| Tex. Hum. Res. Code § 36.102 | 500 |
| Tex. Hum. Res. Code § 36.104 | 502 |
| Tex. Hum. Res. Code § 36.107 | 503 |
| Tex. Hum. Res. Code § 36.113 | 505 |
| Tex. Hum. Res. Code § 36.052 | 506 |
| Tex. Res. Code § 36.104 (1997) | 508 |
| Tex. Hum. Res. Code § 36.104 (2007) | 509 |

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Agey v. American Liberty Pipe Line Co.*,
172 S.W.2d 972 (Tex. 1943)........................................................ passim

*Allen v. Fisher*,
9 S.W.2d 731 (Tex. 1928)........................................................ 17, 31

*American Liberty Pipeline Co v. Agey*,
167 S.W.2d 580 (Tex. App. 1942) ............................................. 36, 40, 53

*Armadillo Bail Bonds v. State*,
802 S.W.2d 237 (Tex. Crim. App. 1990)........................................ 32

*Bell v. Low Income Women of Texas*,
95 S.W.3d 253 (Tex. 2002).................................................... 56, 57

*Busbee v. Cnty. of Medina*,
681 S.W.3d 391 (Tex. 2023).................................................... 29

*Bush v. Republic of Texas*,
1 Tex. 455 (1846) ............................................................ 53

*Camp v. Gulf Prod. Co.*,
61 S.W.2d 773 (Tex. 1933).................................................... 37, 40, 41

*Charles Scribner's Sons v. Marrs*,
262 S.W. 722 (Tex. 1924)...................................................... 44

*Data Foundry, Inc. v. City of Austin*,
620 S.W.3d 692 (Tex. 2021).................................................... 20, 21

*El Paso Elec. Co. v. Tex. Dep't of Ins.*,
937 S.W.2d 432 (Tex. 1996)................................................. 33, 38, 42, 45

*Farmers Tex. Cnty. Mut. Ins. Co. v. Beasley*,
598 S.W.3d 237 (Tex. 2020).................................................... 20, 29

*Fin. Comm'n of Tex. v. Norwood*,
418 S.W.3d 566 (Tex. 2013).................................................... 22

*Gabelli v. SEC*,
568 U.S. 442 (2013) .......................................................... 26

*Gibbs v. State*,
46 S.W. 645 (Tex. Crim. App. 1898)............................................ 53

*Heckman v. Williamson Cnty.*,
369 S.W.3d 137 (Tex. 2012)................................................20, 21, 23, 30

*Hill County v. Sheppard*,
178 S.W.2d 261 (Tex. 1944)...........................................................38, 45

*Hughes Aircraft Co. v. United States ex rel. Schumer*,
520 U.S. 939 (1997) ...........................................................................46

*In re Allcat Claims Serv., L.P.*,
356 S.W.3d 455 (Tex. 2011)................................................................22

*In re Essex Ins. Co.*,
450 S.W.3d 524 (Tex. 2014)................................................................60

*In re Farmers Tex. Cnty. Mut. Ins. Co.*,
621 S.W.3d 261 (Tex. 2021)................................................................60

*In re J.B. Hunt Transport, Inc.*,
492 S.W.3d 287 (Tex. 2016)................................................................60

*In re Lazy W Dist. No. 1*,
493 S.W.3d 538 (Tex. 2016)................................................................22

*In re Novartis Pharmaceuticals Corp.*,
__ S.W.3d __, 2025 WL 2989490 (Tex. 2025) .............................. passim

*In re Prudential Ins. Co. of Am.*,
148 S.W.3d 124 (Tex. 2004)...........................................................59, 60

*In re Sanofi-Aventis U.S. LLC*,
711 S.W.3d 732 (Tex. App. 2025) ...................................................3, 14

*In re Shire PLC*,
633 S.W.3d 1 (Tex. App. 2021) ...........................................................60

*In re Xerox Corp.*,
555 S.W.3d 518 (Tex. 2018)........................................................ passim

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ...........................................................................21

*Malouf v. State ex rel. Ellis*,
694 S.W.3d 712 (Tex. 2024)...........................................................6, 45

*Marsh v. Chambers,*
463 U.S. 783 (1983) ...................................................................52

*Maud v. Terrell,*
200 S.W. 375 (Tex. 1918)....................................................... passim

*Morrison v. Olson,*
487 U.S. 654 (1988) ..................................................................46

*Mosaic Baybrook One, L.P. v. Simien,*
674 S.W.3d 234 (Tex. 2023)......................................................20

*Moyer v. Moyer,*
183 S.W.3d 48 (Tex. App.—Austin 2005) ...............................31

*NLRB v. Noel Canning,*
573 U.S. 513 (2014) ..................................................................54

*PPG Indus., Inc. v. JMB/Houston Cntrs. Partners Ltd.
P'ship,*
146 S.W.3d 79 (Tex. 2004).......................................................46

*Quick v. City of Austin,*
7 S.W.3d 109 (Tex. 1998)..........................................................50

*Riley v. St. Luke's Episcopal Hosp.,*
252 F.3d 749 (5th Cir. 2001) ....................................................52

*S. Dakota v. Dole,*
483 U.S. 203 (1987) ..................................................................59

*Saldano v. State,*
70 S.W.3d 873 (Tex. Crim. App. 2002)....................................54

*Southern Pac Co. v. Porter,*
331 S.W.2d 42 (Tex. 1960).......................................................53

*Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.,*
554 U.S. 269 (2008) ..................................................................27

*Staples v. State,*
245 S.W. 639 (Tex. 1922)....................................................... passim

*State ex rel. Durden v. Shahan,*
658 S.W.3d 300 (Tex. 2022)......................................................33

*State v. Lloyd,*
994 S.W.2d 362 (Tex. App.—Waco 1999) .............................................. 42

*State v. Moore,*
57 Tex. 307 (1882) ...........................................................................54

*Tenet Hosps. Ltd. v. Rivera,*
445 S.W.3d 698 (Tex. 2014) ...............................................................30

*Terrell v. Sparks,*
135 S.W. 519 (Tex. 1911) ..................................................................38

*Tex. Ass'n of Bus. v. Tex. Air Control Bd.,*
852 S.W.2d 440 (Tex. 1993) ...............................................................21

*Texas Boll Weevil Eradication Found., Inc. v. Lewellen,*
952 S.W.2d 454 (Tex. 1997) .................................................. 45, 46, 47

*Texas v. Yellen,*
105 F.4th 755 (5th Cir. 2024) .............................................................59

*TransUnion LLC v. Ramirez,*
594 U.S. 413 (2021) .............................................................. 26, 28

*United States ex rel. Health Choice Alliance, LLC v. Eli Lilly
& Co.,*
4 F.4th 255 (5th Cir. 2021) ....................................................... 11, 12

*United States ex rel. Health Choice Alliance, LLC v. Eli Lilly
& Co.,*
No. 5:17-cv-123 (E.D. Tex. Dec. 17, 2018) ......................... 10, 11, 12, 47

*United States ex rel. Health Selection Grp., LLC v. Novartis
AG, et al.,*
No. 5:18-cv-60 (E.D. Tex. Apr. 20, 2018) ......................................11, 12

*United States ex rel. Montcrief v. Peripheral Vascular
Assocs., P.A.,*
133 F.4th 395 (5th Cir. 2025) .............................................................58

*United States ex. rel. Carroll v. Planned Parenthood Gulf
Coast, Inc.,*
21 F. Supp. 3d 825 (S.D. Tex. 2014) .....................................................8

*United States ex rel. Polansky v. Exec. Health Res., Inc.,*
    599 U.S. 419 (2023) ....................................................... 52, 54, 58

*United States ex rel. Zafirov v. Fla. Med. Assocs., LLC,*
    751 F. Supp. 3d 1293 ............................................................... 58

*United States of Am. ex rel. Gentry v. Encompass Health
    Rehab. Hosp. of Pearland, L.L.C.,*
    __ F.4th __, 2025 WL 3063921 (5th Cir. Nov. 3, 2025) ....................... 58

*Univ. of Tex. Health Sci. Ctr. at San Antonio v. Mata &
    Bordini, Inc.,*
    2 S.W.3d 312 (Tex. App.—San Antonio 1999) ................................... 42

*University of Texas at Arlington v. Bishop,*
    997 S.W.2d 350 (Tex. App.—Fort Worth 1999) ................................. 42

*Valley Forge Christian Coll. v. Americans United for
    Separation of Church & State, Inc.,*
    454 U.S. 464 (1982) ................................................................ 23

*Vermont Agency of Natural Resources v. United States ex rel.
    Stevens,*
    529 U.S. 765 (2000) ......................................................... passim

*Wal-Mart Stores, Inc. v. Forte,*
    497 S.W.3d 460 (Tex. 2016) ....................................................... 26

*Walz v. Tax Comm'n of City of N.Y.,*
    397 U.S. 664 (1970) ................................................................ 55

**Statutes**

2007 Tex. Sess. Law Serv. Ch. 29, § 4 (S.B. 362) ............................... 8

2023 Tex. Sess. Law Serv. Ch. 273 (S.B. 745) ................................... 1

31 U.S.C. § 3729 *et seq.* ........................................................ 9

31 U.S.C. § 3729(a) ................................................................ 9

31 U.S.C. § 3729(a)(1) ............................................................ 9

34 Tex. Jur. 445 ................................................................... 38

42 U.S.C. § 1396h ................................................................. 57

Tex. Civ. Prac. & Rem. Code § 64.001(a) ................................................31

Tex. Estates Code § 351.101 ....................................................................30

Tex. Gov't Code § 402.021 .......................................................................33

Tex. Hum. Res. Code § 36.051(a) ...............................................................6

Tex. Hum. Res. Code § 36.052...................................................................6

Tex. Hum. Res. Code § 36.101....................................................................9

Tex. Hum. Res. Code § 36.101(a) ..................................................... 1, 6, 49

Tex. Hum. Res. Code § 36.101(b) ...............................................................8

Tex. Hum. Res. Code § 36.102(b) ...............................................................6

Tex. Hum. Res. Code § 36.102(d) ...............................................................6

Tex. Hum. Res. Code § 36.104(a)(1) .................................................... 7, 44

Tex. Hum. Res. Code § 36.104(a)(2) ............................................... 7, 44, 50

Tex. Hum. Res. Code § 36.104(b) ....................................................... passim

Tex. Hum. Res. Code § 36.104(b-1) ...................................................... 8, 51

Tex. Hum. Res. Code § 36.105........................................................... 7, 49

Tex. Hum. Res. Code § 36.107(b) ...............................................................7

Tex. Hum. Res. Code § 36.107(c)................................................................7

Tex. Hum. Res. Code § 36.107(d) ...............................................................7

Tex. Hum. Res. Code § 36.110(a) ...............................................................8

Tex. Hum. Res. Code § 36.110(a-1) ............................................................8

Tex. Hum. Res. Code §§ 36.101-.132........................................................5

**Other Authorities**

*Constitutionality of the* Qui Tam *Provisions of the False
Claims Act*, 13 Op. O.L.C. 207 (1989)...............................................52

J. Randy Beck*, The False Claims Act And The English
Eradication of Qui Tam Legislation*, 78 N.C. L. Rev. 539
(2000) ....................................................................................................47

Saikrishna Prakash, *The Chief Prosecutor*, 73 Geo. Wash. L. Rev. 521 (2005) .................................................................48

**Rules**

Tex. R. App. P. 52.3 ...........................................................5

Tex. R. App. P. 52.7 ...........................................................5

**Constitutional Provisions**

Tex. Const. art. I, § 13..........................................................20

Tex. Const. art. I, § 6...........................................................57

Tex. Const. art. II, § 1 .............................................. 20, 32, 57

Tex. Const. art. III, § 10 ........................................................57

Tex. Const. art. III, § 51-a(a)...................................................55

Tex. Const. art. III, § 51-a(b)...................................................56

Tex. Const. art. III, § 51-a(c) ............................................. 56, 57

Tex. Const. art. IV, § 22 ........................................................40

Tex. Const. art. V, § 21..........................................................40

## STATEMENT OF THE CASE

**Nature of the Case:**  Health Selection Group, LLC ("HSG") filed this *qui tam* action against Novartis Pharmaceuticals Corporation ("Novartis") under the Texas Medicaid Fraud Prevention Act ("TMFPA")[1], which provides that "a person may bring a civil action for a violation of Section 36.002 for the person and for the state" and such "action shall be brought in the name of the person and of the state." Tex. Hum. Res. Code § 36.101(a).  Novartis filed a Plea to the Jurisdiction and Motion to Dismiss under Texas Rule of Civil Procedure 91a arguing that (i) the district court lacked subject-matter jurisdiction over the action because HSG did not allege that it personally suffered any injury from the conduct alleged in the First Amended Petition and (ii) the TMFPA's *qui tam* provisions are void—and thus deprive HSG of any valid cause of action—because they violate Article IV, Section 22 and Article V, Section 21 of the Texas Constitution.  The district court summarily denied the Plea to the Jurisdiction and Motion to Dismiss.

---

[1] The statute was amended effective September 1, 2023, and is now called the Texas Health Care Program Fraud Prevention Act.  *See* 2023 Tex. Sess. Law Serv. Ch. 273 (S.B. 745).  The amendments broaden the healthcare programs subject to the Act but do not alter the provisions discussed in this brief.  For ease of reference, Novartis refers to the statute as the TMFPA, because that statute forms the basis for this *qui tam* action.

Novartis sought mandamus relief in the Court of Appeals for the Sixth District at Texarkana on February 2, 2024. That Court issued a two-page memorandum opinion on March 1, 2024, denying the mandamus petition. Novartis then sought mandamus relief in the Supreme Court. On August 30, 2024, the Supreme Court granted Novartis's request for a temporary stay of trial proceedings and ordered the parties to file briefing on the merits of Novartis's mandamus petition. On October 24, 2025, the Supreme Court denied the petition. Justices Young and Sullivan filed a separate statement respecting the denial suggesting that this Court was the appropriate forum to consider Novartis's petition in the first instance.

**Respondent:** The Honorable Brad Morin, Presiding Judge of the 71st District Court, Harrison County, Texas; Cause No. 23-0276.

**Ruling at Issue:** The Order Denying Defendant's Plea to Jurisdiction and Motion to Dismiss, signed on the 15th day of December 2023.

**Relief Requested:** An order directing the district court to grant Novartis's Plea to the Jurisdiction and dismiss the petition with prejudice as to HSG for lack of subject-matter jurisdiction or, in the

2

alternative, an order directing the district court to grant the Motion to Dismiss and dismiss the petition with prejudice as to HSG for lack of a legally valid cause of action.

## STATEMENT OF JURISDICTION

This Court has jurisdiction under Article V of the Texas Constitution and Tex. Govt. Code § 22.220(d)(1)&(2). *See also In re Sanofi-Aventis U.S. LLC*, 711 S.W.3d 732, 736-38 (Tex. App. 2025); *In re Novartis Pharmaceuticals Corp.*, __ S.W.3d __, 2025 WL 2989490, at *3-4 (Tex. 2025) (statement of Young and Sullivan, J.J.).[2]  The Court is empowered under Tex. Govt. Code § 22.221(c-1) to issue writs that arise out of matters over which Tex. Govt. Code § 22.221(d) vests the Court with intermediate appellate jurisdiction.

## STATEMENT REGARDING ORAL ARGUMENT

Novartis respectfully requests oral argument.  Novartis believes oral argument will aid the Court in deciding the "weighty" and "important" constitutional issues presented by this original proceeding, *see In re Novartis*, *supra*, at *1, *3, including (i) whether courts have subject-matter jurisdiction over a statutory cause of action when the

---

[2] All citations to the *In re Novartis* opinion are to the statement of Justices Young and Sullivan.

plaintiff has suffered no injury from the alleged statutory violation, and (ii) whether Texas Medicaid Fraud Prevention Act violates the separation of powers by authorizing private parties to bring actions on behalf of the State when the Texas Supreme Court has consistently held that the Texas Constitution delegates that authority exclusively to the State attorneys elected by the people of Texas.

## ISSUES PRESENTED

1.  Whether the courts have subject-matter jurisdiction over a statutory cause of action when it is undisputed that the plaintiff itself suffered no injury from the alleged statutory violation.

2.  Whether the Texas Medicaid Fraud Prevention Act violates Texas's separation of powers by allowing private individuals to initiate and maintain a civil action for and in the name of the State.

3.  Whether the Court should grant mandamus relief.

## THE MANDAMUS RECORD AND APPENDIX

Novartis has prepared a Mandamus Record consisting of sworn copies of documents filed in the underlying proceeding that are material to its claim for relief and hereby states that no testimony or evidence was adduced at the hearing on its Plea to the Jurisdiction and Motion to

4

Dismiss. *See* Tex. R. App. P. 52.7(a). The Mandamus Record will be cited as follows: (MR__).

In addition, Novartis has prepared an Appendix containing a sworn copy of the order complained of and the text of the relevant constitutional provisions and statutes on which its argument is based. *See* Tex. R. App. P. 52.3(k)(1). The Appendix also includes the petition and merits briefing in the Texas Supreme Court, as well as that Court's order denying the petition for mandamus and Justices Young and Sullivan's separate statement. *See* Tex. R. App. P. 52.3(k)(2). The Appendix will be cited as follows: (APP__).

## STATEMENT OF FACTS

### A. Statutory Background

The Texas Medicaid Fraud Prevention Act (TMFPA), Tex. Hum. Res. Code §§ 36.101-.132, generally prohibits false statements made in connection with healthcare programs. *See In re Xerox Corp.*, 555 S.W.3d 518, 533-34 (Tex. 2018).

The Attorney General is empowered by the statute to enforce the TMFPA. "If the attorney general has reason to believe that a person is committing, has committed, or is about to commit an unlawful act, the attorney general may institute an action for an appropriate order to

5

restrain the person from committing or continuing to commit the act." Tex. Hum. Res. Code § 36.051(a). The Attorney General may also seek monetary penalties for each violation. *Id.* § 36.052. Those penalties are "significant," "regardless of whether the State actually suffers any financial loss." *Malouf v. State ex rel. Ellis*, 694 S.W.3d 712, 721 (Tex. 2024).

This case concerns actions to enforce the TMFPA brought not by the Attorney General or any other State attorney but by private individuals. The Act provides that a "person may bring a civil action for a violation" of the Act "for the person and for the state," which "shall be brought in the name of the person and of the state." Tex. Hum. Res. Code § 36.101(a). And the Act then sets out a multi-step process by which such a private suit, known as a *qui tam* action, may move forward.

Initially, the TMFPA gives the State time to decide how to handle a private action. A private suit must be filed under seal and must remain sealed for at least 180 days. Tex. Hum. Res. Code § 36.102(b); *see id.* § 36.102(d) (providing for extensions). At the conclusion of that period, the State must inform the court that it has determined to

6

"proceed with the action" or, alternatively, that it "declines to take over the action." *Id.* § 36.104(a)(1)-(2). If the State proceeds with the action, the Attorney General may "contract with a private attorney to represent the state." *Id.* § 36.105.

If the State proceeds with the action, the private party's rights become very limited. The State may dismiss the action without the private party's consent. Tex. Hum. Res. Code § 36.107(b). With court approval, it may settle the action over the objections of the private person. *Id.* § 36.107(c). And if the State determines that the private person's participation is delaying "the state's prosecution of the case," the court "may impose limitations on the person's participation." *Id.* § 36.107(d).

But if the State declines to take over the action, "the person bringing the action may proceed without the state's participation." Tex. Hum. Res. Code § 36.104(b). And while the State has considerable power before the sealing period expires, it is significantly constrained after it declines to proceed with the suit. To intervene in the litigation after the sealing period, the State must make "a showing of good cause,"

7

and any intervention cannot "limit[] the status and right" of the private person. *Id.* § 36.104(b-1).

The possibility that an action could continue without the State's participation is relatively new. For the first decade after its enactment, the TMFPA provided that the court "shall dismiss the action" if the State declined to bring it. Tex. Hum. Res. Code § 36.104(b) (2005). But the Legislature amended the statute in 2007 to allow private individuals to continue litigation without the State's consent. 2007 Tex. Sess. Law Serv. Ch. 29, § 4 (S.B. 362); *see United States ex. rel. Carroll v. Planned Parenthood Gulf Coast, Inc.*, 21 F. Supp. 3d 825, 837 (S.D. Tex. 2014) (noting amendment).

If a private person succeeds in her *qui tam* action, the defendant must pay the same civil penalties as if the State had brought the action itself. Tex. Hum. Res. Code § 36.101(b). But the private person receives a bounty out of that penalty award. That award varies based on a number of factors. But it can be as high as "30 percent of the proceeds of the action" (if the State does not take over the suit) or "25 percent of the proceeds of the action" (if the State does take over the suit). *Id.* § 36.110(a)-(a-1).

The TMFPA is similar to the federal False Claims Act, 31 U.S.C. § 3729 *et seq.* But there are key differences, including that the federal statute covers many different kinds of false claims against the government, while the TMFPA is limited to false claims in the healthcare context. *Compare* 31 U.S.C. § 3729(a), *with* Tex. Hum. Res. Code § 36.101. Most relevant to this case, the federal False Claims Act provides for both "damages" (which reflect the actual harm caused by the unlawful conduct to the government's property) and "civil penalties," 31 U.S.C. § 3729(a)(1), while the TMFPA authorizes only civil penalties and does not permit an "action for the recovery of damages," *In re Xerox Corp.*, 555 S.W.3d at 534.

## B.  Facts and Trial Court Proceedings

Novartis Pharmaceuticals Corporation develops medical treatments designed to improve and extend lives through scientific research and technological innovation. Novartis's efforts focus in large part on developing treatments in areas with high unmet patient needs, including neuroscience, immunology, and oncology. Novartis employs

9

approximately 78,000 people, and its medications have reached more than 296 million individuals.[3]

Plaintiff Health Selection Group, LLC (HSG) is a subsidiary of a professional *qui tam* plaintiff, National Health Care Analysis Group (NHCAG). NHCAG is a New Jersey-based "research organization" created to monetize federal and state *qui tam* statutes that permit private parties to file civil actions on behalf of the government in return for a percentage of the government's recovery. *See* First Am. Pet. ¶ 21 (MR006); U.S. Mot. to Dismiss at 1-2, *United States ex rel. Health Choice Alliance, LLC v. Eli Lilly & Co.*, No. 5:17-cv-123 (E.D. Tex. Dec. 17, 2018), Dkt. 192 (describing NHCAG as a "professional relator" "comprised of member limited liability companies formed by investors and former Wall Street investment bankers"). NHCAG mines publicly available Medicaid and Medicare data and conducts witness interviews to identify sweeping theories of liability, and then creates entities, like HSG, to seek astronomical *qui tam* penalties against pharmaceutical companies. *See* First Am. Pet. ¶ 42 (MR011); *see* U.S. Mot. to Dismiss

---

[3] *See* Novartis, *About*, https://www.novartis.com/about (last accessed November 14, 2025).

at 5-6, *Eli Lilly*, No. 5:17-cv-123 (describing NHCAG's business model). In one recent case, the Fifth Circuit noted that NHCAG brought 11 *qui tam* actions under the federal False Claims Act against a total of 38 defendants, none of which survived dismissal. *United States ex rel. Health Choice Alliance, LLC v. Eli Lilly & Co.*, 4 F.4th 255, 259 & n.1 (5th Cir. 2021).

In April 2018, HSG filed a sealed *qui tam* action against Novartis's parent company in the United States District Court for the Eastern District of Texas, alleging that Novartis violated the federal False Claims Act and the analogous laws of 31 States, including the TMFPA, by: (i) providing free "nurse educator" services to patients to educate them about the proper use of six Novartis medications; (ii) providing free "reimbursement support" services to assist patients with obtaining coverage for certain Novartis prescriptions; and (iii) contracting with third parties to employ nurses to market and educate prescribers about the six medications. *See* Compl., *United States ex rel. Health Selection Grp., LLC v. Novartis AG, et al.*, No. 5:18-cv-60 (E.D. Tex. Apr. 20, 2018), Dkt. 1. HSG's theories largely mirrored those brought by other NHCAG affiliates that the federal government moved

to dismiss because the government deemed the practices lawful and beneficial to the federal healthcare programs. *Eli Lilly & Co.*, 4 F.4th at 260, 267-68; *see* U.S. Mot. to Dismiss at 2-3, 14-16, *Eli Lilly*, No. 5:17-cv-123 (arguing that "federal healthcare programs have a strong interest in ensuring that, after a physician has appropriately prescribed a medication, patients have access to basic product support relating to their medication"). After those suits were dismissed, HSG voluntarily dismissed its federal lawsuit against Novartis AG and chose to pursue TMFPA claims in Texas state court. *See* HSG Mot. to Dismiss, *Health Selection Grp.*, No. 5:18-cv-60 (E.D. Tex. Mar. 9, 2020), Dkt. 21.

On May 8, 2020, HSG filed this TMFPA suit against Novartis.[4] The Original Petition substantially tracked HSG's prior federal complaint—again, based on the same conduct that the United States intervened to dismiss in a parallel suit—in alleging that the three business practices described above violate the TMFPA. The State of Texas filed a notice declining to intervene in this action. The case was subsequently unsealed but remained dormant for several years until it

---

[4] The suit initially named Novartis AG, but was amended to seek relief instead against Novartis Pharmaceuticals Corporation. MR001.

12

was transferred to the 71st Judicial District Court in Harrison County in March 2023.

The next month, HSG filed an amended petition, *see* First Am. Pet. (MR001-060), and Novartis then moved to dismiss the suit, arguing that the district court should dismiss HSG's *qui tam* action for two reasons. First, Novartis argued that the district court should dismiss the case for lack of subject-matter jurisdiction because HSG does not have constitutional standing to sue Novartis for a statutory violation that did not personally injure HSG. *See* MR072-079. Second, Novartis argued that HSG's *qui tam* action should be dismissed because the TMFPA *qui tam* statute violates the Texas Constitution, which assigns the authority to file suits for the State exclusively to State attorneys. MR079-093. Both HSG and the State (through a statement of interest) opposed dismissal of the action. The district court heard oral argument and summarily denied Novartis's motion. *See* Order Denying Def.'s Plea to Jur. & Mot. to Dismiss (MR167).

## C. Prior Court of Appeals and Supreme Court Proceedings

**1.** On February 2, 2024, Novartis sought mandamus and a temporary stay of trial proceedings in the Court of Appeals for the Sixth

13

District of Texas.  The Sixth District denied the mandamus petition and stay request in a brief order, concluding that the purely legal constitutional questions presented were somehow committed to the trial court's discretion.  MR501.

**2.**  Novartis sought review in the Supreme Court.  On August 30, 2024, that Court granted Novartis's request for a temporary stay of trial proceedings and ordered the parties to file briefing on the merits of Novartis's mandamus petition.  Novartis (supported by two amici) and HSG (supported by the State) fully briefed the constitutional questions presented.

On October 25, 2025, the Supreme Court denied the petition for mandamus.  The order denying the petition was accompanied by a lengthy statement respecting the denial by Justices Young and Sullivan, the upshot of which was that Novartis's petition presents "weighty" and "important" issues, *In re Novartis*, *supra*, at \*1, \*3, but because this Court has determined that it has exclusive intermediate appellate jurisdiction over TMFPA appeals like this one, *see In re Sanofi-Aventis U.S. LLC*, 711 S.W.3d 732 (Tex. App. 2025), this Court should hear Novartis's mandamus petition in the first instance.  *See In*

14

*re Novartis*, *supra*, at \*1 ("This case presents weighty issues worthy of our full attention," but the "decision to deny the petition is understandable given that there is a new statewide appellate court that has already held that it has jurisdiction over disputes like this one").

In particular, Justices Young and Sullivan criticized the Sixth Court of Appeals for "provid[ing] no meaningful analysis of Novartis's arguments about standing and separation of powers," observing that the Supreme Court "would surely benefit from thoughtful consideration of these difficult questions by the lower courts." *Id.* at \*2. "Fortunately," the statement went on to explain, "the legislature recently created the Fifteenth Court of Appeals," which "came into existence about five months after Novartis filed its mandamus petition in [the Supreme Court]," and which "has held that it has jurisdiction over mandamus petitions like this one." *Id.* at \*3 (citing *In re Sanofi-Aventis*). Justices Young and Sullivan went on to note that the "Fifteenth Court would greatly assist [the Supreme Court] by presenting its analysis [of Novatis's constitutional challenges] in a written opinion. After the Fifteenth Court has weighed in, [the

Supreme Court] will be better positioned to provide an accurate and definitive determination of the Act's constitutionality." *Id.* at \*4.

Finally, Justices Young and Sullivan made clear that "we see no reason that Novartis could not file a mandamus petition in the Fifteenth Court raising its challenges to the Act." *Id.* "Given that the Sixth Court did not explain why Novartis's petition lacked merit and [the Supreme Court] did not opine on the merits at all, it might make sense to give the court hearing any eventual appeal [i.e., this Court] an opportunity to assess the Act's constitutionality sooner rather than later, assuming that the other prerequisites of mandamus review are met to that court's satisfaction." *Id.* Justices Young and Sullivan expressed the "hope that the court of appeals will take the issues seriously enough to dispose of them in a written opinion." *Id.*

## SUMMARY OF THE ARGUMENT

**I.** The courts have no subject-matter jurisdiction over this suit because HSG lacks standing. HSG has not been injured by the conduct of which it complains, and so has not suffered the injury-in-fact required to litigate in Texas courts.

There is no basis to except HSG from the ordinary injury requirement here. HSG cannot establish standing as an assignee of the State, because unlike the federal False Claims Act, the TMFPA does not allow for damages claims, and the civil penalties contemplated by the TMFPA cannot be assigned to a private person. HSG cannot establish standing as a representative of the State because (i) it has no legal relationship with the State, (ii) the State is entirely capable of bringing a lawsuit itself, and (iii) the State alone has standing to bring suits respecting matters of public concern.

**II.** Separately, the TMFPA's provisions allowing a private party to pursue public litigation violate the separation-of-powers principles enshrined in Article IV, Section 22 and Article V, Section 21 of the Texas Constitution. Those sections provide that only the Attorney General and county and district attorneys may litigate on behalf of the State. The Supreme Court has made clear that Article IV, Section 22 and Article V, Section 21 "mark the limits of legislative authority to prescribe who shall represent the state and control its interests in a lawsuit in the district court." *Allen v. Fisher*, 9 S.W.2d 731, 732 (Tex. 1928).

17

The TMFPA breaks from that tradition. It allows a private individual or entity to proceed with a *qui tam* action in the name of and behalf of the State. It therefore devolves the public litigation power onto those who are not authorized by the Constitution to wield it. Neither the Supreme Court's precedents nor any history of *qui tam* litigation permits that unconstitutional result.

**III.** HSG's contention that Article III, Section 51-a of the Texas Constitution somehow overrides these basic constitutional principles just described badly misreads that provision.

**IV.** The Court should grant mandamus relief. Mandamus is an appropriate remedy where a suit cannot lawfully proceed. And here, if HSG lacks standing or if this suit offends the separation of powers, continuing with this litigation will simply waste the parties' and courts' resources. The questions presented here are purely legal and will not benefit from further discovery or fact development. There is accordingly no reason to delay resolving the constitutional questions presented by this suit.

That is especially so, moreover, in light of the statement issued by Justices Young and Sullivan in *In re Novartis*. As those Justices

18

explained, the Legislature created this Court—which has exclusive intermediate appellate jurisdiction over disputes like this one—after Novartis had already filed its mandamus petition in the Supreme Court. And Justices Young and Sullivan implored this Court to consider Novartis's constitutional challenges and address them "in a written opinion." *In re Novartis, supra,* at \*4. This petition presents the Court with an ideal opportunity to do so.

## ARGUMENT

HSG's *qui tam* suit suffers from two severe and independent constitutional flaws. *First*, principles of standing prohibit HSG—which has not been injured by the conduct of which it complains—from pursuing this action. And *second*, the separation of powers does not permit HSG to proceed with this litigation on behalf of the State. For either or both reasons, this case must be dismissed, and mandamus relief is warranted.

## I. HSG LACKS STANDING TO BRING THIS *QUI TAM* ACTION

The first problem with this suit is that HSG lacks standing. It does not allege that any of Novartis's conduct injured it personally. That lack of a personal stake in this controversy violates the Texas

19

Constitution, which allows only individuals who have suffered harm to sue and provides no doctrinal basis to excuse HSG from meeting the injury requirement that all other litigants must satisfy. Accordingly, the case should be dismissed. *See Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 150-51 (Tex. 2012).

A. **The Constitution requires that a plaintiff demonstrate injury.**

"[S]tanding is a component of subject matter jurisdiction," and is thus "a threshold requirement to maintaining a lawsuit." *Farmers Tex. Cnty. Mut. Ins. Co. v. Beasley*, 598 S.W.3d 237, 240 (Tex. 2020). "In Texas, the standing requirement stems from two constitutional limitations on subject-matter jurisdiction." *Data Foundry, Inc. v. City of Austin*, 620 S.W.3d 692, 700 (Tex. 2021). The first is "the Texas Constitution's provision for separation of powers among the branches of government, which denies the judiciary authority to decide issues in the abstract." *Mosaic Baybrook One, L.P. v. Simien*, 674 S.W.3d 234, 250 (Tex. 2023); *see* Tex. Const. art. II, § 1. The second is the Texas Constitution's "open courts provision, which provides court access only to a 'person for an injury done him.'" *Id.* (quoting Tex. Const. art. I, § 13).

From these two constitutional provisions, the Supreme Court has held that Texas's standing doctrine requires "(1) an injury in fact that is both concrete and particularized," "(2) that the injury is fairly traceable to the defendant's challenged action"; and "(3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Data Foundry*, 620 S.W.3d at 696 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). The first element— "injury in fact"—requires that "[t]he plaintiff . . . be *personally* injured— he must plead facts demonstrating that he, himself (rather than a third party or the public at large), suffered the injury." *Heckman*, 369 S.W.3d at 155 (emphasis in original).

## B. HSG has not suffered any injury.

HSG's suit fails this test. HSG does not allege that it personally suffered any injury from the conduct alleged in the petition. *See generally* MR001-60. Instead, it is asserting an injury to "the public at large," *Heckman*, 369 S.W.3d at 155—it alleges that Novartis's conduct defrauded the State. HSG therefore lacks standing, which is "a constitutional prerequisite to suit." *Id.* at 150; *accord Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993).

21

It makes no difference that the TMFPA purports to allow individual litigants to sue on behalf of the State. For the reasons explained below, there are fundamental separation-of-powers problems with that grant of public litigation authority. *See infra* at 32-55. But even setting those problems aside, it is settled that a statute cannot "authorize a court to act without subject matter jurisdiction." *In re Lazy W Dist. No. 1*, 493 S.W.3d 538, 544 (Tex. 2016). A statutory right to sue may not establish a lesser injury standard "than that set by the general doctrine of standing." *Fin. Comm'n of Tex. v. Norwood*, 418 S.W.3d 566, 582 n.83 (Tex. 2013). "If the grant of jurisdiction or relief authorized [by] statute" exceeds constitutional limits, Texas courts construe the Legislature's enactments to "exercise [only] as much jurisdiction over the case as the Constitution allows." *In re Allcat Claims Serv., L.P.*, 356 S.W.3d 455, 462 (Tex. 2011). Thus, regardless of whether HSG meets the TMFPA's requirements for bringing an action, it lacks constitutional standing because it has not alleged that it was personally injured by any alleged TMFPA violations. That should be the end of this suit.

The doctrine of standing exists to ensure that litigants do not "roam the country in search of governmental wrongdoing." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 487 (1982). Yet that is exactly what HSG has sought to do here: As described above, it sifts through healthcare data to initiate *qui tam* actions. *See supra* at 10-11. "[O]ur Constitution opens the courthouse doors only to those who have or are suffering an injury," *Heckman*, 369 S.W.3d at 155, not uninjured profit-seeking entities like HSG.

## C. HSG cannot sue as an assignee or representative of the State.

At prior stages of this litigation, HSG and the State argued that HSG has standing as the State's assignee or representative. Each theory fails.

### 1. *There is no damages claim to assign.*

HSG and the State's primary argument for standing relies on the Supreme Court of the United States' holding in *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765 (2000).

*See* HSG Resp. 14-27; State Resp. 8-14.[5]  In that case, the Court held

that a *qui tam* relator satisfied federal Article III standing

requirements because the False Claims Act "can reasonably be regarded

as effecting a partial assignment of the Government's damages claim."

529 U.S. at 773.[6]  And because assignees of a claim had historically

been understood as possessing standing to sue, the Court held that

federal *qui tam* relators likewise had Article III standing.  *Id.*

But the logic of *Stevens* does not apply to the TMFPA.  Unlike the

False Claims Act, the TMFPA cannot be construed as creating an

assignable claim for damages.  The Texas Supreme Court has held that

the TMFPA is a civil-enforcement statute for civil penalties, "not an

action for recovery of damages." *In re Xerox Corp.*, 555 S.W.3d at 526.

The Court so held because the penalties authorized by the TMFPA are

"fixed without regard to any loss to the Medicaid program," and because

the statute does not contain any language that might "imply a loss

measure or require the State to prove an actual loss." *Id.* at 533-35.

---

[5] "HSG Resp." refers to HSG's responsive brief on the merits in the Supreme Court. "State Resp." refers to the State's responsive brief on the merits in the Supreme Court.

[6] *Stevens* reserved the question of whether *qui tam* suits violate the federal separation of powers.  529 U.S. at 778 n.8.  The Texas counterpart of that issue is discussed below.  *See infra* at 32-55.

In reaching that holding, the Court expressly declined to import federal jurisprudence when construing the TMFPA. It held that comparisons to the False Claims Act are "not probative" because, while the statutes may be "similar in aim and tactic," they "employ materially different language, and the language of our statutes controls the outcome here." 555 S.W.3d at 535. Thus, the Court deviated from False Claims Act doctrine in concluding that the TMFPA "employs a penalty scheme and is not an 'action for the recovery of damages.'" *Id.* at 534.

That statutory difference eviscerates HSG's and the State's reliance on *Stevens*. The TMFPA cannot be read "as effecting a partial assignment of the Government's damages claim" because there is no damages claim to assign. 529 U.S. at 773. So—even assuming that Texas standing doctrine otherwise tracked federal law—the logic of *Stevens* cannot control here.

Recognizing this problem, HSG has argued that the distinction between "penalties" and "damages" "makes no difference" because the "focus of standing is the *injury* and not the relief." HSG Resp. 22. The State has similarly argued that *Stevens* "did not turn on the specific

type of claim assigned by the government to the private plaintiff or the related remedy." State Resp. 12.

In fact, though, *Stevens* used the word "damages" for a reason: only damages, not civil penalties, are subject to assignment. A party does not assign an injury; it assigns a claim for relief. *Stevens*, 529 U.S. at 773; *see TransUnion LLC v. Ramirez*, 594 U.S. 413, 428 (2021). And civil penalties are "different from compensatory damages" in ways that mean they cannot be assigned. *In re Xerox Corp.*, 555 S.W.3d at 529 (quoting *Wal-Mart Stores, Inc. v. Forte*, 497 S.W.3d 460, 465 (Tex. 2016)). Civil penalties "are intended to punish, and label defendants wrongdoers." *Id.* at 530 (quoting *Gabelli v. SEC*, 568 U.S. 442, 451-52 (2013)). They are a uniquely sovereign remedy that cannot be "assigned" to private litigants.

*Stevens* itself recognized as much. In discussing the federal False Claims Act, it noted that the law protected "both the injury to [the United States'] sovereignty arising from violation of its laws" *and* "the proprietary injury resulting from the alleged fraud." 529 U.S. at 771. The government may partially assign a claim vindicating its proprietary interest just like anyone else can. *See id.* at 773; *see also*

26

*Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 278 (2008) (explaining that courts have long recognized assignment of a "chose in action," such as a legal claim for money damages). But neither *Stevens* nor any other case of which Novartis is aware suggests that the State can assign a *sovereign* interest—a government could not, for example, delegate a "criminal lawsuit" to a private individual, *Stevens*, 529 U.S. at 771, because a sovereign interest is by definition an interest that only the State can possess.

Take the example offered by Justices Young and Sullivan of "a hypothetical law that encouraged people to report traffic violations that caused no injury." *In re Novartis*, *supra*, at \*2. When someone violates the traffic laws, the "State suffered an injury in law—the violation of statutes that govern traffic. That is why we can be ticketed for speeding or other legal violations even when there is no concrete harm that results." *Id.* But does this count as "an injury in fact" that the State "could assign to a relator?" *Id.*

Justices Young and Sullivan do not answer the question, *see id.*, but the answer is obvious: of course not. "[T]he public interest that private entities comply with the law cannot be converted into an

individual right by a statute that denominates it as such, and that permits all citizens (or, for that matter, a subclass of citizens who suffer no distinctive concrete harm) to sue." *TransUnion*, 594 U.S. at 428-29 (internal quotation marks omitted); *see also infra* at 32-55 (explaining why such an assignment would independently violate the separation of powers). That principle applies to the obvious traffic-violation example, but it applies in exactly the same way to the TMFPA.

That is why *Stevens* spoke of assignment of *damages*, and it is why the State and HSG's efforts to ignore that language—and to import the logic of *Stevens* into a statute that does not provide for damages but that instead vindicates only the States's nontransferable sovereign interest—are doomed to failure.[7]

> **2.** *Statutory standing does not satisfy or displace constitutional standing principles*

HSG has also argued that even if *Stevens* does not support its standing, the TMFPA itself grants HSG authority to represent Texas

---

[7] The *Stevens* Court also discussed early American history that supported its standing holding. *See* 529 U.S. at 774-78. But the Court did not rest on history alone, focusing instead on the assignment of damages. And in any event, as explained below, there is no history of *qui tam* actions that could inform the meaning of the Texas Constitution. *See infra* at 52-55.

"in its capacity as relator." HSG Resp. 28-29. The State has not pressed this argument, and for good reason: it is just another way of saying that the TMFPA allows HSG to ignore the rules of constitutional standing.

To its credit, HSG has admitted that it is "aware of recent opinions" rejecting that argument. HSG Resp. 33. While some Texas courts have suggested that parties have "standing" because a statute says they do, that is because "Texas courts often apply the label 'standing' to statutory or prudential considerations that do not implicate subject-matter jurisdiction but rather determine whether a plaintiff falls within the class of persons authorized to sue." *Busbee v. Cnty. of Medina*, 681 S.W.3d 391, 395 (Tex. 2023). By contrast, constitutional standing—which is at issue in this case—"is a component of subject matter jurisdiction," and is thus "a threshold requirement to maintaining a lawsuit" regardless of statutory-standing considerations. *See* Novartis Br. 15 (quoting *Farmers Tex. Cnty. Mut. Ins. Co. v. Beasley*, 598 S.W.3d 237, 240 (Tex. 2020)). Because HSG has not been "personally injured," it cannot satisfy this threshold jurisdictional requirement regardless of whether it has a statutory cause of action to

29

bring its *qui tam* suit. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 155-56 (Tex. 2012).

### 3. Representative standing has no application here.

In prior briefing, HSG (but not the State) also argued that "representative standing" could provide a basis for subject-matter jurisdiction. HSG Resp. 27-32. In particular, it argued that a "relator's award can reasonably be characterized as payment for its services, akin to payment that receivers, conservators, ad litems, and executors receive for representing an entity or person with constitutional standing." *Id.* at 28.

But those representative suits on which HSG relies are obviously different. Representatives such as guardians ad litem and executors have fiduciary-type legal obligations to those they represent, who cannot sue in their own names because they are incompetent to do so. *See, e.g.*, Tex. Estates Code § 351.101 (duty on executors); *Tenet Hosps. Ltd. v. Rivera*, 445 S.W.3d 698, 705 (Tex. 2014) (duty on legal guardians). And receivers—the example HSG cited repeatedly, HSG Resp. 28, 29, 30—are "indifferent person[s], between the parties to a cause, appointed by the court to receive and preserve the property or

30

fund in litigation pendente lite." *Moyer v. Moyer*, 183 S.W.3d 48, 56 (Tex. App.—Austin 2005, no pet.); *see* Tex. Civ. Prac. & Rem. Code § 64.001(a) (prescribing various scenarios in which a receiver may be appointed to preserve property).

A *qui tam* suit shares none of those features. HSG has no fiduciary duty to act in the State's interest. Unlike minors, the deceased, and the like, the State is perfectly able to sue on its own behalf—indeed, the TMFPA expressly contemplates that it will do so. And unlike receivers, HSG was not appointed by the court, is certainly not a neutral party, and is not seeking to preserve property pending the outcome of litigation.

In short, there is no need for HSG to act as the sovereign's representative that might warrant a departure from ordinary standing rules. And even if there were, the Supreme Court has repeatedly held that the Texas Constitution lodges with the State attorneys the exclusive authority to bring and maintain a suit for and in the name of the State, and that a private plaintiff cannot be authorized to maintain a suit that solely seeks to vindicate a matter of public concern. *Allen*, 9 S.W.2d at 732; *Staples v. State*, 245 S.W. 639, 641-42 (Tex. 1922).

31

## II. THE TMFPA'S *QUI TAM* PROVISIONS OFFEND THE SEPARATION OF POWERS

Because HSG has suffered no injury, this suit should be dismissed for lack of subject-matter jurisdiction. But if HSG somehow surmounts that obstacle, there is a separate, fundamental problem with this suit: the Constitution's separation of powers prohibits HSG from litigating this action on behalf of the State.

The Texas Constitution provides that "[t]he powers of the Government of the State of Texas shall be divided into three distinct departments"—Legislative, Executive, and Judicial—and that "no person, or collection of persons, being one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted." Tex. Const. art. II, § 1. The separation of powers "reflects a belief on the part of those who drafted and adopted our state constitution that one of the greatest threats to liberty is the accumulation of excessive power in a single branch of government." *Armadillo Bail Bonds v. State*, 802 S.W.2d 237, 239 (Tex. Crim. App. 1990). It "also has the incidental effect of promoting effective government by assigning functions to the branches that are best suited to discharge them." *Id.*

"The Texas Constitution authorizes the attorney general, county attorneys, and district attorneys to represent the state in various cases." *State ex rel. Durden v. Shahan*, 658 S.W.3d 300, 303 (Tex. 2022) (per curiam). Article IV, Section 22 vests the Attorney General with authority to represent the State in the Supreme Court. And Article V, Section 21 vests District and County Attorneys with authority to represent the State in other proceedings. The Legislature is empowered to assign additional responsibilities to the Attorney General, and has done so by statute. *El Paso Elec. Co. v. Tex. Dep't of Ins.*, 937 S.W.2d 432, 438-39 (Tex. 1996); *see, e.g.*, Tex. Gov't Code § 402.021.

What the Legislature cannot do, however, is "divest these officials of their collective constitutional authority by shifting representation to some other attorney." *El Paso Elec. Co.*, 937 S.W.2d at 439. The Supreme Court has never permitted a private litigant to wield litigation power on behalf of the State, and its precedents resoundingly reject that possibility. Yet that is what the TMFPA does: By authorizing a private person to "proceed without the state's participation," Tex. Hum. Res. Code § 36.104(b), it unconstitutionally devolves the State's power to individuals who may not exercise it. Nothing in the Constitution's text,

33

precedent, or history permits that unprecedented action. The Court should accordingly hold that the TMFPA's *qui tam* provisions violate the State's separation of powers.

**A.  The Texas Constitution exclusively assigns to State attorneys the power to bring and maintain suits for the State.**

**1.** Time and again, the Supreme Court has made clear that only State attorneys, elected by the citizenry, may litigate actions on behalf of the State.

The foundational case is *Maud v. Terrell,* 200 S.W. 375 (Tex. 1918). There, a statute authorized the Comptroller of Public Accounts to appoint individuals to "sue for and collect" taxes. *Id.* at 377. The Court had no trouble concluding that such a law would be unconstitutional if it "deprive[d] the county attorneys and the Attorney-General in their authority" to litigate on behalf of the State. *Id.* That is because the "powers . . . conferred by the Constitution upon those officials are exclusive," such that the "Legislature cannot devolve them upon others." *Id.* at 376. The Court upheld the challenged statute only because it could fairly be read to render the tax collectors as "assistant[s]" to the State attorneys, operating under their control. *Id.*

34

at 378; *see id.* at 377 ("Upon its face this language would authorize the collector to file the suit, but it cannot be assumed that the Legislature so intended. It plainly means that he should *cause* the suit to be filed by the official charged by law with that specific duty.") (emphasis added).

Where possible, the Court has followed the approach set out in *Maud* and construed state laws to subordinate individuals' litigation rights to the State's. A prime example is *Staples v. State*, 245 S.W. 639 (Tex. 1922), which scrutinized a statute permitting individuals to bring *quo warranto* actions to enforce the election laws. The private plaintiffs in the case admitted "that they have no pecuniary interest in this suit which is not common to all other citizens of the state. " *Id.* at 640. And the Court observed that a statute permitting suits "for the benefit of the public at large" "cannot confer a right upon private individuals to act for all where it is shown they have no interest different from all others." *Id.* at 641. The Court thus held that the individuals "were not possessed of legal capacity or right to institute and maintain this suit"—and that the only appropriate course was for them to present their case to "a county attorney, a district attorney, or the Attorney General," who could pursue the litigation. *Id.* at 643.

The Supreme Court then took the same approach in *Agey v. American Liberty Pipe Line Co.*, 172 S.W.2d 972 (Tex. 1943). In the court below, a Texas Court of Civil Appeals held that a private citizen could not lawfully maintain a statutory cause of action that the plaintiff had filed in his name and in the name of the State to recover penalties against the defendant for discriminating against the plaintiff in the purchase of oil. *American Liberty Pipeline Co v. Agey*, 167 S.W.2d 580, 580 (Tex. App. 1942).[8] The court of appeals observed that "such action must be brought by the Attorney General or county attorney; and that to construe the section as authorizing institution and prosecution of the suit by and in the name of the aggrieved party for his own use and that of the State would render it void, to that extent, as contravening" Article IV, Section 22 and Article V, Section 21 of the Texas Constitution. *Id.* at 581. Because the action was "one which insures to the State," the court concluded it was "maintainable only in the State's name and by its authorized officials, regardless of the fact that one-half of the recovery may insure to the interested party." *Id.* at 582.

---

[8] Unlike HSG, the plaintiff in *Agey* suffered a concrete harm from the statutory violation (the defendant discriminated against the plaintiff in refusing to purchase the plaintiff's oil) that would have satisfied Texas' constitutional standing requirements.

36

The Supreme Court subsequently affirmed "that the statute clearly creates a single, indivisible cause of action, which must be prosecuted in a single suit, instituted by the State through its proper officials; and that [the plaintiff's] rights are limited to sharing in the recovery." *Agey*, 172 S.W.2d at 975 (internal quotation marks omitted). Because the statute did not purport to grant the aggrieved party a right to file suit on behalf of himself and the state, without joinder of a State attorney, the Court declined to decide whether the Legislature had the power to do so. *See id.* at 974. But the Court reaffirmed that, under the Texas Constitution, "[t]he Attorney General is the chief law officer of the State" and "has the right to investigate the facts and exercise his judgment and discretion regarding the filing of a suit." *Id.*; *see also, e.g., Camp v. Gulf Prod. Co.*, 61 S.W.2d 773, 778 (Tex. 1933) (similarly interpreting a statute to give State attorneys "the right to control the litigation for the state just the same as in any ordinary suit to which the state is a party").

The Supreme Court has also blessed statutes that allow State attorneys to hire private individuals to act directly under the State attorneys' control. Where a private individual acts "under the direction

37

and control of the Attorney General," she or he may permissibly litigate on behalf of the State. *Terrell v. Sparks*, 135 S.W. 519, 520 (Tex. 1911). And "the Legislature may authorize an agency to retain private counsel to prosecute actions, as long as such counsel's authority is subordinate to that of the Attorney General, County Attorney, or District Attorney." *El Paso Elec. Co.*, 937 S.W.2d at 439.

What the Supreme Court has never done, though, is permit another person to exercise the State's litigation authority without a State attorney's direct control. And where a statute cannot be read to avoid that outcome, that Court has struck it down. Thus, in *Hill County v. Sheppard*, 178 S.W.2d 261 (Tex. 1944), the Court invalidated a statute that "create[d] a statutory office to take over the duties of the county attorney," holding that the duties of the State attorney could not be arrogated to another. *Id.* at 264. The Court explained: "Where certain duties are imposed or specific powers are conferred upon a designated officer, the Legislature cannot withdraw them nor confer them upon others." *Id.* (quoting 34 Tex. Jur. 445) (alteration adopted).

**2.** HSG's Supreme Court opposition made a hash of these precedents.[9] HSG tried to argue that *Maud* stands primarily for the rule that "courts should not read statutes *permitting* individuals other than State attorneys to represent the State as *prohibiting* State attorneys from representing the State." HSG Resp. 41. If that were the only holding of *Maud*, it would not have needed to construe the statute to "subordinat[e]" the private individuals' authority to the State attorneys'. 200 S.W. at 377. And it would not have expressly held that only State officials could "cause the suit to be filed," *id.*—language that HSG ignored completely. *See* HSG Resp. 40-41.

The same problem plagued HSG's discussion of *Agey* and *Staples*. HSG again failed to acknowledge the language in those cases requiring that the State attorney institute the suit. Instead, it insisted that what is important is that neither case held the statutes at issue in those cases to be unconstitutional. HSG Resp. 45, 47. But that is because the Court construed those statutes to prohibit private control of State litigation, precisely to avoid a constitutional question. Had such

---

[9] The State, for its part, correctly recognized that *Maud* holds that private individuals can bring State litigation only "in subordination to the authority" of the State attorney. State Resp. 19 (quoting *Maud,* 200 S.W. at 377).

constructions been impossible, the laws would have been struck down, because a "statute cannot confer a right upon private individuals to act for all where it is shown they have no interest different from all others." *Staples*, 245 S.W. at 641 (citing Tex. Const. art. IV, § 22; *id.* art. V, § 21).

HSG equally misread precedent when it claimed that *Camp v. Gulf Production Co.*, 61 S.W.2d 773 (Tex. 1933), "permit[s] private persons to represent State interests in litigation." HSG Resp. 42. *Camp* provides no support for HSG's prosecution of this civil enforcement action. The statute in *Camp* allowed a prospective purchaser of "unsurveyed" "public school land" to "file suit against the county surveyor . . . to compel him to make the survey." 61 S.W.2d at 775. So the question was whether "the state is a necessary party to this action," not whether the applicant could institute or maintain a suit for the State without the Attorney General's full participation. *Id.* at 780; *see Am. Liberty Pipe Line Co. v. Agey*, 167 S.W.2d 580, 584 (Tex. App.—Austin 1942, judgment affirmed) (noting "[s]uits with similar objective have in later decisions been treated as suits *against* the State"). In *Agey*, therefore, the Supreme Court agreed that *Camp* involved issues

40

far different from whether a private person could "institute and prosecute such a suit in the name of the State without the joinder of the Attorney General or some district or county attorney." *Agey*, 172 S.W.2d at 974-75. The answer to that question is no, as *Maud*, *Agey*, and *Staples* held. *See supra* at 34-37.

But even if *Camp* concerned whether private individuals can prosecute an action on behalf of the State, the Supreme Court made clear that they could do so only subject to complete State control. The Court required that the relevant statute be construed to give State attorneys "the right to control the litigation for the state just the same as in any ordinary suit to which the state is a party." *Camp*, 61 S.W.2d at 778. In other words, it required that the private person be in a traditional principal-"agent" relationship with the State attorney, who had the "duty[] to appear in the case and represent the state." *Id.* at 777-78. Only in those limited circumstances could the statute be construed not to "curtail or abridge" the State attorneys' prerogatives. *Id.* Once more, that crucial language was absent from HSG's brief. *See* HSG Resp. 42-43.

Finally, the State (but not HSG) argued in the Supreme Court that Novartis's arguments "cannot be squared with" *El Paso Electric Co. v. Texas Department of Insurance*, 937 S.W.2d 432 (Tex. 1996). State Resp. 23. But the Court in that case "express[ed] no opinion" on any question of "constitutional authority." 937 S.W.2d at 439. All that the Court did was repeat the rule of *Maud* that any private individual must be "subordinate" to a State attorney, *id.* (citing *Maud*, 200 S.W. at 377-78), which supports Novartis's argument, not the State's.[10]

Supreme Court precedents, therefore, teach a consistent rule. Under the Constitution, only State attorneys may litigate on behalf of the State. Statutes that permit private individuals to pursue suits are constitutional only if the individuals are subject to the State attorneys'

---

[10] The State also cited three lower court cases. State Resp. 18. Each of them "addresse[d] the right of a private attorney to be compensated for efforts expended on behalf of a private client in an action against the responsible third party when an 'insurance carrier' . . . benefits from the recovery obtained by the attorney." *University of Texas at Arlington v. Bishop*, 997 S.W.2d 350, 354 (Tex. App.—Fort Worth 1999, pet. denied); *see Univ. of Tex. Health Sci. Ctr. at San Antonio v. Mata & Bordini, Inc.*, 2 S.W.3d 312, 318 (Tex. App.—San Antonio 1999, pet. denied) ("*UTHSCSA*") (similar); *State v. Lloyd*, 994 S.W.2d 362, 366 (Tex. App.—Waco 1999, no pet.) (similar). They accordingly "d[id] not involve . . . a private attorney's attempt to usurp the Attorney General's right to control the representation of the State's interest in the third-party action in the first instance," and so have no relevance to this case. *UTHSCSA*, 2 S.W.3d at 318.

direct control—viz., employed by them. If the statute permits public litigation in the absence of such control, it is void.

### B. The TMFPA impermissibly authorizes private individuals to press suits that State attorneys decline to control.

The TMFPA fails the test set out in the precedent just described. It authorizes private individuals to sue on behalf of the State in circumstances where the State attorneys affirmatively decline to press the litigation. It therefore devolves the State's litigation authority to individuals who, under the Constitution, are "not possessed of legal capacity or right to institute and maintain" a suit on behalf of the State, *Staples*, 245 S.W. at 643, and who usurp the Attorney General in the performance of his duty to "investigate the facts and exercise his judgment regarding the filing of suit" for the State, *Agey*, 172 S.W.2d at 974.

#### 1. *The TMFPA allows for litigation that State attorneys affirmatively choose not to bring.*

It is beyond question that the TMFPA permits private individuals to litigate without the State's control. As explained above, *see supra* at 6-8, the TMFPA requires private individuals to file under seal and present the State with a choice. After reviewing the sealed materials,

the State can either "proceed with the action" or "decline[] to take over the action." Tex. Hum. Res. Code § 36.104(a)(1)-(2).

In cases where the State (through its Attorney General) declines to take over the action, the TMFPA impermissibly authorizes a private party and its attorney to prosecute violations of state law in place of the Attorney General. *See* Tex. Hum. Res. Code § 36.104(b). "[I]n the matter of bringing suits the Attorney General must exercise judgment and discretion, which will not be controlled by other authorities." *Charles Scribner's Sons v. Marrs*, 262 S.W. 722, 727 (Tex. 1924); *see Agey*, 172 S.W.2d at 974 (similar). Where the Attorney General (or a county or district attorney) decide that a case is not worth litigating on behalf of the State of Texas, that is the end of the matter because the State attorneys who must control State litigation have decided not to advance the case.

By nonetheless permitting a private litigant to proceed with that action, the TMFPA careens over the boundary line set by the Supreme Court's cases. *Maud* holds that authority to litigate on behalf of the State cannot be "devolve[d] . . . upon others," but the TMFPA does just that. 200 S.W. at 376. *Staples* and *Agey* confirm that the Legislature

44

may not assign the power to bring suit for the State to anyone other than the duly-elected State attorneys, but the TMFPA expressly permits a private individual to litigate when those State attorneys have explicitly *declined* to bring the suit. *Agey*, 172 S.W.2d at 974; *see Staples*, 245 S.W. at 643. The TMFPA is therefore precisely the sort of statute the Legislature cannot enact, because it "divest[s] these [State] officials of their collective constitutional authority by shifting representation to some other attorney," *El Paso Elec. Co.*, 937 S.W.2d at 439; *see Sheppard*, 178 S.W.2d at 264.

The Supreme Court's recent holding that the TMFPA is a "penal statute" only accentuates the constitutional problems. *Malouf*, 694 S.W.3d at 721. The Court has previously observed that granting private parties the "authority to impose penal sanctions strongly suggests an improper private delegation." *Texas Boll Weevil Eradication Found., Inc. v. Lewellen*, 952 S.W.2d 454, 474 (Tex. 1997). Yet the TMFPA authorizes private individuals to litigate and obtain penal sanctions in cases where the State attorney has expressly declined to pursue the case.

45

And this problem is not a mere debater's point or technical foul: it has real implications for Texans' liberty. "The purpose of the separation and equilibration of powers in general . . . was not merely to assure effective government but to preserve individual freedom." *Morrison v. Olson*, 487 U.S. 654, 727 (1988) (Scalia, J., dissenting). "[T]he basic concept of democratic rule under a republican form of government is compromised when public powers are abandoned to those who are neither elected by the people, appointed by a public official or entity, nor employed by the government." *Tex. Boll Weevil*, 952 S.W.2d at 469. By placing the power to litigate on behalf of the State in the hands of profit-seeking private entities, the TMFPA shifts public authority to those "motivated primarily by prospects of monetary reward rather than public good." *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 949, 952 (1997); *see PPG Indus., Inc. v. JMB/Houston Cntrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 85 (Tex. 2004) ("It is one thing to place the power of treble damages in the hands of aggrieved parties or the attorney general; it is quite another to place it in the

hands of those considering litigation for commercial profit.").[11] A statute may certainly create a financial incentive for individuals to discover frauds against the State that State officials then decide to sue on. But it cannot allow private parties, who owe no duty of loyalty to the State, to litigate the State's claims on their own.

This case illustrates the concern. HSG filed this suit not out of concern for the public good or the citizenry of Texas, but because its business strategy is, in the federal government's words, to enrich "limited liability companies formed by investors and former Wall Street investment bankers" by obtaining *qui tam* bounties. U.S. Mot. to Dismiss at 1-2, *Eli Lilly*, No. 5:17-cv-123. As the Court has previously observed, "private delegations clearly raise [] troubling constitutional issues" precisely because "the private delegate may have a personal or pecuniary interest which is inconsistent with or repugnant to the public interest to be served." *Tex. Boll Weevil*, 952 S.W.2d at 469. Avoiding

---

[11] *See also* J. Randy Beck*, The False Claims Act And The English Eradication of Qui Tam Legislation*, 78 N.C. L. Rev. 539, 616 (2000) (*qui tam* relators have "no incentive to consider the public impact of the litigation, the culpability of the defendants, the fairness of a particular litigation strategy, or similar matters that might influence a public prosecutor").

that result is precisely why the Constitution prohibits turning over State authority to self-interested private actors.

If the Legislature can assign the power to prosecute violations of the TMFPA to private parties—even from outside Texas or the United States—then nothing would prevent the Legislature from granting private parties the ability to prosecute every violation of state law and thereby subject the "executive power to death by a thousand cuts." Saikrishna Prakash, *The Chief Prosecutor*, 73 Geo. Wash. L. Rev. 521, 582 (2005).  And if the Legislature can validly assign that power to self-appointed relators, what prevents the Legislature from delegating that power to a specific individual or association of individuals of its choosing?  A decision upholding the TMFPA's qui tam provisions would mean that the Legislature not only has the power to enact laws but also the power to enforce the laws it enacts by delegating prosecutorial power to any agent of its choosing.  A more apparent violation of the separation of powers is difficult to imagine.

### 2. *There is no possible saving construction.*

Unlike the statutes construed in *Maud*, *Agey*, and *Staples*, the TMFPA's constitutional infirmities cannot be cured through statutory

construction. The statutes in those cases left ambiguous whether a private individual could litigate on behalf of the State, and the Court resolved each of those cases by construing the statutes to prevent such action. The TMFPA, by contrast, is crystal-clear on this point: the *qui tam* provisions of the statute authorize a private person to bring and maintain a suit "for" and "in the name . . . of the state." Tex. Hum. Res. Code § 36.101(a). That is plainly unconstitutional because the duty and authority of the State's attorneys to bring and maintain suit for the State is exclusive.

If more were needed, the statutory context confirms that the TMFPA cannot be read to avoid the separation-of-powers issue. A provision of the statute, Tex. Hum. Res. Code § 36.105, states that "[t]he attorney general may contract with a private attorney to represent the state in an action under this subchapter with which the state elects to proceed." That provision illustrates that the Legislature has tools to address healthcare fraud that operate within the bounds of the law. But it also confirms that the *qui tam* provisions that kick in when the State declines to proceed with the action are not such tools.

Those provisions may be severed from the portions of the TMFPA that lawfully allow the State to press litigation on its own behalf. *See Quick v. City of Austin*, 7 S.W.3d 109, 115 (Tex. 1998) ("[I]f any provision of the statute is held to be invalid, the invalidity does not affect other provisions that can properly be given effect in the absence of the invalid provisions."). This relief would not disrupt the State's ability to deter genuine healthcare fraud: on the contrary, all that it would do is restore the statutory scheme to the way it operated before 2007. Until that time, the TMFPA provided that an action that the State did not elect to pursue must be dismissed. *See* Tex. Hum. Res. Code § 36.104(b) (2005); *supra* at 8. Restoring State control over State litigation, therefore, will not eviscerate the TMFPA; it would simply recreate the regime that existed when the statute was enacted, and that was consistent with the separation of powers.

3.    *The State does not maintain control over* qui tam *actions that it does not bring.*

The State's main argument to the contrary has been based on the assertion that none of the foregoing is a problem here because the State maintains control over litigation that it "declines" to bring. Tex. Hum. Res. Code § 36.104(a)(2); State Resp. 15-18; *see also* HSG Resp. 34-35.

50

The statutory language is clear: the private *qui tam* plaintiff "may proceed without the state's participation." Tex. Hum. Res. Code § 36.104(b). The State cannot control litigation in which it is not participating.

The contrary arguments that the State presented to the Supreme Court fail. The State stressed that it may demand "ongoing information" about declined cases. State Resp. 18; *see* Tex. Hum. Res. Code § 36.104(b-1). That is true, but irrelevant: receiving information about an action is not the same as "exercis[ing] . . . judgment and discretion regarding the filing of a suit." *Agey*, 172 S.W.2d at 974.

The State also emphasized that it can choose to intervene later. State Resp. 18. But again, the Constitution requires that the State attorney *control* the litigation—not merely that he have the possibility to later participate in it. And regardless, the TMFPA provides that the State can intervene in a suit that it declined to join only "on a showing of good cause," and only "without limiting the status and right of that person." Tex. Hum. Res. Code § 36.104(b-1). So if the State intervenes later, it cannot assume full responsibility for the suit. That is not State control of State litigation.

Finally, the State noted that it can "control any proposed settlement." State Resp. 18. But again, the core constitutional concern is that a private litigant may pursue litigation for and in the name of the State in an action that the State's attorneys have expressly declined to take over. *See supra* at 43-48. The State's power to review settlements does nothing to address that fundamental problem.

### C. History cannot salvage the TMFPA.

At the federal level, defenders of the False Claims Act's *qui tam* provisions have emphasized the historical pedigree of the False Claims Act. *See, e.g.*, *Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 753 (5th Cir. 2001). At the same time, growing consensus—even in the federal context—is that "the early history of federal *qui tam* statutes" cannot "justify contemporary violations of constitutional guarantees." *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 450 (2023) (Thomas, J., dissenting) (quoting *Marsh v. Chambers*, 463 U.S. 783, 790 (1983)); *see id.* at 442 (Kavanaugh, J., joined by Barrett, J., concurring); *Riley*, 252 F.3d at 772-75 (Smith, J., dissenting); *Constitutionality of the* Qui Tam *Provisions of the False Claims Act*, 13 Op. O.L.C. 207, 235 (1989).

The Court need not wade into this dispute because the federal history does not control the constitutionality of this Texas statute. And there is no history of *qui tam* litigation in Texas. The provisions of the TMFPA that allow a *qui tam* plaintiff to pursue a suit when the State declines to take over the case were not even enacted until 2007. *See supra* at 8. Before then, no law enacted under the current Texas Constitution purported to allow a private plaintiff to bring and maintain suits for the State.[12] To the contrary, the Supreme Court has regularly construed statutes to prevent that possibility, and explained that any statute that could be read to authorize a contrary result must be struck down. *See supra* at 27-32.

Nor is it plausible that the early American history of *qui tam* litigation informs the meaning of the Texas Constitution. *See Southern Pac Co. v. Porter*, 331 S.W.2d 42, 45 (Tex. 1960) ("Texas was never a

---

[12] There were a handful of *qui tam* statutes enacted under prior constitutional regimes. *See, e.g.*, *Bush v. Republic of Texas*, 1 Tex. 455 (1846). But the constitutions then in effect "did not contain the invoked provisions [of Article IV and Article V], and "therefore the question here presented was not there in issue." *Am. Liberty Pipe Line Co.*, 167 S.W.2d at 581-82. And the decisions by the Supreme Court "during the reconstruction period" that blessed *qui tam* litigation were quickly disregarded once this Constitution was enacted. *See Gibbs v. State*, 46 S.W. 645, 646 (Tex. Crim. App. 1898) ("We are of opinion that while proceedings in qui tam actions may have been by the informer, by the commonwealth, or by the state in other jurisdictions, under the provisions of our constitution, it being an offense, the prosecution must run in the name of the state.").

British colony nor an American territory.").  The framers of the 1876 Constitution, which contains the relevant separation-of-powers guarantees, aimed to "define[] the duties of the attorney general or of district or county attorneys" more "specifically" than prior constitutions. *State v. Moore*, 57 Tex. 307, 316 (1882).  Indeed, the 1876 Constitution assigns public litigation duties in much more detail than its federal counterpart, which says nothing specific about who may litigate on behalf of the United States.  There is simply no reason to believe that the same framers who carefully assigned litigation responsibility to State officials meant to allow for an unwritten *qui tam* carveout to the provisions that they wrote.

The bottom line is that "tradition . . . cannot provide authority that the law does not." *Saldano v. State*, 70 S.W.3d 873, 883 (Tex. Crim. App. 2002).  There is no "adverse-possession theory" of constitutional meaning, *NLRB v. Noel Canning*, 573 U.S. 513, 570 (2014) (Scalia, J., concurring in the judgment), and so a law may be invalid even "when the practice in question 'covers our entire national existence and indeed predates it.'" *Polansky*, 599 U.S. at 450 (Thomas, J., dissenting) (quoting *Walz v. Tax Comm'n of City of N.Y.*, 397 U.S.

54

664, 678 (1970)).  Here, where *qui tam* statutes have never been used under Texas' current constitution, the tradition is of no relevance at all.  The TMFPA is unconstitutional, and a smattering of eighteenth-century history cannot save it.

## III.  SECTION 51-A OF THE CONSTITUTION DOES NOT OVERRIDE BASIC SEPARATION-OF-POWERS PRINCIPLES

For the first time in its Supreme Court merits brief, HSG made an entirely new argument based on Article III, Section 51-a of the Texas Constitution, which empowers the Legislature to provide "for assistance grants" to vulnerable populations.  According to HSG, that provision means that the TMFPA can violate the State's separation of powers and permit suits brought by plaintiffs without constitutional standing.  HSG Br. 8-13.  The State does not join this absurd argument.

Section 51-a(a) authorizes the Legislature to permit "assistance grants to needy dependent children and the caretakers of such children, needy persons who are totally and permanently disabled because of a mental or physical handicap, needy aged persons and needy blind persons."  Tex. Const. art. III, § 51-a(a).  That provision authorizes Texas to participate in Medicaid, which it has done since 1967.  *See Bell*

55

*v. Low Income Women of Texas*, 95 S.W.3d 253, 256 (Tex. 2002). Section 51-a(b), however, imposes limitations on the amount the Legislature can spend. Tex. Const. art. III, § 51-a(b). Section 51-a(c), in turn, provides "that if the limitations and restrictions herein contained"—i.e., the spending limitations set forth in Section 51-a(b)—conflict with federal law and jeopardize federal matching funds, "the Legislature is specifically authorized and empowered to prescribe such limitations and restrictions and enact such laws as may be necessary in order that such federal matching money will be available for assistance and/or medical care for or on behalf of needy persons." *Id.* § 51-a(c).

HSG's argument before the Supreme Court was that Section 51-a(c) does not merely empower the Legislature to alter the spending limitations set forth in subsection (b) to maintain matching federal funds, but also to ignore *other unrelated constitutional provisions and limitations*—such as standing and separation-of-powers principles—if applying them would jeopardize federal funds. That is not what subsection (c) says. The "limitations and restrictions herein contained" in subsection (c) refer to the spending limitations and restrictions in Section 51-a(b)—not in the entire constitution. If it were otherwise, the

56

Legislature could, for example, discriminate on the basis of religion, *see id.* art. I, § 6, or pass bills without a quorum, *see id.* art. III, § 10, if doing so was necessary to maintain matching federal funds. That, obviously, is wrong, which is why the Supreme Court explained in the very case on which HSG relied that subsection (c) "authoriz[es] the Legislature to alter *constitutional limits on spending* for medical care for the indigent 'in order that ... federal matching money will be available.'" *Bell*, 95 S.W.3d at 256 (quoting Tex. Const. art. III, § 51-a(c)) (emphasis added). No authority holds that the Legislature can violate *other* constitutional provisions to achieve that goal. Just as the Legislature is not empowered to discriminate on the basis of religion to secure federal funds, it cannot violate the State's separation of powers, *see id.* art. II, § 1. HSG did not provide any authority or analysis to the contrary.

It is thus not relevant to the constitutional questions in this case whether, under the federal Medicaid Act, "[i]f the TMFPA's qui tam provisions are stricken, Texas will no longer receive a ten percent bonus from the federal government for Medicaid fraud recoveries secured by the State." HSG Resp. 10; *see* 42 U.S.C. § 1396h. There is no

interpretive canon suggesting that this State's Constitution should be construed to maximize federal matching funds.  If standing doctrine or the separation of powers precludes *qui tam* litigation, that result will not change because a federal law encourages states to authorize *qui tam* suits.

Regardless, HSG's sky-is-falling argument is likely wrong.  For starters, a federal court recently invalidated the False Claims Act's *qui tam* provisions; if that ruling is affirmed on appeal (as Justice Thomas indicates that it should be), then every state will have a *qui tam* regime that is "at least as effective" as the federal statute.  *United States ex rel. Zafirov v. Fla. Med. Assocs., LLC*, 751 F. Supp. 3d 1293, 1324 (M.D. Fla. Sept. 30, 2024); *see Polansky*, 599 U.S. at 449-52 (Thomas, J., dissenting); *see also United States of Am. ex rel. Gentry v. Encompass Health Rehab. Hosp. of Pearland, L.L.C.*, __ F.4th __, 2025 WL 3063921, at *5 (5th Cir. Nov. 3, 2025) (Ho., J., concurring) (noting that *qui tam* provision presents "constitutional concerns" and that the court "should revisit whether there are serious constitutional problems with the *qui tam* provisions of the False Claims Act"); *United States ex rel. Montcrief v. Peripheral Vascular Assocs., P.A.*, 133 F.4th 395, 412 (5th Cir. 2025)

(Duncan, J., concurring) (explaining that "the *qui tam* device violates the Take Care Clause by allowing private persons like Montcrief to initiate and prosecute suits to enforce federal law").

And even if the federal *qui tam* provisions remain, Congress lacks power under the Federal Constitution to force this State to choose between following its separation of powers and receiving federal matching funds. *See, e.g., S. Dakota v. Dole*, 483 U.S. 203, 210 (1987) (spending "power may not be used to induce the States to engage in activities that would themselves be unconstitutional"); *Texas v. Yellen*, 105 F.4th 755, 767 (5th Cir. 2024) ("Congress may not use its spending power to functionally commandeer the states."). As *Texas v. Yellen* shows, the State Attorney General is adept at litigating such suits, which may explain why the State did not raise the same objections as does HSG.

## IV. THE COURT SHOULD GRANT MANDAMUS RELIEF

Mandamus relief is appropriate when a trial court commits an error of law for which there is no "adequate remedy by appeal." *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136 (Tex. 2004). Because the trial court allowed this constitutionally infirm suit to go forward, it

59

committed an error of law. *See supra* Parts I-II. And there is no adequate remedy by appeal for the constitutional infirmities with this suit: Requiring the parties to undergo cost-intensive discovery just for Novartis to later obtain reversal on a threshold legal question would constitute a "gross and unnecessary waste of economic and judicial resources." *In re J.B. Hunt Transport, Inc.*, 492 S.W.3d 287, 298-99 (Tex. 2016). For this reason, the Supreme Court has explained that "[m]andamus relief is appropriate" when the trial court improperly denies a "motion to dismiss." *See, e.g.*, *In re Farmers Tex. Cnty. Mut. Ins. Co.*, 621 S.W.3d 261, 266 (Tex. 2021); *In re Essex Ins. Co.*, 450 S.W.3d 524, 528 (Tex. 2014); *cf. In re Shire PLC*, 633 S.W.3d 1, 27 (Tex. App. 2021) ("[A]n incorrect denial of a Rule 91a motion to dismiss would expose the defendant to the time and resources necessary to defend a claim that can only end in a defense verdict."). That is true even when the "issue of law" presented is "one of first impression." *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 138.

Nor is there any reason for the Court to delay deciding the constitutional questions presented in this petition. The issues are purely legal; they do not turn on any facts specific to this *qui tam* suit.

60

So nothing will be gained from further proceedings that—if Novartis is correct in its legal arguments—cannot constitutionally proceed.

Moreover, the separate statement of Justices Young and Sullivan in *In re Novartis* confirms that resolution of the "weighty" and "important" constitutional questions presented here, *In re Novartis*, *supra*, at *1, *3, is important not just for the parties before the Court but for the State of Texas generally. Those Justices specifically criticized the Sixth District Court of Appeals for "provid[ing] no meaningful analysis of Novartis's arguments about standing and separation of powers," *id.* at *2; noted that the Supreme Court "would surely benefit from thoughtful consideration of these difficult questions by the lower courts," *id.*; and stated that "Fifteenth Court would greatly assist this Court by presenting its analysis [of Novartis's constitutional challenges] in a written opinion," *id.* at *4; *see also id.* (explaining that this Court can consider these questions in a mandamus petition).

The fundamental constitutional questions presented in this petition are crucially important, as Justices Young and Sullivan explained at length. This Court has exclusive intermediate appellate jurisdiction to consider them. *See supra* at 14-15. This Court should

61

address these issues "in a written opinion," *In re Novartis, supra,* at \*4, and because the TMFPA's *qui tam* provision violates basic standing and separation-of-powers principles, that opinion should declare the *qui tam* provision unconstitutional and direct the district court to dismiss HSG's claims.

## PRAYER

For the foregoing reasons, the Court should issue a writ of mandamus directing the district court to dismiss HSG's claims.

Dated:        November 14, 2025        Respectfully submitted,

O'MELVENY & MYERS LLP

*/s/ Danny S. Ashby*
Danny S. Ashby
Texas Bar No. 01370960
dashby@omm.com
2801 North Harwood Street, Suite 1600
Dallas, Texas  75201
Telephone:  +1 972 360 1900
Facsimile:  +1 972 360 1901

Anton Metlitsky
ametlitsky@omm.com
Ross Galin
rgalin@omm.com
1301 Avenue of the Americas, 17th Floor
New York, NY 10019
Telephone: +1 212 326 2000
(Application for *pro hac vice* pending)

THE DACUS FIRM, P.C.

Deron R. Dacus
Texas Bar No. 00790553
ddacus@dacusfirm.com
821 ESE Loop 323, Suite 430
Tyler, Texas 75701
Telephone: +1 903 705 1117

Counsel for Relator
Novartis Pharmaceuticals Corporation

# DECLARATION OF DANNY S. ASHBY

I, Danny S. Ashby, hereby declare under penalty of perjury the following:

1.     I am counsel of record for Relator Novartis Pharmaceuticals Corporation ("Novartis") in connection with the Petition for Writ of Mandamus styled *In re Novartis Pharmaceuticals Corporation*, filed concurrently herewith, in the Court of Appeals for the Fifteenth District of Texas.

2.     In compliance with Texas Rule of Appellate Procedure 52.3(k)(1), I have reviewed and hereby verify that the Order Denying Defendant's Plea to Jurisdiction and Motion to Dismiss in this Appendix is a true and correct copy of the Order Denying Defendant's Plea to Jurisdiction and Motion to Dismiss filed on December 15, 2023, in the underlying district court proceeding, Case No. 23-0276, in the 71st Judicial District Court, Harrison County, Texas, the Honorable Brad Morin presiding.

3.     My birthdate is October 1, 1964, and my firm address is 2801 North Harwood Street, Suite 1600, Dallas, Texas 75201.

Executed in Dallas County, Texas on November 14, 2025.

_____
Danny S. Ashby

## CERTIFICATE OF COMPLIANCE

Based on a word count run in Microsoft Word for Microsoft 365, this Petition for Writ of Mandamus contains 12,538 words, excluding the portions of the brief exempt from the word count under Texas Rule of Appellate Procedure 9.4(i)(1).

*/s/ Danny S. Ashby*
Danny S. Ashby

## CERTIFICATION

I certify that I have reviewed the Petition and concluded that every factual statement in the Petition is supported by competent evidence included in the Appendix or Mandamus Record.

/s/ Danny S. Ashby
Danny S. Ashby

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2025, a true and correct copy of the foregoing brief has been filed and served on counsel of record through electronic service via www.efiletexas.gov.

*/s/ Danny S. Ashby*
Danny S. Ashby

# APPENDIX

Filed 12/15/2023 9:01 PM
Sherry Griffis
District Clerk
Harrison County, Texas

Heather Henigan

Deputy

**CAUSE NO. 23-0276**

<table>
<tr><td>

THE STATE OF TEXAS,

*ex rel.*

HEALTH SELECTION GROUP, LLC

      Plaintiff,

v.

NOVARTIS PHARMACEUTICALS
CORPORATION,

          Defendant.

</td><td>

IN THE DISTRICT COURT

71ST JUDICIAL DISTRICT

HARRISON COUNTY, TEXAS

</td></tr>
</table>

## ORDER DENYING DEFENDANT'S PLEA TO JURISDICTION AND MOTION TO DISMISS

Before the Court is Defendant's Plea to Jurisdiction and Motion to Dismiss Pursuant to Rule 91a (the "Motion").

Upon consideration of the parties' briefs and oral argument, the Court is of opinion that the Motion should be **DENIED**.

IT IS SO ORDERED.

SIGNED this 15 day of Dec , 2023.

_____
Hon. Brad Morin
Judge Presiding

4871-9059-1383

**APP001**

Copy from re:SearchTX

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 82601915
Filing Code Description: Proposed Order
Filing Description: ORDER DENYING DEFENDANT'S PLEA TO JURISDICTION AND MOTION TO DISMISS
Status as of 12/15/2023 10:28 AM CST

Associated Case Party: HEALTH SELECTION GROUP, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Samuel Baxter | | sbaxter@mckoolsmith.com | 12/14/2023 9:01:09 PM | SENT |
| Jennifer L.Truelove | | jtruelove@mckoolsmith.com | 12/14/2023 9:01:09 PM | SENT |
| Eric B.Halper | | ehalper@mckoolsmith.com | 12/14/2023 9:01:09 PM | SENT |
| Radu A. Lelutiu | | rlelutiu@mckoolsmith.com | 12/14/2023 9:01:09 PM | SENT |
| Mark Lanier | | WML@LanierLawFirm.com | 12/14/2023 9:01:09 PM | SENT |
| Alex J.Brown | | Alex.Brown@LanierLawFirm.com | 12/14/2023 9:01:09 PM | SENT |
| Joel Leach | | jleach@mckoolsmith.com | 12/14/2023 9:01:09 PM | SENT |
| Kim Shoults | | kshoults@mckoolsmith.com | 12/14/2023 9:01:09 PM | SENT |
| Denise Lopez | | dlopez@mckoolsmith.com | 12/14/2023 9:01:09 PM | SENT |
| Zeke DeRose | | Zeke.DeRose@LanierLawFirm.com | 12/14/2023 9:01:09 PM | SENT |
| Jonathan Wilkerson | | Jonathan.Wilkerson@LanierLawFirm.com | 12/14/2023 9:01:09 PM | SENT |

Associated Case Party: THE STATE OF TEXAS

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Lynne Kurtz-Citrin | | Lynne.Kurtz-Citrin@oag.texas.gov | 12/14/2023 9:01:09 PM | SENT |
| Jonathan D.Bonilla | | Jonathan.Bonilla@oag.texas.gov | 12/14/2023 9:01:09 PM | SENT |
| Jordan Underhill | | Jordan.Underhill@oag.texas.gov | 12/14/2023 9:01:09 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Kimberly Grotenrath | | kgrotenrath@omm.com | 12/14/2023 9:01:09 PM | SENT |

**APP002**

Copy from re:SearchTX

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 82601915
Filing Code Description: Proposed Order
Filing Description: ORDER DENYING DEFENDANT'S PLEA TO JURISDICTION AND MOTION TO DISMISS
Status as of 12/15/2023 10:28 AM CST

Case Contacts

| | | | | |
|---|---|---|---|---|
| Kimberly Grotenrath | | kgrotenrath@omm.com | 12/14/2023 9:01:09 PM | SENT |
| Dianne Adams | | dadams@dacusfirm.com | 12/14/2023 9:01:09 PM | SENT |

Associated Case Party: NOVARTIS AG

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Ross Galin | | rgalin@omm.com | 12/14/2023 9:01:09 PM | SENT |
| Danny S.Ashby | | dashby@omm.com | 12/14/2023 9:01:09 PM | SENT |
| Meredith N.Garagiola | | mgaragiola@omm.com | 12/14/2023 9:01:09 PM | SENT |
| Deron Dacus | | ddacus@dacusfirm.com | 12/14/2023 9:01:09 PM | SENT |
| Megan Whisler | | mwhisler@omm.com | 12/14/2023 9:01:09 PM | SENT |

**APP003**

Copy from re:SearchTX

FILE COPY



CHIEF JUSTICE
SCOTT E. STEVENS

JUSTICES
CHARLES VAN CLEEF
JEFF RAMBIN

# Court of Appeals
### Sixth Appellate District
### State of Texas

CLERK
DEBRA K. AUTREY

BI-STATE JUSTICE BUILDING
100 NORTH STATE LINE AVENUE #20
TEXARKANA, TEXAS 75501
(903) 798-3046

Friday, March 1, 2024

Sam F. Baxter
McKool Smith, PC
104 E Houston St, Ste 300
Marshall, TX 75670
* DELIVERED VIA E-MAIL *

Jessica Weltge
Office of the Attorney General of Texas
P O Box 12548, Capitol Station
Austin, TX 78711-2548
* DELIVERED VIA E-MAIL *

Megan Whisler
O'Melveny & Myers LLP
2801 N Harwood St, Ste 1600
Dallas, TX 75201
* DELIVERED VIA E-MAIL *

Jennifer Truelove
McKool Smith, PC
104 E Houston St, Ste 300
Marshall, TX 75670
* DELIVERED VIA E-MAIL *

Danny S. Ashby
O'Melveny & Myers LLP
2801 N Harwood St, Ste 1600
Dallas, TX 75201
* DELIVERED VIA E-MAIL *

Zeke DeRose III
The Lanier Law Firm
10940 W Sam Houston Pkwy N, Ste 100
Houston, TX 77064
* DELIVERED VIA E-MAIL *

Deron R. Dacus
The Dacus Firm, PC
821 ESE Loop 323, Ste 430
Tyler, TX 75701
* DELIVERED VIA E-MAIL *

Jordan Underhill
Office of Attorney General of Texas
P O Box 12548, Capitol Station
Austin, TX 78711-2548
* DELIVERED VIA E-MAIL *

W. Mark Lanier
The Lanier Law Firm
10940 W Sam Houston Pkwy N, Ste 100
Houston, TX 77064
* DELIVERED VIA E-MAIL *

Ross B. Galin
O'Melveny & Myers LLP
7 Time Square
New York, NY 10036
* DELIVERED VIA E-MAIL *

Jonathan Wilkerson
The Lanier Law Firm
10940 W Sam Houston Parkway N, Ste 100
Houston, TX 77064
* DELIVERED VIA E-MAIL *

Jonathan Bonilla
Office of the Attorney General of Texas
P O Box 12548, Capitol Station
Austin, TX 78711
* DELIVERED VIA E-MAIL *

Meredith N. Garagiola
O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, DC 20006
* DELIVERED VIA E-MAIL *

**APP004**

**RE**:     Appellate Case Number:        06-24-00005-CV
          Trial Court Case Number:       23-0276

**Style:**   In re Novartis Pharmaceuticals Corporation

The Court entered its order this date in the referenced proceeding whereby Relator's Petition for Writ of Mandamus was **DENIED**.

A true copy of this Court's Opinion and Judgment is enclosed.

                                    Respectfully submitted,

                                    **Debra K. Autrey, Clerk**

                                    By: Kim Robinson, Deputy Clerk


cc:       Hon. Brad Morin, Judge, Respondent (DELIVERED VIA E-MAIL)



# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-24-00005-CV
_____

IN RE NOVARTIS PHARMACEUTICALS CORPORATION

Original Mandamus Proceeding

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

MEMORANDUM OPINION

Relator Novartis Pharmaceuticals Corporation has filed a petition for a writ of mandamus seeking to dismiss a lawsuit filed in Harrison County under the Texas Medicaid Fraud Prevention Act (TMFPA)[1] arguing both that (1) the real party in interest, Health Selection Group, LLC (HSG), does not have standing to maintain this lawsuit and (2) the TMFPA's *qui tam* provisions are unconstitutional under the Texas Constitution.

The trial court denied Novartis's plea to the jurisdiction and motion to dismiss pursuant to Rule 91a of the Texas Rules of Civil Procedure, which sought dismissal of HSG's case on these two bases. Because we find no abuse of discretion in the trial court's denial of relief under Rule 91a of the Texas Rules of Civil Procedure, we deny the petition.[2]

## I.    Standard for Mandamus

"Mandamus is an extraordinary remedy requiring the relator to show that (1) the trial court abused its discretion and (2) the relator lacks an adequate remedy on appeal." *In re USAA Gen. Indem. Co.*, 624 S.W.3d 782, 787 (Tex. 2021) (orig. proceeding) (citing *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding)). "Mandamus relief is only appropriate when the relators have established that only one outcome in the trial court was permissible under the law." *In re Murrin Bros. 1885, Ltd.*, 603 S.W.3d 53, 56 (Tex. 2019) (orig. proceeding). Mandamus relief may be available when a trial court denies a Rule 91a motion to

---

[1]Act of May 26, 1995, 74th Leg., R.S., ch. 824, 1995 Tex. Gen. Laws 4202 (amended 1997, 2005, 2011, 2015, 2023) (current version at TEX. HUM. RES. CODE §§ 36.001–.132). The TMFPA was amended effective September 1, 2023, and it is now known as the Texas Health Care Program Fraud Prevention Act. Act of April 3, 2023, 88th Leg., R.S., ch. 273, §§ 2–15, 2023 Tex. Sess. Law Serv. 585, 585–89 (codified at TEX. HUM. RES. CODE §§ 36.001–.132). Novartis brings this action under a prior version of the act, the TMFPA.

[2]In conjunction with the petition for a writ of mandamus, Novartis filed a motion for a temporary stay of the trial court's proceedings. Because we deny the petition, that motion is also denied.

2

dismiss. *See In re Farmers Tex. Cnty. Mut. Ins. Co.*, 621 S.W.3d 261, 266 (Tex. 2021) (orig. proceeding) (recognizing "[m]andamus relief is appropriate when the trial court abuses its discretion in denying a Rule 91a motion to dismiss"); *see also In re Shire PLC*, 633 S.W.3d 1, 11 (Tex. App.—Texarkana 2021, orig. proceeding).

"When reviewing matters committed to a trial court's discretion, an appellate court may not substitute its own judgment for the trial court's judgment." *In re Nitla S.A. de C.V.*, 92 S.W.3d 419, 422 (Tex. 2002) (per curiam) (orig. proceeding) (citing *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding)). As a result, we may not "set aside the trial court's [order] unless it is clear from the record that the trial court could only reach one decision." *Id.*

## II.     Conclusion

Having examined and fully considered the mandamus petition and record, the responses, the reply, and the applicable law, the Court is of the opinion that the mandamus petition should be denied.

Scott E. Stevens
Chief Justice

Date Submitted:     February 29, 2024
Date Decided:       March 1, 2024

3



# Court of Appeals
# Sixth Appellate District of Texas

## J U D G M E N T

In re Novartis Pharmaceuticals Corporation

No. 06-24-00005-CV

Original Mandamus Proceeding

Panel consists of Chief Justice Stevens and Justices van Cleef and Rambin. Memorandum Opinion delivered by Chief Justice Stevens.

As stated in the Court's opinion of this date, we find that Relator is not entitled to the relief sought. Therefore, we deny the petition.

RENDERED MARCH 1, 2024
BY ORDER OF THE COURT
SCOTT E. STEVENS
CHIEF JUSTICE

ATTEST:
Debra K. Autrey, Clerk

FILED
24-0239
3/27/2024 7:27 PM
tex-86047088
SUPREME COURT OF TEXAS
BLAKE A. HAWTHORNE, CLERK

**Cause No. _____**

*In the*

# Supreme Court

*of the*

# State of Texas

IN RE NOVARTIS PHARMACEUTICALS CORPORATION,
*Relator*.

_____

ORIGINAL PROCEEDING FROM THE 71st DISTRICT COURT
IN HARRISON COUNTY, TEXAS • CAUSE NO. 23-0276
THE HONORABLE BRAD MORIN PRESIDING

# PETITION FOR WRIT OF MANDAMUS
### (ORAL ARGUMENT REQUESTED)

DANNY S. ASHBY
(Texas Bar No. 01370960)
**O'MELVENY & MYERS LLP**
2801 N. Harwood Street, Suite 1600
Dallas, Texas 75201
Telephone: +1 972.360.1900

DERON R. DACUS
(Texas Bar No. 00790553)
**THE DACUS FIRM, P.C.**
821 ESE Loop 323, Suite 430
Tyler, Texas 75701
Telephone: +1 903.705.1117

ANTON METLITSKY
ROSS GALIN
**O'MELVENY & MYERS LLP**
7 Times Square
New York, NY 10036
Telephone: +1 212.326.2000
(Applications for *pro hac vice* admission pending)

*Counsel for Relator Novartis Pharmaceuticals Corporation*

**TEMPORARY STAY REQUESTED**


APP010

## IDENTITY OF PARTIES AND COUNSEL

Pursuant to Texas Rule of Appellate Procedure 52.3(a), Relator Novartis Pharmaceuticals Corporation certifies that the following is a complete list of all parties and the names and firms of all counsel appearing in the trial or appellate courts, as well as the mailing address, telephone number, and email address for counsel currently appearing.

| **Relator**<br><br>Defendant Novartis Pharmaceuticals Corporation | Danny S. Ashby<br>dashby@omm.com<br>O'MELVENY & MYERS LLP<br>2801 N. Harwood Street, Suite 1600<br>Dallas, Texas 75201<br>Telephone:  +1 972 360 1900<br><br>Anton Metlitsky<br>ametlitsky@omm.com<br>7 Time Square<br>New York, NY 10036<br>Telephone: +1 212 326 2000<br>(Application for *pro hac vice* admission pending)<br><br>Ross Galin<br>rgalin@omm.com<br>O'MELVENY & MYERS LLP<br>7 Times Square<br>New York, New York 10036<br>Telephone: +1 212 326 2000<br><br>Deron R. Dacus<br>ddacus@dacusfirm.com<br>THE DACUS FIRM, P.C.<br>821 ESE Loop 323, Suite 430<br>Tyler, Texas 75701<br>Telephone: +1 903 705 1117 |
|---|---|

i

| | Megan Whisler (formerly with O'MELVENY & MYERS LLP) |
|---|---|
| **Real Party in Interest**<br>Plaintiff Health Selection Group, LLC | Samuel F. Baxter<br>sbaxter@mckoolsmith.com<br>Jennifer L. Truelove<br>jtruelove@mckoolsmith.com<br>MCKOOL SMITH P.C.<br>104 East Houston, Suite 300<br>Marshall, Texas 75670<br><br>Eric B. Halper<br>ehalper@mckoolsmith.com<br>Radu A. Lelutiu<br>rlelutiu@mckoolsmith.com<br>MCKOOL SMITH P.C.<br>One Manhattan West<br>395 Ninth Avenue, 50th Floor<br>New York, New York 10001<br><br>W. Mark Lanier<br>WML@LanierLawFirm.com<br>Alex J. Brown<br>Alex.Brown@LanierLawFirm.com<br>Zeke DeRose III<br>Zeke.DeRose@LanierLawFirm.com<br>Jonathan Wilkerson<br>Jonathan.Wilkerson@LanierLawFirm.com<br>THE LANIER FIRM<br>10940 W. Sam Houston Pkwy N, Suite 100<br>Houston, Texas 77064<br><br>Kenneth W. Starr<br>Chris Gadoury<br>Ryan Ellis<br>THE LANIER FIRM<br>10940 W. Sam. Houston Pkwy N, Suite 100<br>Houston, Texas 77064 |
| **Real Party in Interest**<br>State of Texas | Jordan Underhill<br>Jordan.Underhill@oag.texas.gov<br>Jonathan D. Bonilla |

ii

APP012

| | Jonathan.Bonilla@oag.texas.gov |
| --- | --- |
| | Lynn Kurtz-Citrin |
| | Lynne.Kurtz-Citrin@oag.texas.gov |
| | OFFICE OF THE |
| | TEXAS ATTORNEY GENERAL |
| | Civil Medicaid Fraud Division |
| | P.O. Box 12548, Capitol Station |
| | Austin, Texas 78711 |
| | Telephone: (512) 475-4196 |
| | |
| | Cynthia Lu (formerly with the Office of the Texas Attorney General) |
| **Respondent**<br><br>The Hon. Brad Morin, 71st District Court, Harrison County | |

# TABLE OF CONTENTS

**Page**

IDENTITY OF PARTIES AND COUNSEL ............................................................i

INDEX TO APPENDIX ...................................................................................vi

TABLE OF AUTHORITIES ............................................................................ vii

STATEMENT OF THE CASE..........................................................................1

STATEMENT OF JURISDICTION..................................................................2

STATEMENT REGARDING ORAL ARGUMENT ........................................3

ISSUES PRESENTED.......................................................................................4

THE MANDAMUS RECORD AND APPENDIX ............................................5

STATEMENT OF FACTS.................................................................................6

SUMMARY OF THE ARGUMENT ..............................................................11

ARGUMENT ..................................................................................................13

    I.    **HSG Does Not Have Constitutional Standing.** ..............................14

        A.    "Constitutional standing" is a separate inquiry from "statutory standing" and cannot be conferred by statute. ........15

        B.    HSG does not have "representative standing" to sue for an injury to the State. .............................................................17

        C.    U.S. Supreme Court precedent addressing federal courts' jurisdiction to hear a federal *qui tam* action does not provide grounds for disregarding or overruling this Court's precedent. ....................................................................18

    II.    **The TMFPA *Qui Tam* Action Is Unconstitutional And Void.** .....21

        A.    The Texas Constitution exclusively assigns the power to bring and maintain suits for the State to the State attorneys elected by Texans. ...................................................21

        B.    The TMFPA *qui tam* statute authorizes private parties to bring and maintain a suit for the State in violation of the Texas Constitution. ...................................................................24

        C.    The Real Parties' inapposite authority cannot save the TMFPA *qui tam* statute from invalidation under the Texas Constitution. ...................................................................26

iv

## TABLE OF CONTENTS
(continued)

**Page**

**PRAYER** ..................................................................................28

**DECLARATION OF DANNY S. ASHBY** .........................................30

**CERTIFICATE OF COMPLIANCE** ...............................................32

**CERTIFICATION** ......................................................................32

**CERTIFICATE OF SERVICE** .......................................................33

**APP015**

# INDEX TO APPENDIX

| Document | Page |
|---|---|
| Order Denying Defendant's Plea to Jurisdiction and Motion to Dismiss | 001 |
| Order Denying Petition for Writ of Mandamus | 004 |
| Memorandum Opinion Denying Petition for Writ of Mandamus | 006 |
| Judgment Denying Petition for Writ of Mandamus | 009 |
| Tex. Const. Art. I, § 13 | 010 |
| Tex. Const. Art. II, § 1 | 011 |
| Tex. Const. Art. IV, § 22 | 012 |
| Tex. Const. Art. V, § 21 | 013 |
| Tex. Hum. Res. Code § 36.101 | 014 |
| Tex. Hum. Res. Code § 36.102 | 015 |
| Tex. Hum. Res. Code § 36.104 | 017 |
| Tex. Hum. Res. Code § 36.107 | 018 |
| Tex. Hum. Res. Code § 36.113 | 020 |
| Tex. Hum. Res. Code § 36.052 | 021 |
| Tex. Res. Code § 36.104 (1997) | 023 |
| Tex. Hum. Res. Code § 36.104 (2007) | 024 |

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Agey v. Am. Liberty Pipe Line Co.*,
172 S.W.2d 972 (Tex. 1942) ...............................................................................25

*Allen v. Fisher*,
9 S.W.2d 731 (Tex. Comm'n App. 1928) .................. 4, 12, 13, 17, 20, 22, 27

*Am. Liberty Pipe Line Co. v. Agey*,
167 S.W.2d 580 (Tex. App. 1942), *aff'd*,
172 S.W.2d 972 (Tex. 1943) ..........................................................................20, 23

*Austin Nursing Ctr., Inc. v. Lovato*,
171 S.W.3d 845 (Tex. 2005) ..........................................................................17, 18

*Bellamy v. City of Brownsville*,
2023 WL 413583 (Tex. App. Jan. 26, 2023, no pet.).....................................17

*Berry v. Berry*,
646 S.W.3d 516 (Tex. 2022) ...............................................................................15

*Brown v. De La Cruz*,
156 S.W.3d 560 (Tex. 2004) ..........................................................................26, 27

*Busbee v. Cnty. Of Medina*,
681 S.W.3d 391 (Tex. 2023) ...............................................................................15

*Charles Scribner's Sons v. Marrs*,
262 S.W. 722 (Tex. 1924) ...............................................................................25

*City of Dallas v. Stewart*,
361 S.W.3d 562 (Tex. 2012) ...............................................................................27

*Data Foundry, Inc. v. City of Austin*,
620 S.W.3d 692 (Tex. 2021) ........................................................................14, 16, 20

*Davenport v. Garcia*,
834 S.W.2d 4 (Tex. 1992) ...............................................................................27

*Elliott v. City of Coll. Station*,
674 S.W.3d 653 (Tex. App. 2023, pet. filed) ................................................21

*Farmers Tex. Cnty. Mut. Ins. Co. v. Beasley*,
598 S.W.3d 237 (Tex. 2020) ...............................................................................14

*Fin. Comm'n of Tex. v. Norwood*,
418 S.W.3d 566 (Tex. 2013) ...............................................................................16

**APP017**

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Garcia v. Laughlin*,
285 S.W.2d 191 (Tex. 1955) ...............................................................22

*Heckman v. Williamson Cnty.*,
369 S.W.3d 137 (Tex. 2012) ........................... 11, 13, 14, 15, 17, 18

*Hill Cnty. v. Sheppard*,
178 S.W.2d 261 (Tex. 1944) ...............................12, 13, 22, 24, 27

*Hughes Aircraft Co. v. United States ex rel. Schumer*,
520 U.S. 939 (1997)..........................................................................25

*In re Abbott*,
601 S.W.3d 802 (Tex. 2020) ...............................................................18

*In re Allcat Claims Serv., L.P.*,
356 S.W.3d 455 (Tex. 2011) ...............................................................16

*In re Farmers Tex. Cnty. Mut. Ins. Co.*,
621 S.W.3d 261 (Tex. 2021) ...............................................................28

*In re Houston Specialty Ins. Co.*,
569 S.W.3d 138 (Tex. 2019) ...............................................................28

*In re J.B. Hunt Transp., Inc.*,
492 S.W.3d 287 (Tex. 2016) ...............................................................14

*In re John G. & Marie Stella Kenedy Mem'l Found.*,
315 S.W.3d 519 (Tex. 2010) ...............................................................20

*In re Kappmeyer*,
668 S.W.3d 651 (Tex. 2023) ...............................................................13

*In re Lazy W Dist. No. 1*,
493 S.W.3d 538 (Tex. 2016) ...................................................11, 16

*In re Prudential Ins. Co. of Am.*,
148 S.W.3d 124 (Tex. 2004) ...................................................13, 14

*In re Xerox Corp.*,
555 S.W.3d 518 (Tex. 2018) ...............................................................19

*In re YRC Inc.*,
646 S.W.3d 805 (Tex. 2022) ...............................................................13

*Maud v. Terrell*,
200 S.W. 375 (Tex. 1918) ...........................................22, 23, 27

**APP018**

*Mosaic Baybrook One, L.P. v. Simien*,
674 S.W.3d 234 (Tex. 2023) ...................................................................16

*Neeley v. W. Orance-Cove Consol. Indep. Sch. Dist.*,
176 S.W.3d 746 (Tex. 2005) ...................................................................14

*Nephrology Leaders & Assocs. v. Am. Renal Assocs. LLC*,
573 S.W.3d 912 (Tex. App. 2019, no pet.) ..............................................15

*OAIC Com. Assets, L.L.C. v. Stonegate Village, L.P.*,
234 S.W.3d 726 (Tex. App. 2007, no pet.) ..............................................19

*Perry v. Del Rio*,
67 S.W.3d 85 (Tex. 2001) .......................................................................25

*Pike v. Tex. EMC Mgmt. LLCh*,
610 S.W.3d 763 (Tex. 2020) ...................................................................15

*Staples v. State ex rel. King*,
245 S.W. 639 (Tex. 1922) .............................................. 12, 13, 17, 20, 23, 27

*State v. Stephens*,
664 S.W.3d 293 (Tex. Crim. App. 2022) .................................................26

*Tex. Ass'n of Bus. v. Tex. Air Control Bd.*,
852 S.W.2d 440 (Tex. 1993) ...................................................................14

*Tex. Med. Res., LLP v. Molina Healthcare of Tex., Inc.*,
659 S.W.3d 424 (Tex. 2023) ..............................................................15, 16

*United States ex rel. Health Choice Alliance, LLC v. Eli Lilly & Co.*,
4 F.4th 255 (5th Cir. 2021) ...............................................................6, 7, 8

*United States ex rel. Health Choice Alliance, LLC v. Eli Lilly & Co.*,
2019 WL 4727422 (E.D. Tex. Sept. 27, 2019),
*aff'd*, 4 F.4th 255 (5th Cir.) ....................................................................8

*United States ex rel. Health Choice Alliance, LLC v. Eli Lilly & Co.*,
No. 5:17-cv-123-RWS-JBB (E.D. Tex. Dec. 17, 2018)............................6, 8

*United States ex rel. Health Selection Grp., LLC v. Novartis AG, et al.*,
No. 5:18-cv-60-RWS-CMC (E.D. Tex. Apr. 20, 2018)............................7, 8

*United States ex rel. Polansky v. Exec. Health Res., Inc.*,
599 U.S. 419 (2023).................................................................................27

*Vermont Agency of Natural Resources v. United States ex rel. Stevens*,
529 U.S. 765 (2000)......................................................................18, 19, 20

**APP019**

**Page(s)**

*US Fax L. Ctr. Inc. v. iHire, Inc.,*
    476 F.3d 1112 (10th Cir. 2007) ..............................................................19, 20

**CONSTITUTIONS**

Texas Constitution, Article IV, § 22................................................................*passim*

Texas Constitution, Article V, § 21 ................................................................*passim*

U.S. Constitution, Article II, Â§27

**STATUTES**

Gov't Code § 22.002 ....................................................................................

Tex. Hum. Res. Code § 36.002 ..............................................................................8

Tex. Hum. Res. Code § 36.101 ........................................................1, 8, 19, 24, 25

Tex. Hum. Res. Code § 36.104 ........................................................................24, 25

**RULES**

Tex. R. App. P. 52.3 ....................................................................................1, 5

Tex. R. App. P. 52.7 ........................................................................................5

## STATEMENT OF THE CASE

*Nature of the Case*:   Health Selection Group, LLC ("HSG") filed this *qui tam* action against Novartis Pharmaceuticals Corporation ("Novartis") pursuant to the Texas Medicaid Fraud Prevention Act ("TMFPA")[1], which states that "a person may bring a civil action for a violation of Section 36.002 for the person and for the state" and such "action shall be brought in the name of the person and of the state." Tex. Hum. Res. Code § 36.101(a).

Novartis filed a combined Plea to the Jurisdiction and Rule 91a Motion to Dismiss on the ground that (i) the district court lacks subject-matter jurisdiction over the action because HSG did not personally suffer any injury from the conduct alleged in the First Amended Petition and (ii) HSG lacks a valid cause of action because the TMFPA *qui tam* action violates Article IV, Section 22 and Article V, Section 21 of the Texas Constitution.

*Respondent*:   Hon. Brad Morin, 71st District Court, Harrison County, Texas; Cause No. 23-0276.

*Course of Proceedings*:   Judge Morin summarily denied the Plea to the Jurisdiction and Motion to Dismiss on December 15, 2023.

Novartis sought mandamus relief in the Sixth Court of Appeals at Texarkana on February 2, 2024. The Court of Appeals issued a two-page memorandum opinion on March 1, 2024, denying the mandamus petition. *In Re Novartis Pharmaceuticals Corp.*, No. 06-24-00005-CV, 2024 WL 874686 (Tex. App.—Texarkana Mar. 1, 2024, mand. filed). Chief Justice Stevens authored the opinion, in which Justices van Cleef and Rambin joined.

---

[1] While the Texas Medicaid Fraud Prevention Act was amended effective September 1, 2023, and is now known as the Texas Health Care Program Fraud Prevention Act, Novartis refers to the prior TMFPA which forms the basis for HSG's claims and this *qui tam* action against Novartis.

## STATEMENT OF JURISDICTION

The Court has jurisdiction over this original proceeding pursuant to Texas Government Code § 22.002(a). This petition previously was presented to the Sixth Court of Appeals at Texarkana, which denied relief. Tex. R. App. P. 52.3(e).

APP022

## STATEMENT REGARDING ORAL ARGUMENT

Novartis respectfully requests oral argument. Novartis believes oral argument will aid the Court in deciding the important constitutional issues presented by this original proceeding, including (i) whether the Legislature has the power to authorize a private plaintiff to file suit for a statutory violation that did not personally injure the plaintiff and (ii) whether the Legislature can authorize a private plaintiff to file suit for and in the name of the State of Texas when Article IV, Section 22 and Article V, Section 21 of the Texas Constitution delegate that power and authority exclusively to the State attorneys elected by the people of Texas.

3

## ISSUES PRESENTED

1.    Whether the district court has subject-matter jurisdiction to hear a plaintiff's statutory cause of action when it is undisputed that the plaintiff itself suffered no injury from the alleged statutory violation.

2.    Whether the Texas Medicaid Fraud Prevention Act's *qui tam* provisions, which authorize any "person" to initiate and maintain a civil action for and in the name of the State, violate Article IV, Section 22 and Article V, Section 21 of the Texas Constitution, which the Court has held "mark the limits of legislative authority to prescribe who shall represent the state and control its interests in a lawsuit in the district court." *Allen v. Fisher*, 9 S.W.2d 731, 732 (Tex. Comm'n App. 1928).

3.    Whether the district court clearly abused its discretion by failing to correctly apply this Court's binding precedent in resolving the foregoing issues of law and denying Novartis's Plea to the Jurisdiction and Motion to Dismiss.

4

## THE MANDAMUS RECORD AND APPENDIX

Novartis has prepared a Mandamus Record consisting of sworn copies of documents filed in the underlying proceeding that are material to its claim for relief and hereby states that no testimony or evidence was adduced at the hearing on its Plea to the Jurisdiction and Motion to Dismiss. *See* Tex. R. App. P. 52.7(a). The Mandamus Record will be cited as follows: (MR__).

In addition, Novartis has prepared an Appendix containing a sworn copy of the orders complained of and the text of the relevant constitutional provisions and statutes on which its argument is based. *See* Tex. R. App. P. 52.3(k). The Appendix will be cited as follows: (APP__).

APP025

## STATEMENT OF FACTS

Plaintiff HSG is an affiliate of National Health Care Analysis Group ("NHCAG"), a "research organization" based in New Jersey that was created to monetize federal and state *qui tam* statutes that permit private parties to file civil actions on behalf of the government in return for a percentage of the government's recovery. *See* First Am. Pet. ¶ 21 (MR006); U.S. Mot. to Dismiss at 1-2, *United States ex rel. Health Choice Alliance, LLC v. Eli Lilly & Co.*, No. 5:17-cv-123-RWS-JBB (E.D. Tex. Dec. 17, 2018), Dkt. 192 (explaining NHCAG is a "professional relator" "comprised of member limited liability companies formed by investors and former Wall Street investment bankers"). NHCAG mines publicly-available Medicaid and Medicare data and conducts witness interviews to identify broad-ranging theories of anti-kickback liability and then creates entities, like HSG, to file *qui tam* actions, seeking astronomical penalties against pharmaceutical companies. *See* First Am. Pet. ¶ 42 (MR011); *see also* U.S. Mot. to Dismiss at 5–6, *Eli Lilly*, No. 5:17-cv-123 (describing NHCAG's business model); *United States ex rel. Health Choice Alliance, LLC v. Eli Lilly & Co.*, 4 F.4th 255, 259 (5th Cir. 2021) (entities created by NHCAG brought 11 *qui tam* actions under the federal False

6

**APP026**

Claims Act against a total of 38 defendants alleging violations of the Anti-Kickback Statute[2]).

In April 2018, HSG filed a sealed *qui tam* action against Novartis AG in the United States District Court for the Eastern District of Texas, alleging that Novartis AG violated the federal False Claims Act ("FCA") and the false claim analogues for 31 states, including the TMFPA, by engaging in three business practices: (i) providing free "nurse educator" services to patients to educate them about the proper use and administration of six Novartis medications; (ii) providing free "reimbursement support" services to assist patients with navigating coverage issues to obtain coverage for certain Novartis prescriptions; and (iii) contracting with third parties to employ nurses to market and educate prescribers about the six medications. *See generally* Compl., *United States ex rel. Health Selection Grp., LLC v. Novartis AG, et al.*, No. 5:18-cv-60-RWS-CMC (E.D. Tex. Apr. 20, 2018), Dkt. 1. HSG's theories largely mirrored those brought by other NHCAG affiliates against other pharmaceutical companies; the federal government moved to dismiss that action because it lacked sufficient merit and the federal government deemed the challenged practices lawful and beneficial to the federal healthcare programs. *See, e.g., Eli Lilly*

---

[2] The Fifth Circuit decision notes that the nine other federal *qui tam* actions not addressed in *Eli Lilly* were dismissed for various reasons. *See* 4 F.4th at 259 n.1 (four cases dismissed on government's motion to dismiss; four cases dismissed on voluntary consent of the relator and the government; and one court granted defendant's unopposed motion to dismiss for failure to state a claim).

7

*& Co.*, 4 F.4th at 260, 267–68 & n.1; U.S. Mot. to Dismiss at 2–3, 14–16, *Eli Lilly*, No. 5:17-cv-123 (stating that "federal healthcare programs have a strong interest in ensuring that, after a physician has appropriately prescribed a medication, patients have access to basic product support relating to their medication" and "HHS-OIG has advised that the provision of educational materials or informational programs to patients, without more, does not constitute 'remuneration.'"). After the Eastern District of Texas granted the United States's motion to dismiss that action, *see United States ex rel. Health Choice Alliance LLC v. Eli Lilly & Co.*, 2019 WL 4727422 (E.D. Tex. Sept. 27, 2019), *aff'd*, 4 F.4th 255 (5th Cir.), HSG voluntarily dismissed its materially identical federal lawsuit against Novartis AG in favor of pursuing its TMFPA claims in Texas state court. *See* HSG Mot. to Dismiss, *Health Selection Grp.*, No. 5:18-cv-60 (E.D. Tex. Mar. 9, 2020), Dkt. 21.

On May 8, 2020, HSG filed its Original Petition against Novartis AG under seal in the Travis County District Court under Texas Human Resources Code § 36.101. (MR070). The Original Petition substantially tracked HSG's prior federal complaint, alleging that the three above-described business practices violate the Texas anti-kickback statute and, by extension, Section 36.002(13) of the TMFPA. *Id.* After the State of Texas ("State") filed its notice declining to intervene in the action on October 1, 2020, the case was unsealed but remained dormant for several years until the case was transferred to the 71st Judicial District Court in Harrison County. *Id.*

8

In April 2023, HSG filed a First Amended Petition to drop Novartis AG and add Novartis Pharmaceuticals Corporation as defendant. *See generally* First Am. Pet. (MR001). On September 15, 2023, Novartis timely filed a Plea to the Jurisdiction and Motion to Dismiss the First Amended Petition, arguing that the district court should dismiss HSG's *qui tam* action for two reasons. (MR061). First, Novartis argued that the district court should grant its Plea to the Jurisdiction to dismiss the case for lack of subject-matter jurisdiction, because HSG does not have constitutional standing to sue Novartis for a statutory violation that did not personally injure HSG. *See id.* at 5–12 (MR072–079). In addition, Novartis argued that HSG's *qui tam* action should be dismissed under Texas Rule of Civil Procedure 91a because the TMFPA *qui tam* statute violates the Texas Constitution—which this Court has held exclusively assigns the authority to file suits for the State to the State attorneys identified in Article IV, Section 22 and Article V, Section 21—and thus HSG lacks a valid cause of action. *See id.* at 12–26 (MR080–093). On December 7, 2023, HSG filed a Response to Defendant's Plea to the Jurisdiction and Motion to Dismiss ("Resp.," MR098), and the State filed a Statement of Interest in Response to Defendant's Plea to the Jurisdiction and Motion to Dismiss ("SOI," MR116). On December 11, 2023, Novartis filed a Reply in Support of its Plea to the Jurisdiction and Motion to Dismiss (MR139). The district court heard oral argument on the Plea to the Jurisdiction and Motion to Dismiss on December 14 and summarily denied it

9

the following day, on December 15, 2023.  *See* Order Denying Def.'s Plea to Jur. & Mot. To Dismiss ("Order," MR267; APP001).

Novartis filed a Petition for Writ of Mandamus in the Court Appeals for the Sixth District of Texas, arguing that the district court's denial of Novartis' Plea to the Jurisdiction and Motion to Dismiss constituted a clear error of law because it permits HSG to maintain a statutory cause of action for which it lacks constitutional standing and otherwise violates provisions of the Texas Constitution that exclusively confer on the State attorneys (the Attorney General and District and County Attorneys) the authority to bring suit for and in the name of the State.  (MR170). The Court of Appeals denied the Petition on the ground that these jurisdictional and constitutional questions were committed to the trial court's discretion:  "'[w]hen reviewing matters committed to a trial court's discretion, an appellate court may not substitute its own judgment for the trial court's judgment.'  As a result, we may not 'set aside the trial court's [order] unless it is clear from the record that the trial court could only reach one decision.'"  (MR501) (second alteration in original) (citations omitted).

APP030

## SUMMARY OF THE ARGUMENT

The Texas Constitution and this Court's precedent preclude HSG's *qui tam* action twice over: first, for lack of standing, and second, for want of a legally valid cause of action. In concluding otherwise, the district court failed to analyze or correctly apply binding precedent.

This Court has made clear that a plaintiff "must be *personally* injured—he must plead facts demonstrating that he, himself (rather than a third party or the public at large), suffered [an] injury" for a Texas court to hear his claims under the Texas Constitution. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 155 (Tex. 2012). Because it is undisputed that HSG itself suffered no injury from the conduct alleged in its First Amended Petition, only one outcome was permissible under Texas law: dismissal for lack of subject-matter jurisdiction.

The Legislature lacks the power to enact a statute to excuse a plaintiff from satisfying constitutional standing requirements for courts' jurisdiction under the Texas Constitution. *See In re Lazy W Dist. No. 1*, 493 S.W.3d 538, 544 (Tex. 2016) (orig. proceeding) ("For the Legislature to attempt to authorize a court to act without subject matter jurisdiction would violate the constitutional separation of powers."). As this Court has long recognized, a "statute cannot confer a right upon private individuals to act for all where it is shown they have no interest different from all others" because the State alone has standing to bring suit respecting matters of public

11

concern.  *Staples v. State ex rel. King*, 245 S.W. 639, 641 (Tex. 1922); *see also Allen v. Fisher*, 9 S.W.2d 731, 732 (Tex. Comm'n App. 1928).  Because allegations of harm to the State do not support a finding that **HSG** suffered an injury redressable by Texas courts, the district court lacks subject-matter jurisdiction to hear HSG's lawsuit.  Such claims must be brought, if at all, by the party who allegedly suffered the injury:  the State of Texas.

HSG's suit also should have been dismissed because HSG lacks a legally valid cause of action.  This Court has consistently held that Article IV, Section 22 and Article V, Section 21 of the Texas Constitution exclusively assign the duty and authority to bring and maintain a suit for the State to the Attorney General and the District and County Attorneys, and "'the Legislature cannot withdraw them nor confer them upon others nor abridge them or interfere with the officer's right to exercise them unless the Constitution expressly so provides.'"  *Hill Cnty. v. Sheppard,* 178 S.W.2d 261, 264 (Tex. 1944).  Neither HSG nor the State have identified an express constitutional provision that authorizes the Legislature to enact a *qui tam* statute that permits any "person" to bring and maintain a "civil law enforcement action" in the name of the State.  HSG's self-described "civil law enforcement action" is legally invalid under the Texas Constitution and should have been dismissed.  (MR002).

12

**ARGUMENT**

A party is entitled to mandamus relief when a trial court commits a clear abuse of discretion and the party lacks an adequate remedy by appeal to correct the district court's error. *In re YRC Inc.*, 646 S.W.3d 805, 808 (Tex. 2022) (orig. proceeding). Both requirements are met here to warrant this Court's intervention. In summarily denying the Plea and Motion, the district court abused its discretion by failing to correctly apply the law. *In re Kappmeyer*, 668 S.W.3d 651, 655 (Tex. 2023) (orig. proceeding). This Court has consistently held that Texas courts do not have subject-matter jurisdiction over claims brought by unharmed plaintiffs, and it is undisputed that HSG itself suffered no harm from the conduct alleged in the First Amended Petition. *See Heckman*, 369 S.W.3d at 150, 155; *Staples*, 245 S.W. at 641, 643; *Allen*, 9 S.W.2d at 732. Moreover, the Court's precedent is clear that the Legislature cannot enact a statute to authorize a private plaintiff, like HSG, to bring suit for the State because Article IV, Section 22 and Article V, Section 21 of the Texas Constitution explicitly and exclusively assign that duty to the State attorneys. *See Staples*, 245 S.W. at 641; *Allen*, 9 S.W.2d at 732; *Sheppard*, 178 S.W.2d at 264. Mandamus relief is thus necessary to prevent the waste of time and resources litigating a doomed proceeding and to preserve the Executive department's jurisdiction from interference. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124,

13

136 (Tex. 2004) (orig. proceeding); *see In re J.B. Hunt Transp., Inc.*, 492 S.W.3d 287, 298–99 (Tex. 2016) (orig. proceeding).

## I. HSG Does Not Have Constitutional Standing.

In Texas, "[s]tanding is a threshold requirement to maintaining a lawsuit," *Farmers Tex. Cnty. Mut. Ins. Co. v. Beasley*, 598 S.W.3d 237, 240 (Tex. 2020), that "stems from two constitutional limitations on subject-matter jurisdiction," *Data Foundry, Inc. v. City of Austin*, 620 S.W.3d 692, 700 (Tex. 2021). The Separation of Powers provision in Article II, Section 1 of the Texas Constitution prohibits courts "from issuing advisory opinions, because doing so invades the function of the executive rather than judicial department." *Id.*; *see also Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993). And the Open Courts provision in Article I, Section 13 "opens the courthouse doors only to those who have or are suffering an injury." *Heckman*, 369 S.W.3d at 155; *see also Tex. Ass'n of Bus.*, 852 S.W.2d at 444. The Court has held that these constitutional provisions "limit[] [courts'] subject matter jurisdiction to cases involving a distinct injury to the plaintiff and a real controversy between the parties, which will be actually determined by the judicial declaration sought." *Neeley v. W. Orange-Cove Consol. Indep. Sch. Dist.*, 176 S.W.3d 746, 774 (Tex. 2005) (quotation omitted). To satisfy the injury requirement for standing, the Court has emphasized that "[t]he plaintiff must be *personally* injured—he must plead facts demonstrating that he, himself (rather than

14

APP034

a third party or the public at large), suffered the injury." *Heckman*, 369 S.W.3d at 155. Because the plaintiff that brought this action—HSG—did not suffer any injury from the violations alleged in the First Amended Petition, the Court should grant mandamus relief to correct the district court's clear error of law in failing to dismiss this action.

A.    "Constitutional standing" is a separate inquiry from "statutory standing" and cannot be conferred by statute.

The Real Parties' contention that HSG need not show a personal injury because HSG has "statutory standing" to sue under the TMFPA reflects a fundamental misunderstanding of the distinction between a plaintiff's statutory *right* to sue and a plaintiff's constitutional *standing* to sue. Resp. at 5–6 (MR103–04); SOI at 8 (MR123).

As this Court has repeatedly explained, Texas courts' use of the phrase "statutory standing" is a misnomer because a plaintiff's statutory authority to sue "go[es] to the merits of the plaintiff's claim, not the plaintiff's standing to sue in the jurisdictional sense." *Busbee v. Cnty. Of Medina*, 681 S.W.3d 391, 395 (Tex. 2023); *see also Pike v. Tex. EMC Mgmt. LLC*, 610 S.W.3d 763, 773 (Tex. 2020); *Berry v. Berry*, 646 S.W.3d 516, 527 & n.3 (Tex. 2022); *Tex. Med. Res., LLP v. Molina Healthcare of Tex., Inc.*, 659 S.W.3d 424, 439–41 (Tex. 2023); *see also Nephrology Leaders & Assocs. v. Am. Renal Assocs. LLC*, 573 S.W.3d 912, 915–17 & n.5 (Tex. App. 2019, no pet.). While older opinions use standing "as a short-hand reference

15

for a plaintiff's ability to fulfill some statutory prerequisite to bringing suit or recovering on a claim," the Court has deemed such phrasing "regrettable" because it "has tangled the line demarcating issues that truly implicate a trial court's subject-matter jurisdiction from those pertaining to the merits." *Tex. Med. Res.*, 659 S.W.3d at 439-40.

What matters for subject-matter jurisdiction is the plaintiff's ability to show that (i) "the plaintiff suffered an injury," (ii) "this injury is fairly traceable to the defendant's conduct," and (iii) "this injury is likely to be redressed by the requested relief." *Mosaic Baybrook One, L.P. v. Simien*, 674 S.W.3d 234, 250-51 (Tex. 2023) (quotation omitted). Because those requirements for standing "stem[] from two constitutional limitations on [courts'] subject-matter jurisdiction," the Legislature cannot render them "irrelevant," as the Real Parties contended below. *Data Foundry, Inc.*, 620 S.W.3d at 700; *see Fin. Comm'n of Tex. v. Norwood*, 418 S.W.3d 566, 582 n.83 (Tex. 2013). "For the Legislature to attempt to authorize a court to act without subject matter jurisdiction would violate the constitutional separation of powers," which is why Texas courts construe the Legislature's enactments to incorporate the Texas Constitution's jurisdictional requirements. *In re Lazy W. Dist. No. 1*, 493 S.W.3d at 544; *see In re Allcat Claims Serv., L.P.*, 356 S.W.3d 455, 462 (Tex. 2011) (orig. proceeding). If the plaintiff does not satisfy the personal injury

16

requirement for constitutional standing, then Texas courts do not have subject-matter jurisdiction to hear the plaintiff's claim.

That is especially true where, as here, the plaintiff seeks to vindicate an alleged injury to the State. *See Heckman*, 369 S.W.3d at 155 (plaintiff "must plead facts demonstrating that he, himself (rather than a third party or the public at large), suffered the injury"); *Bellamy v. City of Brownsville*, 2023 WL 413583, at *3 (Tex. App. Jan. 26, 2023, no pet.) (plaintiff's "allegations about harm to the City and its citizens could not support a finding that *he* would suffer an irreparable injury" for standing). For well over a century, this Court has held that a private party lacks standing to vindicate a matter of public concern unless he can show an injury particular to himself, and the Legislature cannot enact a statute to "confer a right upon private individuals to act for all where it is shown they have no interest different from all others." *Staples*, 245 S.W. at 641; *see also Allen*, 9 S.W.2d at 732.

B.  HSG does not have "representative standing" to sue for an injury to the State.

HSG's efforts to circumvent that authority by analogizing to "representative standing" cases is also unpersuasive. Setting aside that *Allen* and *Staples* squarely foreclose that result, Texas courts have only recognized a plaintiff's "representative standing" to sue on behalf of another where the injured party with standing to sue lacks the legal authority or capacity to bring suit for their injury. *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005). "For example," because

17

"minors and incompetents are considered to be under a legal disability and are therefore unable to sue or be sued in their individual capacities[,] such persons are required to appear in court through a legal guardian, a 'next friend,' or a guardian ad litem." *Id.* Likewise, because "a decedent's estate is not a legal entity and may not properly sue or be sued as such," "the law therefore grants another party"—the estate's personal representative—"the capacity to sue on [its] behalf." *Id.* (quotation omitted).

That rationale for "representative standing" has no application here. If the State suffered an injury, as HSG alleges, then the State has the legal authority and capacity to bring a civil law enforcement action against Novartis; it simply chose not to do so. Because HSG is not a party that was "genuinely, personally affected" by the alleged TMFPA violations, this Court's precedent precludes the district court from hearing its claims. *See Heckman*, 369 S.W.3d at 150; *In re Abbott*, 601 S.W.3d 802, 809 (Tex. 2020) (orig. proceeding) (Texas' "standing jurisprudence" requires parties to particular cases "who are genuinely, personally affected.")

C. <u>U.S. Supreme Court precedent addressing federal courts' jurisdiction to hear a federal *qui tam* action does not provide grounds for disregarding or overruling this Court's precedent.</u>

Finding no support for HSG's constitutional standing under Texas law, the State instead argued that the U.S. Supreme Court's decision in *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765 (2000), "controls"

18

HSG's standing to bring this civil law enforcement action under the Texas Constitution. That, too, is wrong. The U.S. Supreme Court's rationale in *Stevens* for Article III jurisdiction over a FCA *qui tam* action finds no support in the TMFPA or Texas's constitutional standing jurisprudence.

First, the standing-by-assignment theory that *Stevens* adopted for FCA *qui tam* actions does not work under Texas law. As this Court noted in *In re Xerox Corp.*, the FCA and TMFPA are similar in aim and tactic, but they are fundamentally different statutes that "employ materially different language." 555 S.W.3d 518, 535 (Tex. 2018). While the FCA creates a statutory tort for the recovery of damages to the United States, Texas argued in *In re Xerox*—and the Court agreed—that the TMFPA does not; rather, the TMFPA is an enforcement statute for civil penalties. *Id.* at 524. Thus, in contrast to the FCA, the TMFPA cannot "reasonably be regarded as effecting a partial assignment of the [State's] damages claim," *Stevens*, 529 U.S. at 773, because the TMFPA is not "an action for the recovery of damages" that is capable of assignment, *In re Xerox.*, 555 S.W.3d at 527 n.56. But even if it were, the standing-by-assignment theory would still fail because an assignment contingent on a party's performance of an act that violates the Texas Constitution—that is, filing a civil action for and in the name of the State, *see* Tex. Hum. Res. Code § 36.101(a)— cannot confer standing. *See, e.g.*, *OAIC Com. Assets, L.L.C. v. Stonegate Village, L.P.*, 234 S.W.3d 726, 746 (Tex. App. 2007, no pet.); *US Fax L.*

19

*Ctr. Inc. v. iHire, Inc.*, 476 F.3d 1112, 1120 (10th Cir. 2007). Unlike the U.S. Constitution, the Texas Constitution explicitly lodges with the State's attorneys the exclusive authority to bring and maintain a suit for the State. *See Allen*, 9 S.W.2d at 732; *Staples*, 245 S.W. at 642.

The State's reliance on *Stevens*' second rationale for Article III jurisdiction, based on the historical pedigree of federal *qui tam* actions, also finds no support in Texas. SOI at 10–11 (MR125–126). *Stevens* held that Article III's "Cases" and "Controversies" requirement encompasses "'cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process.'" 529 U.S. at 774–77. But the Texas Constitution does not contain any "Cases" and "Controversies" language, and no Texas court has ever followed that aspect of federal standing jurisprudence to resolve its subject-matter jurisdiction. Nor should it, given that the Texas Constitution—including its Open Courts and Separation of Powers provisions—governs the scope of Texas courts' subject-matter jurisdiction. *See Data Foundry*, 620 S.W.3d at 700. *Ex parte Wolters*, 144 S.W. 531, 587 (Tex. Crim. App. 1911). That courts in England and Colonial America had jurisdiction over *qui tam* actions under the English parliamentary system says nothing about Texas courts' jurisdiction to hear such actions under the Texas Constitution. *See Am. Liberty Pipe Line Co. v. Agey*, 167 S.W.2d 580, 581–82 (Tex. App. 1942), *aff'd*, 172 S.W.2d 972 (Tex. 1943) (rejecting as irrelevant plaintiff's contention that *qui tam*

20

actions had been permitted prior to the 1876 Texas Constitution). And even if historical practices were relevant to resolving Texas courts' subject-matter jurisdiction, the Real Parties have not identified *any* historical practice in the decades following the Texas Constitution's ratification of *qui tam* actions to vindicate the State's injuries.

HSG's claims should have been dismissed for lack of standing. That the district court did not do so constitutes a clear error of law and abuse of discretion that merits mandamus relief. *See In re John G. & Marie Stella Kenedy Mem'l Found.*, 315 S.W.3d 519, 522 (Tex. 2010) (orig. proceeding) ("Mandamus is proper if a trial court issues an order that exceeds its jurisdictional authority.").

## II. The TMFPA *Qui Tam* Action Is Unconstitutional And Void.

The district court also abused its discretion in denying the Motion to Dismiss because the TMFPA *qui tam* provisions violate Article IV, Section 22 and Article V, Section 21 of the Texas Constitution, and an unconstitutional statute cannot provide a basis for any right or relief. *See Elliott v. City of Coll. Station*, 674 S.W.3d 653, 656 (Tex. App. 2023, pet. filed).

### A. The Texas Constitution exclusively assigns the power to bring and maintain suits for the State to the State attorneys elected by Texans.

It is a fundamental and well-settled principle of Texas constitutional law that, where the Texas Constitution confers certain duties or powers upon a designated officer, the Legislature cannot confer those duties or powers upon others or interfere

21

with the officer's right to exercise them unless the Constitution expressly so provides. *Sheppard*, 178 S.W.2d at 261; *Garcia v. Laughlin*, 285 S.W.2d 191, 194 (Tex. 1955). Applying that principle, this Court has recognized for well over a century that Article IV, Section 22 and Article V, Section 21 confer an "exclusive" power on the Attorney General and District and County Attorneys to represent the State and thus "mark the limits of legislative authority to prescribe who shall represent the state and controls its interests in a lawsuit in the district court." *Allen*, 9 S.W.2d at 732. "The Legislature cannot devolve them upon others. Nor can it interfere with the right to exercise them." *Maud v. Terrell*, 200 S.W. 375, 376 (Tex. 1918).

In the first half of the twentieth century, the Court addressed several cases where it was argued that the Legislature had enacted a statute to authorize another person to bring suit for the State in violation of Article IV, Section 22 and Article V, Section 21. Those cases were resolved in one of two ways. Where possible, the Court construed the statute to require the State attorneys to bring suit for the State consistent with the Texas Constitution. But if the statute reflected an unambiguous intent to authorize another to bring suit for the State, then the Court held the statute was void under the Texas Constitution. The Court has never upheld a statute to permit anyone other than the duly-elected State attorneys to bring suit for the State.

22

The Court in *Maud* recognized that a statute permitting a tax collector to bring suit for the State would violate the Texas Constitution's assignment of that power and duty to the State attorneys. 200 S.W. at 376. But the Court found that the statute was susceptible to a different construction that would render it valid under the Constitution. *See id.* Rather than construe the statute to authorize the tax collector to file suit himself, the Court construed the statute to provide that the tax collector "should cause the suit to be filed by the official charged by law with that specific duty"—i.e., the Attorney General. *Id.* at 377; *see also Agey*, 167 S.W.2d at 583.

A few years later, the Court followed *Maud* in rejecting the contention that the Legislature could enact a statute authorizing private citizens to bring and prosecute a suit in the name of the State. *Staples*, 245 S.W. at 640–42.

> To give the section the meaning contended for by [plaintiffs] would be to seriously infringe upon the mandate of section 21, art. 5, of the Constitution, that 'the county attorneys shall represent the state in all cases in their respective counties,' and of section 22, art. 4, relating to the Attorney General.

*Id.* at 642. Because the Court "presumed that the Legislature desired and intended to enact a constitutional law," the Court construed the statute to require private citizens to solicit "the proper officer of the state" to bring suit for the State. *Id.* at 641.

But when the Court was confronted with a statute that unambiguously conferred that power on someone other than the State attorneys selected by the Texas

23

Constitution, the Court did not hesitate to declare the enactment unconstitutional. The Court in *Sheppard* invalidated a statute that purported to create an extra-constitutional office for a "Criminal District Attorney" for Hill County. 178 S.W.2d at 261–62. Because Article V, Section 21 of the Constitution "carefully apportions the duties of representing the State in district and inferior courts (other than those conferred upon the Attorney General by Article IV, Section 22) among the constitutional officers of district attorney . . . and county attorney," the Court held it "well settled" that "the Legislature, in the absence of other constitutional authority therefor, could not create a statutory office with power to take over and exercise such functions." *Id.* at 264. For the reasons explained directly below, that is the precise effect of the TMFPA *qui tam* statute.

B. The TMFPA *qui tam* statute authorizes private parties to bring and maintain a suit for the State in violation of the Texas Constitution.

The Legislature's enactment of a *qui tam* action, authorizing any "person" to bring and maintain a suit "for the state" and "in the name . . . of the state" for a violation of the TMFPA, cannot be sustained under the Texas Constitution. *See* Tex. Hum. Res. Code § 36.101 (APP014); Tex. Hum. Res. Code § 36.104(b) (APP017). The Legislature has essentially created an extra-constitutional office comprised of self-appointed private attorney generals who exercise a power that the Texas Constitution explicitly and exclusively confers on the State attorneys. "[I]n the matter of bringing suits," this Court has held, "the Attorney General must exercise

24

judgment and discretion, which will not be controlled by other authorities." *Charles Scribner's Sons v. Marrs*, 262 S.W. 722, 727 (Tex. 1924); *see also Agey v. Am. Liberty Pipe Line Co.*, 172 S.W.2d 972, 382 (Tex. 1942) (Attorney General is the "chief law officer of the State" and "has the right to investigate the facts and exercise his judgment and discretion regarding the filing of a suit"). Yet, the TMFPA purports to grant such control to *qui tam* relators to file suit for the State. *See* Tex. Hum. Res. Code § 36.101 (APP014).

In addition, if the Attorney General declines to intervene in the *qui tam* action, the TMFPA impermissibly authorizes an unharmed private party and its attorney to prosecute violations of state law in place of the Attorney General. *See* Tex. Hum. Res. Code § 36.104(b) (APP017); *Perry v. Del Rio*, 67 S.W.3d 85, 92 (Tex. 2001). In short, the TMFPA *qui tam* action hands over a sovereign power for the vindication of public interests to private individuals who owe no duty of loyalty to the State and are "motivated primarily by prospects of monetary reward rather than public good." *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 949, 952 (1997).

That the Attorney General may, as the Real Parties contended below, agree with or support this reassignment of his constitutional duty cannot save it from invalidation. A branch of government cannot cede to other branches or private parties one of its exclusive powers, any more than other branches or private parties could seize such powers themselves. The turmoil of the Reconstruction era

25

prompted the framers of the 1876 Texas Constitution to "decentralize the state government" by "precisely defin[ing] the rights, powers, and prerogatives of the various governmental departments and agencies." *State v. Stephens*, 664 S.W.3d 293, 294 (Tex. Crim. App. 2022) (quotation omitted). The Texas Constitution exclusively assigns the power to represent the State to the State attorneys identified in Article IV, Section 22 and Article V, Section 21, and grants the people of Texas the right to choose those officers. The Attorney General cannot—either by agreement, on his own or with the consent of the Legislature—delegate or limit his constitutional duty to represent the State in a manner not provided in the Texas Constitution.

C.   The Real Parties' inapposite authority cannot save the TMFPA *qui tam* statute from invalidation under the Texas Constitution.

Against this weight of authority, the Real Parties argued that the TMFPA *qui tam* action should be upheld based on this Court's decision in *Brown v. De La Cruz*, 156 S.W.3d 560 (Tex. 2004), and federal precedent upholding federal *qui tam* statutes under the federal constitution. Not so.

The Real Parties' claims that *Brown* "settled" the constitutionality of Texas *qui tam* statutes are completely baseless. SOI at 2, 13–14 (MR117, 128–129); Resp. at 2, 7–8 (MR100, 105–106). *Brown* did not involve a *qui tam* statute or, for that matter, address the constitutionality of *any* statute. *Brown* merely recognized that the Legislature can create a private cause of action for a purchaser who suffered an

26

injury to recover a statutory penalty "beyond the damages that a purchaser is likely to suffer," but held that if the Legislature intends to create such a private cause of action, "it must do so clearly." 156 S.W.3d at 566. *Brown* says nothing about the constitutionality of a statute that purports to authorize a private party to maintain a civil law enforcement action *for the State* to vindicate *the State's* injury.

Nor do the Real Parties explain how federal law could determine whether a Texas *qui tam* statute comports with the Texas Constitution's unique provisions.[3] *See City of Dallas v. Stewart*, 361 S.W.3d 562, 573–74 (Tex. 2012); *Davenport v. Garcia*, 834 S.W.2d 4, 12 (Tex. 1992). Unlike the U.S. Constitution, the Texas Constitution explicitly assigns to a specific government actor the duty and power to represent the government's interest in litigation. This Court has held that the Texas Constitution exclusively confers the duty and authority to represent the State's litigation interests on the State attorneys identified in Article IV, Section 22 and Article V, Section 21. *See Sheppard*, 178 S.W.2d at 264; *Allen*, 9 S.W.2d at 732; *Staples*, 245 S.W. at 641–43; *Maud*, 200 S.W. at 376. There is no similar provision in the U.S. Constitution, and thus no U.S. Supreme Court precedent that could possibly ratify the Legislature's enactment of the TMFPA *qui tam* statute.

---

[3] Moreover, the continuing vitality of those federal decisions is uncertain given that Justices Thomas, Kavanaugh, and Barrett recently raised concerns, *sua sponte*, about the constitutionality of the FCA's *qui tam* provisions under Article II of the U.S. Constitution. *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 449 (2023) (Thomas, J., dissenting); *id.* at 442 (Kavanaugh, J., concurring).

27

Mandamus relief is warranted to correct the district court's clear abuse of discretion in failing to dismiss this legally invalid action. *See In re Farmers Tex. Cnty. Mut. Ins. Co.*, 621 S.W.3d 261, 266 (Tex. 2021) (orig. proceeding); *In re Houston Specialty Ins. Co.*, 569 S.W.3d 138, 142 (Tex. 2019) (orig. proceeding).

## PRAYER

Novartis respectfully requests that the Court issue a writ of mandamus directing the district court to dismiss HSG's claims.

28

Dated:  March 27, 2024             Respectfully submitted,

O'MELVENY & MYERS LLP

*/s/ Danny S. Ashby*

Danny S. Ashby
Texas Bar No. 01370960
dashby@omm.com
2801 North Harwood Street, Suite 1600
Dallas, Texas  75201
Telephone:  +1 972 360 1900
Facsimile:  +1 972 360 1901

Anton Metlitsky
ametlitsky@omm.com
7 Time Square
New York, NY 10036
Telephone: +1 212 326 2000
(Application for *pro hac vice* admission pending)

Ross Galin
rgalin@omm.com
7 Times Square
New York, NY 10036
Telephone: +1 212 326 2000
(Application for *pro hac vice* admission pending)

THE DACUS FIRM, P.C.

Deron R. Dacus
Texas Bar No. 00790553
ddacus@dacusfirm.com
821 ESE Loop 323, Suite 430
Tyler, Texas 75701
Telephone: +1 903 705 1117

*Counsel for Relator*
*Novartis Pharmaceuticals Corporation*

29

# DECLARATION OF DANNY S. ASHBY

I, Danny S. Ashby, hereby declare under penalty of perjury the following:

1. I am counsel of record for Relator Novartis Pharmaceuticals Corporation ("Novartis") in connection with the Petition for Writ of Mandamus styled *In re Novartis Pharmaceuticals Corporation*, filed concurrently herewith, in the Supreme Court of Texas.

2. In compliance with Texas Rule of Appellate Procedure 52.3(k)(1)(A), I have reviewed and hereby verify that the Order Denying Defendant's Plea to Jurisdiction and Motion to Dismiss in this Appendix is a true and correct copy of the Order Denying Defendant's Plea to Jurisdiction and Motion to Dismiss filed on December 15, 2023, in the underlying district court proceeding, Case No. 23-0276, in the 71st Judicial District Court, Harrison County, Texas, the Honorable Brad Morin presiding.

3. In compliance with Texas Rule of Appellate Procedure 52.3(k)(1)(B), I have reviewed and hereby verify that the Order Denying Relator's Petition for Writ of Mandamus and corresponding Judgment and Memorandum Opinion in this Appendix are true and correct copies of the Order Denying Relator's Petition for Writ of Mandamus and corresponding Judgment and Memorandum Opinion filed on March 1, 2024, in the Court of Appeals for the Sixth Appellate District, Case No.

30

06-24-00005-CV, the Honorable Scott E. Stevens, Jeff Rambin, and Charles van Cleef presiding.

4.    My birthdate is October 1, 1964, and my firm address is 2801 North Harwood Street, Suite 1600, Dallas, Texas 75201.

Executed in Dallas County, Texas on March 26, 2024.

_____
Danny S. Ashby

APP051

## CERTIFICATE OF COMPLIANCE

Based on a word count run in Microsoft Word for Microsoft 365, this Petition for Writ of Mandamus contains 4,405 excluding the portions of the brief exempt from the word count under Texas Rule of Appellate Procedure 9.4(i)(1).

*/s/ Danny S. Ashby*
Danny S. Ashby

## CERTIFICATION

I certify that I have reviewed the Petition and concluded that every factual statement in the Petition is supported by competent evidence included in the Appendix or Mandamus Record.

*/s/ Danny S. Ashby*
Danny S. Ashby

32

**CERTIFICATE OF SERVICE**

This will certify that a true and correct copy of the foregoing Petition for Writ of Mandamus has been forwarded this 27th day of March, 2024, to the following attorneys of record via electronic service:

Samuel F. Baxter
Jennifer L. Truelove
MCKOOL SMITH P.C.
104 East Houston, Suite 300
Marshall, Texas 75670
sbaxter@mckoolsmith.com
jtruelove@mckoolsmith.com

Eric B. Halper
Radu A. Lelutiu
MCKOOL SMITH P.C.
One Manhattan West
395 9th Avenue, 50th Floor
New York, New York 10001
ehalper@mckoolsmith.com
rlelutiu@mckoolsmith.com

W. Mark Lanier
Alex J. Brown
Zeke DeRose III
Jonathan Wilkerson
THE LANIER FIRM
10940 W. Sam Houston Pkwy N., Suite 100
Houston, Texas 77064
WML@LanierLawFirm.com
Alex.Brown@LanierLawFirm.com
Zeke.DeRose@LanierLawFirm.com
Jonathan.Wilkerson@LanierLawFirm.com

*Counsel for Health Selection Group, LLC*

Jordan Underhill
Jonathan D. Bonilla
Lynne Kurtz-Citrin
Office of the Attorney General
Civil Medicaid Fraud Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711
Jordan.Underhill@oag.texas.gov
Jonathan.Bonilla@oag.texas.gov
Lynne.Kurtz-Citrin@oag.texas.gov

*Counsel for the State of Texas*

/s/ Danny S. Ashby
Danny S. Ashby

33

APP053

# APPENDIX

Filed 12/15/2023 9:01 PM
Sherry Griffis
District Clerk
Harrison County, Texas

Heather Henigan

Deputy

**CAUSE NO. 23-0276**

| | |
|---|---|
| THE STATE OF TEXAS, | IN THE DISTRICT COURT |
| *ex rel.* | |
| HEALTH SELECTION GROUP, LLC | 71ST JUDICIAL DISTRICT |
| Plaintiff, | |
| v. | HARRISON COUNTY, TEXAS |
| NOVARTIS PHARMACEUTICALS CORPORATION, | |
| Defendant. | |

## ORDER DENYING DEFENDANT'S PLEA TO JURISDICTION AND MOTION TO DISMISS

Before the Court is Defendant's Plea to Jurisdiction and Motion to Dismiss Pursuant to Rule 91a (the "Motion").

Upon consideration of the parties' briefs and oral argument, the Court is of opinion that the Motion should be **DENIED**.

IT IS SO ORDERED.

SIGNED this ___15___ day of ___Dec___, 2023.

_____
Hon. Brad Morin
Judge Presiding

**APP55**

Copy from re:SearchTX

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 82601915
Filing Code Description: Proposed Order
Filing Description: ORDER DENYING DEFENDANT'S PLEA TO JURISDICTION AND MOTION TO DISMISS
Status as of 12/15/2023 10:28 AM CST

Associated Case Party: HEALTH SELECTION GROUP, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Samuel Baxter | | sbaxter@mckoolsmith.com | 12/14/2023 9:01:09 PM | SENT |
| Jennifer L.Truelove | | jtruelove@mckoolsmith.com | 12/14/2023 9:01:09 PM | SENT |
| Eric B.Halper | | ehalper@mckoolsmith.com | 12/14/2023 9:01:09 PM | SENT |
| Radu A. Lelutiu | | rlelutiu@mckoolsmith.com | 12/14/2023 9:01:09 PM | SENT |
| Mark Lanier | | WML@LanierLawFirm.com | 12/14/2023 9:01:09 PM | SENT |
| Alex J.Brown | | Alex.Brown@LanierLawFirm.com | 12/14/2023 9:01:09 PM | SENT |
| Joel Leach | | jleach@mckoolsmith.com | 12/14/2023 9:01:09 PM | SENT |
| Kim Shoults | | kshoults@mckoolsmith.com | 12/14/2023 9:01:09 PM | SENT |
| Denise Lopez | | dlopez@mckoolsmith.com | 12/14/2023 9:01:09 PM | SENT |
| Zeke DeRose | | Zeke.DeRose@LanierLawFirm.com | 12/14/2023 9:01:09 PM | SENT |
| Jonathan Wilkerson | | Jonathan.Wilkerson@LanierLawFirm.com | 12/14/2023 9:01:09 PM | SENT |

Associated Case Party: THE STATE OF TEXAS

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Lynne Kurtz-Citrin | | Lynne.Kurtz-Citrin@oag.texas.gov | 12/14/2023 9:01:09 PM | SENT |
| Jonathan D.Bonilla | | Jonathan.Bonilla@oag.texas.gov | 12/14/2023 9:01:09 PM | SENT |
| Jordan Underhill | | Jordan.Underhill@oag.texas.gov | 12/14/2023 9:01:09 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Kimberly Grotenrath | | kgrotenrath@omm.com | 12/14/2023 9:01:09 PM | SENT |

**APP56**

Copy from re:SearchTX

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 82601915
Filing Code Description: Proposed Order
Filing Description: ORDER DENYING DEFENDANT'S PLEA TO JURISDICTION AND MOTION TO DISMISS
Status as of 12/15/2023 10:28 AM CST

Case Contacts

| | | | | |
|---|---|---|---|---|
| Kimberly Grotenrath | | kgrotenrath@omm.com | 12/14/2023 9:01:09 PM | SENT |
| Dianne Adams | | dadams@dacusfirm.com | 12/14/2023 9:01:09 PM | SENT |

Associated Case Party: NOVARTIS AG

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Ross Galin | | rgalin@omm.com | 12/14/2023 9:01:09 PM | SENT |
| Danny S.Ashby | | dashby@omm.com | 12/14/2023 9:01:09 PM | SENT |
| Meredith N.Garagiola | | mgaragiola@omm.com | 12/14/2023 9:01:09 PM | SENT |
| Deron Dacus | | ddacus@dacusfirm.com | 12/14/2023 9:01:09 PM | SENT |
| Megan Whisler | | mwhisler@omm.com | 12/14/2023 9:01:09 PM | SENT |

**APP57**

Copy from re:SearchTX

FILE COPY



**CHIEF JUSTICE**
SCOTT E. STEVENS

**JUSTICES**
CHARLES VAN CLEEF
JEFF RAMBIN

# Court of Appeals
### Sixth Appellate District
### State of Texas

**CLERK**
DEBRA K. AUTREY

BI-STATE JUSTICE BUILDING
100 NORTH STATE LINE AVENUE #20
TEXARKANA, TEXAS 75501
(903) 798-3046

Friday, March 1, 2024

Sam F. Baxter
McKool Smith, PC
104 E Houston St, Ste 300
Marshall, TX 75670
* DELIVERED VIA E-MAIL *

Megan Whisler
O'Melveny & Myers LLP
2801 N Harwood St, Ste 1600
Dallas, TX 75201
* DELIVERED VIA E-MAIL *

Danny S. Ashby
O'Melveny & Myers LLP
2801 N Harwood St, Ste 1600
Dallas, TX 75201
* DELIVERED VIA E-MAIL *

Deron R. Dacus
The Dacus Firm, PC
821 ESE Loop 323, Ste 430
Tyler, TX 75701
* DELIVERED VIA E-MAIL *

W. Mark Lanier
The Lanier Law Firm
10940 W Sam Houston Pkwy N, Ste 100
Houston, TX 77064
* DELIVERED VIA E-MAIL *

Jonathan Wilkerson
The Lanier Law Firm
10940 W Sam Houston Parkway N, Ste 100
Houston, TX 77064
* DELIVERED VIA E-MAIL *

Meredith N. Garagiola
O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, DC 20006
* DELIVERED VIA E-MAIL *

Jessica Weltge
Office of the Attorney General of Texas
P O Box 12548, Capitol Station
Austin, TX 78711-2548
* DELIVERED VIA E-MAIL *

Jennifer Truelove
McKool Smith, PC
104 E Houston St, Ste 300
Marshall, TX 75670
* DELIVERED VIA E-MAIL *

Zeke DeRose III
The Lanier Law Firm
10940 W Sam Houston Pkwy N, Ste 100
Houston, TX 77064
* DELIVERED VIA E-MAIL *

Jordan Underhill
Office of Attorney General of Texas
P O Box 12548, Capitol Station
Austin, TX 78711-2548
* DELIVERED VIA E-MAIL *

Ross B. Galin
O'Melveny & Myers LLP
7 Time Square
New York, NY 10036
* DELIVERED VIA E-MAIL *

Jonathan Bonilla
Office of the Attorney General of Texas
P O Box 12548, Capitol Station
Austin, TX 78711
* DELIVERED VIA E-MAIL *

**APP58**

**RE**:      Appellate Case Number:      06-24-00005-CV
              Trial Court Case Number:     23-0276

**Style:**  In re Novartis Pharmaceuticals Corporation

The Court entered its order this date in the referenced proceeding whereby Relator's Petition for Writ of Mandamus was **DENIED**.

A true copy of this Court's Opinion and Judgment is enclosed.

                    Respectfully submitted,

                    **Debra K. Autrey, Clerk**

                    By: Kim Robinson, Deputy Clerk

cc:      Hon. Brad Morin, Judge, Respondent (DELIVERED VIA E-MAIL)

**APP59**



**In the**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-24-00005-CV
_____

IN RE NOVARTIS PHARMACEUTICALS CORPORATION

Original Mandamus Proceeding

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

MEMORANDUM OPINION

Relator Novartis Pharmaceuticals Corporation has filed a petition for a writ of mandamus seeking to dismiss a lawsuit filed in Harrison County under the Texas Medicaid Fraud Prevention Act (TMFPA)[1] arguing both that (1) the real party in interest, Health Selection Group, LLC (HSG), does not have standing to maintain this lawsuit and (2) the TMFPA's *qui tam* provisions are unconstitutional under the Texas Constitution.

The trial court denied Novartis's plea to the jurisdiction and motion to dismiss pursuant to Rule 91a of the Texas Rules of Civil Procedure, which sought dismissal of HSG's case on these two bases. Because we find no abuse of discretion in the trial court's denial of relief under Rule 91a of the Texas Rules of Civil Procedure, we deny the petition.[2]

## I.    Standard for Mandamus

"Mandamus is an extraordinary remedy requiring the relator to show that (1) the trial court abused its discretion and (2) the relator lacks an adequate remedy on appeal." *In re USAA Gen. Indem. Co.*, 624 S.W.3d 782, 787 (Tex. 2021) (orig. proceeding) (citing *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding)). "Mandamus relief is only appropriate when the relators have established that only one outcome in the trial court was permissible under the law." *In re Murrin Bros. 1885, Ltd.*, 603 S.W.3d 53, 56 (Tex. 2019) (orig. proceeding). Mandamus relief may be available when a trial court denies a Rule 91a motion to

---

[1]Act of May 26, 1995, 74th Leg., R.S., ch. 824, 1995 Tex. Gen. Laws 4202 (amended 1997, 2005, 2011, 2015, 2023) (current version at TEX. HUM. RES. CODE §§ 36.001–.132). The TMFPA was amended effective September 1, 2023, and it is now known as the Texas Health Care Program Fraud Prevention Act. Act of April 3, 2023, 88th Leg., R.S., ch. 273, §§ 2–15, 2023 Tex. Sess. Law Serv. 585, 585–89 (codified at TEX. HUM. RES. CODE §§ 36.001–.132). Novartis brings this action under a prior version of the act, the TMFPA.

[2]In conjunction with the petition for a writ of mandamus, Novartis filed a motion for a temporary stay of the trial court's proceedings. Because we deny the petition, that motion is also denied.

2

dismiss. *See In re Farmers Tex. Cnty. Mut. Ins. Co.*, 621 S.W.3d 261, 266 (Tex. 2021) (orig. proceeding) (recognizing "[m]andamus relief is appropriate when the trial court abuses its discretion in denying a Rule 91a motion to dismiss"); *see also In re Shire PLC*, 633 S.W.3d 1, 11 (Tex. App.—Texarkana 2021, orig. proceeding).

"When reviewing matters committed to a trial court's discretion, an appellate court may not substitute its own judgment for the trial court's judgment." *In re Nitla S.A. de C.V.*, 92 S.W.3d 419, 422 (Tex. 2002) (per curiam) (orig. proceeding) (citing *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding)). As a result, we may not "set aside the trial court's [order] unless it is clear from the record that the trial court could only reach one decision." *Id.*

## II.    Conclusion

Having examined and fully considered the mandamus petition and record, the responses, the reply, and the applicable law, the Court is of the opinion that the mandamus petition should be denied.

Scott E. Stevens
Chief Justice

Date Submitted:     February 29, 2024
Date Decided:       March 1, 2024

3

APP62



# Court of Appeals
# Sixth Appellate District of Texas

## J U D G M E N T

In re Novartis Pharmaceuticals Corporation

No. 06-24-00005-CV

Original Mandamus Proceeding

Panel consists of Chief Justice Stevens and Justices van Cleef and Rambin. Memorandum Opinion delivered by Chief Justice Stevens.

As stated in the Court's opinion of this date, we find that Relator is not entitled to the relief sought. Therefore, we deny the petition.

RENDERED MARCH 1, 2024
BY ORDER OF THE COURT
SCOTT E. STEVENS
CHIEF JUSTICE

ATTEST:
Debra K. Autrey, Clerk

> Vernon's Texas Statutes and Codes Annotated
>   Constitution of the State of Texas 1876 (Refs & Annos)
>     Article I. Bill of Rights (Refs & Annos)

Vernon's Ann.Texas Const. Art. 1, § 13

§ 13. Excessive bail or fines; cruel or unusual punishment; open courts; remedy by due course of law

Currentness

Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted. All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law.

**Credits**
Adopted Feb. 15, 1876.

Vernon's Ann. Texas Const. Art. 1, § 13, TX CONST Art. 1, § 13
Current through the end of the 2023 Regular, Second, Third and Fourth Called Sessions of the 88th Legislature, and the Nov. 7, 2023 general election.

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Constitution of the State of Texas 1876 (Refs & Annos)
    Article II. The Powers of Government

Vernon's Ann.Texas Const. Art. 2, § 1

§ 1. Separation of powers of government among three departments

Currentness

The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: those which are Legislative to one, those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

**Credits**
Adopted Feb. 15, 1876.

Vernon's Ann. Texas Const. Art. 2, § 1, TX CONST Art. 2, § 1
Current through the end of the 2023 Regular, Second, Third and Fourth Called Sessions of the 88th Legislature, and the Nov. 7, 2023 general election.

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Constitution of the State of Texas 1876 (Refs & Annos)
    Article IV. Executive Department

Vernon's Ann.Texas Const. Art. 4, § 22

§ 22. Attorney General

Currentness

The Attorney General shall represent the State in all suits and pleas in the Supreme Court of the State in which the State may be a party, and shall especially inquire into the charter rights of all private corporations, and from time to time, in the name of the State, take such action in the courts as may be proper and necessary to prevent any private corporation from exercising any power or demanding or collecting any species of taxes, tolls, freight or wharfage not authorized by law. He shall, whenever sufficient cause exists, seek a judicial forfeiture of such charters, unless otherwise expressly directed by law, and give legal advice in writing to the Governor and other executive officers, when requested by them, and perform such other duties as may be required by law.

**Credits**
Adopted Feb. 15, 1876. Amended Nov. 3, 1936; Nov. 2, 1954; Nov. 7, 1972; Nov. 2, 1999.

Vernon's Ann. Texas Const. Art. 4, § 22, TX CONST Art. 4, § 22
Current through the end of the 2023 Regular, Second, Third and Fourth Called Sessions of the 88th Legislature, and the Nov. 7, 2023 general election.

**End of Document** <span style="float:right">© 2024 Thomson Reuters. No claim to original U.S. Government Works.</span>

Vernon's Texas Statutes and Codes Annotated
  Constitution of the State of Texas 1876 (Refs & Annos)
    Article V. Judicial Department

Vernon's Ann.Texas Const. Art. 5, § 21

§ 21. County attorneys; district attorneys

Currentness

A County Attorney, for counties in which there is not a resident Criminal District Attorney, shall be elected by the qualified voters of each county, who shall be commissioned by the Governor, and hold his office for the term of four years. In case of vacancy the Commissioners Court of the county shall have the power to appoint a County Attorney until the next general election. The County Attorneys shall represent the State in all cases in the District and inferior courts in their respective counties; but if any county shall be included in a district in which there shall be a District Attorney, the respective duties of District Attorneys and County Attorneys shall in such counties be regulated by the Legislature. The Legislature may provide for the election of District Attorneys in such districts, as may be deemed necessary, and make provision for the compensation of District Attorneys and County Attorneys. District Attorneys shall hold office for a term of four years, and until their successors have qualified.

**Credits**
Adopted Feb. 15, 1876. Amended Nov. 2, 1954.

Vernon's Ann. Texas Const. Art. 5, § 21, TX CONST Art. 5, § 21
Current through the end of the 2023 Regular, Second, Third and Fourth Called Sessions of the 88th Legislature, and the Nov. 7, 2023 general election.

End of Document

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
    Human Resources Code (Refs & Annos)
        Title 2. Human Services and Protective Services in General
            Subtitle C. Assistance Programs
                Chapter 36. Health Care Program Fraud Prevention (Refs & Annos)
                    Subchapter C. Action by Private Persons

V.T.C.A., Human Resources Code § 36.101

§ 36.101. Action by Private Person Authorized

Currentness

(a) A person may bring a civil action for a violation of Section 36.002 for the person and for the state. The action shall be brought in the name of the person and of the state.

(b) In an action brought under this subchapter, a person who violates Section 36.002 is liable as provided by Section 36.052.

**Credits**
Added by Acts 1997, 75th Leg., ch. 1153, § 4.08, eff. Sept. 1, 1997.

V. T. C. A., Human Resources Code § 36.101, TX HUM RES § 36.101
Current through the end of the 2023 Regular, Second, Third and Fourth Called Sessions of the 88th Legislature, and the Nov. 7, 2023 general election.

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
   Human Resources Code (Refs & Annos)
      Title 2. Human Services and Protective Services in General
         Subtitle C. Assistance Programs
            Chapter 36. Health Care Program Fraud Prevention (Refs & Annos)
               Subchapter C. Action by Private Persons

V.T.C.A., Human Resources Code § 36.102

§ 36.102. Initiation of Action; Consent Required for Dismissal

Effective: September 1, 2019
Currentness

(a) A person bringing an action under this subchapter shall serve a copy of the petition and a written disclosure of substantially all material evidence and information the person possesses on the attorney general in compliance with the Texas Rules of Civil Procedure.

(b) The petition shall be filed in camera and, except as provided by Subsection (c-1) or (d), shall remain under seal until at least the 180th day after the date the petition is filed or the date on which the state elects to intervene, whichever is earlier. The petition may not be served on the defendant until the court orders service on the defendant.

(c) The state may elect to intervene and proceed with the action not later than the 180th day after the date the attorney general receives the petition and the material evidence and information.

(c-1) At the time the state intervenes, the attorney general may file a motion with the court requesting that the petition remain under seal for an extended period.

(d) The state may, for good cause shown, move the court to extend the 180-day deadline under Subsection (b) or (c). A motion under this subsection may be supported by affidavits or other submissions in camera.

(e) An action under this subchapter may be dismissed only if the court and the attorney general consent in writing to the dismissal and state their reasons for consenting.

**Credits**
Added by Acts 1997, 75th Leg., ch. 1153, § 4.08, eff. Sept. 1, 1997. Amended by Acts 2005, 79th Leg., ch. 806, § 10, eff. Sept. 1, 2005; Acts 2019, 86th Leg., ch. 97 (H.B. 2004), §§ 1, 2, eff. Sept. 1, 2019.

V. T. C. A., Human Resources Code § 36.102, TX HUM RES § 36.102
Current through the end of the 2023 Regular, Second, Third and Fourth Called Sessions of the 88th Legislature, and the Nov. 7, 2023 general election.

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Human Resources Code (Refs & Annos)
    Title 2. Human Services and Protective Services in General
      Subtitle C. Assistance Programs
        Chapter 36. Health Care Program Fraud Prevention (Refs & Annos)
          Subchapter C. Action by Private Persons

V.T.C.A., Human Resources Code § 36.104

§ 36.104. State Decision; Continuation of Action

Effective: September 1, 2013
Currentness

(a) Not later than the last day of the period prescribed by Section 36.102(c) or an extension of that period as provided by Section 36.102(d), the state shall:

  (1) proceed with the action; or

  (2) notify the court that the state declines to take over the action.

(b) If the state declines to take over the action, the person bringing the action may proceed without the state's participation. A person proceeding under this subsection may recover for an unlawful act for a period of up to six years before the date the lawsuit was filed, or for a period beginning when the unlawful act occurred until up to three years from the date the state knows or reasonably should have known facts material to the unlawful act, whichever of these two periods is longer, regardless of whether the unlawful act occurred more than six years before the date the lawsuit was filed. Notwithstanding the preceding sentence, in no event shall a person proceeding under this subsection recover for an unlawful act that occurred more than 10 years before the date the lawsuit was filed.

(b-1) On request by the state, the state is entitled to be served with copies of all pleadings filed in the action and be provided at the state's expense with copies of all deposition transcripts. If the person bringing the action proceeds without the state's participation, the court, without limiting the status and right of that person, may permit the state to intervene at a later date on a showing of good cause.

**Credits**
Added by Acts 1997, 75th Leg., ch. 1153, § 4.08, eff. Sept. 1, 1997. Amended by Acts 2005, 79th Leg., ch. 806, § 12, eff. Sept. 1, 2005; Acts 2007, 80th Leg., ch. 29, §§ 3, 4, eff. May 4, 2007; Acts 2013, 83rd Leg., ch. 572 (S.B. 746), § 2, eff. Sept. 1, 2013.

V. T. C. A., Human Resources Code § 36.104, TX HUM RES § 36.104
Current through the end of the 2023 Regular, Second, Third and Fourth Called Sessions of the 88th Legislature, and the Nov. 7, 2023 general election.

                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

 © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
    Human Resources Code (Refs & Annos)
        Title 2. Human Services and Protective Services in General
            Subtitle C. Assistance Programs
                Chapter 36. Health Care Program Fraud Prevention (Refs & Annos)
                    Subchapter C. Action by Private Persons

V.T.C.A., Human Resources Code § 36.107

§ 36.107. Rights of Parties if State Continues Action

Currentness

(a) If the state proceeds with the action, the state has the primary responsibility for prosecuting the action and is not bound by an act of the person bringing the action. The person bringing the action has the right to continue as a party to the action, subject to the limitations set forth by this section.

(b) The state may dismiss the action notwithstanding the objections of the person bringing the action if:

   (1) the attorney general notifies the person that the state has filed a motion to dismiss; and

   (2) the court provides the person with an opportunity for a hearing on the motion.

(c) The state may settle the action with the defendant notwithstanding the objections of the person bringing the action if the court determines, after a hearing, that the proposed settlement is fair, adequate, and reasonable under all the circumstances. On a showing of good cause, the hearing may be held in camera.

(d) On a showing by the state that unrestricted participation during the course of the litigation by the person bringing the action would interfere with or unduly delay the state's prosecution of the case, or would be repetitious, irrelevant, or for purposes of harassment, the court may impose limitations on the person's participation, including:

   (1) limiting the number of witnesses the person may call;

   (2) limiting the length of the testimony of witnesses called by the person;

   (3) limiting the person's cross-examination of witnesses; or

   (4) otherwise limiting the participation by the person in the litigation.

**APP72**  1

(e) On a showing by the defendant that unrestricted participation during the course of the litigation by the person bringing the action would be for purposes of harassment or would cause the defendant undue burden or unnecessary expense, the court may limit the participation by the person in the litigation.

**Credits**

Added by Acts 1997, 75th Leg., ch. 1153, § 4.08, eff. Sept. 1, 1997.

V. T. C. A., Human Resources Code § 36.107, TX HUM RES § 36.107

Current through the end of the 2023 Regular, Second, Third and Fourth Called Sessions of the 88th Legislature, and the Nov. 7, 2023 general election.

---

End of Document

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Human Resources Code (Refs & Annos)
    Title 2. Human Services and Protective Services in General
      Subtitle C. Assistance Programs
        Chapter 36. Health Care Program Fraud Prevention (Refs & Annos)
          Subchapter C. Action by Private Persons

V.T.C.A., Human Resources Code § 36.113

§ 36.113. Certain Actions Barred

Effective: September 1, 2013
Currentness

(a) A person may not bring an action under this subchapter that is based on allegations or transactions that are the subject of a civil suit or an administrative penalty proceeding in which the state is already a party.

(b) The court shall dismiss an action or claim under this subchapter, unless opposed by the attorney general, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed in a Texas or federal criminal or civil hearing in which the state or an agent of the state is a party, in a Texas legislative or administrative report, or other Texas hearing, audit, or investigation, or from the news media, unless the person bringing the action is an original source of the information. In this subsection, "original source" means an individual who:

(1) prior to a public disclosure under this subsection, has voluntarily disclosed to the state the information on which allegations or transactions in a claim are based; or

(2) has knowledge that is independent of and materially adds to the publicly disclosed allegation or transactions and who has voluntarily provided the information to the state before filing an action under this subchapter.

(c) Repealed by Acts 2013, 83rd Leg., ch. 572 (S.B. 746), § 6.

**Credits**
Added by Acts 1997, 75th Leg., ch. 1153, § 4.08, eff. Sept. 1, 1997. Amended by Acts 2011, 82nd Leg., ch. 398 (S.B. 544), § 5, eff. Sept. 1, 2011; Acts 2013, 83rd Leg., ch. 572 (S.B. 746), §§ 4, 6, eff. Sept. 1, 2013.

V. T. C. A., Human Resources Code § 36.113, TX HUM RES § 36.113
Current through the end of the 2023 Regular, Second, Third and Fourth Called Sessions of the 88th Legislature, and the Nov. 7, 2023 general election.

WESTLAW © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Human Resources Code (Refs & Annos)
    Title 2. Human Services and Protective Services in General
      Subtitle C. Assistance Programs
        Chapter 36. Health Care Program Fraud Prevention (Refs & Annos)
          Subchapter B. Action by Attorney General (Refs & Annos)

This section has been updated. Click here for the updated version.

V.T.C.A., Human Resources Code § 36.052

§ 36.052. Civil Remedies

Effective: April 2, 2015 to August 31, 2023

(a) Except as provided by Subsection (c), a person who commits an unlawful act is liable to the state for:

(1) the amount of any payment or the value of any monetary or in-kind benefit provided under the Medicaid program, directly or indirectly, as a result of the unlawful act, including any payment made to a third party;

(2) interest on the amount of the payment or the value of the benefit described by Subdivision (1) at the prejudgment interest rate in effect on the day the payment or benefit was received or paid, for the period from the date the benefit was received or paid to the date that the state recovers the amount of the payment or value of the benefit;

(3) a civil penalty of:

(A) not less than $5,500 or the minimum amount imposed as provided by 31 U.S.C. Section 3729(a), if that amount exceeds $5,500, and not more than $15,000 or the maximum amount imposed as provided by 31 U.S.C. Section 3729(a), if that amount exceeds $15,000, for each unlawful act committed by the person that results in injury to an elderly person, as defined by Section 48.002(a)(1), a person with a disability, as defined by Section 48.002(a)(8)(A), or a person younger than 18 years of age; or

(B) not less than $5,500 or the minimum amount imposed as provided by 31 U.S.C. Section 3729(a), if that amount exceeds $5,500, and not more than $11,000 or the maximum amount imposed as provided by 31 U.S.C. Section 3729(a), if that amount exceeds $11,000, for each unlawful act committed by the person that does not result in injury to a person described by Paragraph (A); and

(4) two times the amount of the payment or the value of the benefit described by Subdivision (1).

(b) In determining the amount of the civil penalty described by Subsection (a)(3), the trier of fact shall consider:

(1) whether the person has previously violated the provisions of this chapter;

(2) the seriousness of the unlawful act committed by the person, including the nature, circumstances, extent, and gravity of the unlawful act;

(3) whether the health and safety of the public or an individual was threatened by the unlawful act;

(4) whether the person acted in bad faith when the person engaged in the conduct that formed the basis of the unlawful act; and

(5) the amount necessary to deter future unlawful acts.

(c) The trier of fact may assess a total of not more than two times the amount of a payment or the value of a benefit described by Subsection (a)(1) if the trier of fact finds that:

(1) the person furnished the attorney general with all information known to the person about the unlawful act not later than the 30th day after the date on which the person first obtained the information; and

(2) at the time the person furnished all the information to the attorney general, the attorney general had not yet begun an investigation under this chapter.

(d) An action under this section shall be brought in Travis County or in a county in which any part of the unlawful act occurred.

(e) The attorney general may:

(1) bring an action for civil remedies under this section together with a suit for injunctive relief under Section 36.051; or

(2) institute an action for civil remedies independently of an action for injunctive relief.

**Credits**
Added by Acts 1995, 74th Leg., ch. 824, § 1, eff. Sept. 1, 1995. Redesignated from V.T.C.A., Human Resources Code § 36.004 by Acts 1997, 75th Leg., ch. 1153, § 4.01(b), eff. Sept. 1, 1997. Amended by Acts 1997, 75th Leg., ch. 1153, § 4.04, eff. Sept. 1, 1997; Acts 2005, 79th Leg., ch. 806, § 7, eff. Sept. 1, 2005; Acts 2007, 80th Leg., ch. 29, § 1, eff. May 4, 2007; Acts 2011, 82nd Leg., ch. 398 (S.B. 544), § 3, eff. Sept. 1, 2011; Acts 2015, 84th Leg., ch. 1 (S.B. 219), § 4.183, eff. April 2, 2015.

V. T. C. A., Human Resources Code § 36.052, TX HUM RES § 36.052
Current through the end of the 2023 Regular, Second, Third and Fourth Called Sessions of the 88th Legislature, and the Nov. 7, 2023 general election.

Vernon's Texas Statutes and Codes Annotated
    Human Resources Code (Refs & Annos)
        Title 2. Human Services and Protective Services in General
            Subtitle C. Assistance Programs
                Chapter 36. Medicaid Fraud Prevention (Refs & Annos)
                    Subchapter C. Action by Private Persons

This section has been updated. Click here for the updated version.

V.T.C.A., Human Resources Code § 36.104

§ 36.104. Continuation or Dismissal of Action Based on State Decision

Effective: [See Text Amendments] to August 31, 2005

(a) Not later than the last day of the period prescribed by Section 36.102(c), the state shall:

(1) proceed with the action; or

(2) notify the court that the state declines to take over the action.

(b) If the state declines to take over the action, the court shall dismiss the action.

**Credits**
Added by Acts 1997, 75th Leg., ch. 1153, § 4.08, eff. Sept. 1, 1997.

V. T. C. A., Human Resources Code § 36.104, TX HUM RES § 36.104
Current through the end of the 2023 Regular, Second, Third and Fourth Called Sessions of the 88th Legislature, and the Nov. 7, 2023 general election.

---

**End of Document**                                       © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Human Resources Code (Refs & Annos)
    Title 2. Human Services and Protective Services in General
      Subtitle C. Assistance Programs
        Chapter 36. Health Care Program Fraud Prevention (Refs & Annos)
          Subchapter C. Action by Private Persons

This section has been updated. Click here for the updated version.

V.T.C.A., Human Resources Code § 36.104

§ 36.104. State Decision; Continuation of Action

Effective: May 4, 2007 to August 31, 2013

(a) Not later than the last day of the period prescribed by Section 36.102(c) or an extension of that period as provided by Section 36.102(d), the state shall:

  (1) proceed with the action; or

  (2) notify the court that the state declines to take over the action.

(b) If the state declines to take over the action, the person bringing the action may proceed without the state's participation. On request by the state, the state is entitled to be served with copies of all pleadings filed in the action and be provided at the state's expense with copies of all deposition transcripts. If the person bringing the action proceeds without the state's participation, the court, without limiting the status and right of that person, may permit the state to intervene at a later date on a showing of good cause.

**Credits**
Added by Acts 1997, 75th Leg., ch. 1153, § 4.08, eff. Sept. 1, 1997. Amended by Acts 2005, 79th Leg., ch. 806, § 12, eff. Sept. 1, 2005; Acts 2007, 80th Leg., ch. 29, §§ 3, 4, eff. May 4, 2007.

V. T. C. A., Human Resources Code § 36.104, TX HUM RES § 36.104
Current through the end of the 2023 Regular, Second, Third and Fourth Called Sessions of the 88th Legislature, and the Nov. 7, 2023 general election.

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below:

Court Services on behalf of Danny Ashby
Bar No. 1370960
ommsvc2@omm.com
Envelope ID: 86047088
Filing Code Description: Petition
Filing Description: PETITION FOR WRIT OF MANDAMUS
Status as of 3/28/2024 8:16 AM CST

Associated Case Party: Novartis Pharmaceuticals Corporation

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Joshua Goode | | jgoode@omm.com | 3/27/2024 7:27:20 PM | SENT |
| Deron R.Dacus | | ddacus@dacusfirm.com | 3/27/2024 7:27:20 PM | SENT |
| Anton Metlitsky | | ametlitsky@omm.com | 3/27/2024 7:27:20 PM | SENT |
| Ross Galin | | rgalin@omm.com | 3/27/2024 7:27:20 PM | SENT |
| Danny S.Ashby | | dashby@omm.com | 3/27/2024 7:27:20 PM | SENT |
| Meredith N.Garagiola | | mgaragiola@omm.com | 3/27/2024 7:27:20 PM | SENT |

Associated Case Party: State of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Lynne Kurtz-Citrin | 24081425 | lynne.kurtz-citrin@oag.texas.gov | 3/27/2024 7:27:20 PM | SENT |
| Jonathan Bonilla | 24073939 | Jonathan.Bonilla@oag.texas.gov | 3/27/2024 7:27:20 PM | SENT |
| Jordan Underhill | 24102586 | jordan.underhill@oag.texas.gov | 3/27/2024 7:27:20 PM | SENT |

Associated Case Party: Health Selection Group, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jonathan Wilkerson | 24050162 | jonathan.wilkerson@lanierlawfirm.com | 3/27/2024 7:27:20 PM | SENT |
| Zeke DeRose | 24057421 | zeke.derose@lanierlawfirm.com | 3/27/2024 7:27:20 PM | SENT |
| W. MarkLanier | | WML@LanierLawFirm.com | 3/27/2024 7:27:20 PM | SENT |
| Radu A.Lelutiu | | rlelutiu@mckoolsmith.com | 3/27/2024 7:27:20 PM | SENT |
| Eric B.Halper | | ehalper@mckoolsmith.com | 3/27/2024 7:27:20 PM | SENT |
| Alex Jerome Brown | 24026964 | alex.brown@lanierlawfirm.com | 3/27/2024 7:27:20 PM | SENT |
| Jennifer Leigh Truelove | 24012906 | jtruelove@mckoolsmith.com | 3/27/2024 7:27:20 PM | SENT |
| Samuel F. Baxter | 1938000 | sbaxter@mckoolsmith.com | 3/27/2024 7:27:20 PM | SENT |

FILED
24-0239
7/17/2024 5:08 PM
tex-89894584
SUPREME COURT OF TEXAS
BLAKE A. HAWTHORNE, CLERK

No. 24-0239

---

IN THE SUPREME COURT OF TEXAS

---

IN RE NOVARTIS PHARMACEUTICALS CORPORATION,

*Relator*

---

Original Mandamus Proceeding
From the 71st District Court in Harrison County
Cause 23-0276, The Honorable Brad Morin, Presiding

---

**COMBINED RESPONSE TO PETITION FOR WRIT OF MANDAMUS AND MOTION FOR TEMPORARY STAY**

---

Samuel F. Baxter
Jennifer L. Truelove
McKool Smith, P.C.
104 East Houston, Suite 300
Marshall, Texas 75670
(903) 923-9000
Fax: (903) 923-9099

Eric B. Halper (PHV to be filed)
Radu A. Lelutiu (PHV to be filed)
McKool Smith, P.C.
1301 Avenue of the Americas
New York, New York 10019
(212) 402-9400
Fax: (212) 402-9444

Mark Lanier
Zeke DeRose
Jonathan Wilkerson
THE LANIER FIRM
10940 W. Sam Houston Pkwy N, Suite 100
Houston, TX 77064
(800) 723-3216
Fax: (713) 659-2204

*Attorneys for Plaintiff and Real-Party-in-Interest Health Selection Group, LLC*

4894-1897-6977

APP080

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................1

RELEVANT STATUTORY BACKGROUND ...................................................2

ARGUMENT ........................................................................................................3

    I.      THE PETITION SHOULD BE DENIED BECAUSE NOVARTIS HAS AN ADEQUATE REMEDY ON APPEAL. ........................................................................................4

    II.    THE PETITION SHOULD BE DENIED BECAUSE THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING NOVARTIS'S 91A MOTION. ........................................4

        A.    HSG HAS STANDING TO PURSUE CLAIMS ON BEHALF OF THE STATE. ...............................................5

        B.    THE TMFPA IS CONSTITUTIONAL. ................................10

    III.   THERE IS NO BASIS FOR A STAY. ................................................15

CONCLUSION ....................................................................................................15

4894-1897-6977

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bickham v. Dallas Cnty.*,
   612 S.W.3d 663 (Tex. App.—Dallas 2020, pet. denied)....................................11

*Bittakis v. City of El Paso*,
   480 F. Supp. 2d 895 (W.D. Tex. 2007) ..............................................................11

*Brown v. De La Cruz*,
   156 S.W.3d 560 (Tex. 2004) .......................................................................10, 11

*Burkett v. City of El Paso*,
   513 F. Supp. 2d 800 (W.D. Tex. 2007) ..............................................................11

*In Interest of C.J.N.-S*,
   540 S.W.3d 589 (Tex. 2018) ...............................................................................8

*Camp v. Gulf Prod. Co.*,
   61 S.W.2d 773 (Tex. 1933)................................................................................12

*Child. of the Kingdom v. Cent. Appraisal Dist. of Taylor Cnty.*,
   674 S.W.3d 407 (Tex. App.—Eastland 2023, pet. denied)..............................8, 9

*El Paso Elec. Co. v. Tex. Dep't of Ins.*,
   937 S.W.2d 432 (Tex. 1996) ..............................................................................12

*Everett v. TK-Taito, L.L.C.*,
   178 S.W.3d 844 (Tex. App.—Fort Worth 2005, no pet.)....................................9

*Ferreira v. Butler*,
   575 S.W.3d 331 (Tex. 2019) ................................................................................8

*Food & Drug Admin. v. All. for Hippocratic Med.*,
   602 U.S. 367 (2024)..............................................................................................7

*In re Gibson*,
   533 S.W.3d 916 (Tex. App.—Texarkana 2017, no pet.)..................................3, 4

4894-1897-6977

**APP082**

*Heckman v. Williamson Cty.*,
369 S.W.3d 137 (Tex. 2012) ...................................................................7

*Hernandez v. Truck Ins. Exch.*,
553 S.W.3d 689 (Tex. App.—Fort Worth 2018, pet. denied)...........................10

*Hill County v. Sheppard*,
178 S.W.2d 261 (Tex. 1944) .................................................................12

*Marauder Corp. v. Beall*,
301 S.W.3d 817 (Tex. App.—Dallas 2009, no pet.) ..................................8, 9, 10

*Maud v. Terrell*,
200 S.W. 375 (Tex. 1918)...................................................................11, 12

*Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*,
236 S.W.3d 765 (Tex. 2007) ...................................................................8

*Nephrology Leaders & Assocs. v. Am. Renal Assocs., LLC*,
573 S.W.3d 912 (Tex. App.—Houston [1st Dist.] 2019, no pet.)........................9

*Pike v. Tex. EMC Mgmt., LLC*,
610 S.W.3d 763 (Tex. 2020) ...................................................................5

*United States, ex rel. Polansky v. Executive Health Res., Inc.*,
599 U.S. 419 (2023)...........................................................................14

*Riley v. St. Luke's Episcopal Hosp.*,
252 F.3d 749 (5th Cir. 2001) ................................................................14

*Sankaran v. VFS Services (USA) Inc.*,
2023 WL 5543308 (Tex. App.—Houston [14th Dist.] Aug. 29,
2023, no pet. h.) .............................................................................11

*Scribner v. Treger*,
2022 WL 714654 (Tex. App.—Fort Worth Mar. 10, 2022, no pet.)...................11

*In re Shire PLC*,
633 S.W.3d 1 (Tex. App.—Texarkana 2021, orig. proceeding
[mand. denied]) .........................................................................1, 3, 5

iv

*In re Sullivan*,
   157 S.W.3d 911 (Tex. App.—Houston [14th Dist.] 2005, orig.
   proceeding) ..........................................................................................8, 9

*In re Van Waters & Rogers, Inc.*,
   145 S.W.3d 203 (Tex. 2004) .......................................................................4

*Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*,
   529 U.S. 765 (2000)............................................................................5, 6, 7

*In re Xerox Corp.*,
   555 S.W.3d 518 (Tex. 2018) .................................................................1, 6

*Zaatari v. City of Austin*,
   615 S.W.3d 172 (Tex. App.—Austin 2019, pet. denied) ...................................8

v

4894-1897-6977

**STATEMENT OF THE CASE**

**Nature of the case:** This is a case filed by Health Selection Group, LLC ("HSG") on behalf of the State of Texas (the "State" or "Texas") under the Texas *qui tam* statute, the Texas Health Care Program Fraud Prevention Act, fka Texas Medicaid Fraud Prevention Act ("TMFPA").[1] It concerns two illegal marketing programs employed by defendant Novartis Pharmaceuticals Corporation ("Novartis") to drive prescription for certain of its products.

On December 15, 2023, after extensive briefing and a Zoom hearing, the District Court denied Novartis's plea to jurisdiction and motion to dismiss pursuant to Rule 91a (the "91a Motion"), rejecting arguments that (i) HSG lacks standing; and (ii) the TMFPA is unconstitutional. The District Court declined to certify an interlocutory appeal pursuant to Texas Rule of Civil Procedure 168.

Novartis thereafter filed a mandamus petition and motion to stay with the Court of Appeals for the Sixth Judicial District. After briefing, the Court of Appeals denied mandamus. This Petition ("Petition" or "Pet.") and Motion for Temporary Stay ("Stay Motion") followed.

**Respondent:** The Honorable Brad Morin, Presiding Judge of the 71st

---

[1] In the briefing below and the Petition, the parties referred to the statute using its previous acronym—the TMFPA. For consistency, HSG does the same here.

4894-1897-6977

Judicial District Court, Harrison County; Case No. 23-0276.

**Rulings at issue:** The District Court's order dated December 15, 2023.

**Relief sought:** An order denying Novartis's Petition and Stay Motion.

## STATEMENT REGARDING ORAL ARGUMENT

Because, on its face, the Petition lacks merit, HSG does not believe that oral argument is necessary. If the Court nevertheless determines that oral argument would be helpful, HSG respectfully requests an opportunity to participate.

## STATEMENT OF JURISDICTION

HSG agrees that the Court has jurisdiction over the Petition, but disputes that Novartis is entitled to the extraordinary writ it has requested.

## QUESTIONS PRESENTED

1.      Whether a private citizen like HSG—who stands in the shoes of the Texas Medicaid program and is expressly authorized to enforce the TMFPA—has constitutional standing to prosecute this lawsuit on behalf and for the benefit of the State of Texas.

2.      Whether the TMFPA is constitutional.

## MANDAMUS RECORD

HSG agrees that the record presented with the Petition (cited herein using the prefix MR) includes all of the materials that are pertinent here.

4894-1897-6977

# INTRODUCTION

The TMFPA "is a powerful tool for targeting fraud against the Texas Medicaid program and securing the program's integrity. The statute imbues the attorney general with broad investigative and enforcement authority and—via *qui tam* provisions—*deputizes private citizens to pursue a TMFPA action on the government's behalf.*" *In re Xerox Corp.*, 555 S.W.3d 518, 525 (Tex. 2018).[2] Since 2000, Texas has recovered approximately $2.5 billion for taxpayers under the TMFPA. MR102. One such recovery—$42.7 million—was obtained last year in a lawsuit filed against Shire PLC, by an affiliate of HSG. *Id.*[3]

Novartis is an egregious, repeat offender of the TMFPA and the federal False Claims Act ("FCA"). MR099. Over the past 15 years, Novartis has paid nearly $1.5 billion to resolve allegations that it paid kickbacks to promote its products at taxpayers' expense. *Id.* & n.1. But rather than reform its conduct, Novartis now seeks to evade all accountability by upending well-settled law with baseless attacks. Specifically, Novartis contends that (i) whistleblowers—like HSG—lack constitutional standing to commence suit under the TMFPA; and (ii) the TMFPA violates the Texas Constitution.

---

[2] Unless otherwise indicated, emphases herein were supplied by HSG.

[3] The Petition includes veiled attacks on HSG and the merits of its claims. The Sixth Court of Appeals reviewed and rejected similar arguments in *In re Shire PLC*, 633 S.W.3d 1, 29-34 (Tex. App.—Texarkana 2021, orig. proceeding [mand. denied]).

1

The Petition fails for both procedural and substantive reasons. It fails because even if the District Court had erred, mandamus review is not warranted. And it fails because the District Court acted well within its discretion to reject Novartis's unsupportable arguments. Finally, because the Petition lacks merit, the Stay Motion should be denied.

**REFLEVANT STATUTORY BACKGROUND**

The TMFPA contains a number of provisions that are relevant here. First, it unambiguously confers standing upon "private person[s]"—aka "relators"—to file suit "for the state." Tex. Hum. Res. Code § 36.101 ("A person may bring a civil action for a violation of Section 36.002 for the person and for the state."). Second, it requires relators to go through specific steps to initiate suit and make specific disclosures to maintain it. Tex. Hum. Res. Code § 36.102(a)-(b) (requiring service of "petition and a written disclosure of substantially all material evidence" on the Office of the Attorney General ("OAG") and the sealing of the petition for period of at least 180 days). Third, it gives OAG the right to "proceed with the action" and, in the absence of intervention, authorizes the relator to "proceed without the state's participation." Tex. Hum. Res. Code § 36.104 (a)-(b). Fourth, it requires the relator to keep the State informed, if the State requires it, of developments. Tex. Hum. Res. Code § 36.104(b-1) (mandating that, if requested, the relator provide copies of all pleadings and depositions). Fifth, upon a showing of "good cause" and

2

**APP088**

notwithstanding an initial declination decision, it allows the State to intervene and assume the prosecution of the lawsuit at any time. *Id.* Sixth, it prohibits the dismissal of the action unless "the attorney general consent[s] in writing." Tex. Hum. Res. Code § 36.102(e). Finally, it provides certain parameters for how "proceeds of the action" are to be distributed between the State and the relator/"private plaintiff"— with the vast majority of the proceeds going to the State. Tex. Hum. Res. Code § 36.110.

## ARGUMENT

Mandamus is an extraordinary writ and "[a]bsent extraordinary circumstances . . . , a denial of a motion to dismiss or a plea in abatement is a ruling incident to the ordinary trial process which will not be corrected by mandamus, but by . . . the ordinary appellate process." *In re Gibson*, 533 S.W.3d 916, 920 (Tex. App.— Texarkana 2017, no pet.). "A party is entitled to a writ of mandamus when it demonstrates that the trial court abused its discretion *and* that it does not have an adequate remedy at law." *In re Shire*, 633 S.W.3d at 10 (citing *Walker v. Packer*, 827 S.W.2d 833, 840-41 (Tex. 1992)). "The failure to establish *either* element will defeat a petitioner's request for mandamus relief." *Id.* at 11.

Because Novartis cannot satisfy *either* element required to invoke this Court's mandamus jurisdiction, the Petition and Stay Motion should both be denied.

4894-1897-6977

## I. THE PETITION SHOULD BE DENIED BECAUSE NOVARTIS HAS AN ADEQUATE REMEDY ON APPEAL.

Novartis cannot show that it lacks an adequate remedy on appeal. While it asserts that "[m]andamus relief is . . . necessary to prevent the waste of time and resources" (Pet. at 13), "[a]n appellate remedy is *not* inadequate because it may involve more expense or delay than obtaining an extraordinary writ." *In re Gibson*, 533 S.W.3d at 920 (quoting *In re Lumbermen's Underwriting All.*, 421 S.W.3d 289, 295 (Tex. App.—Texarkana 2014, no pet.); *Walker*, 827 S.W.2d at 842)). Rather, "an appeal is inadequate [only] when the parties are in danger of *permanently losing substantial rights*." *In re Van Waters & Rogers, Inc.*, 145 S.W.3d 203, 211 (Tex. 2004). Indeed, "[t]he most frequent use we have made of mandamus relief involves cases in which *the very act of proceeding to trial—regardless of the outcome—would defeat the substantive right involved*." *In re Shire*, 633 S.W.3d at at 11 (quoting *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 465 (Tex. 2008) (orig. proceeding)).

Novartis has not identified *any* substantive rights—there are none—it would lose if it pursues its claims of error in due course. As such, the Petition fails out of the gate.

## II. THE PETITION SHOULD BE DENIED BECAUSE THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING NOVARTIS'S 91A MOTION.

The Petition also fails because Novartis cannot show that the District Court abused its discretion when it denied the 91a Motion. "A trial court abuses its

4894-1897-6977

APP090

discretion when it reaches a decision *so arbitrary and unreasonable* as to amount to a *clear and prejudicial error of law.*" *In re Shire*, 633 S.W.3d at 10 (quoting *Walker*, 827 S.W.2d at 839). The District Court correctly rejected Novartis's 91a Motion. But even if it erred, it clearly did not act *arbitrarily* in upholding the TMFPA—a statute that has been on the books for decades and whose constitutionality has heretofore never been questioned.

### A. HSG Has Standing to Pursue Claims on Behalf of the State.

As this Court recently noted in a case Novartis cites in its Petition (Pet. at 15), "[b]ecause Texas's test for constitutional standing parallels the federal test for Article III standing, we look to federal standing jurisprudence for guidance." *Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 776 (Tex. 2020). Under federal law, however, it has long been held constitutional for a Sovereign to assign to private citizens its right to pursue a claim in the context of a *qui tam* action.

Most relevantly here, in *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765 (2000), the U.S. Supreme Court considered, under federal law, the very question presented by Novartis's Petition: whether the FCA—the federal statute that served as the blueprint for the TMFPA—passed muster under the U.S. Constitution's Article III standing doctrine. Writing for a majority of the court (with not a single

5

justice expressing disagreement on the question relevant here),[4] Justice Scalia held that it did because "adequate basis for the relator's suit . . . is to be found in the doctrine that the assignee of a claim has standing to assert the injury in fact suffered by the assignor." *Id.* at 773. Stated differently, the "injury in fact" of the United States was sufficient to "confer standing on [the relator]." *Id.*

*Stevens* is dispositive here. Novartis nonetheless argues (Pet. at 19-21) that its holding is not controlling because (i) this Court noted in *In re Xerox* that the TMFPA is not a "damages" statute; and (ii) the U.S. Constitution and the Texas Constitution are materially different. Neither assertion passes muster.

First, Novartis's observation that the "TMFPA is not 'an action for the recovery of *damages*' that is capable of assignment" (Pet. at 19 (quoting *In re Xerox*, 555 S.W.3d at 527 n.56)) elevates form over substance. While this Court has indeed held that a lawsuit under the TMFPA is not an "action for the recovery of damages," *In re Xerox*, 555 S.W.3d at 534, nothing in *Stevens* ties the relator's standing to "*damages*" sustained by a federal program. Rather, *Stevens* ties the assignee's standing (here, HSG) to an "*injury*" suffered by the assignor (there, the United States; here, Texas) that is sought to be redressed. And here there can be no doubt

---

[4] *Stevens* was a 7-2 decision (with a concurrence by Justice Ginsburg, in which she agreed with the majority's reasoning regarding standing). Notably, however, the two dissenters (Justices Stevens and Souter) did not take issue with the majority's analysis of the issue of Article III standing.

6

that HSG (i) has alleged an "injury" to the Texas Medicaid program; and (ii) is seeking redress on behalf of the program.

Second, the differences between the U.S. Constitution and the Texas Constitution highlighted by Novartis are immaterial here. Novartis argues that, while the *Stevens* court found that a *qui tam* relator's standing is grounded in Article III's "Cases" or "Controversies" requirement, the Texas Constitution "does not include any [like] language." Pet. at 20. But, as relevant here, the Texas Constitution's Open Courts provision, which "opens the courthouse doors only *to those who have or are suffering an injury*,"[5] is functionally equivalent to the U.S. Constitution's case-or-controversy provision. *See Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024) ("To establish standing . . . a plaintiff must demonstrate (i) that she has suffered or likely will suffer *an injury in fact*, (ii) that the *injury likely was caused or will be caused by the defendant*, and (iii) that the *injury likely would be redressed by the requested judicial relief*. . . . Those specific standing requirements constitute an essential and unchanging part of the case-or-controversy requirement of Article III.") (internal citations omitted).

And, contrary to Novartis's protestations, the concept of representative standing is well recognized by Texas precedent. Parents sue on behalf of children; executors sue on behalf of estates; and insurers sue on behalf of insureds. *See*

---

[5] *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 155 (Tex. 2012)

7

APP093

*generally In Interest of C.J.N.-S*, 540 S.W.3d 589 (Tex. 2018) (holding that parents have standing to sue on behalf of children); *Ferreira v. Butler*, 575 S.W.3d 331, 334 (Tex. 2019) ("[T]he common law is clear: an executor 'stands in the shoes' of the decedent."); *Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 774 (Tex. 2007) ("[T]he insurer stands in the shoes of the insured, obtaining only those rights held by the insured against a third party").[6]

Indeed, this Court's precedent is clear that "standing may be conferred *by statute*." *Marauder Corp. v. Beall*, 301 S.W.3d 817, 820 (Tex. App.—Dallas 2009, no pet.) (citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000)). *See also Child. of the Kingdom v. Cent. Appraisal Dist. of Taylor Cnty.*, 674 S.W.3d 407, 414 (Tex. App.—Eastland 2023, pet. denied); *In re Sullivan*, 157 S.W.3d 911, 915 (Tex. App.—Houston [14th Dist.] 2005, orig. proceeding); *Zaatari v. City of Austin*, 615 S.W.3d 172, 182-83 (Tex. App.—Austin 2019, pet. denied).

And, contrary to Novartis's arguments, "[w]hen standing is conferred by statute, the common-law criteria regarding standing do[] *not* apply." *Child. of the Kingdom*, 674 S.W.3d at 414. Rather, "[i]n statutory standing cases, . . . the analysis is *a straight statutory construction of the relevant statute to determine upon whom*

---

[6] Novartis asserts that the concept of representative standing is only recognized in Texas "where the injured party with standing to sue lacks the legal authority or capacity to bring suit for their injury." Pet. at 17-18. Not true, as *Mid-Continent Insurance* demonstrates.

4894-1897-6977

*the Texas Legislature conferred standing and whether the claimant in question falls in that category.*" *In re Sullivan*, 157 S.W.3d at 915; *Marauder*, 301 S.W.3d at 820 ("The standing analysis begins and ends with the statute itself."); *Nephrology Leaders & Assocs. v. Am. Renal Assocs., LLC*, 573 S.W.3d 912, 915-16 (Tex. App.—Houston [1st Dist.] 2019, no pet.); *Everett v. TK-Taito, L.L.C.*, 178 S.W.3d 844, 850 (Tex. App.—Fort Worth 2005, no pet.) (stating that, "[w]hen standing has been statutorily conferred, the statute itself serves as the proper framework for a standing analysis").

Here, Novartis has not made a showing that HSG lacks "the right to make a claim" *under the TMFPA*, and there is no question that it does. As such, Novartis's arguments that HSG has not alleged an injury *to itself* are legally irrelevant. *Child. of the Kingdom*, 674 S.W.3d at 415 ("[The plaintiff] is not required to prove a concrete and particularized injury, as [the defendants] assert, because the common-law criteria does not apply when a statute confers such authority upon an appraisal district to bring suit. Thus, [the plaintiff] has standing to bring suit against [the defendants] for the collection of the delinquent taxes."); *Everett*, 178 S.W.3d at 850 ("To establish common law standing, a plaintiff must show a distinct injury to the plaintiff and a real controversy between the parties, which . . . will be actually determined by the judicial declaration sought. In conferring statutory standing, however, the legislature may by statute exempt litigants from proof of the 'special

9

APP095

injury' required to establish common law standing.") (internal citations omitted); *Hernandez v. Truck Ins. Exch.*, 553 S.W.3d 689, 698 (Tex. App.—Fort Worth 2018, pet. denied) ("[T]he legislature may exempt litigants from the common law injury requirement, making the statute itself the proper analytical framework to determine standing."); *Marauder*, 301 S.W.3d at 820 ("Under the statute, a person may sue for an injunction to 'prevent or restrain' a violation of the TDCA. The statute is broadly written. [The defendant] contends that [the plaintiff] lacks standing because she has no cognizable interest in any bond proceeds. The statute, however, does *not* require that she have such an interest.") (internal citations omitted).

### B. The TMFPA Is Constitutional.

Novartis's arguments that the TMFPA itself is unconstitutional fare no better. The law in Texas is settled. Consistent with the Texas Constitution, "the Legislature may grant [private citizens] standing to bring [*qui tam*] actions, but it must do so clearly." *Brown v. De La Cruz*,156 S.W.3d 560, 566 (Tex. 2004) (citing *Agey v. Am. Liberty Pipe Line Co.*, 172 S.W.32d 972, 974 (Tex. 1943)).

The Texas Supreme Court's holding in *Brown* thus plainly permits *qui tam* provisions in penalty statutes, where such private rights of action are clearly articulated. As noted above, the TMFPA is an example of a statute providing for the recovery of penalties, with a clear grant of standing for private whistleblowers to bring suit, either with or without the State's active participation, and subject to

4894-1897-6977

APP096

control by OAG. *See* Tex. Hum. Res. Code §§ 36.101, 36.104, 36.052(a)(3). The *Brown* holding affirms the legitimacy of the TMFPA as a *qui tam* statute.

Further, the holding in *Brown*—which eviscerates Novartis's arguments—has been cited repeatedly by both Texas and federal courts for the proposition that, consistent with the Texas Constitution, the Legislature can in fact grant standing for individuals to pursue actions for violations of Texas statutes. *See, e.g.*, *Burkett v. City of El Paso*, 513 F. Supp. 2d 800, 824-25 (W.D. Tex. 2007); *Bittakis v. City of El Paso*, 480 F. Supp. 2d 895, 922-23 (W.D. Tex. 2007); *Bickham v. Dallas Cnty.*, 612 S.W.3d 663, 670 (Tex. App.—Dallas 2020, pet. denied); *Sankaran v. VFS Services (USA) Inc.*, 2023 WL 5543308, at *4 (Tex. App.—Houston [14th Dist.] Aug. 29, 2023, no pet. h.); *Scribner v. Treger*, 2022 WL 714654, at *10 (Tex. App.—Fort Worth Mar. 10, 2022, no pet.).

Novartis's reliance on purportedly contrary precedent—some of it over 100 years old—is unavailing. Novartis cites (Pet. at 22-23) *Maud v. Terrell*, 200 S.W. 375, 376 (Tex. 1918), but that case supports HSG's position. *Maud* involved a statute authorizing the Texas Comptroller to appoint private individuals to collect inheritance taxes. *Id.* at 375-76. The *Maud* court held that the statute at issue was constitutional and valid. *Id.* at 377-78. After reviewing the statute, this Court found that it—similar to the TMFPA—empowered the appointed person, among other things, to: "sue for and collect" inheritance taxes; "aid in every possible way in the

4894-1897-6977

collection of such taxes[;]" and "represent the State . . . to enforce the collection" of inheritance taxes. *Id*. at 377. The court found that since "[t]hese provisions do not *unequivocally supplant* the county attorneys and the Attorney-General in their authority to prosecute the suits of the State for the recovery of the taxes" therefore the statute is constitutional, and "cannot be pronounced invalid." *Id*. at 377-78; *see also El Paso Elec. Co. v. Tex. Dep't of Ins*., 937 S.W.2d 432, 439 (Tex. 1996) (citing *Maud*); *Camp v. Gulf Prod. Co.*, 61 S.W.2d 773, 777-78 (Tex. 1933) (citing *Maud*). The Texas Supreme Court in *Maud* therefore sets a demanding standard for a statute to violate separation of powers: that the legislation must "*unequivocally supplant*" the authority of the OAG. The TMFPA does no such thing.

Novartis also cites (Pet. at 24) *Hill County v. Sheppard*, 178 S.W.2d 261, 264 (Tex. 1944), but that case involved an effort by the Legislature to create a statutory office to "take over" the duties of county attorneys. This Court held, unremarkably, that "since the Constitution imposed certain duties upon the county attorney, the Legislature, in the absence of other constitutional authority therefor, could not create a statutory office with power to take over and exercise such functions." *Id.* at 264. Nothing in the TMFPA authorizes private citizens to "take over" OAG's prerogative to enforce the TMFPA.

In an effort to distract attention from the fact that its own cited cases undercut its arguments, Novartis argues that, with the TMFPA, "the Legislature has

12

4894-1897-6977

essentially created an extra-constitutional office comprised by self-appointed private attorney generals who exercise a power that the Texas Constitution explicitly and exclusively confers on the State attorneys." Pet. at 24. All of Novartis's arguments miss the mark.

*First*, Novartis asserts that, in enacting the TMFPA, the Legislature usurped OAG of "the right to investigate the facts and exercise his judgment and discretion regarding the filing of a suit." Pet. at 25 (quoting *Agey*, 172 S.W.32d at 974). Not true. As explained above, the TMFPA contains multiple provisions that protect OAG's autonomy to investigate and prosecute (or not prosecute) suits as it sees fit. The relator must file the petition under seal, it must make extensive disclosure to OAG, and then, while the petition remains sealed, wait for OAG to investigate the claims and decide whether to take over the lawsuit. Upon review of the relator's petition, OAG is free to intervene, decline intervention, or dismiss the action altogether. *See* Tex. Hum. Res. Code §§ 36.102, 36.103, 36.104.11. Contrary to Novartis's assertions, a private TMFPA plaintiff neither supplants OAG's role with respect to, nor does it "control," the litigation. Rather, "control" and prosecutorial discretion remain with OAG at all times.

*Second*, Novartis argues "if the Attorney General declines to intervene in the *qui tam* action, the TMPFA impermissibly authorizes an unharmed private party and its attorney to prosecute violations of state law *in place of the Attorney General*."

4894-1897-6977

Pet. at 25. Also not true. Irrespective of how a lawsuit is initiated or, indeed, of OAG's initial intervention/nonintervention decision, OAG retains complete discretion to proceed only with the TMFPA cases that it chooses. To be sure, if OAG deems a TMFPA case unmeritorious, it can dismiss the relator's case even over the objections of the relator. *See* Tex. Hum. Res. Code § 36.107(b). Indeed, the government's power to dismiss and settle a *qui tam* action over the objection of the person who brought it was recently described by an 8-1 majority of the Supreme Court as being "uncommon, even extraordinary." *See United States, ex rel. Polansky v. Executive Health Res., Inc.*, 599 U.S. 419, 430 (2023).

At bottom, the notion that the TMFPA requires OAG to "cede" anything to a private relator is fictional. In intervened and nonintervened actions alike, OAG retains absolute control and authority over all material aspects of the litigation. Indeed, in *Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749 (5th Cir. 2001), when describing the similarly broad authority of the federal government in prosecuting actions under the FCA, the Fifth Circuit rejected the very arguments Novartis is making here:

> [T]he powers of a *qui tam* relator to interfere in the Executive's overarching power to prosecute and to control litigation are seen to be slim indeed when the *qui tam* provisions of the FCA are examined in the broad scheme of the American judicial system.

*Id.* at 756.

4894-1897-6977

*   *   *

As a recidivist offender, Novartis has every interest to have the TMFPA and other *qui tam* statutes declared unconstitutional. At bottom, however, Novartis's purported concerns about the Texas Constitution ring hollow. The Court should see Novartis's efforts for what they are—a cynical attempt to void the very statutes that have brought taxpayers justice for Novartis's long history of unlawful conduct.

## III.   THERE IS NO BASIS FOR A STAY.

Novartis's Stay Motion is predicated on the supposed merit of its Petition. Because the Petition fails for procedural and substantive reasons, there is no basis for the Court to grant the Stay Motion.

## CONCLUSION

For the foregoing reasons, the writ and motion for temporary stay should be denied.

15

Dated:  July 17, 2024                    Respectfully submitted,

*/s/ Sam Baxter*
Samuel F. Baxter (co-lead counsel)
sbaxter@mckoolsmith.com
Jennifer L. Truelove
jtruelove@mckoolsmith.com
MCKOOL SMITH P.C.
104 East Houston, Suite 300
Marshall, Texas 75670
(903) 923-9000
Fax: (903) 923-9099

Eric B. Halper (PHV to be filed)
Radu A. Lelutiu (PHV to be filed)
McKool Smith, P.C.
1301 Avenue of the Americas
New York, New York 10019
(212) 402-9400
Fax: (212) 402-9444

*/s/ Mark Lanier*
Mark Lanier (co-lead counsel)
Zeke DeRose
Jonathan Wilkerson
THE LANIER FIRM
10940 W. Sam Houston Pkwy N
Houston, TX 77064
(800) 723-3216
Fax:  (713) 659-2204

***ATTORNEYS FOR
PLAINTIFF/REAL-PARTY-IN-
INTEREST HEALTH SELECTION
GROUP, LLC***

16

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on July 17, 2024 to counsel of record.

/s/ *Samuel F. Baxter*
Samuel F. Baxter

## CERTIFICATE OF COMPLIANCE

Based on a word count run in Microsoft Word 2016, this Combined Response to Petition for Writ of Mandamus and Motion to Stay contains 3,607 words, excluding the portions of the brief exempt from the word count under Texas Rule of Appellate Procedure 9.4(i)(1).

/s/ *Samuel F. Baxter*
Samuel F. Baxter

## CERTIFICATION

I certify that I have reviewed the forgoing pleading and concluded that every factual statement is supported by competent evidence included in the record.

/s/ *Samuel F. Baxter*
Samuel F. Baxter

4894-1897-6977

APP103

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below:

Envelope ID: 89894584
Filing Code Description: Response to Petition
Filing Description: COMBINED RESPONSE TO PETITION FOR WRIT OF MANDAMUS AND MOTION FOR TEMPORARY STAY
Status as of 7/18/2024 8:06 AM CST

Associated Case Party: Novartis Pharmaceuticals Corporation

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Meredith N.Garagiola | | mgaragiola@omm.com | 7/17/2024 5:08:14 PM | SENT |
| Deron R.Dacus | | ddacus@dacusfirm.com | 7/17/2024 5:08:14 PM | SENT |
| Danny S.Ashby | | dashby@omm.com | 7/17/2024 5:08:14 PM | SENT |
| Ross Galin | | rgalin@omm.com | 7/17/2024 5:08:14 PM | SENT |
| Anton Metlitsky | | ametlitsky@omm.com | 7/17/2024 5:08:14 PM | SENT |
| Joshua Goode | | jgoode@omm.com | 7/17/2024 5:08:14 PM | SENT |

Associated Case Party: Health Selection Group, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jonathan Wilkerson | 24050162 | jonathan.wilkerson@lanierlawfirm.com | 7/17/2024 5:08:14 PM | SENT |
| Samuel Baxter | 1938000 | sbaxter@mckoolsmith.com | 7/17/2024 5:08:14 PM | SENT |
| Zeke DeRose | 24057421 | zeke.derose@lanierlawfirm.com | 7/17/2024 5:08:14 PM | SENT |
| Jennifer Truelove | 24012906 | jtruelove@mckoolsmith.com | 7/17/2024 5:08:14 PM | SENT |
| Alex Brown | 24026964 | alex.brown@lanierlawfirm.com | 7/17/2024 5:08:14 PM | SENT |
| Eric B.Halper | | ehalper@mckoolsmith.com | 7/17/2024 5:08:14 PM | SENT |
| Radu A.Lelutiu | | rlelutiu@mckoolsmith.com | 7/17/2024 5:08:14 PM | SENT |
| W. MarkLanier | | WML@LanierLawFirm.com | 7/17/2024 5:08:14 PM | SENT |
| joel leach | | jleach@mckoolsmith.com | 7/17/2024 5:08:14 PM | SENT |
| denise lopez | | dlopez@mckoolsmith.com | 7/17/2024 5:08:14 PM | SENT |

Associated Case Party: State of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below:

Envelope ID: 89894584
Filing Code Description: Response to Petition
Filing Description: COMBINED RESPONSE TO PETITION FOR WRIT OF
MANDAMUS AND MOTION FOR TEMPORARY STAY
Status as of 7/18/2024 8:06 AM CST

Associated Case Party: State of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Lynne Kurtz-Citrin | 24081425 | lynne.kurtz-citrin@oag.texas.gov | 7/17/2024 5:08:14 PM | SENT |
| Jonathan Bonilla | 24073939 | Jonathan.Bonilla@oag.texas.gov | 7/17/2024 5:08:14 PM | SENT |
| Jordan Underhill | 24102586 | jordan.underhill@oag.texas.gov | 7/17/2024 5:08:14 PM | SENT |
| Janice Garrett | | Janice.Garrett@oag.texas.gov | 7/17/2024 5:08:14 PM | SENT |
| Mary JoToupin | | MaryJo.Toupin@oag.texas.gov | 7/17/2024 5:08:14 PM | SENT |

**APP105**

FILED
24-0239
7/17/2024 7:26 PM
tex-89897964
SUPREME COURT OF TEXAS
BLAKE A. HAWTHORNE, CLERK

Cause No. 24-0239

*In the*

# Supreme Court

*of the*

# State of Texas

IN RE NOVARTIS PHARMACEUTICALS CORPORATION

ORIGINAL PROCEEDING FROM THE 71st DISTRICT COURT IN
HARRISON COUNTY, TEXAS • CAUSE NO. 23-0276
THE HONORABLE BRAD MORIN PRESIDING

# STATE'S RESPONSE TO RELATOR'S

# PETITION FOR WRIT OF MANDAMUS

KEN PAXTON
Attorney General of Texas
BRENT WEBSTER
First Assistant Attorney General
JAMES LLOYD
Deputy Attorney General for Civil
Litigation
ELIZABETH BROWN FORE
Chief, Healthcare Program
Enforcement Division

JONATHAN D. BONILLA
State Bar No. 24073939
JORDAN UNDERHILL
State Bar No. 24102586
LYNNE KURTZ-CITRIN
State Bar No. 24081425
Assistant Attorneys General
Office of the Attorney General
Healthcare Program Enforcement Division
Phone: (512) 936-1410
Fax: (512) 936-0674
*Counsel for the State of Texas/*
*Real Party in Interest*

**APP106**

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS .........................................................................................i

TABLE OF AUTHORITIES....................................................................................ii

STATEMENT REGARDING ORAL ARGUMENT......................................1

ISSUES PRESENTED CORRECTED ...............................................................2

SUMMARY OF THE ARGUMENT ..................................................................3

ARGUMENT ..........................................................................................................4

I.  Novartis Has an Adequate Remedy by Appeal. .............................4

II.  The Trial Court Has Subject Matter Jurisdiction. ..............................6

    A.  The Court Should Look to Federal Precedent to Resolve
    in this Case. ...........................................................................................7

        1. Federal Precedence Resolves the Question of Standing
        in *Qui Tam* Suits........................................................................9

        2. Texas Law Allows Standing-By-Assignment. ........................12

    B.  This Court Has Recognized Exceptions to the Injury
    Requirement. .........................................................................................13

III.  The Trial Court Did Not Clearly Abuse Its Discretion by Upholding
the Constitutionality of the TMFPA. .................................................14

    A.  *Qui Tam* Statutes Do Not Violate Article IV or Article V
    of the Texas Constitution. ...................................................................14

    B.  The TMFPA Properly Authorizes Private Individuals
    to Bring Suits on the State's Behalf.....................................................19

PRAYER...................................................................................................................22

CERTIFICATE OF COMPLIANCE ..................................................................24

CERTIFICATE OF SERVICE ............................................................................25

APP107

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott v. Mexican American Legislative Caucus, Texas House of Representatives*,
647 S.W.3d 681, 690 (Tex. 2022) ................................................................... 8

*Agey v. Am. Liberty Pipe Line Co.*,
172 S.W.2d 972 (1943) ................................................................................. 19

*Am. Liberty Pipe Line Co. v. Agey*,
167 S.W.2d 580 (Tex. App.—Austin 1942)................................................... 19

*Bell Helicopter Textron, Inc. v. Walker*,
787 S.W.2d 954 (Tex. 1990) ....................................................................... 3, 5

*Bland Indep. Sch. Dist. v. Blue*,
34 S.W.3d 547 (Tex. 2000) ...................................................................... 13, 14

*Brooks v. Northglen*,
141 S.W.3d 158, 169 (Tex.2004) ................................................................... 7

*Camp v. Gulf Prod. Co.*,
122 Tex. 383, 61 S.W.2d 773 (1933) ........................................................... 17

*City of Dallas v. Texas Prudential Ins. Co.*,
291 S.W.2d 693, 696 (1956) .......................................................................... 3

*City of Houston v. Houston Prof'l. Fire Fighters' Ass'n, Loc. 341*,
664 S.W.3d 790 (Tex. 2023), reh'g denied (June 23, 2023) ........................... 7

*Curtis v. Gibbs*,
511 S.W.2d 263 (Tex. 1974) .......................................................................... 5

*Data Foundry, Inc. v. City of Austin*,
620 S.W.3d 692 (Tex. 2021) ...................................................................... 7, 8

*EBS Sols., Inc. v. Hegar*,
601 S.W.3d 744 (Tex. 2020) .......................................................................... 7

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*El Paso Elec. Co. v. Tex. Dep't of Ins.*,
937 S.W.2d 432 (Tex. 1996) ...................................................................... 15, 16

*Hill County v. Sheppard*,
178 S.W.2d 261 (1944) ............................................................................... 17, 18

*Holy Cross Church of God in Christ v. Wolf*,
44 S.W.3d 562 (Tex. 2001) ........................................................................ 12, 13

*Hooks v. Fourth Ct. of Appeals*,
808 S.W.2d 56 (Tex. 1991) ........................................................................... 5, 6

*Hunt v. Washington State Apple Advertising Commission*,
432 U.S. 333 (1977) ....................................................................................... 8, 14

*In re Christianson Air Conditioning & Plumbing, LLC*,
639 S.W.3d 671 (Tex. 2022) ................................................................................ 3

*In re Facebook, Inc.*,
625 S.W.3d 80, 86 (Tex. 2021) ............................................................................ 6

*In re Kappmeyer*,
668 S.W.3d 651, 655 (Tex. 2023) ........................................................................ 6

*In re Prudential Ins. Co. of Am.*,
148 S.W.3d 124 (Tex. 2004) ............................................................................ 4, 6

*In re SWEPI, L.P.*,
85 S.W.3d 800 (Tex. 2002) .................................................................................. 5

*In re Xerox Corp.*,
555 S.W.3d 518 (Tex. 2018) ........................................................................... 3, 19

*Jackson v. Thweatt*
883 S.W.2d 171, 174 (Tex. 1994) ....................................................................... 13

iii

*Johnson v. Fourth Ct. of Appeals*,
700 S.W.2d 916 (Tex. 1985) ...................................................................................... 3

*Jones v. Turner*,
646 S.W.3d 319 (Tex. 2022) ................................................................................... 14

*Koy v. Schneider*,
110 Tex. 369, 221 S.W. 880 (1920) ........................................................................ 6

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ................................................................................................. 8

*Lujan*, *Vermont Natural Resources v. U.S. ex rel. Stevens*,
529 U.S. 765, 787 (2000) ........................................................................9, 11, 12, 13

*Malouf v. State ex rels. Ellis*, No. 22-1046,
2024 WL 3075672 (Tex. June 21, 2024) ................................................................. 3

*Maud v. Terrell*,
109 Tex. 97, 200 S.W. 375 (1918) ...............................................15, 16, 17, 20, 21

*Nazari v. State*,
561 S.W.3d 495 (Tex. 2018) .................................................................................... 3

*Perez v. Turner*,
653 S.W.3d 191 (Tex. 2022), reh'g denied (Oct. 21, 2022) ................................. 14

*Sw. Bell Tel. Co. v. Mktg. on Hold Inc.*,
308 S.W.3d 909 (Tex. 2010) ............................................................................ 12, 13

*Sprint Communications Co., L.P. v. APCC Services, Inc.*,
554 U.S. 269 (2008) ...........................................................................11, 12, 13

*Staples v. State*,
112 Tex. 61, 245 S.W. 639 (1922) ...............................................................15, 16, 17

*Stockton v. Offenbach,*
336 S.W.3d 610, 618 (Tex. 2011) ....................................................... 7

*Terrazas v. Ramirez,*
829 S.W.2d 712, 721 (Tex. 1991) ...................................................... 15

*Terrell v. Sparks,*
104 Tex. 191, 135 S.W. 519 (1911) .................................................... 20

*Texas Association of Business v. Texas Air Control Board,*
852 S.W.2d 440 (Tex. 1993) ............................................................... 8

*Warth v. Seldin,*
422 U.S. 490, 511 (1975) .................................................................. 14

**Statutes**

31 U.S. Code § 3730(d)(1) ................................................................ 11

31 U.S. Code §3730(d)(2) ................................................................. 11

Tex. Hum. Res. Code § 36.052(a) ..................................................... 10

Tex. Hum. Res. Code §§ 36.102-36.104 ........................................... 17

Tex. Hum. Res. Code § 36.102(a) ..................................................... 17

Tex. Hum. Res. Code § 36.102(e) ..................................................... 21

Tex. Hum. Res. Code § 36.104(b-1) .................................................. 21

Tex. Hum. Res. Code § 36.107(b), (c) ............................................... 21

Tex. Hum. Res. Code § 36.108 .......................................................... 21

Tex. Hum. Res. Code § 36.109 .......................................................... 21

**APP111**

## STATEMENT REGARDING ORAL ARGUMENT

The State does not believe that oral argument is necessary, as Novartis's Mandamus Petition fails to meet the appropriate standard. If the Court nevertheless determines that oral argument would be helpful, the State respectfully requests the opportunity to participate.

# ISSUES PRESENTED CORRECTED

1. Whether mandamus is proper when Novartis has an adequate remedy by appeal for the denial of its combined Plea to the Jurisdiction/Motion to Dismiss.

2. Whether the trial court abused its discretion by finding that plaintiff has standing under the Texas Medicaid Fraud Prevention Act ("TMFPA")[1], which authorizes it to bring a claim on behalf of the State.

3. Whether the trial court clearly abused its discretion by refusing to invalidate the TMFPA on constitutional grounds.

---

[1] Chapter 36 of the Human Resources Code was renamed, effective September 1, 2023, to the Texas Health Care Program Fraud Prevention Act. Because the filings in this case use the previous title, this response will continue to refer to Chapter 36 as the Texas Medicaid Fraud Prevention Act.

APP113

# SUMMARY OF THE ARGUMENT

Texas courts "adhere to the well-settled rule that a law will not be declared unconstitutional unless it is clearly so." *City of Dallas v. Texas Prudential Ins. Co.*, 291 S.W.2d 693, 696 (1956). Yet, in its Petition for a Writ of Mandamus, Novartis makes an audacious claim: that a trial court abused its discretion by *not* invalidating, on constitutional grounds, a frequently enforced[2], nearly thirty-year-old statute.

To obtain a writ of mandamus Novartis must satisfy two elements: (1) that there is no adequate remedy by appeal, and (2) that trial court abused its discretion. *In re Christianson Air Conditioning & Plumbing, LLC,* 639 S.W.3d 671, 681 (Tex. 2022) (citing *Johnson v. Fourth Ct. of Appeals*, 700 S.W.2d 916, 917 (Tex. 1985)). Novartis does not satisfy either of these elements.

First, courts "lack jurisdiction to issue writs of mandamus to supervise or correct incidental rulings of a trial judge when there is an adequate remedy by appeal." *Bell Helicopter Textron, Inc. v. Walker,* 787 S.W.2d 954, 955 (Tex. 1990). Here, Novartis challenges an incidental ruling and has an adequate remedy by appeal, making mandamus improper.

---

[2] *See, e.g.*, *Nazari v. State*, 561 S.W.3d 495 (Tex. 2018), *In re Xerox Corp.*, 555 S.W.3d 518 (Tex. 2018), *Malouf v. State ex rels. Ellis*, No. 22-1046, 2024 WL 3075672 (Tex. June 21, 2024).

Second, the trial court did not abuse its discretion by denying Novartis's Motion. Novartis cites no instance in which either this Court or an appellate court found that a trial court abused its discretion by failing to hold a law facially unconstitutional. On the contrary, the trial court adhered to Texas law by presuming the constitutionality of the TMFPA and refusing to follow Novartis's meritless arguments. Novartis's attempt to misuse the mandamus process should be rejected.

## ARGUMENT

### I. Novartis Has an Adequate Remedy by Appeal.

While Novartis pays lip-service to the mandamus standard, it offers nothing more than a conclusory statement that mandamus is appropriate here. *See* Petition at 13. Novartis's failure to explain why its appellate remedy is inadequate is demonstrative: the Court should reject this Petition without reaching the merits.

"Mandamus review of incidental, interlocutory rulings by the trial courts unduly interferes with trial court proceedings, distracts appellate court attention to issues that are unimportant both to the ultimate disposition of the case at hand and to the uniform development of the law, and adds unproductively to the expense and delay of civil litigation." *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136 (Tex. 2004). Thus, pleas to the jurisdiction "will not ordinarily be reviewed by mandamus, because they are incidental trial rulings for which the relator generally has an

4

adequate appellate remedy." *In re SWEPI, L.P.,* 85 S.W.3d 800, 808 (Tex. 2002) (citing *Bell Helicopter,* 787 S.W.2d at 955).

The denial of Novartis's Motion is not an issue that "eludes answer by appeal." *Id.* at 138. "Absent extraordinary circumstances…a denial of a motion to dismiss or a plea in abatement is a ruling incident to the ordinary trial process which will *not* be corrected by mandamus, but by the legal remedy of the ordinary appellate process." *Hooks v. Fourth Ct. of Appeals*, 808 S.W.2d 56, 59 (Tex. 1991) (emphasis in original).

This Court has identified extraordinary instances where the denial of a plea to the jurisdiction warrants mandamus review, such as when a court interferes with another's jurisdiction. *See Curtis v. Gibbs,* 511 S.W.2d 263, 267 (Tex. 1974) ("If the second court … attempts to interfere with the prior action, this court has the power to act by mandamus or other appropriate writ to settle the conflict of jurisdiction."); *In re SWEPI,* 85 S.W.3d at 809 (mandamus relief proper because the probate court transferred suit to itself without statutory authority, interfering with another court's jurisdiction).

This Court has likewise noted that "mandamus relief is often unavailable to correct the erroneous denial of a motion to dismiss" but that such relief may be "warranted if a litigant would suffer 'impairment or loss' of 'important substantive

5

... rights' while awaiting the error's correction on appeal." *In re Facebook, Inc.*, 625 S.W.3d 80, 86 (Tex. 2021) (quoting *In re Prudential*, 148 S.W.3d at 136).

Novartis identifies no extraordinary circumstances nor any "important substantive rights" that it risks losing. While Novartis is presumably unhappy about litigating this case, the "cost or delay of having to go through trial and the appellate process does *not* make the remedy at law inadequate, and hence mandamus will not lie." *Hooks* 808 S.W.2d at 60 (emphasis in original).

## II.    The Trial Court Has Subject Matter Jurisdiction.

"A trial court abuses its discretion when it acts with disregard of guiding rules or principles or in an arbitrary or unreasonable manner." *In re Kappmeyer*, 668 S.W.3d 651, 655 (Tex. 2023). Further, "an error of law or an erroneous application of law to facts is always an abuse of discretion." *In re Facebook,* 625 S.W.3d at 86.

Novartis does not challenge the application of the law to the facts, but the law itself. Thus, the *only* way that the trial court could have granted Novartis's Motion would be by holding the TMFPA facially unconstitutional. But a statute "should not be held invalid unless its unconstitutionality be made to appear beyond any reasonable doubt." *Koy v. Schneider*, 221 S.W. 880, 888 (Tex. 1920). Indeed, when "evaluating whether a statute is constitutionally infirm, *we presume at the outset that it is constitutional*. A party challenging a statute as unconstitutional bears a heavy

6

burden to overcome this presumption." *City of Houston v. Houston Professional Fire Fighters' Association, Local 341*, 664 S.W.3d 790, 798 (Tex. 2023), reh'g denied (June 23, 2023) (emphasis added). "In line with this presumption, if a statute is susceptible to two interpretations—one constitutional and the other unconstitutional—then the constitutional interpretation will prevail." *EBS Sols., Inc. v. Hegar*, 601 S.W.3d 744, 754 (Tex. 2020); *see also Stockton v. Offenbach*, 336 S.W.3d 610, 618 (Tex. 2011) ("We presume that when enacting legislation, the Legislature intends to comply with the state and federal constitutions, Tex. Gov't Code § 311.021(1), and 'we are obligated to avoid constitutional problems if possible.'" (quoting *Brooks v. Northglen Association,* 141 S.W.3d 158, 169 (Tex.2004)).

The trial court did *precisely* as obligated: presumed the constitutionality of the TMFPA. Unable to rebut this presumption, Novartis now invites this Court to short-circuit the appellate process. Though this Court need not consider the merits given Novartis's failure to explain why an appeal is inadequate, if it does, this Court should deny Novartis's Petition for the following reasons.

A.    **The Court Should Look to Federal Precedent to Resolve in this Case.**

In Novartis's Motion, it argued that "Texas standing doctrine parallels 'the federal requirements for standing.'" MR073, quoting *Data Foundry, Inc. v. City of Austin*, 620 S.W.3d 692, 696 (Tex. 2021). The State agrees. This Court has

7

"adopted the federal requirements for standing as set forth by the United States Supreme Court in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)." *Data Foundry,* 620 S.W.3d at 696. "To maintain standing, a plaintiff must show: (1) an injury in fact that is both concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) that the injury is fairly traceable to the defendant's challenged action; and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* (citing *Lujan*, 504 U.S. at 560-61).

With that framework in mind, this Court has previously used federal precedent to resolve novel issues of standing. In *Texas Association of Business v. Texas Air Control Board,* 852 S.W.2d 440 (Tex. 1993), the Court adopted the U.S. Supreme Court's standard for associational standing.[3] That decision was recently reaffirmed in *Abbott v. Mexican American Legislative Caucus, Texas House of Representatives*, 647 S.W.3d 681, 690 (Tex. 2022). Because the test for standing under Texas law is identical to the test for Article III, this Court should follow the U.S. Supreme Court's jurisprudence on this issue.

---

[3] "The United States Supreme Court has articulated a standard for associational standing that lends itself to our use. We adopt that test today." *Id.* at 447 (citing *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (1977)).

8

## 1. Federal Precedence Resolves the Question of Standing in *Qui Tam* Suits.

Decided in the wake of *Lujan*, *Vermont Natural Resources v. U.S. ex rel. Stevens*, 529 U.S. 765, 787 (2000) held that a private individual has Article III standing to maintain a *qui tam* action under the federal False Claims Act (FCA). Writing for the majority, Justice Scalia held that "adequate basis for the relator's suit for his bounty is to be found in the doctrine that the assignee of a claim has standing to assert the injury in fact suffered by the assignor." *Id.* at 773. The United States's "injury in fact" was sufficient to "confer standing on [the *qui tam* relator]." *Id.* at 774.

Novartis takes issue with the Supreme Court's acknowledgement that the FCA "can reasonably be regarded as effecting a partial assignment of the Government's damages claim…" *Id.* at 765-66. Novartis argues that the TMFPA is a civil enforcement statute and that, by providing for civil penalties rather than "damages," the reasoning in *Stevens* is inapplicable. *See* Petition at 19. Novartis's argument fails for several reasons.

First, nothing in *Stevens* limits the underlying holding—that a *qui tam* relator has constitutional standing by assignment—to *qui tam* actions for "damages." The Supreme Court focuses on the assignment of the *injury-in-fact* by the government, which is defined as "the injury to its sovereignty arising from violation of its laws … and the proprietary injury resulting from the alleged fraud." *Id.* at 771. In concluding

9

that "the United States' injury in fact suffices to confer standing on [the *qui tam* relator]," *id.* at 774, the *Stevens* Court does not differentiate between the two injuries-in-fact being assigned, such that an obviously non-pecuniary injury-in-fact— the violation of the government's sovereignty—is part of that assignment. Thus, while the Supreme Court used the word "damages" in describing the relator's claim, this is a mere recitation of the FCA, which provides for the recovery of damages, and not because damages are a *requirement* for the assignment.

Second, while the TMFPA is an action for civil remedies and penalties,[4] the FCA and other *qui tam* laws also include civil penalties as part of their remedy. As the Supreme Court notes in *Stevens*, a defendant is "liable for up to treble damages and a *civil penalty* of up to $10,000 per claim." *Id.* at 769 (emphasis added). This is far from unusual. The Court references an extensive list of historical *qui tam* provisions that use words such as "penalty" and "fine," instead of or in addition to "damages." *See Id.* at n. 6 and 7.

The Supreme Court did not hold that the assignment of a claim extended only to the treble damages and not the civil penalty. Under the FCA, a *qui tam* relator is eligible to collect a portion of the civil penalty and damages.[5] The *qui tam* relator's

---

[4] *See* Tex. Hum. Res. Code §36.052(a).

[5] *See* §3730(d)(1) and §3730(d)(2).

award is apportioned from the *entire amount recovered. See* 31 U.S. Code § 3730(d)(1). So, when the *Stevens* Court acknowledges that the FCA functions as a "partial assignment of the Government's damages claim…" it is proper to conclude that this assignment includes the civil penalties.

Novartis's argument is similarly imperiled by *Sprint Communications Co., L.P. v. APCC Services, Inc.,* 554 U.S. 269 (2008), which expanded the standing-by-assignment doctrine outlined in *Stevens. Sprint* addressed the question of whether "an assignee of a legal claim for money owed has standing to pursue that claim in federal court, even when the assignee has promised to remit the proceeds of the litigation to the assignor." *Id*. at 271.

Answering this question affirmatively, the Court cited *Stevens*, noting that "within the past decade we have expressly held that an assignee can sue based on his assignor′s injuries." *Id*. at 286. The Court also examined a centuries-spanning judicial history which "make[s] clear that courts have long found ways to allow assignees to bring suit; that where assignment is at issue, courts—both before and after the founding—have always permitted the party with legal title alone to bring suit; and that there is a strong tradition specifically of suits by assignees for collection." *Id*. at 285. So, even though it was "true that the [assignees] did not originally suffer any injury caused by the [defendants]; the [assignors] did" and "the

11

[assignors] assigned their claims to the [assignees] lock, stock, and barrel." *Id*. at 286.

## 2.     Texas Law Allows Standing-By-Assignment.

Though Novartis argues that the *Stevens* case is inconsistent with the Texas law, this Court *has already cited Stevens* in a prior case involving standing-by-assignment in the class action context. In *Southwestern Bell Telephone Company v. Marketing on Hold Inc.*, 308 S.W.3d 909 (Tex. 2010), the Court considered a class action suit in which the plaintiff, STA, entered into assignment agreements on behalf of several Southwestern Bell customers and then sued Southwestern Bell.

Southwestern Bell challenged STA's standing, arguing that STA lacked contractually valid assignments and suffered "no common class injury." *Id*. at 915, 918. In rejecting this argument, this Court noted that "[b]ecause STA holds contractually valid assignments, STA steps into the shoes of the claim-holders and is considered under the law to have suffered the same injury as the assignors and have the same ability to pursue the claims." *Id*. at 916. (citing *Holy Cross Church of God in Christ v. Wolf,* 44 S.W.3d 562, 572 (Tex. 2001) and *Stevens,* 529 U.S. at 773). The Court further noted that it is "well-settled that a valid assignee of a claim has standing to be a member of a class action related to that claim." *Id*. at 927.

*Southwestern* built on two prior decisions that cited the common law maxim that "[a]n assignee stands in the shoes of his assignor." *See Holy Cross*, 44 S.W.3d at

12

572 and *Jackson v. Thweatt*, 883 S.W.2d 171, 174 (Tex. 1994). This maxim is perfectly in line with both *Stevens* and *Sprint*. Thus, contrary to Novartis's argument, U.S. Supreme Court jurisprudence is *not* inconsistent with Texas law. Instead, *Stevens* and *Sprint* settle the standing issue entirely by permitting the partial assignment of the State's interest in the *qui tam* lawsuit to the plaintiff/relator, thereby fulfilling the constitutional standing requirement.

## B.     This Court Has Recognized Exceptions to the Injury Requirement.

Novartis does not dispute that the State suffered an injury due to Novartis's alleged unlawful conduct. However, because Novartis argues that a particularized injury is always required to establish constitutional standing[6], it is worth noting that this Court has recognized important exceptions to this requirement.

Consider taxpayer standing, which is the subject of a long line of decisions. In *Bland Independent School District v. Blue*, this Court noted that:

> Unless standing is conferred by statute, taxpayers must show as a rule that they have suffered a particularized injury distinct from that suffered by the general public in order to have standing to challenge a government action or assert a public right. But in Texas law there is a long-established exception to this general rule: a taxpayer has standing to sue in equity to enjoin the illegal expenditure of public funds, *even without showing a distinct injury.*

34 S.W.3d 547, 555-56 (Tex. 2000) (emphasis added). As recently as 2022, this

---

[6] *See* Petition at 11.

Court reaffirmed this point, stating in *Perez v. Turner* that "taxpayer standing is an exception to the usual particularized injury requirement." 653 S.W.3d 191, 200 (Tex. 2022). Likewise, in *Jones v. Turner*, 646 S.W.3d 319, 323 (Tex. 2022) the Court acknowledged that "Texas law recognizes a 'long-established exception' for taxpayers, who may sue 'to enjoin the illegal expenditure of public funds' without showing a particularized injury." (quoting *Bland*, 34 S.W.3d at 555–56).

Further, the aforementioned standard for associational standing does not require that the association itself suffer a concrete injury. *See Warth v. Seldin*, 422 U.S. 490, 511 (1975) ("Even in the absence of injury to itself, an association may have standing solely as the representative of its members."); *Hunt*, 432 U.S. at 342 (1977) ("…this Court has recognized that an association may have standing to assert the claims of its members even where it has suffered no injury from the challenged activity…").

III.     **The Trial Court Did Not Clearly Abuse Its Discretion by Upholding the Constitutionality of the TMFPA.**

      **A.**     ***Qui Tam* Statutes Do Not Violate Article IV or Article V of the Texas Constitution.**

Novartis misconstrues several cases to argue that the TMFPA violates Article IV, Section 22 and Article V, Section 21 of the Texas Constitution. But *Maud*, *Staples*, and others establish the Attorney General's "broad discretionary power in

14

conducting his legal duty and responsibility to represent the State." *Terrazas v. Ramirez*, 829 S.W.2d 712, 721 (Tex. 1991) (citing, among others, *Maud v. Terrell*, 109 Tex. 97, 200 S.W. 375 (1918)). This includes the power to enlist private parties for assistance.

In *Maud v. Terrell*, the Court upheld a statute authorizing the Texas Comptroller to appoint individuals to collect certain taxes. The Court noted that the Legislature "may provide assistance for the proper discharge by [the Attorney General and county and district attorneys] of their duties" but cannot "obtrude other persons upon them and compel the acceptance of their services." *Id*. at 376. This Court explained that a statute violates the separation of powers under the Texas Constitution, when it "unequivocally supplant[s] the county attorneys and the Attorney-General in their authority to prosecute the suits of the State." *Id*. at 377-378.

More recently, this Court stated that "[w]e made clear in *Maud*…that the Legislature may authorize an agency to retain private counsel to prosecute actions, as long as such counsel's authority is subordinate to that of the Attorney General, County Attorney, or District Attorney." *El Paso Electric Company v. Texas Department of Insurance*, 937 S.W.2d 432, 439 (Tex. 1996). "Further, a statute authorizing an agency to hire outside counsel should, if possible, be construed as

APP126

complying with this constitutional requirement, even if the statute does not expressly recognize the authority of the Attorney General." *Id.* The statute in *Maud* was upheld "because the statutory language did not 'unequivocally supplant the county attorneys and the Attorney–General in their authority to prosecute the suits of the State for the recovery of the taxes.'" *Id.* (quoting *Maud*, 200 S.W. at 377). Likewise, the *qui tam* provisions of the TMFPA do not "unequivocally supplant" the Attorney General in his prosecution of healthcare fraud.

*Staples v. State*, 245 S.W. 639 (Tex. 1922)—miscited by Novartis as supportive of their arguments—was a *quo warranto* suit instituted by litigants "in the name of the state of Texas" and "in their own names" to prevent the placement of a political candidate's name on a ballot. The respondents argued that the statute was unconstitutional because it infringed upon the exclusive authority of the County Attorneys, District Attorneys, and the Attorney General. *Id.* at 639-40. Citing *Maud*, the *Staples* court disagreed, holding that the statute was "not in violation of section 21, art. 5, and section 22, art. 4, of the [Texas] Constitution," *Id.* at 643, though the court noted that the litigants lacked the "legal capacity or right to institute" their suit. *Id.* The Court construed the statute as providing safeguards to the constitutional powers of the Attorney General and county and district attorneys, so *quo warranto* suits *could* be related through a private citizen if the suits were first

presented to, and approved by, the State's authorized agents and officers. *Id.*

This is comparable to how *qui tam* suits function. When a relator files a *qui tam* suit, they do so under seal and must deliver a copy of the petition and all material evidence and information to the State.[7] The State can then investigate the allegations and decide how to proceed (e.g., by intervening, dismissing the case, or allowing the relator to proceed without the State's intervention). *See* Tex. Hum. Res. Code §§ 36.102-36.104. This enables the State to exercise its prosecutorial discretion before the case is unsealed.

In *Camp v. Gulf Prod. Co.*, 122 Tex. 383, 394, 61 S.W.2d 773, 777 (1933), this Court cited *Maud* and *Staples* to uphold a statute authorizing an individual to bring suit on behalf of the state. The *Camp* Court held that "an act will not be held unconstitutional" under Texas Const. Section 22, Art. 4, and Section 21, Art. 5, "unless it, by plain and unambiguous language, deprives the county and district attorneys and the Attorney General of their authority to represent the state in the suits prosecuted under such act." *Id.*

Novartis also misreads *Hill County v. Sheppard*, 178 S.W.2d 261 (1944). At issue in *Sheppard* was a statute that appeared internally inconsistent, purporting to create an office of criminal district attorney even though "[t]he Legislature hardly

---

[7] Tex. Hum. Res. Code § 36.102(a).

APP128

could have used stronger or plainer language to indicate its positive intention **not** to create a constitutional office of any kind…"[8] *Sheppard*, 178 S.W.2d at 263–64 (emphasis added). Because no constitutional office was created, the Court considered what the effect would be if the statute instead "create[d] a statutory office to take over the duties of the county attorney." *Id*. at 264. Put more clearly, the question was whether, in a county where there was not a *constitutional* office of criminal district attorney, the Legislature could create a *statutory* office of criminal district attorney that would supplant the already existing county attorney's duties. *See id*. at 261-62. The Court answered this question in the negative, holding that "the Legislature could not create a statutory office with authority to take over the duties of county attorney." *Id*. at 265.

But no statutory office is created by the TMFPA. Nor is the Attorney General's authority supplanted in any way. Rather, the TMFPA "imbues the attorney general with broad investigative and enforcement authority and—via *qui tam* provisions—deputizes private citizens to pursue a TMFPA action on the

---

[8] Contrary to how Novartis presents the *Sheppard* case, Article V, Section 21 of the Texas Constitution explicitly mentions a "criminal district attorney." The Court noted that "it is our opinion that the term criminal district attorney refers to a class or kind of district attorneys, and that a criminal district attorney is a district attorney within the meaning of the Constitution." *Sheppard*, 178 S.W.2d at 263.

government's behalf." *In re Xerox Corp.*, 555 S.W.3d 518, 525 (Tex. 2018). The additional assistance provided by the *qui tam* provisions is of paramount importance because "[t]he Medicaid system's size and complexity, the limited time and financial resources of governmental regulators, and the increasing sophistication of Medicaid scams make chicanery difficult to uncover." *Id.*

The two *Agey* cases are likewise misrepresented by Novartis. The appellate case, *American Liberty Pipe Line Co. v. Agey*, 167 S.W.2d 580 (Tex. App.—Austin 1942), was superseded by the Texas Supreme Court in *Agey v. American Liberty Pipe Line Co.*, 172 S.W.2d 972 (1943). Unlike the TMFPA, the statute at issue in the *Agey* cases lacked a *qui tam* provision and did not explicitly authorize a private right of action. *See Agey*, 172 S.W.2d at 974 ("If the Legislature had intended by this Act to authorize an individual to file a suit on behalf of himself and on behalf of the State, without the joinder of the Attorney General or some district or county attorney, it could have expressed such intention in clear language. This it did not do.").

## B. The TMFPA Properly Authorizes Private Individuals to Bring Suits on the State's Behalf.

Novartis argues that if the Attorney General declines to intervene in a case, the TMFPA "impermissibly authorizes an unharmed private party and its attorney

to prosecute violations of state law in place of the Attorney General."[9] But the State remains a real party in interest in a declined case and retains the authority to exercise significant control over the proceeding. Additionally, this Court has recognized the right of the Attorney General to secure outside assistance in the prosecution of State claims.

In *Terrell v. Sparks*, 135 S.W. 519, 521 (1911), the Court acknowledged that the Attorney General may appoint an outside attorney to assist with the discharge of his duties. *Terrell* addressed a statute which appropriated money that the Attorney General could use at his discretion to pursue various State claims. *See id.* at 519-20. The Attorney General used a portion of that money to contract with a private attorney, who worked on various public lawsuits for the State. *See id.* As is often the case with State claims, the Court acknowledged that "the Legislature regarded it as impossible for [the Attorney General] to perform this vast amount of professional work…" *Id.* at 522. Thus, the Court found no constitutional issue with the statute or contract between the Attorney General and private attorney, noting that "[t]he Governor and the Attorney General were authorized to determine the necessity of employing special counsel to assist the Attorney General…" *Id.*

*Maud* says the same thing: that when the provision of outside assistance is

---

[9] Petition at 25.

made available, "it is the constitutional right of the Attorney-General and the county and district attorneys to decline them or not at their discretion, and, if availed of, the services are to be rendered in subordination to their authority." 200 S.W. at 376.

The TMFPA provides numerous mechanisms by which the State remains in ultimate control of the litigation. For example, the State is entitled to ongoing information about declined cases and can choose to intervene later.[10] The State also remains the "real party in interest" and may submit Statements of Interest and appear at hearings to advocate for its rights.

Likewise, the State can pursue its claims through an alternate remedy in a separate proceeding;[11] can stay the relator's ability to conduct discovery that would interfere with the State's investigations or prosecutions;[12] and retains the ultimate authority to consent to—or veto—a proposed settlement.[13] The State may also intervene in a case even if it initially declines, allowing the State to prosecute, dismiss, or settle the action over the objections of the relator.[14] Because the State retains the ultimate authority to guide the prosecution, the relator serve's at the

---

[10] Tex. Hum. Res. Code § 36.104(b-1).

[11] Tex. Hum. Res. Code § 36.109.

[12] Tex. Hum. Res. Code § 36.108.

[13] Tex. Hum. Res. Code § 36.102(e).

[14] Tex. Hum. Res. Code §§ 36.104(b-1); 36.107(b), (c).

21

State's discretion and may only proceed with a TMFPA action without the State's participation when the State permits the relator to do so.

## PRAYER

For the foregoing reasons, the State respectfully requests that the Court deny Novartis's Petition.

Dated: July 17, 2024

Respectfully Submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil
Litigation

ELIZABETH BROWN FORE
Chief, Healthcare Program
Enforcement Division

/s/ Jordan Underhill
JORDAN UNDERHILL
Texas State Bar No. 24102586
JONATHAN D. BONILLA
Texas State Bar No. 24073939
LYNNE KURTZ-CITRIN
Texas State Bar No. 24081425

22

Assistant Attorneys General
Office of the Attorney General
Healthcare Program Enforcement
P.O. Box 12548
Austin, Texas 78711-2548
(512) 936-1410 (Office)
(512) 936-0674 (Fax)
jordan.underhill@oag.texas.gov
lynne.kurtz-citrin@oag.texas.gov
jonathan.bonilla@oag.texas.gov

**ATTORNEYS FOR THE STATE OF TEXAS**

**APP134**

**CERTIFICATE OF COMPLIANCE**

Based on a word count run in Microsoft Word, this Response contains 4,473 words, excluding the portions exempt from the word count under Texas Rule of Appellate Procedure 9.4(i)(1).

*/s/ Jordan Underhill*

Jordan Underhill

APP135

# CERTIFICATE OF SERVICE

I hereby certify on July 17, 2024 a true and correct copy of the foregoing document was served to the following counsel of record via electronic service:

Samuel F. Baxter
Jennifer L. Truelove
MCKOOL SMITH P.C.
104 East Houston, Suite 300
Marshall, Texas 75670
sbaxter@mckoolsmith.com
jtruelove@mckoolsmith.com

Eric B. Halper
Radu A. Lelutiu
MCKOOL SMITH P.C.
One Manhattan West
395 9th Avenue, 50th Floor
New York, New York 10001
ehalper@mckoolsmith.com
rlelutiu@mckoolsmith.com

W. Mark Lanier
Alex J. Brown
Zeke DeRose III
Jonathan Wilkerson
THE LANIER FIRM
10940 W. Sam Houston Pkwy N, Suite 100
Houston, Texas 77064
WML@LanierLawFirm.com
Alex.Brown@LanierLawFirm.com
Zeke.DeRose@LanierLawFirm.com
Jonathan.Wilkerson@LanierLawFirm.com

**ATTORNEYS FOR REAL PARTY IN INTEREST HEALTH SELECTION GROUP, LLC**

Danny S. Ashby
O'MELVENY & MYERS LLP
2501 North Harwood Street, Suite 1700
Dallas, Texas 75201-1663
dashby@omm.com
mwhisler@omm.com

Ross Galin
O'MELVENY & MYERS LLP
1301 Avenue of the Americas, Suite 1700
New York, NY 10019
rgalin@omm.com

Anton Melitsky
O'MELVENY & MYERS LLP
1301 Avenue of the Americas, Suite 1700
New York, NY 10019
mgaragiola@omm.com

Deron R. Dacus
THE DACUS FIRM, P.C.
821 ESE Loop 323, Suite 430
Tyler, Texas 75701
ddacus@dacusfirm.com

**ATTORNEY FOR RELATOR NOVARTIS PHARMACEUTICALS CORPORATION**

APP136

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below:

Janice Garrett on behalf of Jonathan Bonilla
Bar No. 24073939
Janice.Garrett@oag.texas.gov
Envelope ID: 89897964
Filing Code Description: Response to Petition
Filing Description: States Response to Relators Petition for Writ of Mandamus
Status as of 7/18/2024 8:01 AM CST

Associated Case Party: Health Selection Group, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Jonathan Wilkerson | 24050162 | jonathan.wilkerson@lanierlawfirm.com | 7/17/2024 7:26:33 PM | SENT |
| Samuel Baxter | 1938000 | sbaxter@mckoolsmith.com | 7/17/2024 7:26:33 PM | SENT |
| Zeke DeRose | 24057421 | zeke.derose@lanierlawfirm.com | 7/17/2024 7:26:33 PM | SENT |
| Jennifer Truelove | 24012906 | jtruelove@mckoolsmith.com | 7/17/2024 7:26:33 PM | SENT |
| Alex Brown | 24026964 | alex.brown@lanierlawfirm.com | 7/17/2024 7:26:33 PM | SENT |
| Eric B.Halper | | ehalper@mckoolsmith.com | 7/17/2024 7:26:33 PM | SENT |
| Radu A.Lelutiu | | rlelutiu@mckoolsmith.com | 7/17/2024 7:26:33 PM | SENT |
| W. MarkLanier | | WML@LanierLawFirm.com | 7/17/2024 7:26:33 PM | SENT |

Associated Case Party: State of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Lynne Kurtz-Citrin | 24081425 | lynne.kurtz-citrin@oag.texas.gov | 7/17/2024 7:26:33 PM | SENT |
| Jonathan Bonilla | 24073939 | Jonathan.Bonilla@oag.texas.gov | 7/17/2024 7:26:33 PM | SENT |
| Jordan Underhill | 24102586 | jordan.underhill@oag.texas.gov | 7/17/2024 7:26:33 PM | SENT |
| Mary JoToupin | | MaryJo.Toupin@oag.texas.gov | 7/17/2024 7:26:33 PM | SENT |
| Janice Garrett | | Janice.Garrett@oag.texas.gov | 7/17/2024 7:26:33 PM | SENT |

Associated Case Party: Novartis Pharmaceuticals Corporation

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Meredith N.Garagiola | | mgaragiola@omm.com | 7/17/2024 7:26:33 PM | SENT |
| Danny S.Ashby | | dashby@omm.com | 7/17/2024 7:26:33 PM | SENT |
| Ross Galin | | rgalin@omm.com | 7/17/2024 7:26:33 PM | SENT |

**APP137**

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below:

Janice Garrett on behalf of Jonathan Bonilla
Bar No. 24073939
Janice.Garrett@oag.texas.gov
Envelope ID: 89897964
Filing Code Description: Response to Petition
Filing Description: States Response to Relators Petition for Writ of Mandamus
Status as of 7/18/2024 8:01 AM CST

Associated Case Party: Novartis Pharmaceuticals Corporation

| Ross Galin | | rgalin@omm.com | 7/17/2024 7:26:33 PM | SENT |
|---|---|---|---|---|
| Anton Metlitsky | | ametlitsky@omm.com | 7/17/2024 7:26:33 PM | SENT |
| Deron R.Dacus | | ddacus@dacusfirm.com | 7/17/2024 7:26:33 PM | SENT |

**APP138**

FILED
24-0239
8/2/2024 4:48 PM
tex-90501011
SUPREME COURT OF TEXAS
BLAKE A. HAWTHORNE, CLERK

NO. 24-0239

# IN THE SUPREME COURT OF TEXAS

*IN RE NOVARTIS PHARMACEUTICALS CORPORATION*,

*Relator*.

Original Proceeding From The 71st District Court
in Harrison County, Texas, Cause No. 23-0276
The Honorable Brad Morin Presiding

# REPLY IN SUPPORT OF
# PETITION FOR WRIT OF MANDAMUS

**TEMPORARY STAY REQUESTED**
**ORAL ARGUMENT REQUESTED**

**DANNY S. ASHBY**
Texas Bar No. 01370960
**O'MELVENY & MYERS LLP**
2801 N. Harwood Street, Suite 1600
Dallas, Texas 75201
Telephone: +1 972 360 1900

**ANTON METLITSKY**
**ROSS GALIN**
**O'MELVENY & MYERS LLP**
7 Times Square
New York, NY 10036
Telephone: +1 212 326 2000
(Applications for *pro hac vice* admission pending)

**DERON R. DACUS**
Texas Bar No. 00790553
**THE DACUS FIRM, P.C.**
821 ESE Loop 323, Suite 430
Tyler, Texas 75701
Telephone: +1 903 705 1117

*Counsel for Relator*
*Novartis Pharmaceuticals Corporation*

APP139

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..........................................................................1

ARGUMENT ...............................................................................................3

     I.     Mandamus Relief Is Appropriate. ...................................................3

     II.    The Trial Court Lacks Subject Matter Jurisdiction............................5

     III.   HSG's Qui Tam Action is Void. .......................................................7

PRAYER..................................................................................................10

CERTIFICATE OF COMPLIANCE..............................................................12

CERTIFICATION ....................................................................................12

CERTIFICATE OF SERVICE .....................................................................13

**APP140**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agey v. Am. Lib. Pipe Line Co.*,
172 S.W.2d 972 (Tex. 1943) ..................................................................9

*Am. Lib. Pipe Line Co. v. Agey*,
167 S.W.2d 580 (Tex. App.—Austin 1942) ........................................10

*Brown v. De La Cruz*,
156 S.W.3d 560 (Tex. 2004) ..............................................................2, 7

*Busbee v. Cnty. Of Medina*,
681 S.W.3d 391 (Tex. 2023) ..................................................................7

*Camp v. Gulf Prod. Co.*,
122 Tex. 383 (1933) ...............................................................................9

*Fin. Comm'n Tex. v. Norwood*,
418 S.W.3d 566 (Tex. 2013) ..................................................................7

*Food & Drug Admin. v. All. for Hippocratic Med.*,
602 U.S. 367 (2024) ...............................................................................6

*Hill Cnty. v. Sheppard*,
178 S.W.2d 261 (Tex. 1944) ..................................................................9

*Hooks v. Fourth Ct. of Appeals*,
808 S.W.2d 56 (Tex. 1991) ....................................................................4

*In re Gibson*,
533 S.W.3d 916 (Tex. App.—Texarkana 2017, no pet.) .......................4

*In re Houston Specialty Ins. Co.*,
569 S.W.3d 138 (Tex. 2019) ..................................................................4

*In re J.B. Hunt Transp., Inc.*,
492 S.W.3d 28 (Tex. 2016) .................................................................3, 4

*In re Prudential Ins. Co. of Am.*,
148 S.W.3d 124 (Tex. 2004) ........................................................ 1, 3, 4

*In re Van Waters & Rogers, Inc.*,
145 S.W.3d 203 (Tex. 2004) ..................................................................4

*Maud v. Terrell*,
200 S.W. 375 (Tex. 1918) ............................................................. 2, 6, 8

*Southwestern Bell Tel. Co. v. Mktg. on Hold Inc.*,
308 S.W.3d 909 (Tex. 2010) ..................................................................5

*Sprint Comm'ns Co., L.P. v. APCC Servs., Inc.*,
   554 U.S. 269 (2008) ................................................................................5

*Staples v. State*,
   245 S.W. 639 (Tex. 1922) ......................................................................8

*Terrell v. Sparks*,
   135 S.W. 519 (1911) ............................................................................10

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) .............................................................................5, 6

*U.S. ex rel. Polansky v. Exec. Health Res. Inc.*,
   599 U.S. 419 (2023) ...............................................................................6

*Vermont Agency of Nat'l Res. V. United States ex. rel. Stevens*,
   529 U.S. 765 (2000) .............................................................................1, 5

**Statutes**

Tex. Hum. Res. Code § 36.101 ..................................................................8

**APP142**

## PRELIMINARY STATEMENT

HSG and the State fail to rebut what Novartis established in its Petition: HSG lacks both constitutional standing and a valid cause of action, thus warranting mandamus relief.

Novartis's Petition easily satisfies the balancing test enumerated in *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124 (Tex. 2004) (orig. proceeding). In suggesting otherwise, the Real Parties obfuscate the relevant standard, relying either on cases that applied the mandamus standard abrogated by *Prudential* or on cases with dramatically different facts.

The Real Parties' standing arguments fail too. Having argued below that the TMFPA grants HSG statutory standing even without an injury, the Real Parties now change course, relying on a strained reading of standing-by-assignment under *federal* law, as discussed in *Vermont Agency of Nat'l Res. v. United States ex. rel. Stevens*, 529 U.S. 765, 773 (2000). But as Novartis explained (Pet. 18–21), this argument fails twice over. First, the TMFPA—unlike the FCA, which creates a statutory tort for recovering damages—is an enforcement statute for civil penalties only, so it cannot create "a partial assignment of the [State's] damages claim." *Stevens*, 529 U.S. at 773. And the Real Parties cannot hide from that distinction by arguing that the U.S. Supreme Court misspoke when it said "damages." Second, the *Stevens* Court's reliance on the historical practice of *qui tam* actions under English

1

and federal law does not extend to Texas, and the Real Parties do not show otherwise. And while the Real Parties point to representative and statutory standing in support of their position, these arguments quickly collapse because the representative-standing doctrine has no application here, and statutory standing cannot replace constitutional standing.

The Real Parties' defense of the constitutionality of the TMFPA's *qui tam* provisions also fails. While HSG, though not Texas, claims that *Brown v. De La Cruz*, 156 S.W.3d 560 (Tex. 2004) settled the question, that is simply not true. *Brown* did not even involve a *qui tam* statute, and it says nothing about the Legislature's authority to authorize a private citizen to file a lawsuit on the State's behalf, as the TMFPA purports to do. By contrast, this Court for over a century has recognized that the Texas Constitution commits the authority and duty to initiate and prosecute claims that injure the State *exclusively* to the State's attorneys. *See Maud v. Terrell*, 200 S.W. 375, 376 (Tex. 1918) ("[T]he powers thus conferred by the Constitution upon these officials are exclusive. The Legislature cannot devolve them upon others.").

The Court should grant the Petition and order the district court to dismiss HSG's legally invalid "civil law enforcement action." (MR002).

APP144

**ARGUMENT**

## I. Mandamus Relief Is Appropriate.

In claiming that mandamus relief is unwarranted because Novartis has an adequate remedy on appeal, the Real Parties ignore the applicable standard: an appellate remedy may preclude mandamus relief "when any benefits to mandamus review are outweighed by the detriments." *In re Prudential*, 148 S.W.3d at 136. The "determination is not an abstract or formulaic one; it is practical and prudential," requiring a "careful balance of jurisprudential considerations," which "implicate both public and private interests." *Id.* In particular, it retains "flexibility" to "spare[] private parties and the public" the "time and money utterly wasted enduring eventual reversal of improperly conducted proceedings." *In re J.B. Hunt Transp., Inc.*, 492 S.W.3d 287, 299 (Tex. 2016) (orig. proceeding).

That is precisely what will happen here without mandamus relief. Permitting a case to proceed absent subject-matter jurisdiction or a legally valid cause of action would waste significant public and private resources on litigation destined for dismissal and would violate the separation of powers by intruding on executive jurisdiction. *Prudential*, 148 S.W.3d at 136 (mandamus appropriate to avoid "grinding through proceedings that were certain to be 'little more than a fiction'") (citation omitted).

3

While the Real Parties argue that expense and delay are insufficient for mandamus relief, they rely on cases applying the "inflexible understanding of an adequate remedy on appeal" that the Court "abrogate[d]" in *Prudential*. *J.B. Hunt*, 492 S.W.3d at 299; *see Hooks v. Fourth Ct. of Appeals*, 808 S.W.2d 56, 59 (Tex. 1991) (State 5); *In re Gibson*, 533 S.W.3d 916, 920 (Tex. App.—Texarkana 2017, no pet.) (HSG 4) (relying on pre-*Prudential* authority). This Court's recent clarifications that "mandamus relief is appropriate" to prevent wasted resources by "private parties and the public" supersede older authority. *In re Houston Specialty Ins. Co.*, 569 S.W.3d 138, 142 (Tex. 2019).

The Real Parties also cite cases holding that mandamus relief is appropriate in other situations—e.g., to prevent a litigant from losing substantial rights or a court from interfering with another court's jurisdiction (HSG 4; State 5–6)—but these are not the *only* scenarios in which mandamus relief is appropriate, particularly in light of *Prudential*'s "practical" balancing test. 148 S.W.3d at 136.[1] To deny mandamus relief would result in a "gross and unnecessary waste of economic and judicial resources" if this case is tried to judgment only to be reversed on appeal for lack of subject-matter jurisdiction or a valid cause of action. *J.B. Hunt*, 492 S.W.3d at 298.

---

[1] HSG adds the word "only" to *In re Van Waters & Rogers, Inc.*, 145 S.W.3d 203 (Tex. 2004) (4), but *Rogers* did not hold that loss of substantial rights was the "only" scenario warranting mandamus relief.

4

## II. The Trial Court Lacks Subject Matter Jurisdiction.

As Novartis explained (Pet. 14–15), HSG lacks constitutional standing because it did not personally suffer any injury. The Real Parties' arguments to the contrary are unavailing.

They argue that HSG has standing as the State's assignee, citing *Stevens*, 529 U.S. at 773, but this theory collapses under Texas law for two reasons. Pet. 19. First, contrary to the Real Parties' suggestion, the U.S. Supreme Court did not misspeak when it said that "[t]he FCA can reasonably be regarded as effecting a partial assignment of the Government's *damages* claim." *Stevens*, 529 U.S. at 773 (emphasis added). While the State insists (at 9) that the *Stevens* Court "focuse[d]" on the assignment of the government's injury-in-fact, this ignores the Court's unambiguous description of the relator as "partial assignee" of the government's "damages claim." *Stevens*, 529 U.S. at 773 n.4. And this interpretation makes sense: an assignor does not assign its injury; it assigns its claim for relief.[2] *Id.* at 773.

*TransUnion LLC v. Ramirez* confirms as much. 594 U.S. 413 (2021). There, the Court explained that standing to sue for violations of a federal statute is limited

---

[2] The State's reliance (11–13) on cases involving assignment of claims by private parties for compensatory damages under common law theories—not statutory penalties under *qui tam* statutes—is therefore misplaced. *See Sprint Comm'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269 (2008) (assignees had "legal title" by written agreement to claims for damages under common law theories); *Southwestern Bell Tel. Co. v. Mktg. on Hold Inc.*, 308 S.W.3d 909 (Tex. 2010) (assignee had standing to pursue claims for customer "overcharges" by telephone company).

5

to those who establish a "concrete harm." *Id.* at 428 ("[If] . . . Article III did not require plaintiffs to demonstrate a 'concrete harm,' Congress could authorize virtually any citizen to bring a statutory damages suit against virtually any defendant who violated virtually any federal law. Such an expansive understanding of Article III would flout constitutional text, history, and precedent.") (citations omitted). Construing *Stevens* as assigning "injury-in-fact"—as the Real Parties suggest— would convert the "public interest that private entities comply with the law" into "an individual right" that "permits all citizens . . . to sue." *Id.* at 428–29 (quotations and citations omitted). And even if assignment in *Stevens* were not limited to damages claims, the TMFPA cannot create an assignable claim for the enforcement of ***civil penalties*** because the Texas Constitution grants the State's own attorneys the "exclusive" power to sue for the State—a power the Legislature "cannot devolve . . . upon others." *Maud*, 200 S.W. at 376; Pet. 19, 21–24.[3]

Second, the Real Parties fail to explain how *Stevens'*s second rationale for Article III jurisdiction—the history of federal *qui tam* actions—finds support in Texas. Pet. 20–21. HSG suggests (at 7) that the Texas Constitution's Open Courts provision is "functionally equivalent" to the federal "Cases" and "Controversies" requirement, but it cites no authority for this claim other than *Food & Drug Admin.*

---

[3] That several members of the U.S. Supreme Court recently questioned, *sua sponte*, the constitutionality of the FCA's *qui tam* provision further undermines the Real Parties' reliance on *Stevens*. *See U.S. ex rel. Polansky v. Exec. Health Res. Inc.*, 599 U.S. 419, 442–52 (2023).

*v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024), which simply recites Article III's standing requirements. As Novartis explained (Pet. 20–21), *Stevens'*s reliance on history does not extend to the TMFPA.

The Real Parties' remaining arguments fare no better. HSG claims (at 8–10) that the TMFPA itself confers standing, but this conflates **constitutional** standing and **statutory** standing; the latter goes only "to the merits of the plaintiff's claim, not the plaintiff's standing to sue in the jurisdictional sense." *Busbee v. Cnty. Of Medina*, 681 S.W.3d 391, 395 (Tex. 2023); Pet. 15–16. The same defect forecloses the State's vague plea (at 6) to taxpayer standing; taxpayers must still satisfy constitutional standing because "courts' constitutional jurisdiction cannot be enlarged by statute." *See, e.g.*, *Fin. Comm'n Tex. v. Norwood*, 418 S.W.3d 566, 582 n.83 (Tex. 2013). Finally, HSG's suggestion that it has representative standing fails because the State has legal authority and capacity to sue, as Novartis explained. Pet. 17–18.

## III. HSG's *Qui Tam* Action is Void.

The TMFPA *qui tam* provisions violate Article IV, Section 22 and Article V, Section 21 of the Texas Constitution, rendering HSG's cause of action void. Pet. 21–26. HSG's and the State's arguments in response fall flat.

HSG first claims (at 10) that *Brown v. De La Cruz*, 156 S.W.3d 560 (Tex. 2004) resolved this issue, but *Brown* did not address a *qui tam* statute—or the

7

propriety of any statute under the Texas Constitution. Pet. 26–27. *Brown* concerned the Legislature's creation of a private cause of action to recover statutory penalties for an individual injury; it says nothing about the constitutionality of a statute purporting to authorize a private party to bring a civil law enforcement action for the State to remedy the State's alleged injury.[4]

The Real Parties then try to salvage the TMFPA's *qui tam* provisions by contorting this Court's jurisprudence. They claim that because this Court found that the statutes at issue in *Maud*, 200 S.W. 375, and *Staples v. State*, 245 S.W. 639 (Tex. 1922), do not conflict with the Texas Constitution, the Court should do the same here. HSG 11–12; State 16–17. But this ignores the differences in the statutes at issue. The TMFPA *qui tam* provisions unambiguously permit "a person" to "bring a civil action . . . for the state" for violations that injure only the state. Tex. Hum. Res. Code § 36.101. By contrast, the statutes in *Maud* and *Staples* lack the same "unambiguous language" granting individuals the authority to sue for the State, permitting constructions that did not conflict with Texas' Constitution. *Maud*, 200 S.W. at 377 (holding statute granting various authority to tax collector only authorized tax collector to "cause the suit to be filed by the [State's attorney]," not file it himself); *Staples*, 245 S.W. at 640 (statute authorizing quo warranto

---

[4] HSG's observation (at 11) that Texas and federal courts have cited *Brown* for the proposition that the Legislature may create a private cause of action for violations of Texas statutes misses the point: the Legislature cannot confer on private parties the authority to sue for the State. *See, e.g.*, *Maud*, 200 S.W. at 376.

proceedings to enforce campaign-finance law permitted suits only "through the proper officer of the state"). The Real Parties fail to explain how the Court could construe the TMFPA *qui tam* provisions' unambiguous language as intending anything other than allowing a person to sue on the State's behalf.

The State's attempt to distinguish Novartis's other authority fails. The State observes (at 18) that, unlike the statute in *Hill Cnty. v. Sheppard*, the TMFPA does not create a "statutory office," but this misses the point: the *Sheppard* statute was "invalid" because it purported to shift to a third party an authority the Texas Constitution confers exclusively on the State's attorneys—precisely what the TMFPA does. 178 S.W.2d 261, 262 (Tex. 1944). The State then notes (at 19) that the statute in *Agey* lacked a *qui tam* provision and did not explicitly authorize a private right of action. But this omits that *Agey* involved a civil-penalties statute that authorized "suit[s] to be brought in the name of" private parties on the state's behalf, and the Court held that plaintiff could not lawfully "maintain his cause of action" under the Texas Constitution. *Agey v. Am. Lib. Pipe Line Co.*, 172 S.W.2d 972, 974 (Tex. 1943). The same is true here.

Finally, the State's authority is easily distinguished. First, it cites *Camp v. Gulf Prod. Co.*, 122 Tex. 383 (1933) (at 17), wrongly claiming that this Court upheld a statute authorizing an individual to sue on the State's behalf. *Camp* involved an action akin to a mandamus proceeding that courts have understood to constitute

9

"suits *against* the State." *Am. Lib. Pipe Line Co. v. Agey*, 167 S.W.2d 580, 583–84 (Tex. App.—Austin 1942). *Camp* involved "an applicant [seeking] to purchase alleged unsurveyed school land . . . to compel the county supervisor to make an official survey of the land." *Id*. at 583. *Camp* thus provides no support for the State's contention that the Legislature may authorize private parties to institute or maintain a suit for the State.

Likewise, the State's reliance on *Terrell v. Sparks*, 135 S.W. 519 (1911) is misplaced. *Terrell* involved a statute authorizing the Attorney General to employ outside counsel to work "*under the direction and control* of the Attorney General." *Id*. at 520–22. But that is nothing like the TMFPA *qui tam* provisions, which plainly grants any person—from Texas or elsewhere—unfettered discretion and authority to institute a civil law enforcement action for and in the name of the State.

## PRAYER

Novartis respectfully requests that the Court issue a writ of mandamus directing the district court to dismiss HSG's claims.

10

Dated:  August 2, 2024    Respectfully submitted,

O'MELVENY & MYERS LLP

*/s/ Danny S. Ashby*
Danny S. Ashby
Texas Bar No. 01370960
dashby@omm.com
2801 North Harwood Street, Suite 1600
Dallas, Texas  75201
Telephone:  +1 972 360 1900
Facsimile:  +1 972 360 1901

Anton Metlitsky
ametlitsky@omm.com
7 Time Square
New York, NY 10036
Telephone: +1 212 326 2000
(Application for *pro hac vice* admission pending)

Ross Galin
rgalin@omm.com
7 Times Square
New York, NY 10036
Telephone: +1 212 326 2000
(Application for *pro hac vice* admission pending)

THE DACUS FIRM, P.C.

Deron R. Dacus
Texas Bar No. 00790553
ddacus@dacusfirm.com
821 ESE Loop 323, Suite 430
Tyler, Texas 75701
Telephone: +1 903 705 1117

*Counsel for Relator*
*Novartis Pharmaceuticals Corporation*

11

**CERTIFICATE OF COMPLIANCE**

Based on a word count run in Microsoft Word for Microsoft 365, this Reply in support of a Petition for Writ of Mandamus contains 2,399, excluding the portions of the brief exempt from the word count under Texas Rule of Appellate Procedure 9.4(i)(1).

*/s/ Danny S. Ashby*
Danny S. Ashby

**CERTIFICATION**

I certify that I have reviewed this Reply and concluded that every factual statement in this Reply is supported by competent evidence included in the Appendix or Mandamus Record.

*/s/ Danny S. Ashby*
Danny S. Ashby

APP154

**CERTIFICATE OF SERVICE**

This will certify that a true and correct copy of the foregoing Reply in Further

Support of Petition for Writ of Mandamus has been forwarded this 2nd Day of

August, 2024, to the following attorneys of record via electronic service:

Samuel F. Baxter
Jennifer L. Truelove
MCKOOL SMITH P.C.
104 East Houston, Suite 300
Marshall, Texas 75670
sbaxter@mckoolsmith.com
jtruelove@mckoolsmith.com

Eric B. Halper
Radu A. Lelutiu
MCKOOL SMITH P.C.
One Manhattan West
395 9th Avenue, 50th Floor
New York, New York 10001
ehalper@mckoolsmith.com
rlelutiu@mckoolsmith.com

W. Mark Lanier
Alex J. Brown
Zeke DeRose III
Jonathan Wilkerson
THE LANIER FIRM
10940 W. Sam Houston Pkwy N., Suite 100
Houston, Texas 77064
WML@LanierLawFirm.com
Alex.Brown@LanierLawFirm.com
Zeke.DeRose@LanierLawFirm.com
Jonathan.Wilkerson@LanierLawFirm.com

*Counsel for Health Selection Group, LLC*

Jordan Underhill
Jonathan D. Bonilla
Lynne Kurtz-Citrin
Office of the Attorney General
Civil Medicaid Fraud Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711
Jordan.Underhill@oag.texas.gov
Jonathan.Bonilla@oag.texas.gov
Lynne.Kurtz-Citrin@oag.texas.gov

*Counsel for the State of Texas*

/s/ Danny S. Ashby
Danny S. Ashby

13

APP155

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below:

Court Services on behalf of Danny Ashby
Bar No. 1370960
ommsvc2@omm.com
Envelope ID: 90501011
Filing Code Description: Reply to Petition
Filing Description: REPLY IN SUPPORT OF PETITION FOR WRIT OF MANDAMUS
Status as of 8/2/2024 4:54 PM CST

Associated Case Party: Novartis Pharmaceuticals Corporation

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Meredith N.Garagiola | | mgaragiola@omm.com | 8/2/2024 4:48:26 PM | SENT |
| Deron R.Dacus | | ddacus@dacusfirm.com | 8/2/2024 4:48:26 PM | SENT |
| Danny S.Ashby | | dashby@omm.com | 8/2/2024 4:48:26 PM | SENT |
| Ross Galin | | rgalin@omm.com | 8/2/2024 4:48:26 PM | SENT |
| Anton Metlitsky | | ametlitsky@omm.com | 8/2/2024 4:48:26 PM | SENT |
| Joshua Goode | | jgoode@omm.com | 8/2/2024 4:48:26 PM | SENT |

Associated Case Party: Health Selection Group, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jonathan Wilkerson | 24050162 | jonathan.wilkerson@lanierlawfirm.com | 8/2/2024 4:48:26 PM | SENT |
| Samuel Baxter | 1938000 | sbaxter@mckoolsmith.com | 8/2/2024 4:48:26 PM | SENT |
| Zeke DeRose | 24057421 | zeke.derose@lanierlawfirm.com | 8/2/2024 4:48:26 PM | SENT |
| Jennifer Truelove | 24012906 | jtruelove@mckoolsmith.com | 8/2/2024 4:48:26 PM | SENT |
| Alex Brown | 24026964 | alex.brown@lanierlawfirm.com | 8/2/2024 4:48:26 PM | SENT |
| Eric B.Halper | | ehalper@mckoolsmith.com | 8/2/2024 4:48:26 PM | SENT |
| Radu A.Lelutiu | | rlelutiu@mckoolsmith.com | 8/2/2024 4:48:26 PM | SENT |
| W. MarkLanier | | WML@LanierLawFirm.com | 8/2/2024 4:48:26 PM | SENT |
| joel leach | | jleach@mckoolsmith.com | 8/2/2024 4:48:26 PM | SENT |
| denise lopez | | dlopez@mckoolsmith.com | 8/2/2024 4:48:26 PM | SENT |

Associated Case Party: State of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below:

Court Services on behalf of Danny Ashby
Bar No. 1370960
ommsvc2@omm.com
Envelope ID: 90501011
Filing Code Description: Reply to Petition
Filing Description: REPLY IN SUPPORT OF PETITION FOR WRIT OF MANDAMUS
Status as of 8/2/2024 4:54 PM CST

Associated Case Party: State of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Lynne Kurtz-Citrin | 24081425 | lynne.kurtz-citrin@oag.texas.gov | 8/2/2024 4:48:26 PM | SENT |
| Jonathan Bonilla | 24073939 | Jonathan.Bonilla@oag.texas.gov | 8/2/2024 4:48:26 PM | SENT |
| Jordan Underhill | 24102586 | jordan.underhill@oag.texas.gov | 8/2/2024 4:48:26 PM | SENT |
| Mary JoToupin | | MaryJo.Toupin@oag.texas.gov | 8/2/2024 4:48:26 PM | SENT |
| Janice Garrett | | Janice.Garrett@oag.texas.gov | 8/2/2024 4:48:26 PM | SENT |

FILED
24-0239
9/30/2024 2:32 PM
tex-92607044
SUPREME COURT OF TEXAS
BLAKE A. HAWTHORNE, CLERK

No. 24-0239

# IN THE SUPREME COURT OF TEXAS

IN RE NOVARTIS PHARMACEUTICALS CORPORATION, *Relator.*

SIXTH DISTRICT COURT OF APPEALS CASE NO. 06-24-00005-CV,
FROM THE 71ST DISTRICT COURT IN HARRISON COUNTY, TEXAS
CAUSE NO. 23-0276 · THE HONORABLE BRAD MORIN PRESIDING

## RELATOR NOVARTIS PHARMACEUTICALS CORPORATION'S BRIEF ON THE MERITS

DANNY S. ASHBY
(Texas Bar No. 01370960)
**O'MELVENY & MYERS LLP**
2801 N. Harwood Street, Suite 1600
Dallas, Texas 75201
Telephone: +1 972.360.1900

DERON R. DACUS
(Texas Bar No. 00790553)
**THE DACUS FIRM, P.C.**
821 ESE Loop 323, Suite 430
Tyler, Texas 75701
Telephone: +1 903.705.1117

ANTON METLITSKY
ROSS GALIN
**O'MELVENY & MYERS LLP**
7 Times Square
New York, NY 10036
Telephone: +1 212.326.2000
(Admitted *Pro Hac Vice*)

*Counsel for Relator Novartis Pharmaceuticals Corporation*


COUNSEL PRESS · (213) 680-2300

PRINTED ON RECYCLED PAPER


**APP158**

## IDENTITY OF PARTIES AND COUNSEL

**Relator**
Defendant Novartis
Pharmaceuticals
Corporation

Danny S. Ashby
O'MELVENY & MYERS LLP
2801 N. Harwood Street, Suite 1600
Dallas, Texas 75201

Anton Metlitsky
Ross Galin
O'MELVENY & MYERS LLP
1301 Avenue of the Americas,
17th Floor
New York, NY 10019
(Admitted *pro hac vice*)

Meredith Garagiola
O'MELVENY & MYERS, LLP
1625 Eye Street, NW
Washington, DC 20006

Deron R. Dacus
THE DACUS FIRM, P.C.
821 ESE Loop 323, Suite 430
Tyler, Texas 75701

Megan Whisler (formerly with
O'Melveny & Myers LLP)

**Real Party in Interest**
Plaintiff Health Selection
Group, LLC

Samuel F. Baxter
Jennifer L. Truelove
MCKOOL SMITH P.C.
104 East Houston, Suite 300
Marshall, Texas 75670

Eric B. Halper
Radu A. Lelutiu
MCKOOL SMITH P.C.
One Manhattan West

i

395 Ninth Avenue, 50th Floor
New York, New York 10001

W. Mark Lanier
Alex J. Brown
Zeke DeRose III
Jonathan Wilkerson
THE LANIER FIRM
10940 W. Sam Houston Pkwy N,
Suite 100
Houston, Texas 77064

Chris Gadoury
Ryan Ellis
THE LANIER FIRM
10940 W. Sam. Houston Pkwy N,
Suite 100
Houston, Texas 77064

Kenneth W. Starr (formerly with
The Lanier Firm)

**Real Party in Interest**
State of Texas

Ken Paxton
Brent Webster
James Lloyd
Elizabeth Brown Fore
Jordan Underhill
Jonathan D. Bonilla
Lynn Kurtz-Citrin
OFFICE OF THE TEXAS ATTORNEY
GENERAL
P.O. Box 12548, Capitol Station
Austin, Texas 78711

Cynthia Lu (formerly with the Office
of the Texas Attorney General)

**Respondent**

ii

The Hon. Brad Morin,
71st District Court, Harrison
County

APP161

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL..............................................vi

TABLE OF CONTENTS .................................................................viv

TABLE OF AUTHORITIES .............................................................vi

STATEMENT OF THE CASE ..........................................................xii

RECORD REFERENCES .................................................................xii

STATEMENT OF JURISDICTION ...................................................xiii

ISSUES PRESENTED ....................................................................xiv

INTRODUCTION............................................................................ 1

STATEMENT OF FACTS ................................................................ 3

    A.    Statutory Background.................................................... 3

    B.    Facts and Proceedings Below....................................... 7

SUMMARY OF ARGUMENT ......................................................... 12

ARGUMENT ............................................................................... 14

I.    HSG Lacks Standing To Bring This Qui Tam Action. ................ 15

    A.    The Constitution requires that a plaintiff demonstrate injury. ......................................................................... 15

    B.    HSG has not suffered any injury. ...................................... 16

    C.    HSG cannot sue as an assignee or representative of the State. ............................................................................ 18

        1.    There is no damages claim to assign. ......................... 19

        2.    Representative standing has no application here. ...... 23

II.    The TMFPA's Qui Tam Provisions Offend The Separation Of Powers. ................................................................................ 25

    A.    The Texas Constitution exclusively assigns to State attorneys the power to bring and maintain suits for the State. ............................................................................ 27

    B.    The TMFPA impermissibly authorizes private individuals to press suits that State attorneys decline to control.......................................................................... 32

**APP162**

# TABLE OF CONTENTS
(continued)

    1.    The TMFPA allows for litigation that State attorneys affirmatively choose not to bring ............... 33

    2.    There is no possible saving construction. ................... 38

    3.    HSG and the State's contrary arguments lack merit. ........................................................... 39

  C.    History cannot salvage the TMFPA. ................................. 44

III.  The Court Should Grant Mandamus Relief. ............................... 47

CONCLUSION AND PRAYER ............................................................ 49

CERTIFICATE OF COMPLIANCE ..................................................... 51

CERTIFICATE OF SERVICE ............................................................. 52

APP163

# TABLE OF AUTHORITIES

## Cases

*Agey v. American Liberty Pipe Line Co.*,
  172 S.W.2d 972 (Tex. 1943)........................................................ *passim*

*Allen v. Fisher*,
  9 S.W.2d 731 (Tex. 1928)........................................................ 13, 25

*American Liberty Pipeline Co v. Agey*,
  167 S.W.2d 580 (Tex. App. 1942)............................................ 29, 30, 46

*Armadillo Bail Bonds v. State*,
  802 S.W.2d 237 (Tex. Crim. App. 1990)...................................... 25, 26

*Brown v. De La Cruz*,
  156 S.W.3d 560 (Tex. 2004)......................................................... 40, 41

*Bush v. Republic of Texas*,
  1 Tex. 455 (1846) ....................................................................... 45

*Camp v. Gulf Prod. Co.*,
  61 S.W.2d 773 (Tex. 1933)............................................................. 30

*Charles Scribner's Sons v. Marrs*,
  262 S.W. 722 (Tex. 1924)................................................................ 33

*Data Foundry, Inc. v. City of Austin*,
  620 S.W.3d 692 (Tex. 2021)........................................................ 15, 16

*El Paso Elec. Co. v. Tex. Dep't of Ins.*,
  937 S.W.2d 432 (Tex. 1996)................................................. 26, 31, 34

*Farmers Tex. Cnty. Mut. Ins. Co. v. Beasley*,
  598 S.W.3d 237 (Tex. 2020)............................................................ 15

*Fin. Comm'n of Tex. v. Norwood*,
  418 S.W.3d 566 (Tex. 2013)............................................................ 17

*Gabelli v. SEC*,
  568 U.S. 442 (2013) ...................................................................... 21

**APP164**

*Gibbs v. State,*
46 S.W. 645 (Tex. Crim. App. 1898)......................................................46

*Heckman v. Williamson Cnty.,*
369 S.W.3d 137 (Tex. 2012)............................................ 15, 16, 17, 18

*Hill County v. Sheppard,*
178 S.W.2d 261 (Tex. 1944)............................................... 31, 32, 34

*Hughes Aircraft Co. v. United States ex rel. Schumer,*
520 U.S. 939 (1997) ....................................................................35

*In re Allcat Claims Serv., L.P.,*
356 S.W.3d 455 (Tex. 2011)..........................................................17

*In re Essex Ins. Co.,*
450 S.W.3d 524 (Tex. 2014)..........................................................48

*In re Farmers Tex. Cnty. Mut. Ins. Co.,*
621 S.W.3d 261 (Tex. 2021)..........................................................48

*In re J.B. Hunt Transport, Inc.,*
492 S.W.3d 287 (Tex. 2016)..........................................................48

*In re Lazy W Dist. No. 1,*
493 S.W.3d 538 (Tex. 2016)..........................................................17

*In re Prudential Ins. Co. of Am.,*
148 S.W.3d 124 (Tex. 2004)..................................................... 47, 48

*In re Shire PLC,*
633 S.W.3d 1 (Tex. App. 2021) .....................................................48

*In re Xerox Corp.,*
555 S.W.3d 518 (Tex. 2018)................................................... *passim*

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992) ....................................................................16

*Malouf v. State ex rel. Ellis,*
694 S.W.3d 712 (Tex. 2024)...................................................... 4, 34

vii

*Marsh v. Chambers,*
  463 U.S. 783 (1983) ...................................................................45

*Maud v. Terrell,*
  200 S.W. 375 (Tex. 1918).....................................................27, 28, 34

*Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.,*
  236 S.W.3d 765 (Tex. 2007)........................................................24

*Morrison v. Olson,*
  487 U.S. 654 (1988) ...................................................................35

*Mosaic Baybrook One, L.P. v. Simien,*
  674 S.W.3d 234 (Tex. 2023)........................................................16

*NLRB v. Noel Canning,*
  573 U.S. 513 (2014) ...................................................................47

*Perez v. Turner,*
  653 S.W.3d 191 (Tex. 2022)........................................................23

*PPG Indus., Inc. v. JMB/Houston Cntrs. Partners Ltd. P'ship,*
  146 S.W.3d 79 (Tex. 2004)..........................................................36

*Quick v. City of Austin,*
  7 S.W.3d 109 (Tex. 1998)............................................................39

*Riley v. St. Luke's Episcopal Hosp.,*
  252 F.3d 749 (5th Cir. 2001) .......................................................45

*Saldano v. State,*
  70 S.W.3d 873 (Tex. Crim. App. 2002)...........................................47

*Southern Pac Co. v. Porter,*
  331 S.W.2d 42 (Tex. 1960)..........................................................46

*Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.,*
  554 U.S. 269 (2008) ...................................................................22

*Staples v. State,*
  245 S.W. 639 (Tex. 1922)........................................................ *passim*

**APP166**

*State ex rel. Durden v. Shahan,*
   658 S.W.3d 300 (Tex. 2022)......................................................26

*State v. Moore,*
   57 Tex. 307 (1882) ...................................................................46

*Tenet Hosps. Ltd. v. Rivera,*
   445 S.W.3d 698 (Tex. 2014)......................................................24

*Terrell v. Sparks,*
   135 S.W. 519 (Tex. 1911).........................................................31

*Tex. Ass'n of Bus. v. Tex. Air Control Bd.,*
   852 S.W.2d 440 (Tex. 1993)......................................................17

*Texas Boll Weevil Eradication Found., Inc. v. Lewellen,*
   952 S.W.2d 454 (Tex. 1997)................................................35, 37

*TransUnion LLC v. Ramirez,*
   594 U.S. 413 (2021) ............................................................21, 22

*United States ex rel. Health Choice Alliance, LLC v. Eli Lilly & Co.,*
   4 F.4th 255 (5th Cir. 2021).....................................................9, 10

*United States ex rel. Polansky v. Exec. Health Res., Inc.,*
   599 U.S. 419 (2023) ............................................................45, 47

*United States ex. rel. Carroll v. Planned Parenthood Gulf Coast, Inc.,*
   21 F. Supp. 3d 825 (S.D. Tex. 2014).........................................6

*Valley Forge Christian Coll. v. Americans United for Separation of
   Church & State, Inc.,*
   454 U.S. 464 (1982) ...............................................................18

*Vermont Agency of Natural Resources v. United States ex rel. Stevens,*
   529 U.S. 765 (2000) ........................................................ *passim*

*Wal-Mart Stores, Inc. v. Forte,*
   497 S.W.3d 460 (Tex. 2016).....................................................21

*Walz v. Tax Comm'n of City of N.Y.,*
   397 U.S. 664 (1970) ...............................................................47

**APP167**

## Constitutional Provisions

Tex. Const. art. I, § 13..................................................................16

Tex. Const. art. II, § 1 ......................................................... 16, 25

## Statutes

31 U.S.C. § 3729(a) .......................................................................7

Tex. Estates Code § 351.101 ......................................................24

Tex. Gov't Code § 402.021 .........................................................26

Tex. Hum. Res. Code § 36.051(a) .................................................4

Tex. Hum. Res. Code § 36.052........................................................4

Tex. Hum. Res. Code § 36.101(a) .......................................x, 4, 38

Tex. Hum. Res. Code § 36.101(b) .................................................6

Tex. Hum. Res. Code § 36.102(b) .................................................5

Tex. Hum. Res. Code § 36.102(d) .................................................5

Tex. Hum. Res. Code § 36.104(a)(1) .............................................5

Tex. Hum. Res. Code § 36.104(a)(2) ...........................................42

Tex. Hum. Res. Code § 36.104(b) ......................................... *passim*

Tex. Hum. Res. Code § 36.104(b-1) ........................................6, 43

Tex. Hum. Res. Code § 36.105........................................... 5, 38

Tex. Hum. Res. Code § 36.107(b) .................................................5

Tex. Hum. Res. Code § 36.107(c).................................................5

Tex. Hum. Res. Code § 36.107(d) .................................................5

Tex. Hum. Res. Code § 36.110(a) .................................................7

**APP168**

Tex. Hum. Res. Code § 36.110(a-1) ........................................................7

Tex. Hum. Res. Code § 36.104(a)(1) ......................................................33

Tex. Hum. Res. Code § 36.104(a)(2) ......................................................33

Tex. Hum. Res. Code § 36.104(b-1) .......................................................44

## Rules

Tex. R. App. P. 52.3(e) ............................................................................xi

## Other Authorities

2007 Tex. Sess. Law Serv. Ch. 29, § 4 (S.B. 362)....................................6

2023 Tex. Sess. Law Serv. Ch. 273 (S.B. 745) ........................................3

34 Tex. Jur. 445......................................................................................32

*Constitutionality of the* Qui Tam *Provisions of the False Claims Act*, 13
    Op. O.L.C. 207 (1989)........................................................................45

J. Randy Beck*, The False Claims Act And The English Eradication of
    Qui Tam Legislation*, 78 N.C. L. Rev. 539 (2000)..............................36

Novartis, *About*, https://www.novartis.com/about (last accessed
    September 30, 2024)............................................................................8

Saikrishna Prakash, *The Chief Prosecutor*, 73 Geo. Wash. L. Rev. 521
    (2005) .................................................................................................37

U.S. Mot. to Dismiss, *United States ex rel. Health Choice Alliance, LLC
    v. Eli Lilly & Co.*, No. 5:17-cv-123 (E.D. Tex. Dec. 17, 2018),
    Dkt. 192 ............................................................................................37

**APP169**

# STATEMENT OF THE CASE

*Nature of the Case*:    Health Selection Group, LLC (HSG) filed this *qui tam* action against Novartis Pharmaceuticals Corporation pursuant to the Texas Medicaid Fraud Prevention Act (TMFPA), which states that "a person may bring a civil action for a violation of Section 36.002 for the person and for the state" and that "the person bringing the action may proceed without the state's participation" if the State declines to join the suit. Tex. Hum. Res. Code §§ 36.101(a), .104(b).

Novartis filed a combined Plea to the Jurisdiction and Rule 91a Motion to Dismiss on the ground that (i) the district court lacks subject-matter jurisdiction over the action because HSG did not personally suffer any injury from the conduct alleged in the First Amended Petition and (ii) HSG lacks a valid cause of action because the TMFPA's *qui tam* provisions violate Article IV, Section 22 and Article V, Section 21 of the Texas Constitution.

*Respondent*:    Hon. Brad Morin, 71st District Court, Harrison County, Texas; Cause No. 23-0276.

*Course of Proceedings:*    Judge Morin summarily denied the Plea to the Jurisdiction and Motion to Dismiss on December 15, 2023.

Novartis sought mandamus relief in the Sixth Court of Appeals at Texarkana on February 2, 2024. The Court of Appeals issued a two-page memorandum opinion on March 1, 2024, denying the mandamus petition.

## RECORD REFERENCES

The Record In Support of Petition for Mandamus is cited as "MR."

**APP170**

## STATEMENT OF JURISDICTION

The Court has jurisdiction over this original proceeding pursuant to Texas Government Code § 22.002(a). This petition previously was presented to the Sixth Court of Appeals at Texarkana, which denied relief. Tex. R. App. P. 52.3(e).

APP171

## ISSUES PRESENTED

1.  Whether the courts have subject-matter jurisdiction over a statutory cause of action when it is undisputed that the plaintiff itself suffered no injury from the alleged statutory violation.

2.  Whether the Texas Medicaid Fraud Prevention Act violates Texas's separation of powers by allowing private individuals to initiate and maintain a civil action for and in the name of the State.

3.  Whether the Court should grant mandamus relief.

## INTRODUCTION

Health Selection Group LLC (HSG), the plaintiff in this case, is an entity organized for the sole purpose of bringing *qui tam* suits under the federal False Claims Act and similar state statutes, including the Texas Medicaid Fraud Prevention Act (TMFPA). HSG alleges that certain of Novartis's practices related to some of its prescription medications defrauded the State of Texas. HSG has not been harmed by any of the alleged conduct. In fact, nobody has been—when HSG brought a nearly identical suit against a different pharmaceutical manufacturer under the federal False Claims Act, the federal government intervened to dismiss the suit because the alleged conduct is beneficial to healthcare administration. Presumably for that reason, Texas filed its notice declining to intervene in the action.

HSG's suit is statutorily authorized by the TMFPA, which (as amended in 2007) allows *qui tam* plaintiffs to maintain suits alleging fraud against the State even when the plaintiff has suffered no injury itself, and even when the Attorney General has declined to participate in the suit. The question in this case is whether the TMFPA's scheme is

1

consistent with the Texas Constitution. The answer is no, for two reasons.

*First*, HSG has not suffered any injury and thus has no standing to bring this suit. The TMFPA does not require private *qui tam* plaintiffs to have suffered any injury, but the State's Constitution does. The injury-in-fact requirement is a bedrock constitutional principle, and the TMFPA cannot erase that limitation on the courts' subject-matter jurisdiction.

*Second*, in Texas, the power to enforce the law on behalf of the State is vested in State attorneys—the Attorney General and county and district attorneys—who are elected by the people, accountable to the people, and motivated to serve the people. The Constitution has, for nearly a century-and-a-half, precluded private parties from purporting to bring suit on behalf of the State. The TMFPA marks a sharp and unfortunate break from that constitutional tradition. Since 2007, the statute has authorized any person to bring and maintain a suit "in the name . . . of the state" and "without the state's participation." Tex. Hum. Res. Code §§ 36.101, .104(b). There is no constitutional basis for turning over the State's public litigation power to private actors, and

2

this Court's cases have repeatedly rejected such a possibility. Because the Attorney General has chosen not to prosecute this action, the separation of powers compels the suit's dismissal.

This Court should grant mandamus relief to correct the fundamental constitutional defects with this TMFPA litigation. Proceeding with this unconstitutional suit will waste the parties' and the courts' resources. And the only issues here are purely legal ones that will not benefit from additional factual development. There is therefore no basis to allow this fundamentally flawed litigation to proceed.

## STATEMENT OF FACTS

### A. Statutory Background

The Texas Medicaid Fraud Prevention Act (TMFPA), Tex. Hum. Res. Code §§ 36.101-.132, generally prohibits false statements made in connection with healthcare programs. *See In re Xerox Corp.*, 555 S.W.3d 518, 533-34 (Tex. 2018).[1]

---

[1] The statute was amended effective September 1, 2023, and is now called the Texas Health Care Program Fraud Prevention Act. *See* 2023 Tex. Sess. Law Serv. Ch. 273 (S.B. 745). The amendments broaden the healthcare programs subject to the Act but do not alter the provisions discussed in this brief. For ease of reference, Novartis refers to the statute as the TMFPA, because that statute forms the basis for this *qui tam* action.

3

The Attorney General is empowered by the statute to enforce the TMFPA. "If the attorney general has reason to believe that a person is committing, has committed, or is about to commit an unlawful act, the attorney general may institute an action for an appropriate order to restrain the person from committing or continuing to commit the act." Tex. Hum. Res. Code § 36.051(a). The Attorney General may also seek monetary penalties for each violation. *Id.* § 36.052. Those penalties are "significant," "regardless of whether the State actually suffers any financial loss." *Malouf v. State ex rel. Ellis*, 694 S.W.3d 712, 721 (Tex. 2024).

This case concerns actions to enforce the TMFPA brought not by the Attorney General or any other State attorney but by private individuals. The Act provides that a "person may bring a civil action for a violation" of the Act "for the person and for the state," which "shall be brought in the name of the person and of the state." Tex. Hum. Res. Code § 36.101(a). And the Act then sets out a multi-step process by which such a private suit, known as a *qui tam* action, may move forward.

4

APP176

Initially, the TMFPA gives the State time to decide how to handle a private action. A private suit must be filed under seal and must remain sealed for at least 180 days. Tex. Hum. Res. Code § 36.102(b); *see id.* § 36.102(d) (providing for extensions). At the conclusion of that period, the State must inform the court that it has determined to "proceed with the action" or, alternatively, that it "declines to take over the action." *Id.* § 36.104(a)(1)-(2). If the State proceeds with the action, the Attorney General may "contract with a private attorney to represent the state." *Id.* § 36.105.

If the State proceeds with the action, the private party's rights become very limited. The State may dismiss the action without the private party's consent. Tex. Hum. Res. Code § 36.107(b). With court approval, it may settle the action over the objections of the private person. *Id.* § 36.107(c). And if the State determines that the private person's participation is delaying "the state's prosecution of the case," the court "may impose limitations on the person's participation." *Id.* § 36.107(d).

But if the State declines to take over the action, "the person bringing the action may proceed without the state's participation." Tex.

5

Hum. Res. Code § 36.104(b). And while the State has considerable power before the sealing period expires, it is significantly constrained after it declines to proceed with the suit. To intervene in the litigation after the sealing period, the State must make "a showing of good cause," and any intervention cannot "limit[] the status and right" of the private person. *Id.* § 36.104(b-1).

The possibility that an action could continue without the State's participation is relatively new. For the first decade after its enactment, the TMFPA provided that the court "shall dismiss the action" if the State declined to bring it. Tex. Hum. Res. Code § 36.104(b) (2005). But the Legislature amended the statute in 2007 to allow private individuals to continue litigation without the State's consent. 2007 Tex. Sess. Law Serv. Ch. 29, § 4 (S.B. 362); *see United States ex. rel. Carroll v. Planned Parenthood Gulf Coast, Inc.*, 21 F. Supp. 3d 825, 837 (S.D. Tex. 2014) (noting amendment).

If a private person succeeds in her *qui tam* action, the defendant must pay the same civil penalties as if the State had brought the action itself. Tex. Hum. Res. Code § 36.101(b). But the private person receives a bounty out of that penalty award. That award varies based

6

on a number of factors. But it can be as high as "30 percent of the proceeds of the action" (if the State does not take over the suit) or "25 percent of the proceeds of the action" (if the State does take over the suit). *Id.* § 36.110(a)-(a-1).

The TMFPA is similar to the federal False Claims Act, 31 U.S.C. § 3729 *et seq*. But there are key differences, including that the federal statute covers many different kinds of false claims against the government, while the TMFPA is limited to false claims in the healthcare context. *Compare* 31 U.S.C. § 3729(a), *with* Tex. Hum. Res. Code § 36.101. Most relevant to this case, the federal False Claims Act provides for both "damages" (which reflect the actual harm caused by the unlawful conduct to the government's property) and "civil penalties," 31 U.S.C. § 3729(a)(1), while the TMFPA authorizes only civil penalties and does not permit an "action for the recovery of damages," *In re Xerox Corp.*, 555 S.W.3d at 534.

## B. Facts and Proceedings Below

Novartis Pharmaceuticals Corporation develops medical treatments designed to improve and extend lives through scientific research and technological innovation. Novartis's efforts focus in large

7

part on developing treatments in areas with high unmet patient needs, including neuroscience, immunology, and oncology. Novartis employs approximately 78,000 people, and its medications have reached more than 284 million individuals.[2]

Plaintiff Health Selection Group, LLC (HSG) is a subsidiary of a professional *qui tam* plaintiff, National Health Care Analysis Group (NHCAG). NHCAG is a New Jersey-based "research organization" created to monetize federal and state *qui tam* statutes that permit private parties to file civil actions on behalf of the government in return for a percentage of the government's recovery. *See* First Am. Pet. ¶ 21 (MR006); U.S. Mot. to Dismiss at 1-2, *United States ex rel. Health Choice Alliance, LLC v. Eli Lilly & Co.*, No. 5:17-cv-123 (E.D. Tex. Dec. 17, 2018), Dkt. 192 (describing NHCAG as a "professional relator" "comprised of member limited liability companies formed by investors and former Wall Street investment bankers"). NHCAG mines publicly available Medicaid and Medicare data and conducts witness interviews to identify sweeping theories of liability, and then creates entities, like

---

[2] *See* Novartis, *About*, https://www.novartis.com/about (last accessed September 30, 2024).

8

HSG, to seek astronomical *qui tam* penalties against pharmaceutical companies. *See* First Am. Pet. ¶ 42 (MR011); *see* U.S. Mot. to Dismiss at 5-6, *Eli Lilly*, No. 5:17-cv-123 (describing NHCAG's business model). In one recent case, the Fifth Circuit noted that NHCAG brought 11 *qui tam* actions under the federal False Claims Act against a total of 38 defendants, none of which survived dismissal. *United States ex rel. Health Choice Alliance, LLC v. Eli Lilly & Co.*, 4 F.4th 255, 259 & n.1 (5th Cir. 2021).

In April 2018, HSG filed a sealed *qui tam* action against Novartis's parent company in the United States District Court for the Eastern District of Texas, alleging that Novartis violated the federal False Claims Act and the analogous laws of 31 States, including the TMFPA, by: (i) providing free "nurse educator" services to patients to educate them about the proper use of six Novartis medications; (ii) providing free "reimbursement support" services to assist patients with obtaining coverage for certain Novartis prescriptions; and (iii) contracting with third parties to employ nurses to market and educate prescribers about the six medications. *See* Compl., *United States ex rel. Health Selection Grp., LLC v. Novartis AG, et al.*, No. 5:18-cv-60 (E.D.

9

Tex. Apr. 20, 2018), Dkt. 1. HSG's theories largely mirrored those brought by other NHCAG affiliates that the federal government moved to dismiss because the government deemed the practices lawful and beneficial to the federal healthcare programs. *Eli Lilly & Co.*, 4 F.4th at 260, 267-68; *see* U.S. Mot. to Dismiss at 2-3, 14-16, *Eli Lilly*, No. 5:17-cv-123 (arguing that "federal healthcare programs have a strong interest in ensuring that, after a physician has appropriately prescribed a medication, patients have access to basic product support relating to their medication"). After those suits were dismissed, HSG voluntarily dismissed its federal lawsuit against Novartis AG and chose to pursue TMFPA claims in Texas state court. *See* HSG Mot. to Dismiss, *Health Selection Grp.*, No. 5:18-cv-60 (E.D. Tex. Mar. 9, 2020), Dkt. 21.

On May 8, 2020, HSG filed this TMFPA suit against Novartis.[3] The Original Petition substantially tracked HSG's prior federal complaint—again, based on the same conduct that the United States intervened to dismiss in a parallel suit—in alleging that the three business practices described above violate the TMFPA. The State of

---

[3] The suit initially named Novartis AG, but was amended to seek relief instead against Novartis Pharmaceuticals Corporation. MR001.

10

Texas filed a notice declining to intervene in this action. The case was subsequently unsealed but remained dormant for several years until it was transferred to the 71st Judicial District Court in Harrison County in March 2023.

The next month, HSG filed an amended petition, *see* First Am. Pet. (MR001-060), and Novartis then moved to dismiss the suit, arguing that the district court should dismiss HSG's *qui tam* action for two reasons. First, Novartis argued that the district court should dismiss the case for lack of subject-matter jurisdiction because HSG does not have constitutional standing to sue Novartis for a statutory violation that did not personally injure HSG. *See* MR072-079. Second, Novartis argued that HSG's *qui tam* action should be dismissed because the TMFPA *qui tam* statute violates the Texas Constitution, which assigns the authority to file suits for the State exclusively to State attorneys. MR079-093. Both HSG and the State (through a statement of interest) opposed dismissal of the action. The district court heard oral argument and summarily denied Novartis's motion. *See* Order Denying Def.'s Plea to Jur. & Mot. to Dismiss (MR167).

11

On February 2, 2024, Novartis sought mandamus and a temporary stay of trial proceedings in the Court of Appeals for the Sixth District of Texas. The Court of Appeals denied the mandamus petition and stay request in a brief order, concluding that the purely legal constitutional questions presented were somehow committed to the trial court's discretion. MR501.

Novartis sought review in this Court.[4] And, on August 30, 2024, this Court granted Novartis's request for a temporary stay of trial proceedings and ordered the parties to file briefing on the merits of Novartis's mandamus petition.

## SUMMARY OF ARGUMENT

**I.** The courts have no subject-matter jurisdiction over this suit because HSG lacks standing. HSG has not been injured by the conduct of which it complains, and so has not suffered the injury-in-fact required to litigate in Texas courts.

There is no basis to except HSG from the ordinary injury requirement here. HSG cannot establish standing as an assignee of the

---

[4] After Novartis filed its mandamus petition in this Court, HSG filed an amended petition. The amended petition primarily adds new factual allegations and does not alter the legal questions presented in this Court. *See* Letter to Blake A. Hawthorne, Clerk of Court, from Danny S. Ashby (Apr. 29, 2024).

APP184

State, because unlike the federal False Claims Act, the TMFPA does not allow for damages claims, and the civil penalties contemplated by the TMFPA cannot be assigned to a private person. And HSG cannot establish standing as a representative of the State because (i) it has no legal relationship with the State, (ii) the State is entirely capable of bringing a lawsuit itself, and (iii) the State alone has standing to bring suits respecting matters of public concern.

**II.** Separately, the TMFPA's provisions allowing a private party to pursue public litigation violate the separation-of-powers principles enshrined in Article IV, Section 22 and Article V, Section 21 of the Texas Constitution. Those sections provide that only the Attorney General and county and district attorneys may litigate on behalf of the State. This Court has made clear that Article IV, Section 22 and Article V, Section 21 "mark the limits of legislative authority to prescribe who shall represent the state and control its interests in a lawsuit in the district court." *Allen v. Fisher*, 9 S.W.2d 731, 732 (Tex. 1928).

The TMFPA breaks from that tradition. It allows a private individual or entity to proceed with a *qui tam* action in the name of and behalf of the State. It therefore devolves the public litigation power

13

onto those who are not authorized by the Constitution to wield it. Neither this Court's precedents nor any history of *qui tam* litigation permits that unconstitutional result.

**III.** The Court should grant mandamus relief. Mandamus is an appropriate remedy where a suit cannot lawfully proceed. And here, if HSG lacks standing or if this suit offends the separation of powers, continuing with this litigation will simply waste the parties' and courts' resources. The questions presented here are purely legal and will not benefit from further discovery or fact development. There is accordingly no reason to delay resolving the constitutional questions presented by this suit.

## ARGUMENT

HSG's *qui tam* suit suffers from two severe and independent constitutional flaws. *First*, principles of standing prohibit HSG—which has not been injured by the conduct of which it complains—from pursuing this action. And *second*, the separation of powers does not permit HSG to proceed with this litigation on behalf of the State. For either or both reasons, this case must be dismissed, and mandamus relief is warranted.

14

## I. HSG LACKS STANDING TO BRING THIS *QUI TAM* ACTION.

The first problem with this suit is that HSG lacks standing. It does not allege that any of Novartis's conduct injured it personally. That lack of a personal stake in this controversy violates the Texas Constitution, which allows only individuals who have suffered harm to sue and provides no doctrinal basis to excuse HSG from meeting the injury requirement that all other litigants must satisfy. Accordingly, the case should be dismissed. *See Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 150-51 (Tex. 2012).

### A. The Constitution requires that a plaintiff demonstrate injury.

"[S]tanding is a component of subject matter jurisdiction," and is thus "a threshold requirement to maintaining a lawsuit." *Farmers Tex. Cnty. Mut. Ins. Co. v. Beasley*, 598 S.W.3d 237, 240 (Tex. 2020). "In Texas, the standing requirement stems from two constitutional limitations on subject-matter jurisdiction." *Data Foundry, Inc. v. City of Austin*, 620 S.W.3d 692, 700 (Tex. 2021). The first is "the Texas Constitution's provision for separation of powers among the branches of government, which denies the judiciary authority to decide issues in the abstract." *Mosaic Baybrook One, L.P. v. Simien*, 674 S.W.3d 234, 250

15

(Tex. 2023); *see* Tex. Const. art. II, § 1. The second is the Texas Constitution's "open courts provision, which provides court access only to a 'person for an injury done him.'" *Id.* (quoting Tex. Const. art. I, § 13).

From these two constitutional provisions, this Court has held that Texas's standing doctrine requires "(1) an injury in fact that is both concrete and particularized," "(2) that the injury is fairly traceable to the defendant's challenged action"; and "(3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Data Foundry*, 620 S.W.3d at 696 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). The first element— "injury in fact"—requires that "[t]he plaintiff . . . be *personally* injured— he must plead facts demonstrating that he, himself (rather than a third party or the public at large), suffered the injury." *Heckman*, 369 S.W.3d at 155 (emphasis in original).

### B. HSG has not suffered any injury.

HSG's suit fails this test. HSG does not allege that it personally suffered any injury from the conduct alleged in the petition. *See generally* MR001-60; HSG Resp. 5-10. Instead, it is asserting an injury

16

to "the public at large," *Heckman*, 369 S.W.3d at 155—it alleges that Novartis's conduct defrauded the State. HSG therefore lacks standing, which is "a constitutional prerequisite to suit." *Id.* at 150; *accord Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993).

Contrary to HSG's prior arguments, it makes no difference that the TMFPA purports to allow individual litigants to sue on behalf of the State. *See* HSG Resp. 8-10. For the reasons explained below, there are fundamental separation-of-powers problems with that grant of public litigation authority. *See infra* at 25-47. But even setting those problems aside, it is settled that a statute cannot "authorize a court to act without subject matter jurisdiction." *In re Lazy W Dist. No. 1*, 493 S.W.3d 538, 544 (Tex. 2016). A statutory right to sue may not establish a lesser injury standard "than that set by the general doctrine of standing." *Fin. Comm'n of Tex. v. Norwood*, 418 S.W.3d 566, 582 n.83 (Tex. 2013). "If the grant of jurisdiction or relief authorized [by] statute" exceeds constitutional limits, Texas courts construe the Legislature's enactments to "exercise [only] as much jurisdiction over the case as the Constitution allows." *In re Allcat Claims Serv., L.P.*, 356 S.W.3d 455, 462 (Tex. 2011). Thus, regardless of whether HSG meets

17

the TMFPA's requirements for bringing an action, it lacks constitutional standing because it has not alleged that it was personally injured by any alleged TMFPA violations. That should be the end of this suit.

The doctrine of standing exists to ensure that litigants do not "roam the country in search of governmental wrongdoing." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 487 (1982). Yet that is exactly what HSG has sought to do here: As described above, it sifts through healthcare data to find potential statutory violations, and uses that research to initiate *qui tam* actions. *See supra* at 8-9. "[O]ur Constitution opens the courthouse doors only to those who have or are suffering an injury," *Heckman*, 369 S.W.3d at 155, not uninjured profit-seeking entities like HSG.

### C. HSG cannot sue as an assignee or representative of the State.

At prior stages of this litigation, HSG and the State argued that HSG has standing as the State's assignee or representative. Each theory fails.

18

*1.     There is no damages claim to assign.*

HSG and the State's primary argument for standing relies on the Supreme Court of the United States' holding in *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765 (2000). *See* HSG Resp. 5-7; State Resp. 9-11.  In that case, the Court held that a *qui tam* relator satisfied federal Article III standing requirements because the False Claims Act "can reasonably be regarded as effecting a partial assignment of the Government's damages claim."  529 U.S. at 773.[5]  And because assignees of a claim had historically been understood as possessing standing to sue, the Court held that federal *qui tam* relators likewise had Article III standing.  *Id.*

But the logic of *Stevens* does not apply to the TMFPA.  Unlike the False Claims Act, the TMFPA cannot be construed as creating an assignable claim for damages.  This Court has held that the TMFPA is a civil-enforcement statute for civil penalties, "not an action for recovery of damages."  *In re Xerox Corp.*, 555 S.W.3d at 526.  The Court so held because the penalties authorized by the TMFPA are "fixed without

---

[5] *Stevens* reserved the question of whether *qui tam* suits violate the federal separation of powers.  529 U.S. at 778 n.8.  The Texas counterpart of that issue is discussed below.  *See infra* at 25-47.

19

regard to any loss to the Medicaid program," and because the statute does not contain any language that might "imply a loss measure or require the State to prove an actual loss." *Id.* at 533-35.

In reaching that holding, the Court expressly declined to import federal jurisprudence when construing the TMFPA. It held that comparisons to the False Claims Act are "not probative" because, while the statutes may be "similar in aim and tactic," they "employ materially different language, and the language of our statutes controls the outcome here." 555 S.W.3d at 535. Thus, the Court deviated from False Claims Act doctrine in concluding that the TMFPA "employs a penalty scheme and is not an 'action for the recovery of damages.'" *Id.* at 534.

That statutory difference eviscerates HSG's and the State's reliance on *Stevens*. The TMFPA cannot be read "as effecting a partial assignment of the Government's damages claim" because there is no damages claim to assign. 529 U.S. at 773. So—even assuming that Texas standing doctrine otherwise tracked federal law—the logic of *Stevens* cannot control here.

20

Recognizing this problem, HSG and the State ask this Court to ignore the critical language in *Stevens*. The State, for its part, suggests that "nothing in *Stevens* limits the underlying holding . . . to *qui tam* actions for 'damages.'" State Resp. 9. And HSG accuses Novartis of "elevat[ing] form over substance" through its arguments. HSG Resp. 6.

In fact, though, *Stevens* used the word "damages" for a reason: only damages, not civil penalties, are subject to assignment. A party does not assign an injury; it assigns a claim for relief. *Stevens*, 529 U.S. at 773; *see TransUnion LLC v. Ramirez*, 594 U.S. 413, 428 (2021). And civil penalties are "different from compensatory damages" in ways that mean they cannot be assigned. *In re Xerox Corp.*, 555 S.W.3d at 529 (quoting *Wal-Mart Stores, Inc. v. Forte*, 497 S.W.3d 460, 465 (Tex. 2016)). Civil penalties "are intended to punish, and label defendants wrongdoers." *Id.* at 530 (quoting *Gabelli v. SEC*, 568 U.S. 442, 451-52 (2013)). They are a uniquely sovereign remedy that cannot be "assigned" to private litigants.

*Stevens* itself recognized as much. In discussing the federal False Claims Act, it noted that the law protected "both the injury to [the United States'] sovereignty arising from violation of its laws" *and* "the

21

proprietary injury resulting from the alleged fraud." 529 U.S. at 771.

The government may partially assign a claim vindicating its

proprietary interest just like anyone else can. *See id.* at 773; *see also*

*Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 278

(2008) (explaining that courts have long recognized assignment of a

"chose in action," such as a legal claim for money damages). But

neither *Stevens* nor any other case of which Novartis is aware suggests

that the State can assign a *sovereign* interest—a government could not,

for example, delegate a "criminal lawsuit" to a private individual,

*Stevens*, 529 U.S. at 771, because a sovereign interest is by definition an

interest that only the State can possess. "[T]he public interest that

private entities comply with the law cannot be converted into an

individual right by a statute that denominates it as such, and that

permits all citizens (or, for that matter, a subclass of citizens who suffer

no distinctive concrete harm) to sue." *TransUnion*, 594 U.S. at 428-29

(internal quotation marks omitted); *see also infra* at 25-47 (explaining

why such an assignment would independently violate the separation of

powers). That is why *Stevens* spoke of assignment of *damages*, and it is

why the State and HSG's efforts to ignore that language—and to import

22

the logic of *Stevens* into a statute that does not provide for damages but that instead vindicates only the States's nontransferable sovereign interest—are doomed to failure.[6]

### 2. *Representative standing has no application here.*

At the petition stage, HSG (but not the State) also argued that "representative standing" could provide a basis for subject-matter jurisdiction. HSG Resp. 7-8.[7] It noted, for example, that "[p]arents sue on behalf of children; executors sue on behalf of estates; and insurers sue on behalf of insureds." *Id.* at 7. It suggests it is similarly situated to those sorts of plaintiffs.

But those circumstances are obviously different. Parents and executors have fiduciary-type legal obligations to those they represent,

---

[6] The *Stevens* Court also discussed early American history that supported its standing holding. *See* 529 U.S. at 774-78. But the Court did not rest on history alone, focusing instead on the assignment of damages. And in any event, as explained below, there is no history of *qui tam* actions that could inform the meaning of the Texas Constitution. *See infra* at 44-47.

[7] For its part, the State observed that the Court "has recognized important exceptions" to the injury requirement. State Resp. 13. But it does not urge the Court to create a new exception here, or explain how any such exception would comport with Texas' Constitution. Nor does it explain why the idiosyncratic doctrine of taxpayer standing—a concept relevant only to "drastic" suits in which a plaintiff seeks to "enjoin the illegal expenditure of public funds," *Perez v. Turner*, 653 S.W.3d 191, 199 (Tex. 2022) (internal quotation marks omitted)—has any relevance to this case.

23

who cannot sue in their own names because they are incompetent to do so.  *See, e.g.*, Tex. Estates Code § 351.101 (duty on executors); *Tenet Hosps. Ltd. v. Rivera*, 445 S.W.3d 698, 705 (Tex. 2014) (duty on legal guardians).  And insurers have their own injuries—the possibility of payment—that they advance when they sue on behalf of an insured.  *See Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 774 (Tex. 2007).  This *qui tam* suit has none of those features.  Unlike parents and executors, HSG has no fiduciary duty to act in the State's interest.  Unlike insurers, HSG has suffered no injury of its own. And unlike minors and the deceased, the State is perfectly able to sue on its own behalf—indeed, the TMFPA expressly contemplates that it will do so.

In short, there is no need for HSG to act as the sovereign's representative that might warrant a departure from ordinary standing rules.  And even if there were, the Court has repeatedly held that the Texas Constitution lodges with the State attorneys the exclusive authority to bring and maintain a suit for and in the name of the State, and that a private plaintiff cannot be authorized to maintain a suit that

24

solely seeks to vindicate a matter of public concern. *Allen*, 9 S.W.2d at 732; *Staples v. State*, 245 S.W. 639, 641-42 (Tex. 1922).

## II. THE TMFPA'S QUI TAM PROVISIONS OFFEND THE SEPARATION OF POWERS.

Because HSG has suffered no injury, this suit should be dismissed for lack of subject-matter jurisdiction. But if HSG somehow surmounts that obstacle, there is a separate, fundamental problem with this suit: the Constitution's separation of powers prohibits HSG from litigating this action on behalf of the State.

The Texas Constitution provides that "[t]he powers of the Government of the State of Texas shall be divided into three distinct departments"—Legislative, Executive, and Judicial—and that "no person, or collection of persons, being one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted." Tex. Const. art. II, § 1. The separation of powers "reflects a belief on the part of those who drafted and adopted our state constitution that one of the greatest threats to liberty is the accumulation of excessive power in a single branch of government." *Armadillo Bail Bonds v. State*, 802 S.W.2d 237, 239 (Tex. Crim. App. 1990). It "also has the incidental effect of promoting

25

effective government by assigning functions to the branches that are best suited to discharge them." *Id.*

"The Texas Constitution authorizes the attorney general, county attorneys, and district attorneys to represent the state in various cases." *State ex rel. Durden v. Shahan*, 658 S.W.3d 300, 303 (Tex. 2022) (per curiam). Article IV, Section 22 vests the Attorney General with authority to represent the State in this Court. And Article V, Section 21 vests District and County Attorneys with authority to represent the State in other proceedings. The Legislature is empowered to assign additional responsibilities to the Attorney General, and has done so by statute. *El Paso Elec. Co. v. Tex. Dep't of Ins.*, 937 S.W.2d 432, 438-39 (Tex. 1996); *see, e.g.*, Tex. Gov't Code § 402.021.

What the Legislature cannot do, however, is "divest these officials of their collective constitutional authority by shifting representation to some other attorney." *El Paso Elec. Co.*, 937 S.W.2d at 439. This Court has never permitted a private litigant to wield litigation power on behalf of the State, and its precedents resoundingly reject that possibility. Yet that is what the TMFPA does: By authorizing a private person to "proceed without the state's participation," Tex. Hum. Res.

26

Code § 36.104(b), it unconstitutionally devolves the State's power to individuals who may not exercise it. Nothing in the Constitution's text, precedent, or history permits that unprecedented action. The Court should accordingly hold that the TMFPA's *qui tam* provisions violate the State's separation of powers.

### A. The Texas Constitution exclusively assigns to State attorneys the power to bring and maintain suits for the State.

Time and again, this Court has made clear that only State attorneys, elected by the citizenry, may litigate actions on behalf of the State.

The foundational case is *Maud v. Terrell*, 200 S.W. 375 (Tex. 1918). There, a statute authorized the Comptroller of Public Accounts to appoint individuals to "sue for and collect" taxes. *Id.* at 377. The Court had no trouble concluding that such a law would be unconstitutional if it "deprive[d] the county attorneys and the Attorney-General in their authority" to litigate on behalf of the State. *Id.* That is because the "powers . . . conferred by the Constitution upon those officials are exclusive," such that the "Legislature cannot devolve them upon others." *Id.* at 376. The Court upheld the challenged statute only

27

because it could fairly be read to render the tax collectors as "assistant[s]" to the State attorneys, operating under their control. *Id.* at 378; *see id.* at 377 ("Upon its face this language would authorize the collector to file the suit, but it cannot be assumed that the Legislature so intended. It plainly means that he should *cause* the suit to be filed by the official charged by law with that specific duty.") (emphasis added).

Where possible, the Court has followed the approach set out in *Maud* and construed state laws to subordinate individuals' litigation rights to the State's. A prime example is *Staples v. State*, 245 S.W. 639 (Tex. 1922), which scrutinized a statute permitting individuals to bring *quo warranto* actions to enforce the election laws. The private plaintiffs in the case admitted "that they have no pecuniary interest in this suit which is not common to all other citizens of the state." *Id.* at 640. And the Court observed that a statute permitting suits "for the benefit of the public at large" "cannot confer a right upon private individuals to act for all where it is shown they have no interest different from all others." *Id.* at 641. The Court thus held that the individuals "were not possessed of legal capacity or right to institute and maintain this suit"—and that the only appropriate course was for them to present

28

their case to "a county attorney, a district attorney, or the Attorney General," who could pursue the litigation. *Id.* at 643.

The Court then took the same approach in *Agey v. American Liberty Pipe Line Co.*, 172 S.W.2d 972 (Tex. 1943). In the court below, a Texas Court of Civil Appeals held that a private citizen could not lawfully maintain a statutory cause of action that the plaintiff had filed in his name and in the name of the State to recover penalties against the defendant for discriminating against the plaintiff in the purchase of oil. *American Liberty Pipeline Co v. Agey*, 167 S.W.2d 580, 580 (Tex. App. 1942).[8] The court of appeals observed that "such action must be brought by the Attorney General or county attorney; and that to construe the section as authorizing institution and prosecution of the suit by and in the name of the aggrieved party for his own use and that of the State would render it void, to that extent, as contravening" Article IV, Section 22 and Article V, Section 21 of the Texas Constitution. *Id.* at 581. Because the action was "one which insures to the State," the court concluded it was maintainable only in the State's

---

[8] Unlike HSG, the plaintiff in *Agey* suffered a concrete harm from the statutory violation (the defendant discriminated against the plaintiff in refusing to purchase the plaintiff's oil) that would have satisfied Texas' constitutional standing requirements.

29

name and by its authorized officials, regardless of the fact that one-half of the recovery may insure to the interested party." *Id.* at 582.

This Court subsequently affirmed "that the statute clearly creates a single, indivisible cause of action, which must be prosecuted in a single suit, instituted by the State through its proper officials; and that [the plaintiff's] rights are limited to sharing in the recovery." *Agey*, 172 S.W.2d at 975 (internal quotation marks omitted). Because the statute did not purport to grant the aggrieved party a right to file suit on behalf of himself and the state, without joinder of a State attorney, the Court declined to decide whether the Legislature had the power to do so. *See id.* at 974. But the Court reaffirmed that, under the Texas Constitution, "[t]he Attorney General is the chief law officer of the State" and "has the right to investigate the facts and exercise his judgment and discretion regarding the filing of a suit." *Id.*; *see also, e.g., Camp v. Gulf Prod. Co.*, 61 S.W.2d 773, 778 (Tex. 1933) (similarly interpreting a statute to give State attorneys "the right to control the litigation for the state just the same as in any ordinary suit to which the state is a party").

The Court has also blessed statutes that allow State attorneys to hire private individuals to act directly under the State attorneys' control. Where a private individual acts "under the direction and control of the Attorney General," she or he may permissibly litigate on behalf of the State. *Terrell v. Sparks*, 135 S.W. 519, 520 (Tex. 1911). And "the Legislature may authorize an agency to retain private counsel to prosecute actions, as long as such counsel's authority is subordinate to that of the Attorney General, County Attorney, or District Attorney." *El Paso Elec. Co.*, 937 S.W.2d at 439.

What the Court has never done, though, is permit another person to exercise the State's litigation authority without a State attorney's direct control. And where a statute cannot be read to avoid that outcome, the Court has struck it down. Thus, in *Hill County v. Sheppard*, 178 S.W.2d 261 (Tex. 1944), the Court invalidated a statute that "create[d] a statutory office to take over the duties of the county attorney," holding that the duties of the State attorney could not be arrogated to another. *Id.* at 264. The Court explained: "Where certain duties are imposed or specific powers are conferred upon a designated

31

officer, the Legislature cannot withdraw them nor confer them upon others." *Id.* (quoting 34 Tex. Jur. 445) (alteration adopted).

The precedents of this Court, therefore, teach a consistent rule. Under the Constitution, only State attorneys may litigate on behalf of the State. Statutes that permit private individuals to pursue suits are constitutional only if the individuals are subject to the State attorneys' direct control—viz., employed by them. If the statute permits public litigation in the absence of such control, it is void.

### B. The TMFPA impermissibly authorizes private individuals to press suits that State attorneys decline to control.

The TMFPA fails the test set out in this Court's cases. It authorizes private individuals to sue on behalf of the State in circumstances where the State attorneys affirmatively decline to press the litigation. It therefore devolves the State's litigation authority to individuals who, under the Constitution, are "not possessed of legal capacity or right to institute and maintain" a suit on behalf of the State, *Staples*, 245 S.W. at 643, and who usurp the Attorney General in the performance of his duty to "investigate the facts and exercise his judgment regarding the filing of suit" for the State, *Agey*, 172 S.W.2d at 974.

32

It is beyond question that the TMFPA permits private individuals to litigate without the State's control. As explained above, *see supra* at 5-6, the TMFPA requires private individuals to file under seal and present the State with a choice. After reviewing the sealed materials, the State can either "proceed with the action" or "decline[] to take over the action." Tex. Hum. Res. Code § 36.104(a)(1)-(2).

In cases where the State (through its Attorney General) declines to take over the action, the TMFPA impermissibly authorizes a private party and its attorney to prosecute violations of state law in place of the Attorney General. *See* Tex. Hum. Res. Code § 36.104(b). "[I]n the matter of bringing suits the Attorney General must exercise judgment and discretion, which will not be controlled by other authorities." *Charles Scribner's Sons v. Marrs*, 262 S.W. 722, 727 (Tex. 1924); *see Agey*, 172 S.W.2d at 974 (similar). Where the Attorney General (or a county or district attorney) decide that a case is not worth litigating on behalf of the State of Texas, that is the end of the matter because the

33

State attorneys who must control State litigation have decided not to advance the case.

By nonetheless permitting a private litigant to proceed with that action, the TMFPA careens over the boundary line set by this Court's cases. *Maud* holds that authority to litigate on behalf of the State cannot be "devolve[d] . . . upon others," but the TMFPA does just that. 200 S.W. at 376. *Staples* and *Agey* confirm that the Legislature may not assign the power to bring suit for the State to anyone other than the duly-elected State attorneys, but the TMFPA expressly permits a private individual to litigate when those State attorneys have explicitly *declined* to bring the suit. *Agey*, 172 S.W.2d at 974; *see Staples*, 245 S.W. at 643. The TMFPA is therefore precisely the sort of statute the Legislature cannot enact, because it "divest[s] these [State] officials of their collective constitutional authority by shifting representation to some other attorney," *El Paso Elec. Co.*, 937 S.W.2d at 439; *see Sheppard*, 178 S.W.2d at 264.

This Court's recent holding that the TMFPA is a "penal statute" only accentuates the constitutional problems. *Malouf*, 694 S.W.3d at 721. The Court has previously observed that granting private parties

34

the "authority to impose penal sanctions strongly suggests an improper private delegation." *Texas Boll Weevil Eradication Found., Inc. v. Lewellen*, 952 S.W.2d 454, 474 (Tex. 1997). Yet the TMFPA authorizes private individuals to litigate and obtain penal sanctions in cases where the State attorney has expressly declined to pursue the case.

And this problem is not a mere debater's point or technical foul: it has real implications for Texans' liberty. "The purpose of the separation and equilibration of powers in general . . . was not merely to assure effective government but to preserve individual freedom." *Morrison v. Olson*, 487 U.S. 654, 727 (1988) (Scalia, J., dissenting). "[T]he basic concept of democratic rule under a republican form of government is compromised when public powers are abandoned to those who are neither elected by the people, appointed by a public official or entity, nor employed by the government." *Tex. Boll Weevil*, 952 S.W.2d at 469. By placing the power to litigate on behalf of the State in the hands of profit-seeking private entities, the TMFPA shifts public authority to those "motivated primarily by prospects of monetary reward rather than public good." *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 949, 952 (1997); *see PPG Indus., Inc. v. JMB/Houston*

35

*Cntrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 85 (Tex. 2004) ("It is one thing to place the power of treble damages in the hands of aggrieved parties or the attorney general; it is quite another to place it in the hands of those considering litigation for commercial profit.").[9] A statute may certainly create a financial incentive for individuals to discover frauds against the State that State officials then decide to sue on. But it cannot allow private parties, who owe no duty of loyalty to the State, to litigate the State's claims on their own.

This case illustrates the concern. HSG filed this suit not out of concern for the public good or the citizenry of Texas, but because its business strategy is, in the federal government's words, to enrich "limited liability companies formed by investors and former Wall Street investment bankers" by obtaining *qui tam* bounties. U.S. Mot. to Dismiss at 1-2, *Eli Lilly*, No. 5:17-cv-123. As the Court has previously observed, "private delegations clearly raise [] troubling constitutional issues" precisely because "the private delegate may have a personal or

---

[9] *See also* J. Randy Beck, *The False Claims Act And The English Eradication of Qui Tam Legislation*, 78 N.C. L. Rev. 539, 616 (2000) (*qui tam* relators have "no incentive to consider the public impact of the litigation, the culpability of the defendants, the fairness of a particular litigation strategy, or similar matters that might influence a public prosecutor").

36

pecuniary interest which is inconsistent with or repugnant to the public interest to be served." *Tex. Boll Weevil*, 952 S.W.2d at 469. Avoiding that result is precisely why the Constitution prohibits turning over State authority to self-interested private actors.

If the Legislature can assign the power to prosecute violations of the TMFPA to private parties—even from outside Texas or the United States—then nothing would prevent the Legislature from granting private parties the ability to prosecute every violation of state law and thereby subject the "executive power to death by a thousand cuts." Saikrishna Prakash, *The Chief Prosecutor*, 73 Geo. Wash. L. Rev. 521, 582 (2005). And if the Legislature can validly assign that power to self-appointed relators, what prevents the Legislature from delegating that power to a specific individual or association of individuals of its choosing? A decision upholding the TMFPA's qui tam provisions would mean that the Legislature not only has the power to enact laws but also the power to enforce the laws it enacts by delegating prosecutorial power to any agent of its choosing. A more apparent violation of the separation of powers is difficult to imagine.

37

## 2. *There is no possible saving construction.*

Unlike the statutes construed in *Maud*, *Agey*, and *Staples*, the TMFPA's constitutional infirmities cannot be cured through statutory construction. The statutes in those cases left ambiguous whether a private individual could litigate on behalf of the State, and the Court resolved each of those cases by construing the statutes to prevent such action. The TMFPA, by contrast, is crystal-clear on this point: the *qui tam* provisions of the statute authorize a private person to bring and maintain a suit "for" and "in the name . . . of the state." Tex. Hum. Res. Code § 36.101(a). That is plainly unconstitutional because the duty and authority of the State's attorneys to bring and maintain suit for the State is exclusive.

If more were needed, the statutory context confirms that the TMFPA cannot be read to avoid the separation-of-powers issue. A provision of the statute, Tex. Hum. Res. Code § 36.105, states that "[t]he attorney general may contract with a private attorney to represent the state in an action under this subchapter with which the state elects to proceed." That provision illustrates that the Legislature has tools to address healthcare fraud that operate within the bounds of

38

the law. But it also confirms that the *qui tam* provisions that kick in when the State declines to proceed with the action are not such tools.

Those provisions may be severed from the portions of the TMFPA that lawfully allow the State to press litigation on its own behalf. *See Quick v. City of Austin*, 7 S.W.3d 109, 115 (Tex. 1998) ("[I]f any provision of the statute is held to be invalid, the invalidity does not affect other provisions that can properly be given effect in the absence of the invalid provisions."). This relief would not disrupt the State's ability to deter genuine healthcare fraud: on the contrary, all that it would do is restore the statutory scheme to the way it operated before 2007. Until that time, the TMFPA provided that an action that the State did not elect to pursue must be dismissed. *See* Tex. Hum. Res. Code § 36.104(b) (2005); *supra* at 6. Restoring State control over State litigation, therefore, will not eviscerate the TMFPA; it would simply recreate the regime that existed when the statute was enacted, and that was consistent with the separation of powers.

3.      *HSG and the State's contrary arguments lack merit.*

At the petition stage, HSG and the State advanced two arguments responsive to the separation-of-powers problems with the TMFPA. The

39

first is rooted in a misreading of *Brown v. De La Cruz*, 156 S.W.3d 560

(Tex. 2004). The second rests on a misunderstanding of the statutory

provisions that govern *qui tam* actions where the State has declined to

intervene.

a. *Brown* has nothing to do with this case, *contra* HSG Resp. 10-

11, and if anything undermines HSG's position. The question in that

litigation was purely statutory: whether a prior provision of the Texas

Property Code allowed a purchaser of residential property a private

cause of action to recover a $500-per-day penalty for a seller's failure to

record and transfer a property deed within thirty days of payment. 156

S.W.3d at 561-62. The Court held that the statute did not create a

private cause of action because the statute was silent about who may

collect the statutory penalty and, "[g]enerally a statutory penalty or fine

is not payable to a private litigant" but rather may only be collected "by

the Attorney General or some other governmental entity or

representative." *Id.* at 564. That is because, as explained above, civil

penalties ordinarily are meant to punish and thus vindicate a sovereign

interest, *see supra* at 21, and sovereign interests must be pressed by a

40

State attorney, not a private party. Thus, to the extent *Brown* is relevant here, it supports Novartis, not HSG.

HSG's contrary argument rests on the Court's statement that the Legislature must "clearly" assign "private standing to bring such actions." 156 S.W.3d at 566. HSG thinks that the Court's statement must be read by implication to have blessed as constitutional private actions that authorize private suits on behalf of the State. But HSG's reading is unreasonable because the Court did not consider the question presented in this case: whether a statute that grants a private party the power to prosecute a suit on behalf of the State is constitutional. Rather, the Court held in *Brown* that the statute at issue did not grant private parties the right to sue at all, let alone the right to sue to enforce an interest that belongs solely to the State.

Nothing in *Brown* reveals anything about whether a statute that vests a member of the public with State litigation authority comports with the Constitution. That case merely stands for the unremarkable proposition that the Legislature may create a private cause of action for an individual harmed by a defendant's violation to bring suit on his own behalf to recover a statutory penalty. It says nothing about the

41

constitutionality of a statute that purports to authorize a private party—much less an unharmed private party—to maintain a suit for and in the name of the State. The Court's decisions in *Maud*, *Allen*, *Staples*, and *Sheppard* are controlling on those questions, and it is simply not plausible that *Brown* overturned all those cases without any discussion.

**b.** HSG and the State are no more successful when they argue that the State maintains control over litigation that it "declines" to bring. Tex. Hum. Res. Code § 36.104(a)(2); *see* HSG Resp. 13-14; State Resp. 21. The statutory language is clear: the private *qui tam* plaintiff "may proceed without the state's participation." Tex. Hum. Res. Code § 36.104(b). The State cannot control litigation in which it is not participating.

The arguments to the contrary misunderstand both the TMFPA and the requirement that the State control public litigation.

To start, HSG cites Texas Human Resources Code § 36.107(b) for the proposition that "[i]rrespective of . . . OAG's initial intervention/ nonintervention decision," the Attorney General can "dismiss the relator's case even over the objections of the relator." HSG Resp. 14.

42

That is incorrect. The section that HSG cites sets out the "Rights of Parties if State Continues Action." By its plain terms, it does not speak to the State's authority after the State attorney declines to take over the suit. And even if it did, the Constitution requires that the State attorney "join[]" in the suit—not that he merely forebear from dismissing it. *Agey*, 172 S.W.2d at 974.

The State's statutory arguments fare no better. The State stresses that it "is entitled to ongoing information about declined cases." State Resp. 21; *see* Tex. Hum. Res. Code § 36.104(b-1). That is true, but irrelevant: receiving information about an action is not the same as "exercis[ing] . . . judgment and discretion regarding the filing of a suit." *Agey*, 172 S.W.2d at 974.

The State also emphasizes that it "can choose to intervene later." State Resp. 21. But again, the Constitution requires that the State attorney *control* the litigation—not merely that he have the possibility to later participate in it. And regardless, that statement is misleading: the TMFPA provides that the State can intervene in a suit that it declined to join only "on a showing of good cause," and only "without limiting the status and right of that person." Tex. Hum. Res. Code

43

§ 36.104(b-1).  So if the State intervenes later, it cannot assume full responsibility for the suit.  That is not State control of State litigation.  (Neither is the State's cited ability to "submit Statements of Interest and appear at hearings to advocate for its rights."  State Resp. 21.)

Finally, the State notes that it "can pursue its claims through an alternate remedy in a separate proceeding; can stay the relator's ability to conduct discovery that would interfere with the State's investigations or prosecutions; and retains the ultimate authority to consent to—or veto—a proposed settlement."  State Resp. 21 (footnotes omitted).  But again, the core constitutional concern is that a private litigant may pursue litigation for and in the name of the State in an action that the State's attorneys have expressly declined to take over.  *See supra* at 27-32.  The State's powers to file separate actions, seek to delay discovery, and review settlements do nothing to address that fundamental problem.

## C.   History cannot salvage the TMFPA.

At the federal level, defenders of the False Claims Act's *qui tam* provisions have emphasized the historical pedigree of the False Claims Act.  *See, e.g.*, *Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 753 (5th

44

Cir. 2001). At the same time, growing consensus—even in the federal context—is that "the early history of federal *qui tam* statutes" cannot "justify contemporary violations of constitutional guarantees." *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 450 (2023) (Thomas, J., dissenting) (quoting *Marsh v. Chambers*, 463 U.S. 783, 790 (1983)); *see id.* at 442 (Kavanaugh, J., joined by Barrett, J., concurring); *Riley*, 252 F.3d at 772-75 (Smith, J., dissenting); *Constitutionality of the* Qui Tam *Provisions of the False Claims Act*, 13 Op. O.L.C. 207, 235 (1989).

The Court need not wade into this dispute because the federal history does not control the constitutionality of this Texas statute. And there is no history of *qui tam* litigation in Texas. The provisions of the TMFPA that allow a *qui tam* plaintiff to pursue a suit when the State declines to take over the case were not even enacted until 2007. *See supra* at 6. Before then, no law enacted under the current Texas Constitution purported to allow a private plaintiff to bring and maintain suits for the State.[10] To the contrary, this Court regularly

---

[10] There were a handful of *qui tam* statutes enacted under prior constitutional regimes. *See, e.g.*, *Bush v. Republic of Texas*, 1 Tex. 455 (1846). But the constitutions then in effect "did not contain the invoked provisions [of Article IV and Article V], and "therefore the question here presented was not there in issue." *Am.*

APP217

construed statutes to prevent that possibility, and explained that any statute that could be read to authorize a contrary result must be struck down. *See supra* at 27-32.

Nor is it plausible that the early American history of *qui tam* litigation informs the meaning of the Texas Constitution. *See Southern Pac Co. v. Porter*, 331 S.W.2d 42, 45 (Tex. 1960) ("Texas was never a British colony nor an American territory."). The framers of the 1876 Constitution, which contains the relevant separation-of-powers guarantees, aimed to "define[] the duties of the attorney general or of district or county attorneys" more "specifically" than prior constitutions. *State v. Moore*, 57 Tex. 307, 316 (1882). Indeed, the 1876 Constitution assigns public litigation duties in much more detail than its federal counterpart, which says nothing specific about who may litigate on behalf of the United States. There is simply no reason to believe that the same framers who carefully assigned litigation responsibility to

---

*Liberty Pipe Line Co.*, 167 S.W.2d at 581-82. And the decisions by this Court "during the reconstruction period" that blessed *qui tam* litigation were quickly disregarded once this Constitution was enacted. *See Gibbs v. State*, 46 S.W. 645, 646 (Tex. Crim. App. 1898) ("We are of opinion that while proceedings in qui tam actions may have been by the informer, by the commonwealth, or by the state in other jurisdictions, under the provisions of our constitution, it being an offense, the prosecution must run in the name of the state.").

46

State officials meant to allow for an unwritten *qui tam* carveout to the provisions that they wrote.

The bottom line is that "tradition . . . cannot provide authority that the law does not." *Saldano v. State*, 70 S.W.3d 873, 883 (Tex. Crim. App. 2002). There is no "adverse-possession theory" of constitutional meaning, *NLRB v. Noel Canning*, 573 U.S. 513, 570 (2014) (Scalia, J., concurring in the judgment), and so a law may be invalid even "when the practice in question 'covers our entire national existence and indeed predates it.'" *Polansky*, 599 U.S. at 450 (Thomas, J., dissenting) (quoting *Walz v. Tax Comm'n of City of N.Y.*, 397 U.S. 664, 678 (1970)). Here, where *qui tam* statutes have never been used under Texas' current constitution, the tradition is of no relevance at all. The TMFPA is unconstitutional, and a smattering of eighteenth-century history cannot save it.

## III. THE COURT SHOULD GRANT MANDAMUS RELIEF.

Mandamus relief is appropriate when a trial court commits an error of law for which there is no "adequate remedy by appeal." *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136 (Tex. 2004). Because the trial court allowed this constitutionally infirm suit to go forward, it

47

committed an error of law.  *See supra* Parts I-II.  And there is no

adequate remedy by appeal for the constitutional infirmities with this

suit: Requiring the parties to undergo cost-intensive discovery just for

Novartis to later obtain reversal on a threshold legal question would

constitute a "gross and unnecessary waste of economic and judicial

resources."  *In re J.B. Hunt Transport, Inc.*, 492 S.W.3d 287, 298-99

(Tex. 2016).  For this reason, this Court regularly holds that

"[m]andamus relief is appropriate" when the trial court improperly

denies a "motion to dismiss."  *See, e.g.*, *In re Farmers Tex. Cnty. Mut.*

*Ins. Co.*, 621 S.W.3d 261, 266 (Tex. 2021); *In re Essex Ins. Co.*, 450

S.W.3d 524, 528 (Tex. 2014); *cf. In re Shire PLC*, 633 S.W.3d 1, 27 (Tex.

App. 2021) ("[A]n incorrect denial of a Rule 91a motion to dismiss would

expose the defendant to the time and resources necessary to defend a

claim that can only end in a defense verdict.").  That is true even when

the "issue of law" presented is "one of first impression."  *In re*

*Prudential Ins. Co. of Am.*, 148 S.W.3d at 138.

Nor is there any reason for the Court to delay deciding the

constitutional questions presented in this petition.  The issues are

purely legal; they do not turn on any facts specific to this *qui tam* suit.

48

So nothing will be gained from further proceedings that—if Novartis is correct in its legal arguments—cannot constitutionally proceed. Immediate resolution of the issues presented here is also important to preserving separation of powers and the orderly processes of government—specifically, the jurisdiction of the Executive department and the Attorney General's core constitutional duties to initiate (or not initiate) suit for the State and exclusively control litigation intended to vindicate the public interest.

## CONCLUSION AND PRAYER

For the foregoing reasons, the Court should issue a writ of mandamus directing the district court to dismiss HSG's claims.

49

Dated: September 30, 2024     Respectfully submitted,

O'MELVENY & MYERS LLP

*/s/ Danny S. Ashby*
Danny S. Ashby
Texas Bar No. 01370960
dashby@omm.com
2801 North Harwood Street, Suite 1600
Dallas, Texas  75201
Telephone:  +1 972 360 1900
Facsimile:  +1 972 360 1901

Anton Metlitsky
ametlitsky@omm.com
Ross Galin
rgalin@omm.com
1301 Avenue of the Americas, 17th Floor
New York, NY 10019
Telephone: +1 212 326 2000
(Admitted *pro hac vice*)

THE DACUS FIRM, P.C.

Deron R. Dacus
Texas Bar No. 00790553
ddacus@dacusfirm.com
821 ESE Loop 323, Suite 430
Tyler, Texas 75701
Telephone: +1 903 705 1117

*Counsel for Relator*
*Novartis Pharmaceuticals Corporation*

50

**CERTIFICATE OF COMPLIANCE**

This document complies with the typeface requirements of Texas Rule of Appellate Procedure 9.4(e) because it has been prepared in a proportionally spaced typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of Rule 9.4(i) because it contains 10,006 words, excluding any parts exempted by Rule 9.4(i)(1).

/s/ *Danny S. Ashby*
Danny S. Ashby

APP223

# CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2024, a true and correct copy of the foregoing brief has been filed and served on counsel of record through electronic service via www.efiletexas.gov.

*/s/ Danny S. Ashby*
Danny S. Ashby

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below:

Court Services on behalf of Danny Ashby
Bar No. 1370960
ommsvc2@omm.com
Envelope ID: 92607044
Filing Code Description: Brief on the Merits (all briefs)
Filing Description: RELATOR NOVARTIS PHARMACEUTICALS CORPORATION'S BRIEF ON THE MERITS
Status as of 10/1/2024 8:51 AM CST

Associated Case Party: Novartis Pharmaceuticals Corporation

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Meredith N.Garagiola | | mgaragiola@omm.com | 9/30/2024 2:32:04 PM | SENT |
| Deron R.Dacus | | ddacus@dacusfirm.com | 9/30/2024 2:32:04 PM | SENT |
| Danny S.Ashby | | dashby@omm.com | 9/30/2024 2:32:04 PM | SENT |
| Ross Galin | | rgalin@omm.com | 9/30/2024 2:32:04 PM | SENT |
| Anton Metlitsky | | ametlitsky@omm.com | 9/30/2024 2:32:04 PM | SENT |
| Joshua Goode | | jgoode@omm.com | 9/30/2024 2:32:04 PM | SENT |

Associated Case Party: Health Selection Group, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jonathan Wilkerson | 24050162 | jonathan.wilkerson@lanierlawfirm.com | 9/30/2024 2:32:04 PM | SENT |
| Samuel Baxter | 1938000 | sbaxter@mckoolsmith.com | 9/30/2024 2:32:04 PM | SENT |
| Zeke DeRose | 24057421 | zeke.derose@lanierlawfirm.com | 9/30/2024 2:32:04 PM | SENT |
| Jennifer Truelove | 24012906 | jtruelove@mckoolsmith.com | 9/30/2024 2:32:04 PM | SENT |
| Alex Brown | 24026964 | alex.brown@lanierlawfirm.com | 9/30/2024 2:32:04 PM | SENT |
| Eric B.Halper | | ehalper@mckoolsmith.com | 9/30/2024 2:32:04 PM | SENT |
| Radu A.Lelutiu | | rlelutiu@mckoolsmith.com | 9/30/2024 2:32:04 PM | SENT |
| W. MarkLanier | | WML@LanierLawFirm.com | 9/30/2024 2:32:04 PM | SENT |
| joel leach | | jleach@mckoolsmith.com | 9/30/2024 2:32:04 PM | SENT |
| denise lopez | | dlopez@mckoolsmith.com | 9/30/2024 2:32:04 PM | SENT |

Associated Case Party: State of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|

**APP225**

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below:

Court Services on behalf of Danny Ashby
Bar No. 1370960
ommsvc2@omm.com
Envelope ID: 92607044
Filing Code Description: Brief on the Merits (all briefs)
Filing Description: RELATOR NOVARTIS PHARMACEUTICALS CORPORATION'S BRIEF ON THE MERITS
Status as of 10/1/2024 8:51 AM CST

Associated Case Party: State of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Lynne Kurtz-Citrin | 24081425 | lynne.kurtz-citrin@oag.texas.gov | 9/30/2024 2:32:04 PM | SENT |
| Jonathan Bonilla | 24073939 | Jonathan.Bonilla@oag.texas.gov | 9/30/2024 2:32:04 PM | SENT |
| Jordan Underhill | 24102586 | jordan.underhill@oag.texas.gov | 9/30/2024 2:32:04 PM | SENT |
| Mary JoToupin | | MaryJo.Toupin@oag.texas.gov | 9/30/2024 2:32:04 PM | SENT |
| Janice Garrett | | Janice.Garrett@oag.texas.gov | 9/30/2024 2:32:04 PM | SENT |

APP226

FILED
24-0239
10/29/2024 3:33 PM
tex-93703585
SUPREME COURT OF TEXAS
BLAKE A. HAWTHORNE, CLERK

**Cause No. 24-0239**

# IN THE SUPREME COURT OF TEXAS

IN RE NOVARTIS PHARMACEUTICALS CORPORATION,
*Relator.*

_____

SIXTH DISTRICT COURT OF APPEALS CASE NO. 06-24-00005-CV,
FROM THE 71ST DISTRICT COURT IN HARRISON COUNTY, TEXAS
CAUSE NO. 23-0276 · THE HONORABLE BRAD MORIN PRESIDING

## BRIEF OF *AMICUS CURIAE* U.S. CHAMBER OF COMMERCE IN SUPPORT OF PETITIONER

LINDSEY B. COHAN
(Texas Bar No. 24083903)
**DECHERT LLP**
515 Congress Avenue, Suite 1400
Austin, Texas 78701
Telephone: +1 512.394.3001
lindsey.cohan@dechert.com

STEVEN A. ENGEL
  *(Admitted Pro Hac Vice)*
MICHAEL H. MCGINLEY
  *(Admitted Pro Hac Vice)*
M. SCOTT PROCTOR
  *(Admitted Pro Hac Vice)*
JUSTIN W. AIMONETTI
  *(Admitted Pro Hac Vice)*
**DECHERT LLP**
1900 K Street, NW
Washington, D.C. 20006
Telephone: +1 202.261.3300
steven.engel@dechert.com

*Counsel for* Amicus Curiae,
*U.S. Chamber of Commerce*

 

The parties and their counsel are correctly identified in the parties'

briefs on the merits.  This brief is written on behalf of *Amicus Curiae* the

Chamber of Commerce of the United States of America.

*Amicus Curiae* is represented by the following counsel:

Lindsey Cohan
DECHERT LLP
515 Congress Ave.,
Suite 1400
Austin, TX, 78701

Steven A. Engel
(Admitted *Pro Hac Vice*)
Michael H. McGinley
(Admitted *Pro Hac Vice*)
M. Scott Proctor
(Admitted *Pro Hac Vice*)
Justin W. Aimonetti
(Admitted *Pro Hac Vice*)
DECHERT LLP
1900 K ST NW
Washington DC, 20006
steven.engel@dechert.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................iv

INTEREST OF *AMICUS CURIAE*.................................................. 1

INTRODUCTION ......................................................................... 3

ARGUMENT ............................................................................... 6

I. The Separation of Powers Is Fundamental To Both
The Texas And United States Constitutions ................................. 6

    A. The Texas Constitution Makes Clear That The
Separation Of Powers Safeguards Liberty ........................... 6

    B. The Separation Of Powers Under The Texas
Constitution Derives From The U.S. Constitution................ 8

    C. Courts Have Long Recognized That The U.S.
Constitution's Separation of Powers Vests All
Executive Power In A Politically Accountable
Executive ..................................................................... 11

II. The Texas Constitution Vests The Attorney General And
County Attorneys With The Authority Of The State ................... 13

III. The TMFPA's *Qui Tam* Provisions Violate The Texas
Constitution ........................................................................ 17

    A. The TMFPA Violates The Separation-Of-Powers
Principles Enshrined In Article II, Section 1; Article
IV, Section 22; And Article V, Section 21.......................... 17

    B. Federal Caselaw Reinforces The Conclusion That
The TMFPA Is Unconstitutional....................................... 19

    C. History Cannot Salvage The Texas *Qui Tam*
Provisions' Affront To The Separation Of Powers................ 22

PRAYER................................................................................... 28

CERTIFICATE OF COMPLIANCE ....................................... 29

CERTIFICATE OF SERVICE................................................. 30

**APP229**

# TABLE OF AUTHORITIES

| CASES | Page(s) |
|---|---|

*Albertson's, Inc. v. Sinclair,*
984 S.W.2d 958 (Tex. 1999) ........................................................... 16

*Allen v. Fisher,*
9 S.W.2d 731 (Tex. 1928) ............................................................... 15

*Armadillo Bail Bonds v. State,*
802 S.W.2d 237 (Tex. Crim. App. 1990) (en banc) ......................... 7

*Chisholm v. Bewley Mills,*
287 S.W.2d 943 (Tex. 1956) ........................................................... 16

*Cochise Consultancy, Inc. v. United States ex rel. Hunt,*
587 U.S. 262 (2019) ........................................................................ 21

*Dao v. Trinh,*
2024 WL 2069933 (Tex. App. May 9, 2024) ................................... 18

*Dep't of Transp. v. Ass'n of Am. R.R.,*
575 U.S. 43 (2015) .................................................................... 12, 13

*El Paso Electric Co. v. Texas Department of Insurance,*
937 S.W.2d 432 (Tex. 1996) ..................................................... 17, 18

*Ex parte Davis,*
957 S.W.2d 9 (Tex. Crim. App. 1997) ............................................ 20

*Fin. Comm'n of Texas v. Norwood,*
418 S.W.3d 566 (Tex. 2013) ............................................................. 3

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.,*
561 U.S. 477 (2010) .................................................................. 11, 12

*Garcia v. City of Willis,*
593 S.W.3d 201 (Tex. 2019) ............................................................. 7

*Image API, LLC v. Young,*
691 S.W.3d 831 (Tex. 2024) ........................................................... 16

*In re Abbott,*
628 S.W.3d 288 (Tex. 2021) ........................................................... 19

*In re Allcat Claims Serv., L.P.,*
356 S.W.3d 455 (Tex. 2011) ..................................................... 14, 16

APP230

*In re Dallas Cnty.*,
    697 S.W.3d 142 (Tex. 2024) ............................................................ 27

*Johnson ex rel. MAII Holdings, Inc. v. Jackson Walker, L.L.P.*,
    247 S.W.3d 765 (Tex. App. 2008) .................................................... 6

*Jones v. State*,
    803 S.W.2d 712 (Tex. Crim. App. 1992) ........................................ 7

*Kinney v. Barnes*,
    443 S.W.3d 87 (Tex. 2014) ......................................................... 5, 20

*Kirk v. State*,
    454 S.W.3d 511 (Tex. Crim. App. 2015) ...................................... 13

*Lucia v. Securities and Exchange Commission*,
    585 U.S. 237 (2018) ....................................................................... 21

*Marsh v. Chambers*,
    463 U.S. 783 (1983) ....................................................................... 26

*Martin v. Hunter's Lessee*,
    14 U.S. (1 Wheat.) 304 (1816) ...................................................... 13

*Michaelis v. Rollins*,
    1999 WL 33748054 (Tex. App. May 6, 1999) ............................... 15

*Mosley v. Texas Health & Hum. Servs. Comm'n*,
    593 S.W.3d 250 (Tex. 2019) .......................................................... 19

*Murphy v. Smith*,
    583 U.S. 220 (2018) ....................................................................... 16

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
    597 U.S. 1 (2022) ........................................................................... 26

*Pidgeon v. Turner*,
    538 S.W.3d 73 (Tex. 2017) ......................................................... 5, 20

*Robertson v. United States ex rel. Watson*,
    560 U.S. 272 (2010) ....................................................................... 12

*Satterfield v. Crown Cork & Seal Co.*,
    268 S.W.3d 190 (Tex. App. 2008) ................................................. 20

*Seila Law LLC v. Consumer Financial Protection Bureau*,
    591 U.S. 197 (2020) ................................................................. 11, 21

v

*State ex rel. Downs v. Harney,*
    164 S.W.2d 55 (Tex. Civ. App. 1942) ............................................. 16

*State ex rel. Durden v. Shahan,*
    658 S.W.3d 300 (Tex. 2022)........................................................ 15

*State ex rel. Hill v. Pirtle,*
    887 S.W.2d 921 (Tex. Crim. App. 1994) ....................................... 15

*State v. Rhine,*
    297 S.W.3d 301 (Tex. Crim. App. 2009) ....................................... 13

*State v. Stephens,*
    663 S.W.3d 45 (Tex. Crim. App. 2021) ......................................... 13

*Tex. Ass'n of Bus. v. Tex. Air Control Bd.,*
    852 S.W.2d 440 (Tex. 1993)................................................... 7, 18

*Texas Boll Weevil Eradication Foundation, Inc. v. Lewellen,*
    952 S.W.2d 454 (Tex. 1997).................................................... 7, 8

*Texas Dep't of Transp. v. T. Brown Constructors, Inc.,*
    947 S.W.2d 655 (Tex. App. 1997)................................................. 6

*United States ex rel. Atkins v. McInteer,*
    470 F.3d 1350 (11th Cir. 2006) .................................................. 23

*United States ex rel. Polansky v. Exec. Health Res., Inc.,*
    599 U.S. 419 (2023) ....................................... 4, 13, 21, 22

*United States ex rel. Stevens,*
    529 U.S. 765 (2000) ................................................................ 24

*United States ex rel. Zafirov v. Florida Medical Associates, LLC,*
    2024 WL 4349242 (M.D. Fla. Sept. 30, 2024). .................... 4, 22, 26

*United States v. Rahimi,*
    144 S. Ct. 1889 (2024) ............................................................. 26

*Waffle House, Inc. v. Williams,*
    313 S.W.3d 796 (Tex. 2010)....................................................... 19

*Walz v. Tax Comm'n of City of New York,*
    397 U.S. 664 (1970) ................................................................. 26

**APP232**

**CONSTITUTIONS**

Tex. Const. art. II, § 1...............................................3, 6, 7, 13, 18

Tex. Const. art. IV, § 22 .............................. 14, 15, 16, 17, 18

Tex. Const. art. V, § 21..................................14, 15, 16, 17, 18

Tex. Const. art. XVII .................................................................18

U.S. Const. art. II, § 1, cl. 1 ................................ 11, 12, 13, 17, 22

U.S. Const. art. II, § 2, cl. 2.........................................................22

**STATUTES**

Tex. Hum. Res. Code § 36.101...................................................17

Tex. Hum. Res. Code § 36.104.............................................17, 18

Tex. Hum. Res. Code § 36.110...................................................17

**RULES**

Tex. App. R. 11(c).........................................................................5

**OTHER AUTHORITIES**

1 Annals of Cong. 480 (1789) (statement of James Madison) ...............12

4 William Blackstone, *Commentaries on the Laws of
     England* (1768) .................................................................9, 10, 11

5 Matthew Bacon, *A New Abridgement of the Law* 798
     (7th ed. 1832) ...........................................................................11

2007 Tex. Sess. Law Serv. Ch. 29, § 4 (S.B. 362) ..................................17

A. Scalia & B. Garner, *Reading Law: The Interpretation of
     Legal Texts* 114 (2012)................................................................16

Act of Aug. 4, 1790, ch. 35, §§ 55, 69, 1 Stat. 145, 173, 177 ...................24

Act of Feb. 25, 1791, ch. 10, §§ 8, 9, 1 Stat. 191, 195–96........................24

Act of July 20, 1790, ch. 29, § 1, 1 Stat. 131, 131...................................24

Act of July 31, 1789, ch. 5, §§ 8, 29, 38, 1 Stat. 29, 38, 45, 48................23

Act of May 31, 1790, ch. 15, § 2, 1 Stat. 124, 124–25............................24

Act of Sept. 1, 1789, ch. 11, § 21, 1 Stat. 55, 60 .....................................24

vii

Act of Sept. 2, 1789, ch. 12, § 8, 1 Stat. 65, 67 ........................................ 24

Ann Woolhandler & Caleb Nelson, *Does History Defeat Standing Doctrine?*,
102 Mich. L. Rev. 689 (2004) ........................................................ 25

*Constitutionality of the* Qui Tam *Provisions of the False Claims Act*,
13 Op. O.L.C. 207 (1989) (William Barr, Ass't Att'y Gen.)...... 25, 26

J. Randy Beck, *The False Claims Act and the English Eradication of Qui Tam Legislation*,
78 N.C. L. Rev. 539 (2000) ........................................................ 25, 26

John Locke, *Two Treatises on Civil Government* 197
(George Routledge & Sons ed., 1884) ........................................ 9, 10

Leonard D. White, *The Federalists* 417 (1956)........................................ 25

Montesquieu, *The Spirit of the Laws* 157
(A. Cohler, B. Miller, & H. Stone eds. 1989) .................................... 9

Pamela Bucy et. al., *States, Statutes, and Fraud: A Study of Emerging State Efforts to Combat White Collar Crime*,
31 Cardozo L. Rev. 1523 (2010) .................................................... 23

## INTEREST OF *AMICUS CURIAE*

The Chamber of Commerce of the United States of America ("Chamber") is the world's largest business federation. It represents approximately 300,000 direct members and indirectly represents the interests of more than 3 million companies and professional organizations of every size, in every industry sector, and from every region of the country. An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the state and federal courts. To that end, the Chamber regularly files *amicus curiae* briefs in cases, like this one, that raise issues of concern to the business community.

The federal False Claims Act ("FCA") and parallel state laws, such as the Texas Medicaid Fraud Prevention Act ("TMFPA") at issue here, together affect nearly every sector of the economy, from healthcare, defense, and construction, to technology, education, and banking. These acts no doubt promote the worthy goal of protecting the federal and state treasuries from fraud. But the Chamber believes that the *qui tam* mechanisms in such statutes have been grossly abused, particularly over the past few decades, where relators have sought to exploit the

1

extraordinary powers granted by such mechanisms to seek private profit in cases that do not involve genuine fraud against the federal and state governments.

The unusual *qui tam* device deputizes individual relators to exercise government power and pursue litigation on behalf of the sovereign, even when the government refuses to intervene. And that transfer of core government power to private hands has exacted a substantial economic toll. Companies frequently spend millions of dollars, or more, conducting investigations, fielding discovery demands, and engaging in motions practice—all to defend against baseless allegations that the government has deemed unworthy of prosecution. Those litigation costs quickly add up. As a result, even meritless cases can be used to extract enormous settlements.

Because *qui tam* provisions impose costs that affect businesses across the Nation, the Chamber files this *amicus* brief to assist the Court.[1]

---

[1] The Chamber agrees with Novartis that the relator lacks constitutional standing, but files this brief to address the separation of powers problems underlying the TMFPA.

## INTRODUCTION

In 2007, Texas amended the TMFPA to include *qui tam* provisions. Those added provisions violate the separation of powers under the Texas Constitution. That foundational document guarantees that "[t]he powers of the Government of the State of Texas shall be divided into three distinct departments"—Legislative, Executive, and Judicial—and that "no person, or collection of persons, being one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted." Tex. Const. art. II, § 1.

The Texans who ratified the State's Constitution understood that "[t]he principle of separation of powers is foundational for federal and state governments in this country and firmly embedded in our nation's history." *Fin. Comm'n of Texas v. Norwood*, 418 S.W.3d 566, 570 (Tex. 2013). That is so because a government of separated powers ensures that no single institution attains overweening political dominance over the State, and that politically accountable government officials bear responsibility for the enforcement of the State's law—including the provisions of the TMFPA. Thus, maintaining the separation of powers is critically important to protecting the liberties of the People from governmental overreach.

The *qui tam* provisions of the TMFPA violate these core constitutional requirements. Through those provisions, the State

3

legislature has wrested the enforcement power from the hands of the government attorneys to whom it is assigned by the Texas Constitution and has placed that power in the hands of unaccountable private plaintiffs who are free to pursue claims that state officials have declined to chase. Such a transfer of power is unconstitutional.

The separation of powers principles of the Texas Constitution reflect the separation of powers principles of the federal Constitution. Just last year, three Justices of the U.S. Supreme Court observed that "[t]here are substantial arguments that the *qui tam* device is inconsistent with Article II" of the U.S. Constitution. *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 449 (2023) (Thomas, J., dissenting); *see id.* at 442 (Kavanaugh, J., joined by Barrett, J., concurring). And just last month, a federal district judge thoroughly considered those concerns and held that the *qui tam* provisions of the FCA, which the TMFPA mirrors, violate the federal Constitution. *See United States ex rel. Zafirov v. Florida Medical Associates, LLC*, 2024 WL 4349242, at *18 (M.D. Fla. Sept. 30, 2024).

The TMFPA's *qui tam* provisions are likewise invalid under the Texas Constitution, which even more explicitly safeguards the separation

4

of powers that protects the liberties of the People and ensures official accountability. *See, e.g.*, *Kinney v. Barnes*, 443 S.W.3d 87, 92 (Tex. 2014); *Pidgeon v. Turner*, 538 S.W.3d 73, 83 (Tex. 2017). Much as the FCA's *qui tam* provisions contravene the separation of powers principles underpinning the federal Constitution, the TMFPA's *qui tam* provisions run roughshod over the separation of powers principles expressly protected by the Texas Constitution. The *qui tam* provisions empower self-appointed private citizens with substantial governmental power to enforce public rights that only Texas government attorneys are authorized to enforce. This Court should therefore deem the TMFPA's *qui tam* provisions repugnant to the Texas Constitution and issue a writ of mandamus directing the district court to dismiss Health Selection Group's ("HSG's") claims.

*Amicus curiae* states that no counsel for any party authored this brief in whole or in part and no entity or person, aside from *amicus curiae*, its members, or its counsel, made any monetary contribution intended to fund the preparation or submission of this brief. Tex. App. R. 11(c).

5

APP239

# ARGUMENT

I. **The Separation of Powers Is Fundamental To Both The Texas And United States Constitutions.**

   A. **The Texas Constitution Makes Clear That The Separation Of Powers Safeguards Liberty.**

Like the federal Constitution, the Texas Constitution "expressly preserves three distinct departments of government." *Texas Dep't of Transp. v. T. Brown Constructors, Inc.*, 947 S.W.2d 655, 659 (Tex. App. 1997). But the Texas Constitution's ratifiers went even further and adopted Article II, § 1 to *explicitly* ensconce the inviolability of the separation of powers into the State's foundational document. The Article first mandates that "the Government of the State of Texas shall be divided into three distinct departments"—the "Legislative," "Executive," and "Judicial." Tex. Const. art. II, § 1; *see, e.g.*, *Johnson ex rel. MAII Holdings, Inc. v. Jackson Walker, L.L.P.*, 247 S.W.3d 765, 777 (Tex. App. 2008). The Article then makes plain what is implied in the federal Constitution—"no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted." Tex. Const. art. II, § 1. This separation of powers "reflects a belief on the part of those who drafted and adopted [Texas's] [C]onstitution that one of the greatest

6

threats to liberty is the accumulation of excessive power in a single branch of government." *Armadillo Bail Bonds v. State*, 802 S.W.2d 237, 239 (Tex. Crim. App. 1990) (en banc). As this Court has explained, due regard for this separation of powers mandates that "governmental authority vested in one department of government cannot be exercised by another department unless expressly permitted by the [Texas C]onstitution." *Garcia v. City of Willis*, 593 S.W.3d 201, 206 (Tex. 2019) (quoting *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993)).

One branch can violate the separation of powers principles embodied in Article II, § 1 without directly arrogating to itself the powers of another branch. *See Armadillo Bail Bonds*, 802 S.W.2d at 239. It can do so by "*unduly* interfer[ing] with another branch so that the other branch cannot *effectively* exercise its constitutionally assigned powers." *Id.*; *see Jones v. State*, 803 S.W.2d 712, 715 (Tex. Crim. App. 1992). Relevant here, the Texas legislature might unduly interfere with another branch's authority by delegating that branch's powers to a private entity via statute. *See Texas Boll Weevil Eradication Foundation, Inc. v. Lewellen*, 952 S.W.2d 454, 465–75 (Tex. 1997) (holding that "improperly delegating government authority to" a private foundation violated the

7

separation of powers in part because it did not delegate executive functions to an "administrative" agency).  Such a move would not merely offend the separation of powers.  "More fundamentally, the basic concept of democratic rule under a republican form of government is compromised when public powers are abandoned to those who are neither elected by the People, appointed by a public official or entity, nor employed by the government" to exercise a power assigned to one of the branches.  *Id.* at 469.

**B.     The Separation Of Powers Under The Texas Constitution Derives From The U.S. Constitution.**

The State of Texas derived its understanding of separated powers from the U.S. Constitution, including its conception of the executive power.  Just as the authors of the Texas Constitution drew on, and elaborated upon, the concept of executive power embodied in the U.S. Constitution, the Texas Founders drew on, and elaborated upon, the U.S. Founders' understanding of separated powers, which vested the executive power in accountable government officers.  Thus, to understand

8

the nature of the Texas executive power, it is necessary to understand its origin in the Anglo-American legal tradition.

The conception of centralized executive authority under the U.S. Constitution finds roots in the influential political theory of the English political philosopher John Locke. As Locke explained, "in the state of Nature[,] every one has the executive power of the law of Nature." John Locke, *Two Treatises on Civil Government* 197 (George Routledge & Sons ed., 1884); *see* Montesquieu, *The Spirit of the Laws* 157 (A. Cohler, B. Miller, & H. Stone eds. 1989). But "when they enter into society," individuals "give up the . . . executive power they had in the state of Nature into the hands of the society." Locke, *supra*, at 258. That is, the people delegate their executive authority to public officials, whose power is "to be directed to no other end but the peace, safety, and public good of the people." *Id.* at 259.

William Blackstone's Commentaries reflect a similar understanding. "In a state of society," he reasoned, the right "to put [the law] in execution" is "transferred from individuals to the sovereign power," who "alone . . . bears the sword of justice by the consent of the whole community." 4 William Blackstone, *Commentaries on the Laws of*

9

*England* \*7–8 (1768).  And because the public "delegate[s] all its power and rights, with regard to the execution of the laws, to one visible magistrate," that officer is "the proper person to prosecute for all public offences."  1 Blackstone, *Commentaries* at \*258–59.  Importantly, this understanding of the executive power was not strictly limited to the prosecution of "criminal" offenses.  Rather, it extended to the pursuit of relief for all "infraction[s] of the public rights belonging to th[e] community."  4 Blackstone, *Commentaries* at \*2.  Vindicating those public rights is the prerogative of the sovereign actor whom the people have empowered to administer the laws.  *See id.*

The common law recognized that, if a person has personally "suffered the damage" from a public infraction, then he might have a concomitant right to demand redress "in his own name."  Locke, *supra,* at 196.  But that private wrong would not permit him to pursue relief on behalf of the public writ large.  "[N]o person" other than the official entrusted with the executive authority "can have an action for a public nuisance, or punish it," unless that "private person suffers some extraordinary damage."  3 Blackstone, *Commentaries* at \*219–20.  Because individual persons give up the right to exercise executive

10

authority when they enter society, "the law gives no private remedy for any thing but a private wrong." *Id.* at *219; *see also* 5 Matthew Bacon, *A New Abridgement of the Law* 798 (7th ed. 1832) (explaining that "common nuisances against the public are only punishable by a public prosecution"). Only the public office or entity vested with the executive power may vindicate such public rights.

## C. Courts Have Long Recognized That The U.S. Constitution's Separation of Powers Vests All Executive Power In A Politically Accountable Executive.

The Framers of the U.S. Constitution enshrined this understanding in Article II's text, which vests "[t]he executive Power" in a single "President of the United States." U.S. Const. art. II, § 1, cl. 1. The Framers adopted that unitary structure to promote accountability and ensure that "a President chosen by the entire Nation" would "oversee the execution of the laws." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 499 (2010). By entrusting "the President alone" with "all of" the Nation's executive Power, the Framers sought to ensure that he would remain accountable for all those who would act on his behalf. *Seila Law LLC v. CFPB*, 591 U.S. 197, 203, 213 (2020). The Framers understood that "[a] basic step in organizing a civilized society" was to

11

take the "sword" of law-enforcement actions "out of private hands and turn it over to an organized government, acting on behalf of all the people." *Robertson v. United States ex rel. Watson*, 560 U.S. 272, 282–83 (2010) (Roberts, C.J., dissenting from the dismissal of a writ of certiorari as improvidently granted).

Consistent with this need for accountability, the Framers did not vest "[p]rivate entities . . . with the 'executive Power.'" *Dep't of Transp. v. Ass'n of Am. R.R.*, 575 U.S. 43, 62 (2015) (Alito, J., concurring) (quoting U.S. Const. art. II, § 1, cl. 1). "[T]he intention of the Constitution" was instead "that the first Magistrate should be responsible for the executive department" in its entirety. 1 Annals of Cong. 480 (1789) (statement of James Madison). To that end, the federal Constitution established a unitary and accountable Executive who alone was charged with the responsibility for enforcing federal law. *See Free Enter. Fund*, 561 U.S. at 496–97; *Ass'n of Am. R.R.*, 575 U.S. at 67–68 (Thomas, J., concurring in the judgment).

More to the point, the Framers understood that the branch entrusted with the legislative power—Congress—could not strip the President of the executive power that the Constitution vested in that

12

office.  That is so because the Constitution created "a separate Executive Branch *coequal* to the Legislature," *United States ex rel. Polansky v. Executive Health Resources, Inc.*, 599 U.S. 419, 450 (2023) (Thomas, J., dissenting) (emphasis added), in which *only* the President "shall be vested" with the executive power, U.S. Const. art. II cl. 1.  Given that design, it is "utterly inadmissible" for Congress to attempt to vest executive authority "in any other person" besides the President.  *Martin v. Hunter's Lessee*, 14 U.S. (1 Wheat.) 304, 330 (1816) (Story, J.); *see also Ass'n of Am. R.R.*, 575 U.S. at 62 (Alito, J., concurring) (questioning the propriety of "citizen suits" that might delegate "the 'Executive power'").

## II.  The Texas Constitution Vests The Attorney General And County Attorneys With The Authority Of The State.

By dividing its government into three parts, the Texas Constitution adopts the model set by the U.S. Constitution.  If anything, that model is "more aggressively enforce[d]" in Texas because, unlike the federal Constitution, the Texas Constitution contains an "express separation of powers provision" in Article II, Section 1.  *State v. Stephens*, 663 S.W.3d 45, 49–50 (Tex. Crim. App. 2021); *State v. Rhine*, 297 S.W.3d 301, 315 (Tex. Crim. App. 2009) (Keller, P.J., concurring); *see also Kirk v. State*, 454 S.W.3d 511, 514 (Tex. Crim. App. 2015) (characterizing Texas

13

Supreme Court holdings as persuasive authority). That "explicit Separation of Powers provision—something the U.S. Constitution lacks—prohibits not just the *exercise* of one branch's powers by another branch, but also any *interference* with another branch's exercise of its own authority." *In re Allcat Claims Serv., L.P.*, 356 S.W.3d 455, 485–86 (Tex. 2011) (Willet, J., concurring) (footnote omitted).

Although the Texas Constitution does not have a unitary executive like the federal government, it expressly specifies the politically accountable officials who may exercise the executive power of the State. Article IV, Section 22 provides that the Attorney General "shall represent the State in all suits and pleas in the Supreme Court of the State . . . and perform such other duties as may be required by law." Article V, Section 21 provides that county attorneys "shall represent the State in all cases in the District and inferior courts in their respective counties." Read together, these provisions confirm that the "Texas Constitution authorizes the attorney general, county attorneys, and district attorneys

14

to represent the state in various cases." *State ex rel. Durden v. Shahan*, 658 S.W.3d 300, 303 (Tex. 2022) (per curiam).

Given the clarity of the Constitution's text, this Court has held that Article IV, Section 22 and Article V, Section 21 "mark the limits of legislative authority to prescribe who shall represent the state and control its interests in a lawsuit in the district court." *Allen v. Fisher*, 9 S.W.2d 731, 732 (Tex. 1928). That is so even though Texas categorizes the Attorney General as an executive officer and the county attorneys as judicial officers. *See State v. Stephens*, 663 S.W.3d 45, 54 (Tex. Crim. App. 2021). What matters is that the authors of the Texas Constitution entrusted specific state officers with the fundamentally executive power to enforce the State's laws. But the authors nowhere authorized the legislature to transfer that power to private citizens via a private right of action to vindicate public rights. *See State ex rel. Hill v. Pirtle*, 887 S.W.2d 921, 928 (Tex. Crim. App. 1994); *Michaelis v. Rollins*, 1999 WL 33748054, at \*1 (Tex. App. May 6, 1999).

The text is unmistakably clear: the Texas Constitution uses the word "shall." This Court "presume[s] the language of the Constitution was carefully selected, interpret words as they are generally understood,

15

and rely heavily on the literal text." *In re Allcat Claims Serv., L.P.*, 356 S.W.3d 455, 466 (Tex. 2011). Here, "the word 'shall' is generally construed to be mandatory." *Chisholm v. Bewley Mills*, 287 S.W.2d 943, 945 (Tex. 1956); *Image API, LLC v. Young*, 691 S.W.3d 831, 841 (Tex. 2024) ("[U]sing words like shall or must, is mandatory."); *Albertson's, Inc. v. Sinclair*, 984 S.W.2d 958, 961 (Tex. 1999) ("We generally construe the word 'shall' as mandatory, unless legislative intent suggests otherwise."); A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 114 (2012) ("[W]hen the word shall can reasonably be read as mandatory, it ought to be so read"); *see also Murphy v. Smith*, 583 U.S. 220, 223 (2018) ("[T]he word 'shall' usually creates a mandate, not a liberty.").

As a result, the "shall" language of Article IV, Section 22 and Article V, Section 21 create a duty and "vests in the county attorney and" the attorney general the authority to enforce Texas law. *State ex rel. Downs v. Harney*, 164 S.W.2d 55, 58 (Tex. Civ. App. 1942). That clear language means that the Texas legislature cannot "divest these officials of their collective constitutional authority by shifting representation to some

16

**APP250**

other attorney." *El Paso Electric Co. v. Texas Department of Insurance*, 937 S.W.2d 432, 439 (Tex. 1996).

## III. The TMFPA's *Qui Tam* Provisions Violate The Texas Constitution.

### A. The TMFPA Violates The Separation-Of-Powers Principles Enshrined In Article II, Section 1; Article IV, Section 22; And Article V, Section 21.

The TMFPA provides that a "person may bring a civil action for a violation" of the Act "for the person and for the state," which "shall be brought in the name of the person and of the state." Tex. Hum. Res. Code § 36.101(a). For the first decade after its enactment, the TMFPA provided that the court "shall dismiss the action" if the State declined to bring it. *Id.* § 36.104(b) (2005). But the Texas Legislature amended the statute in 2007 to allow private individuals to continue litigation without the State's consent. 2007 Tex. Sess. Law Serv. Ch. 29, § 4 (S.B. 362). Now, if the State declines to take over the action, "the person bringing the action may proceed without the state's participation." Tex. Hum. Res. Code § 36.104(b). And if a private person succeeds in her *qui tam* action, the defendant must pay the same civil penalties as if the State had brought the action itself. *Id.* § 36.101(b). The private person receives a significant bounty from that penalty award. *Id.* § 36.110(a-1). In other

17

words, the TMFPA authorizes (indeed, incentivizes) private individuals to sue on behalf of the State in circumstances where the State attorneys specifically empowered by Section 21 and Section 22 affirmatively decline to press the litigation.

By authorizing a private person to "proceed without the state's participation," Tex. Hum. Res. Code § 36.104(b), the Texas legislature unconstitutionally devolved the State's power to individuals who lack the constitutional authority to exercise it. That is so because the Texas Constitution exclusively empowers the Texas Attorney General and the county attorneys with the vested duty to enforce the law and seek redress for violations of public rights. *See Dao v. Trinh*, 2024 WL 2069933, at *3 (Tex. App. May 9, 2024); *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 464 (Tex. 1993) (Doggett, J., concurring in part). The Texas legislature may not "divest" those attorneys of the executive power that the Texas Constitution assigns to them. *El Paso Electric Co*, 937 S.W.2d at 439. Only Texans, through constitutional amendment, may do so. *See* Tex. Const. art. 17 (amendment process). This Court should therefore hold that the TMFPA *qui tam* provisions violate Article II, Section 1, Article IV, Section 22, and Article V, Section 21 because the Texas

18

Legislature's effort to give a private party the power to pursue public litigation violates the separation-of-powers principles enshrined in the state's Constitution.

### B. Federal Caselaw Reinforces The Conclusion That The TMFPA Is Unconstitutional.

If this Court were to find that the TMFPA *qui tam* provisions violate the Texas Constitution, it would be following a path already trod in proceedings involving the *qui tam* provisions of the comparable federal False Claims Act ("FCA"). These recent federal proceedings reinforce the conclusion that the TMFPA violates the Texas separation of powers.

The Texas Constitution reflects the same separation of powers principles as the federal Constitution. *See supra.* That fact has led this Court to look to federal precedent where persuasive and helpful to interpret the Texas Constitution's separation of powers. *See In re Abbott*, 628 S.W.3d 288, 296 (Tex. 2021) ("We frequently look to federal constitutional decisions when interpreting analogous state constitutional provisions, particularly when the constitutional text is functionally identical."); *Mosley v. Texas Health & Hum. Servs. Comm'n*, 593 S.W.3d 250, 264 (Tex. 2019) (similar); *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 804 (Tex. 2010) ("Texas courts look to analogous federal law in

19

applying the state Act."); *Kinney v. Barnes*, 443 S.W.3d 87, 92 (Tex. 2014) ("[I]n interpreting our own constitution, we 'should borrow from well-reasoned and persuasive federal procedural and substantive precedent when this is deemed helpful, but should never feel compelled to parrot the federal judiciary.'" (citation omitted)); *Pidgeon v. Turner*, 538 S.W.3d 73, 83 (Tex. 2017) ("[Federal] decisions, particularly those regarding federal constitutional questions, can certainly be helpful and may be persuasive for Texas trial courts."). But Texas does not follow federal court interpretations in lockstep. Rather, Texas courts must give due effect where, as here, the Texas Constitution provides for more explicit protections than the federal counterpart. *See Ex parte Davis*, 957 S.W.2d 9, 12 (Tex. Crim. App. 1997) ("We note initially that this Court, as well as the Texas Supreme Court, has held that the Texas Constitution gives greater protection in some instances to Texas citizens than does its federal counterpart."); *Satterfield v. Crown Cork & Seal Co.*, 268 S.W.3d 190, 202 (Tex. App. 2008) ("[S]tate constitutions can, and often do, provide additional rights for their citizens.").

A few lower federal courts have upheld the constitutionality of the federal FCA. But those decisions predate a line of U.S. Supreme Court

20

precedents over the past 20 years that have enforced the structural limits of the federal Constitution with renewed vigor.  For example, in *Seila Law LLC v. Consumer Financial Protection Bureau*, 591 U.S. 197 (2020), the Supreme Court held that Congress violated Article II's vesting clause by creating an independent agency led by a single director insulated from presidential removal.   And in *Lucia v. Securities and Exchange Commission*, 585 U.S. 237 (2018), the Court held that administrative law judges were "officers of the United States," who must be appointed in a presidentially accountable manner consistent with the Appointments Clause of the U.S. Constitution; *see also Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 587 U.S. 262, 272 (2019) (holding that a relator is not "appointed as an officer of the United States").  In those cases and others, the Court has pushed back on Congress's attempts to diminish the President's control over the Executive Branch.

Last year, three Justices of the Supreme Court observed that, in light of these precedents, "[t]here are substantial arguments that the *qui tam* device is inconsistent with Article II" because it too strips the President of his ability to exercise a part of the executive power of the United States.  *United States ex rel. Polansky v. Exec. Health Res., Inc.*,

21

599 U.S. 419, 449 (2023) (Thomas, J., dissenting); *see id.* at 442 (Kavanaugh, J., joined by Barrett, J., concurring). And just last month, a federal court determined that the FCA's *qui tam* provisions violated the Appointments Clause of the federal Constitution. *See Zafirov*, 2024 WL 4349242, at \*18. As that court correctly concluded, *qui tam* laws violate Article II by stripping executive power from the executive branch and assigning it to private actors despite the Framers' decision to vest the entire "executive Power" in the President and properly appointed officers accountable before him. U.S. Const. art. II, § 1, cl. 1; *id.* art. II, § 2, cl. 2. The *qui tam* provisions of the TMPFA likewise violate the Texas constitution by shifting power to pursue redress for public wrongs from the Attorney General and county attorneys and delegates it to private actors who are unaccountable to the Texas electorate.

### C. History Cannot Salvage The Texas *Qui Tam* Provisions' Affront To The Separation Of Powers.

In federal court, a "primary counterargument" for upholding the federal FCA's *qui tam* provisions emphasizes the "historical pedigree of *qui tam* suits." *Polansky*, 599 U.S. at 450 (Thomas, J., dissenting). Whatever the purchase such arguments might have in informing the interpretation of Article II of the U.S. Constitution, they cannot save the

22

*qui tam* provisions of the TMFPA. The TMFPA was amended to add its *qui tam* provisions very recently—in 2007. The State thus cannot rely upon historical provenance to counter the Texas Constitution's plain text. *See* Pamela Bucy et. al., *States, Statutes, and Fraud: A Study of Emerging State Efforts to Combat White Collar Crime*, 31 Cardozo L. Rev. 1523, 1542–43 (2010) (noting that Texas is one of many States "relatively new to the world of qui tam litigation").

In all events, the historical roots of the federal *qui tam* are limited at best, and they do not support the federal constitutionality of the FCA's *qui tam* provisions, much less the constitutionality of the TMFPA under the Texas Constitution.

Many of the early federal *qui tam* enactments operated differently than the current FCA, which allows unharmed plaintiffs to "stand[] in the government's shoes" and litigate on the people's behalf. *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1360 (11th Cir. 2006). Most of the early statutes offered only a reward to informers for bringing a matter to the government's attention, without providing a cause of action to sue on behalf of the sovereign. *See, e.g.*, Act of July 31, 1789, ch. 5, §§ 8, 29, 38, 1 Stat. 29, 38, 45, 48 (penalties against collectors, naval officers, and

23

surveyors who failed to take an oath or display rate tables, with a bounty to the informer); Act of Sept. 1, 1789, ch. 11, § 21, 1 Stat. 55, 60 (similar for a maritime law); Act of Aug. 4, 1790, ch. 35, §§ 55, 69, 1 Stat. 145, 173, 177 (similar for a customs law); Act of Sept. 2, 1789, ch. 12, § 8, 1 Stat. 65, 67 (penalties for Treasury Department officials who violated conflict-of-interest and bribery prohibitions, with a bounty to the informer); Act of Feb. 25, 1791, ch. 10, §§ 8, 9, 1 Stat. 191, 195–96 (penalties for agents of the United States Bank that engaged in improper trading practices, with a bounty to the informer).

Others merely sought to redress private injuries, with only incidental recoveries flowing to the government. *See, e.g.*, Act of May 31, 1790, ch. 15, § 2, 1 Stat. 124, 124–25 (giving half of statutory penalty to authors who sued for copyright infringement of their works, with other half to the government); Act of July 20, 1790, ch. 29, § 1, 1 Stat. 131, 131 (giving, on top of damages, half of statutory penalty to seamen or mariners deprived of pre-departure shipping contracts, with other half to the government).

As to the few enactments that allowed informers to pursue the sovereign's claims, *see Stevens*, 529 U.S. at 777 n.6, these provisions

24

"were essentially stop-gap measures, confined to narrow circumstances" to assist the fledlging Executive, *Constitutionality of the* Qui Tam *Provisions of the False Claims Act*, 13 Op. O.L.C. 207, 213 (1989) (William Barr, Ass't Att'y Gen.) ("OLC Memo"). And the "transitory and aberrational" *qui tam* device "never gained a secure foothold within our constitutional structure." *Id.* It produced "little actual litigation," Ann Woolhandler & Caleb Nelson, *Does History Defeat Standing Doctrine?*, 102 Mich. L. Rev. 689, 728 (2004), and "[w]ithin a decade, 'the tide had turned against' qui tam, and Congress started curtailing its use," OLC Memo, *supra*, at 235–36 (alterations adopted) (quoting Leonard D. White, *The Federalists* 417 (1956)).

These early statutes were rarely used and "rapidly fell into disfavor." OLC Memo, *supra*, at 235. Decades later, Congress revived *qui tam* litigation by adopting the original version of the FCA during the Civil War. But those *qui tam* provisions too "fell into relative desuetude" once the crisis of the Civil War retreated. *Id.* at 209. Eventually, "both Houses of Congress voted to repeal the FCA['s] *qui tam* provisions" in the early 1940s, albeit in different sessions. J. Randy Beck, *The False Claims Act and the English Eradication of Qui Tam Legislation*, 78 N.C. L. Rev.

25

539, 558 (2000). These scattered historical episodes thus cannot excuse the manifest conflict between the FCA's *qui tam* provisions and the text, structure, and history of Article II of the Constitution—much less justify the *qui tam* provisions of the TMFPA.

The few historical antecedents cannot wash away *qui tam*'s constitutional shortcomings in any event. After all, "[t]he Constitution, not history, is the supreme law." OLC Memo, *supra*, at 233; *see New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 36 (2022) (stressing that "the text controls" when "later history contradicts what the text says"). The "basic principle" of constitutional interpretation is that the document controls over "contrary historical practices," *United States v. Rahimi*, 144 S. Ct. 1889, 1912 n.2 (2024) (Kavanaugh, J., concurring), meaning that, "[s]tanding alone, historical patterns cannot justify contemporary violations of constitutional guarantees," *Marsh v. Chambers*, 463 U.S. 783, 790 (1983); *see Zafirov*, 2024 WL 4349242, at *15. That holds true even for historical practices that "cover[] our entire national existence and indeed predate[] it." *Walz v. Tax Comm'n of City of New York*, 397 U.S. 664, 678 (1970). Nor can it cure infirmities under the Texas Constitution. The "guiding principle when interpreting" that

26

document "is to give effect to the intent of the voters who adopted" it. *In re Dallas Cnty.*, 697 S.W.3d 142, 158 (Tex. 2024). As described above, the Texas voters who ratified the Texas Constitution's separation-of-powers provisions intended to give the Texas Attorney General and the county attorneys the exclusive power to seek remedies for public wrongs. No amount of history can alter that fact.

27

# PRAYER

This Court should issue a writ of mandamus directing the district court to dismiss HSG's claims brought under the *qui tam* provisions of the TMFPA.

Dated: October 29, 2024

Respectfully submitted,

/s/ Lindsey Cohan
LINDSEY COHAN
DECHERT LLP
515 Congress Ave.,
Suite 1400
Austin, TX, 78701

Steven A. Engel
(Admitted *Pro Hac Vice*)
Michael H. McGinley
(Admitted *Pro Hac Vice*)
M. Scott Proctor
(Admitted *Pro Hac Vice*)
Justin W. Aimonetti
(Admitted *Pro Hac Vice*)
DECHERT LLP
1900 K ST NW
Washington DC, 20006

28

**CERTIFICATE OF COMPLIANCE**

I further certify that this brief complies with the type-volume limitation in Texas Rule of Appellate Procedure 9.4(i) because, according to Microsoft Word, it contains 5,386, excluding exempted parts.

/s/ *Lindsey Cohan*
Lindsey Cohan

Steven A. Engel
(Admitted *Pro Hac Vice*)
Michael H. McGinley
(Admitted *Pro Hac Vice*)
M. Scott Proctor
(Admitted *Pro Hac Vice*)
Justin W. Aimonetti
(Admitted *Pro Hac Vice*)

APP263

**CERTIFICATE OF SERVICE**

I certify that on October 29, 2024, a true and correct copy of the foregoing brief has been served on counsel of record for all parties through electronic service via www.efiletexas.gov.

*/s/ Lindsey Cohan*
Lindsey Cohan

Steven A. Engel
(Admitted *Pro Hac Vice*)
Michael H. McGinley
(Admitted *Pro Hac Vice*)
M. Scott Proctor
(Admitted *Pro Hac Vice*)
Justin W. Aimonetti
(Admitted *Pro Hac Vice*)

30

# Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below:

Lindsey Cohan
Bar No. 24083903
lindsey.cohan@dechert.com
Envelope ID: 93703585
Filing Code Description: Amicus Brief
Filing Description: Brief of Amicus Curiae U.S. Chamber of Commerce in
Support of Petitioner
Status as of 10/29/2024 3:38 PM CST

Associated Case Party: Novartis Pharmaceuticals Corporation

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Danny S.Ashby | | dashby@omm.com | 10/29/2024 3:33:58 PM | SENT |
| Meredith N.Garagiola | | mgaragiola@omm.com | 10/29/2024 3:33:58 PM | SENT |
| Ross Galin | | rgalin@omm.com | 10/29/2024 3:33:58 PM | SENT |
| Anton Metlitsky | | ametlitsky@omm.com | 10/29/2024 3:33:58 PM | SENT |
| Deron R.Dacus | | ddacus@dacusfirm.com | 10/29/2024 3:33:58 PM | SENT |
| Joshua Goode | | jgoode@omm.com | 10/29/2024 3:33:58 PM | SENT |

Associated Case Party: State of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Lynne Kurtz-Citrin | 24081425 | lynne.kurtz-citrin@oag.texas.gov | 10/29/2024 3:33:58 PM | SENT |
| Jonathan Bonilla | 24073939 | Jonathan.Bonilla@oag.texas.gov | 10/29/2024 3:33:58 PM | SENT |
| Jordan Underhill | 24102586 | jordan.underhill@oag.texas.gov | 10/29/2024 3:33:58 PM | SENT |
| Mary JoToupin | | MaryJo.Toupin@oag.texas.gov | 10/29/2024 3:33:58 PM | SENT |
| Janice Garrett | | Janice.Garrett@oag.texas.gov | 10/29/2024 3:33:58 PM | SENT |

Associated Case Party: Health Selection Group, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jonathan Wilkerson | 24050162 | jonathan.wilkerson@lanierlawfirm.com | 10/29/2024 3:33:58 PM | SENT |
| Samuel Baxter | 1938000 | sbaxter@mckoolsmith.com | 10/29/2024 3:33:58 PM | SENT |
| Zeke DeRose | 24057421 | zeke.derose@lanierlawfirm.com | 10/29/2024 3:33:58 PM | SENT |
| Jennifer Truelove | 24012906 | jtruelove@mckoolsmith.com | 10/29/2024 3:33:58 PM | SENT |
| Alex Brown | 24026964 | alex.brown@lanierlawfirm.com | 10/29/2024 3:33:58 PM | SENT |

**APP265**

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below:

Lindsey Cohan
Bar No. 24083903
lindsey.cohan@dechert.com
Envelope ID: 93703585
Filing Code Description: Amicus Brief
Filing Description: Brief of Amicus Curiae U.S. Chamber of Commerce in Support of Petitioner
Status as of 10/29/2024 3:38 PM CST

Associated Case Party: Health Selection Group, LLC

| Alex Brown | 24026964 | alex.brown@lanierlawfirm.com | 10/29/2024 3:33:58 PM | SENT |
|---|---|---|---|---|
| Eric B.Halper | | ehalper@mckoolsmith.com | 10/29/2024 3:33:58 PM | SENT |
| Radu A.Lelutiu | | rlelutiu@mckoolsmith.com | 10/29/2024 3:33:58 PM | SENT |
| W. MarkLanier | | WML@LanierLawFirm.com | 10/29/2024 3:33:58 PM | SENT |
| joel leach | | jleach@mckoolsmith.com | 10/29/2024 3:33:58 PM | SENT |
| denise lopez | | dlopez@mckoolsmith.com | 10/29/2024 3:33:58 PM | SENT |
| Michael Catapano | | mcatapano@mckoolsmith.com | 10/29/2024 3:33:58 PM | SENT |
| Angel Devine | | adevine@mckoolsmith.com | 10/29/2024 3:33:58 PM | SENT |
| Hannah Mirzoeff | | hmirzoeff@mckoolsmith.com | 10/29/2024 3:33:58 PM | SENT |

FILED
24-0239
11/20/2024 2:31 PM
tex-94522528
SUPREME COURT OF TEXAS
BLAKE A. HAWTHORNE, CLERK

No. 24-0239

---

IN THE SUPREME COURT OF TEXAS

---

IN RE NOVARTIS PHARMACEUTICALS CORPORATION,

*Relator*

---

Original Mandamus Proceeding
From the 71st District Court in Harrison County
Cause 23-0276, The Honorable Brad Morin, Presiding

---

**HEALTH SECTION GROUP, LLC'S BRIEF ON THE MERITS**

---

Samuel F. Baxter
Jennifer L. Truelove
McKool Smith, P.C.
104 East Houston, Suite 300
Marshall, Texas 75670
(903) 923-9000
Fax: (903) 923-9099

Mark Lanier
Harvey Brown
Benjamin Major
Zeke DeRose
Jonathan Wilkerson
The Lanier Law Firm
10940 W. Sam Houston
Pkwy. N., Suite 100
Houston, TX 77064
(800) 723-3216
Fax: (713) 659-2204

*Attorneys for Plaintiff and Real-Party-in-Interest Health Selection Group, LLC*

APP267

# TABLE OF CONTENTS

Table of Authorities .................................................................................................v

Table of Abbreviations.......................................................................... xii

Statement of the Case.......................................................................... xiii

Mandamus Record ...........................................................................xiv

Issues Presented ...........................................................................xiv

Introduction ...................................................................................1

    I.   Texas Qui Tam Statutes Protect Texas Medicaid from Fraud and, to Maximize Federal Funding for Texas Medicaid, Mirror Their Federal Counterparts............................................................................2

    II.  Novartis's Requested Relief Would Reduce State Attorneys' Legal Resources and Federal Medicaid Funding .................................3

Summary of the Argument..............................................................4

The TMFPA Qui Tam Statutes ........................................................6

Argument: The District Court Did Not Abuse Its Discretion..................8

    I.   Article III, § 51-a of the Texas Constitution Grants the Legislature Broad Authority over Medicaid and Empowers the Legislature to Maximize Federal Matching Money for Medicaid through the TMFPA's Qui Tam Provisions....................................................8

        A.  The Legislature Maximizes Federal Matching Money by Passing Qui Tam Statutes that Are as Effective as Federal Qui Tam Statutes at Rewarding and Facilitating Qui Tam Actions...................10

        B.  Section 51-a Grants the Legislature Broad Constitutional Authority over Texas Medicaid and Defeats Novartis's Arguments ...........................................................................11

    II.  Health Selection Has Standing or, Alternatively, Need Not Establish Standing Given Its Authority to Prosecute These Claims in its Capacity as Relator...................................................................13

A. Health Selection Has Individual Standing Because the TMFPA Partially Assigns the State's Claims against Novartis to Health Selection ...................................................................................14

    1. Applying the U.S. Supreme Court's analysis in *Stevens*, Health Selection has standing by assignment ..............................14

    2. Texas law on assignee standing supports application of *Stevens* ..................................................................................17

    3. Texas standing law parallels federal standing law despite textual differences between the relevant Texas constitutional provisions and the U.S. Constitution's "cases" and "controversies" clause ..................................................................19

    4. Novartis's "damages" versus "penalty" distinction is wrong factually and, even if true, would not defeat Health Selection's Standing ..................................................................21

B. Alternatively, Health Selection's Statutory Authority and Capacity to Represent the State Preclude Dismissal Regardless of Health Selection's Standing ..............................................................27

    1. The TMFPA provides qui tam relators with capacity and authority ...............................................................................28

    2. In its capacity as relator, Health Selection need not allege an individual injury because the State has standing .........................29

C. Alternatively, Because the TMFPA Provides Relators Like Health Selection Standing to Sue, Constitutional Standing Requirements Do Not Apply ..................................................................32

III. Health Selection's Limited Authority under the TMFPA to Prosecute Claims Benefitting the State Does Not Violate the Texas Constitution ..................................................................33

A. Novartis's Constitutional Challenges Fail Because Relators' Authority under the TMFPA Does Not Unequivocally Supplant State Attorneys' Authority to Represent the State in Medicaid Fraud Litigation ..................................................................34

B. The Presumption of Constitutional Validity Requires Novartis to Show the TMFPA Is Unconstitutional Beyond Any Reasonable Doubt ..................................................................35

iii

C. The Court Has Already Resolved Any Conceivable "Doubt" in Favor of Upholding the TMFPA's Qui Tam Provisions......................36

D. In *Maud* and *Camp*, the Court Has Approved Legislative Authorization of Non-State Attorneys to Prosecute Claims Benefitting the State so Long as their Authority Does Not Supplant the Authority of State Attorneys...........................................38

    1. *Maud v. Terrell*......................................................................39

    2. *Camp v. Gulf Production Co.*..............................................41

E. Novartis's Challenge Relies on Inapposite Case Law that Nevertheless Upholds the Deferential *Maud* Standard........................43

F. The TMFPA Stays Within the Parameters Set by *Maud*, *Camp*, *Sheppard*, and Other Governing Case Law..........................................48

    1. The TMFPA does not unequivocally supplant State attorneys' authority to represent the State..................................48

    2. Under the TMFPA, State attorneys do not cede constitutional authority if they elect not to intervene within the 180-day seal period......................................................51

    3. Novartis's reliance on the nondelegation doctrine fails.................55

    4. Novartis's mistaken speculation regarding State attorneys' intentions does not control..........................................56

Argument: The Appellate Process Should Prevail .................................................57

Conclusion ..........................................................................................................58

Signature Block....................................................................................................59

Certificates ..........................................................................................................60

**APP270**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott v. Mexican Am. Legislative Caucus, Tex. House of Representatives*,
647 S.W.3d 681 (Tex. 2022)................................................................20

*Agey v. Am. Liberty Pipe Line Co.*,
141 Tex. 379, 172 S.W.2d 972 (1943)................................................47

*Allen v. Fisher*,
118 Tex. 38, 9 S.W.2d 731 (Comm'n App. 1928) ....................... 46-47

*Armes v. Thompson*,
222 S.W.3d 79 (Tex. App.—Eastland 2006, no pet.)...................18, 19

*Austin Nursing Ctr., Inc. v. Lovato*,
171 S.W.3d 845 (Tex. 2005)....................................................18, 19, 29

*Bell v. Low Income Women of Tex.*,
95 S.W.3d 253 (Tex. 2002).........................................................10, 11

*Bland Indep. Sch. Dist. v. Blue*,
34 S.W.3d 547 (Tex. 2000)................................................................32

*Brady v. Brooks*,
99 Tex. 366, 89 S.W. 1052 (Tex. 1905) ............................................34

*Brooks v. Northglen Ass'n*,
141 S.W.3d 158 (Tex. 2004)................................................................20

*Brown v. De La Cruz*,
156 S.W.3d 560 (Tex. 2004)................................................................23

*Busbee v. Cty. of Medina*,
681 S.W.3d 391 (Tex. 2023)................................................................33

*Camp v. Gulf Prod. Co.*,
122 Tex. 383, 61 S.W.2d 773 (Tex. 1933) ................. 35, 38, 41, 42, 48, 49

v

*Children of the Kingdom v. Cent. Appraisal Dist. of Taylor Cty.*,
  674 S.W.3d 407 (Tex. App.—Eastland 2023, pet. denied) ................................32

*Comm'n for Lawyer Discipline v. Benton*,
  980 S.W.2d 425 (Tex. 1998)................................................................54

*Cortes v. Wendl*,
  No. 06-17-00121-CV, 2018 WL 3040322 (Tex. App.—Texarkana June
  20, 2018, no pet) ........................................................................30

*Cotten v. Republic Nat'l Bank of Dallas*,
  395 S.W.2d 930 (Tex. App.—Dallas 1965, writ ref'd n.r.e.) ..............................29

*Data Foundry, Inc. v. City of Austin*,
  620 S.W.3d 692 (Tex. 2021)................................................................20

*El Paso Elec. Co. v. Tex. Dep't of Ins.*,
  937 S.W.2d 432 (Tex. 1996)....................................................34, 38, 41, 49

*EXLP Leasing, LLC v. Galveston Cent. Appraisal Dist.*,
  554 S.W.3d 572 (Tex. 2018)................................................................35

*Everett v. TK-Taito, L.L.C.*,
  178 S.W.3d 844 (Tex. App.—Fort Worth 2005, no pet.)......................................32

*Ferreira v. Butler*,
  575 S.W.3d 331 (Tex. 2019)................................................................31

*Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*,
  327 S.W.3d 118 (Tex. 2010)..................................................................8

*Greene v. Farmers Ins. Exch.*,
  446 S.W.3d 761 (Tex. 2014)................................................................17

*Heckman v. Williamson Cty.*,
  369 S.W.3d 137 (Tex. 2012)................................................................20

*Hill County v. Sheppard*,
  178 S.W.2d 261 (Tex. 1944)........................................................ 43-44, 47, 48

vi

*Hunt v. Bass*,
664 S.W.2d 323 (Tex. 1984).................................................................32, 33

*In re Bridgestone Americas Tire Operations, LLC*,
459 S.W.3d 565 (Tex. 2015) (orig. proceeding)................................................31

*In re Essex Ins. Co.*,
450 S.W.3d 524 (Tex. 2014) (orig. proceeding)................................................57

*In re Farmers Tex. Cty. Mut. Ins. Co.*,
621 S.W.3d 261 (Tex. 2021) (orig. proceeding).............................................8, 57

*In re G.X.H.*,
627 S.W.3d 288 (Tex. 2021).................................................................8

*In re Mem'l Hermann Hosp. Sys.*,
464 S.W.3d 686 (Tex. 2015) (orig. proceeding)................................................14

*In re Novartis Pharm. Corp.*,
No. 06-24-00005-CV, 2024 WL 874686
(Tex. App.—Texarkana Mar. 1, 2024, orig. proceeding)..........................xiii-xiv

*In re Xerox Corp.*,
555 S.W.3d 518 (Tex. 2018) (orig. proceeding)........................................*passim*

*Koy v. Schneider*,
110 Tex. 369, 218 S.W. 479 (1920).......................................................36, 37, 54

*Koy v. Schneider*,
110 Tex. 369, 221 S.W. 880 (1920)......................................... 36-37, 38, 49, 54

*Marauder Corp. v. Beall*,
301 S.W.3d 817 (Tex. App.—Dallas 2009, no pet.) .........................................32

*Maud v. Terrell*,
109 Tex. 97, 200 S.W. 375 (Tex. 1918) ..................................................*passim*

*Memon v. Nguyen*,
No. 01-21-00706-CV, 2023 WL 3513135 (Tex. App.—Houston [1st Dist.]
May 18, 2023, no pet.) ...................................................................30

APP273

*Pike v. Tex. EMC Mgmt., LLC,*
  610 S.W.3d 763 (Tex. 2020)................................................................20, 29, 33

*PNC Mortgage v. Howard,*
  668 S.W.3d 644 (Tex. 2023)................................................................................18

*Rockwell Int'l Corp. v. United States,*
  549 U.S. 457 (2007)............................................................................................16

*Rodarte v. Investeco Grp., L.L.C.,*
  299 S.W.3d 400 (Tex. App.—Houston [14th Dist.] 2009, no pet.)....................31

*Rose v. Doctors Hosp.,*
  801 S.W.2d 841 (Tex. 1990)...............................................................................54

*Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.,*
  554 U.S. 269 (2008).....................................................................................16, 22

*Staples v. State,*
  112 Tex. 61, 245 S.W. 639 (1922)........................................... 42, 44-45, 47

*Stroud v. Stroud,*
  733 S.W.2d 619 (Tex. App.—Dallas 1987, no writ)..........................................18

*Sw. Bell Tel. Co. v. Mktg. on Hold Inc.,*
  308 S.W.3d 909 (Tex. 2010)...............................................................................17

*Terrell v. Sparks,*
  104 Tex. 191, 135 S.W. 519 (Tex. 1911)............................................................38

*Tex. Ass'n of Bus. v. Tex. Air Control Bd.,*
  852 S.W.2d 440 (Tex. 1993)...............................................................................20

*Tex. Boll Weevil Eradication Found., Inc. v. Lewellen,*
  952 S.W.2d 454 (Tex. 1997)...............................................................................55

*Tex. Med. Res., LLP v. Molina Healthcare of Tex., Inc.,*
  659 S.W.3d 424 (Tex. 2023)...............................................................................33

viii

*Tex. Propane Gas Ass'n v. City of Houston*,
622 S.W.3d 791 (Tex. 2021)...................................................................20

*Timbertech Inc. v. Wallboards, Inc.*,
No. 14-98-00422-CV, 1999 WL 649116 (Tex. App.—Houston [14th
Dist.] Aug. 26, 1999, pet. denied)...........................................................31

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)................................................................................26

*United States ex rel. Health Choice Alliance, LLC v. Eli Lilly & Co., Inc.*,
4 F.4th 255 (5th Cir. 2021) .....................................................................50

*United States ex rel. Health Choice Alliance, LLC v. Eli Lilly & Co.*,
No. 5:17-cv-123 (E.D. Tex. Jan. 22, 2019) ..............................................1

*United States ex rel. Jackson v. Ventavia Research Grp., LLC*,
No. 1:21-CV-00008, 2024 WL 3812294 (E.D. Tex. Aug. 9, 2024)............. 52-53

*United States ex rel. Laird v. Lockheed Martin Eng'g & Sci. Servs. Co.*,
336 F.3d 346 (5th Cir. 2003) .............................................................16, 28

*United States ex rel. Polansky v. Exec. Health Res. Inc*,
17 F.4th 376 (3d Cir. 2021) .....................................................................52

*United States, ex rel. Polansky v. Exec. Health Res., Inc.*,
599 U.S. 419 (2023)................................................................... 16, 52-53

*United States ex rel. Stevens v. State of Vt. Agency of Nat. Res.*,
162 F.3d 195 (2d Cir. 1998)......................................................................15

*Vermont Agency of Nat. Res. v. United States ex rel. Stevens*,
529 U.S. 765 (2000)..........................................................................*passim*

*Whole Woman's Health v. Jackson*,
642 S.W.3d 569 (Tex. 2022)....................................................................46

*Williams v. Lara*,
52 S.W.3d 171 (Tex. 2001).................................................................20, 32

**APP275**

## Texas Constitution

Tex. Const. art. I, § 13................................................................19

Tex. Const. art. II, § 1.........................................................9, 13, 19

Tex. Const. art. III, § 51..............................................................11

Tex. Const. art. III, § 51-a.....................................................*passim*

Tex. Const. art. IV, § 22..............................................................36

Tex. Const. art. V, § 1................................................................19

Tex. Const. art. V, § 21..............................................................36

## Statutes and Rules

31 U.S.C. § 3729......................................................................22

31 U.S.C. § 3730..........................................................12, 15, 17

42 U.S.C. § 1396h.......................................................4, 5, 9, 10, 12

Tex. Civ. Prac. & Rem. Code § 64.001............................................30

Tex. Civ. Prac. & Rem. Code § 64.033............................................30

Tex. Civ. Prac. & Rem. Code § 66.002............................................45

Tex. Civ. Prac. & Rem. Code § 66.003............................................45

Tex. Civ. Prac. & Rem. Code § 71.021............................................18

Tex. Estates Code § 22.012.........................................................18

Tex. Estates Code § 752.051........................................................30

Tex. Gov't Code § 82.0651..........................................................46

Tex. Gov't Code § 311.005..........................................................33

Tex. Gov't Code § 311.021......................................................36, 53

Tex. Gov't Code § 311.032 ................................................................54

Tex. Health & Safety Code § 171.208 .............................................46

Tex. Hum. Res. Code § 32.024 ........................................................10

Tex. Hum. Res. Code § 36.051 ........................................................34

Tex. Hum. Res. Code § 36.052 ...............................................22, 34, 48, 49

Tex. Hum. Res. Code § 36.053 ........................................................34

Texas Hum. Res. Code § 36.101 ...............................................*passim*

Tex. Hum. Res. Code § 36.102 .............................................7, 48, 49, 52, 53

Tex. Hum. Res. Code § 36.104 ...........................................7, 49, 50, 51, 52, 53

Tex. Hum. Res. Code § 36.105 ........................................................51

Tex. Hum. Res. Code § 36.107 .............................................7, 48, 49, 50, 53

Tex. Hum. Res. Code § 36.108 ........................................................50

Tex. Hum. Res. Code § 36.109 ........................................................51

Tex. Hum. Res. Code § 36.110 .............................................7, 15, 17, 28

Tex. Hum. Res. Code § 36.113 ........................................................51

Tex. Labor Code § 417.001 ..............................................................18

## Miscellaneous

Brief of Amicus Curiae, *Bell v. Low Income Women of Texas*,
95 S.W.3d 253 (2001) (No. 01-0061), 2001 WL 34377696 ............................11

# TABLE OF ABBREVIATIONS

**"91a Motion"** refers to Defendant Novartis Pharmaceutical Corporation's motion to dismiss, which was denied by the district court. Novartis challenges that order by this mandamus proceeding.

**"Brief"** refers to Novartis's Brief on the Merits, filed in this Court on September 30, 2024.

**"Novartis"** refers to Novartis Pharmaceutical Corporation, which is the defendant in the proceedings below and the mandamus relator in this proceeding.

**"FCA"** refers to the federal False Claims Act, 31 U.S.C. §§ 3729 *et seq*.

**"Health Selection"** refers to Health Selection Group, LLC, the real party in interest for purposes of this mandamus proceeding and the qui tam relator-plaintiff in the trial proceedings.

**"MR"** refers to the mandamus record.

**"Section 51-a"** refers to article III, § 51-a of the Texas Constitution.

**"State"** refers to the State of Texas.

**"OAG"** refers to the State Office of Attorney General.

**"SMR"** refers to the supplemental mandamus record filed by Health Selection.

**"The district court"** refers to the 71st District Court in Harrison County, Texas, the honorable Brad Morin, presiding.

**"TMFPA"** refers to the Texas Medicaid Fraud Prevention Act, the previous title of Texas Human Resources Code chapter 36.

## STATEMENT OF THE CASE

**Nature of the case:** This is a qui tam case filed by Health Selection Group, LLC (Health Selection) on behalf of the State of Texas (State) under the Texas Medicaid Fraud Prevention Act (TMFPA), now called the Texas Health Care Program Fraud Prevention Act.[1] Health Selection alleges Defendant Novartis Pharmaceuticals Corporation (Novartis) employed illegal marketing programs to boost prescriptions for several of its products. Health Selection alleges that Novartis's misconduct caused the State Medicaid program to pay millions in what the TMFPA defines as illegal charges. Health Selection seeks to help the State recover its losses and to enforce its rights as assignee and relator under the TMFPA.

In December 2023, the district court denied Novartis's plea to the jurisdiction and motion to dismiss pursuant to Texas Rule of Civil Procedure Rule 91a (91a Motion). The district court rejected Novartis's arguments that (i) Health Selection lacks standing; and (ii) the TMFPA is unconstitutional. The district court refused to certify an interlocutory appeal pursuant to Texas Rule of Civil Procedure 168.

Novartis then filed a mandamus petition and motion to stay with the Texarkana Court of Appeals. The Texarkana court denied mandamus after briefing. *In re Novartis Pharm. Corp.*, No. 06-24-00005-CV, 2024 WL 874686 (Tex. App.—

---

[1] In previous briefing, the parties referred to the Medicaid fraud legislation using its previous acronym—the TMFPA. For consistency, Health Selection does the same here.

Texarkana Mar. 1, 2024, orig. proceeding). Novartis's Petition and Motion for Temporary Stay in this Court followed. After this Court requested briefing on the merits, Novartis filed its Brief on the Merits. This is Health Selection's response.

**Respondent:** The Honorable Brad Morin, Presiding Judge of the 71st Judicial District Court, Harrison County, Case No. 23-0276.

**Rulings at issue:** The district court's order dated December 15, 2023, denying Novartis's 91a Motion.

**Relief sought:** An order denying Novartis's Petition for Mandamus.

## MANDAMUS RECORD

Health Selection agrees that, with the exception of two documents, the record presented with the Petition (cited using the prefix MR) includes all of the pertinent materials. Health Selection provides Novartis's Special Exceptions and the State's Opposition to Dismissal of Relator's Claims on the Basis of the Public Disclosure Bar in a supplemental mandamus record, which this brief cites as SMR.

## ISSUES PRESENTED

1. Does article III, section 51-a of the Texas Constitution—which tasks the Legislature with managing Medicaid and maximizing its federal funding—empower the Legislature to pass the TMFPA qui tam provisions given they combat Medicaid fraud and entitle the State to a ten percent bonus from the federal government on State Medicaid fraud recoveries?

APP280

2. Does the TMFPA's partial assignment of the State's Medicaid fraud claims to relators establish standing for Texas relators as the False Claims Act's assignment does for federal relators, *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765 (2000)?[2]

3. Alternatively, may Health Selection proceed in its capacity as relator given the State undisputedly has standing and the TMFPA authorizes Health Selection to represent State interests in that capacity?

4. Does Human Resources Code § 36.101's limited authorization to relators to represent the State violate the Texas Constitution's separation-of-powers clause even though that statutory authorization does not unequivocally supplant State attorneys' authority to represent the State in Medicaid fraud litigation?

5. Is mandamus relief appropriate when (i) the district court properly denied Novartis's 91a Motion and (ii) State attorneys—who have already shown support of this case by opposing Novartis's dismissal bid—could intervene and thereby moot Novartis's constitutionality challenge and prevent dismissal of this case based on Novartis's standing challenge?

---

[2] Unless otherwise specified, the terms "relator" and "real party in interest" refer to the qui tam context and not the mandamus context.

# INTRODUCTION

This proceeding concerns purely legal matters. Attempting to relegate the law, Novartis injects irrelevant barbs by mischaracterizing Health Selection as a "professional relator" that supposedly files meritless lawsuits. It is tempting to address the question raised by those gibes: Who wears the black hat in this case? Is it Health Selection, who seeks to protect government coffers by exposing corporate fraud?[3] Or is it Novartis, who in recent years has spent over a billion dollars settling government fraud claims?[4] Health Selection will resist the temptation to fully answer this question because it is irrelevant.

---

[3] Health Selection affiliates have restored nearly $300 million to defrauded government healthcare programs. *See, e.g.*, Decl. of John R. Mininno at 11-13*, United States ex rel. Health Choice Alliance, LLC v. Eli Lilly & Co.*, No. 5:17-cv-123 (E.D. Tex. Jan. 22, 2019), ECF 208-02; *Office of the Attorney General's Civil Medicaid Fraud Division Recovers $42.7 Million in Taxpayer Funds*, TEX. ATT'Y GEN. (Aug. 8, 2023), https://www.texasattorneygeneral.gov/news/releases/office-attorney-generals-civil-medicaid-fraud-division-recovers-427-million-taxpayer-funds (noting that "the settlement resolves allegations that the drug manufacturers violated the TMFPA by providing, directly or indirectly, nursing and reimbursement services to Texas Medicaid providers for certain pharmaceutical drugs, as well as by paying clinical nurse educators to refer or recommend the drug Vyvanse to providers").

[4] *See, e.g.*, *Novartis Pays Over $642 Million to Settle Allegations of Improper Payments to Patients and Physicians*, U.S. DEP'T OF JUSTICE (July 1, 2020), https://www.justice.gov/opa/pr/novartis-pays-over-642-million-settle-allegations-improper-payments-patients-and-physicians#:~:text=Pharmaceutical%20company%20Novartis%20Pharmaceuticals%20Corporation,False%20Claims%20Act%20(FCA); *State Joints Global Settlement with Novartis Pharmaceuticals to Resolve Kickback Allegations*, U.S. DEP'T OF HEALTH & HUM. SERVS. (Dec. 17, 2015), https://oig.hhs.gov/fraud/enforcement/state-joins-global-settlement-with-novartis-pharmaceuticals-to-resolve-kickback-allegations/ (referencing $390 million settlement).

1

**I.  TEXAS QUI TAM STATUTES PROTECT TEXAS MEDICAID FROM FRAUD AND, TO MAXIMIZE FEDERAL FUNDING FOR TEXAS MEDICAID, MIRROR THEIR FEDERAL COUNTERPARTS.**

Since the federal False Claims Act's (FCA) enactment over 150 years ago, more than two dozen states have adopted analogous statutes. Many states' enactments—including the TMFPA—contain qui tam provisions, which encourage citizen suits that help governments recoup losses from those who defraud the government.[5] The TMFPA's qui tam provisions also function to maximize federal Medicaid funding because federal law entitles the State to a ten percent bonus from the federal government on Medicaid fraud recoveries *if* the TMFPA properly incentivizes and facilitates qui tam actions.

While there are differences between the FCA and TMFPA, their relevant provisions mirror each other. Both acts incentivize private citizens to help hold fraudulent actors to account in the courts. And under both acts, qui tam relators' standing derives from the victims of the fraud—the defrauded governments. Because private relators enforcing the FCA and TMFPA stand in the shoes of the government, injuries sustained by the government support relators' constitutional standing to sue in the courts.

---

[5] The TMFPA has had qui tam provisions since 1997. S.B. 30, 75th Leg. Sess., Reg. Sess. (Tex. 1997) (available at https://capitol.texas.gov/BillLookup/Text.aspx?LegSess=75R&Bill=SB30#).

The TMFPA protects State funds. "[T]he increasing sophistication of Medicaid scams make chicanery difficult to uncover." *In re Xerox Corp.*, 555 S.W.3d 518, 525 (Tex. 2018) (orig. proceeding). The TMFPA provides the State a "powerful tool for targeting fraud against the Texas Medicaid program and securing the program's integrity." *Id*. Through qui tam actions, the TMFPA "deputizes private citizens" to help uncover fraud and scams, and to restore ill-gotten gains to the State. *Id*. And private "qui tam" relators' pursuit of Medicaid fraud recoveries makes a meaningful, positive impact on the State's finances.[6]

## II. NOVARTIS'S REQUESTED RELIEF WOULD REDUCE STATE ATTORNEYS' LEGAL RESOURCES AND FEDERAL MEDICAID FUNDING.

Novartis seeks to gut the TMFPA of qui tam actions. Not only are Novartis's arguments wrong; they seek relief that would harm the State. Qui tam actions represent a powerful enforcement mechanism against Medicaid fraud that also (i) permits the OAG to preserve its resources and (ii) entitles the State to a bonus from the federal government on all State Medicaid fraud recoveries. Deputized relators

---

[6] For example, just one qui tam action resulted in a $42.7 million settlement in 2023, and since 2000, TMFPA actions brought by State attorneys and qui tam relators have recovered approximately $2.5 billion for taxpayers under the TMFPA. *Office of the Attorney General's Civil Medicaid Fraud Division Recovers $42.7 million in Taxpayer Funds*, OFFICE OF TEX. ATTY. GEN. (Aug. 8, 2023), https://texasattorneygeneral.gov/news/releases/office-attorney-generals-civil-medicaid-fraud-division-recovers-427-million-taxpayer-funds; MR102. That's enough to fund the entire judiciary for approximately four years using the 2024-2025 budget. *See* H.B. No. 1, 88th Leg. Sess., Reg. Sess. (Tex. 2023) (table on page IV-47).

3

help the OAG identify Medicaid fraud that its office may prosecute directly. In cases where State attorneys neither intervene nor dismiss the action, deputized relators also enable State attorneys to preserve State resources by permitting relators and their counsel to handle those cases. Novartis asks the Court to rewrite the TMFPA to preclude a qui tam case even if State attorneys support it. Novartis's requested relief would eliminate State attorneys' authority to allow competent private counsel to litigate Medicaid fraud claims and, additionally, undermine their discretion to allocate legal resources in the manner they deem most efficient and effective.

Novartis's requested relief would also reduce federal matching money for Texas Medicaid because the State would no longer have "in effect" a qui tam statute that is as effective as the FCA at "rewarding and facilitating qui tam actions" for Medicaid fraud. *See* 42 U.S.C. § 1396h(a)-(b). And the Legislature's constitutional authority over Medicaid would erode—against the will of Texas voters who approved article III, section 51-a of the Texas Constitution.

## SUMMARY OF THE ARGUMENT

The district court did not err in rejecting Novartis's arguments that (i) Health Selection lacks standing and (ii) the TMFPA's qui tam provisions unconstitutionally interfere with State attorneys' authority to represent the State. *First*, a constitutional provision specifically governing Texas Medicaid forecloses Novartis's arguments. Article III, section 51-a of the Texas Constitution assigns the *Legislature* authority

4

to form, govern, and fund Medicaid. It specifically empowers the Legislature to maximize federal matching money for Medicaid, which the Legislature intended to do by retaining and amending the TMFPA's qui tam provisions. *See* 42 U.S.C. §§ 1396h(a)-(b). Under separation-of-powers principles, Section 51-a calls for heightened deference to the Legislature's decision to pass qui tam provisions that satisfy 42 U.S.C. § 1396h.

*Second*, Health Selection has standing or, alternatively, does not need standing to proceed in its capacity as relator. In Justice Scalia's opinion in *Stevens*, the U.S. Supreme Court held a relator under the analogous FCA has standing as partial assignee of the government's claims. 529 U.S. at 773-74. The same reasoning, buttressed by Texas law on assignee standing, supports Health Selection's standing here. Novartis cites no law supporting another result. Further, the TMFPA expressly grants standing to Health Selection. The Legislature also granted relators like Health Selection authority and "capacity" to sue on behalf of the State—which is a named party in this case and has standing. In its capacity as relator, Health Selection may continue to litigate the case for the State regardless of its individual standing.

*Third*, following a century of precedent from this Court, the TMFPA withstands Novartis's constitutional attack. *See generally, Maud v. Terrell*, 109 Tex. 97, 200 S.W. 375 (1918). Novartis's argument relies primarily on its bare—and mistaken—speculation that when State attorneys elect not to take over a qui tam

5

action, they "decide that [] case is not worth litigating." Brief at 33. The OAG's extensive acts of support in this case demonstrate Novartis is wrong. Novartis's speculation is also irrelevant. Under *Maud*'s standard, the TMFPA must be enforced unless its language "unequivocally supplants" State attorneys' authority to represent the State in litigation. This is not a close call. State attorneys wield absolute control over qui tam lawsuits. And even if there were serious doubts about the constitutionality of the TMFPA's qui tam provisions, the standards defined by the Court call for resolving those doubts in the Legislature's favor.

Mandamus relief is therefore inappropriate because the court did not err. Mandamus relief is also inappropriate because State attorneys retain the right to intervene. There is no dispute that the State itself has standing, and its intervention would moot Novartis's constitutional challenge. Novartis's petition should be denied.

## THE TMFPA QUI TAM STATUTES[7]

The TMFPA qui tam provisions, in tandem with authorities cited below, demonstrate (i) Health Selection has standing and (ii) has authority to litigate this qui tam action that remains subordinate to State attorneys' constitutional authority to represent the State in litigation. *First*, the TMFPA expressly confers standing and

---

[7] Health Selection agrees with Novartis that, while the TMFPA has been amended, those amendments do not affect the provisions at issue here. Brief at 3 n.1.

authority upon private persons—referred to generally as "relators"—to file suit "for the state." Tex. Hum. Res. Code § 36.101(a). *Second*, it grants State attorneys discretion to dismiss a relator suit without consulting the relator. *Id.* § 36.102(e). *Third*, it pauses the relators' suit for 180 days or more by requiring relators to file under seal pending State lawyers' review of the case, and it prohibits relators from serving the defendant absent court order. *Id.* § 36.102(a)-(b). *Fourth*, it gives State attorneys the right to "proceed with the action" without relator involvement and, in the absence of intervention, authorizes the relator to proceed with the action subject to oversight by State attorneys and potential future intervention by State attorneys. *Id.* §§ 36.104(a)-(b-1), 36.107(a).[8] *Fifth*, if State attorneys intervene after the seal period upon the featherlight good-cause showing, they have the right to seek dismissal of the case without relators' permission, though the court must hear relator's opposing arguments, if any. *Id.* § 36.107(b).[9] *Sixth*, the TMFPA assigns relators an interest in recovery, and the value of that interest depends on whether State attorneys intervene and on the value State attorneys and courts place on relators' contributions to the case. *Id.* § 36.110.

---

[8] Although subsequent intervention by State attorneys requires a "good cause" showing, available authority demonstrates the "good cause" standard effectively permits State attorneys to intervene at will. *Infra* pp. 52-53.

[9] The pro forma hearing requirement provides relators no realistic chance to prevent dismissal if State attorneys seek it. *Infra* pp. 52-53, 51 n.42.

**APP288**

**ARGUMENT:**
**THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION**

Mandamus relief in the Rule 91a context requires an error in law. *In re Farmers Tex. Cty. Mut. Ins. Co.*, 621 S.W.3d 261, 266 (Tex. 2021) (orig. proceeding). But the Court will find no error by the district court. First, the Texas Constitution empowers the Legislature to pass the legislative provisions challenged by Novartis. Second, Health Selection has standing and capacity to proceed with this action. Third, TMFPA qui tam actions do not offend the Texas Constitution because the Legislature properly refrained from "unequivocally supplanting" State attorneys' authority to represent the State in litigation.[10]

I. **ARTICLE III, § 51-a OF THE TEXAS CONSTITUTION GRANTS THE LEGISLATURE BROAD AUTHORITY OVER MEDICAID AND EMPOWERS THE LEGISLATURE TO MAXIMIZE FEDERAL MATCHING MONEY FOR MEDICAID THROUGH THE TMFPA'S QUI TAM PROVISIONS.**

As with any constitutional challenge, the inquiry begins with the constitution's text. But completely absent from Novartis's Brief is any reference to article III, section 51-a of the Texas Constitution.[11] Section 51-a(a) provides:

---

[10] *See Maud*, 200 S.W. at 377; *infra* pp. 39-41 (discussing *Maud* in detail).

[11] While Health Selection did not cite Section 51-a below, it did not have to. Section 51-a does not raise a new issue; it is additional authority supporting Health Selection's argument throughout this case: the Legislature had authority to pass the TMFPA's qui tam provisions. No rule in Texas bars a party from citing new authority supporting arguments it made in lower courts. And even if Section 51-a represents a new "issue," Health Selection owed no duty to raise it below because it supports an order in Health Selection's favor. *See Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 125 (Tex. 2010); *In re G.X.H.*, 627 S.W.3d 288, 295 (Tex. 2021) ("Here, the Department prevailed in the trial court, and therefore did not need to raise every argument supporting the trial court's judgment in its appellee's brief in the court of appeals.").

8

> The Legislature shall have the power, by General Laws, to provide, subject to limitations herein contained, and such other limitations, restrictions and regulations as may by the Legislature be deemed expedient, for assistance grants to needy dependent children and the caretakers of such children, needy persons who are totally and permanently disabled because of a mental or physical handicap, needy aged persons and needy blind persons.

Tex. Const. art. III, § 51-a(a). Subsection (b) grants the Legislature broad authority to provide for indigent health care specifically. And subsection (c) specifically recognizes the Legislature's authority to maximize "federal matching money," which necessarily includes the ten percent bonus from the federal government's share of Texas Medicaid fraud recoveries. *See* 42 U.S.C. § 1396h(a)-(b); *infra* pp. 10, 12.

Section 51-a thus grants the Legislature broad authority to (i) govern State Medicaid—which provides aid to needy children and disabled persons—through legislation, and (ii) pass laws that maximize federal matching money. The Legislature and voters of this State approved Section 51-a. Judicial restraint is particularly appropriate here because authority over Medicaid is expressly entrusted to the Legislature by the constitution. *See* Tex. Const. art. II, § 1 (separation of powers). Section 51-a defeats Novartis's arguments.

9

## A. The Legislature Maximizes Federal Matching Money by Passing Qui Tam Statutes that Are as Effective as Federal Qui Tam Statutes at Rewarding and Facilitating Qui Tam Actions.[12]

The State's Medicaid program "provides medically necessary services for which federal matching funds are available." *Bell v. Low Income Women of Tex.*, 95 S.W.3d 253, 255 (Tex. 2002); Tex. Hum. Res. Code §§ 32.024(a), (e). As noted in *Bell*, the constitution empowers the Legislature to maximize federal matching funds for Medicaid. 95 S.W.3d at 261.[13]

If the TMFPA's qui tam provisions are stricken, Texas will no longer receive a ten percent bonus from the federal government for Medicaid fraud recoveries secured by the State. To qualify for this federally funded bonus, Texas's Medicaid fraud enforcement laws must "contain[] provisions that are at least as effective" in both "rewarding" and—importantly here—*"facilitating qui tam actions* for false or fraudulent claims as those described" in the FCA. *See* 42 U.S.C. § 1396h(a), (b)(2) (emphasis added); *Xerox*, 555 S.W.3d at 538 (citing § 1396h(a) for the proposition that "states with qui tam laws meeting specified federal standards can retain an additional ten percent of Medicaid recoveries"). The Legislature passed qui tam statutes that meet this standard. *Xerox*, 555 S.W.3d at 538-39.

---

[12] *See Xerox*, 555 S.W.3d at 538-39 (detailing the Legislature's efforts).

[13] The Court held the State Medicaid's failure to fund certain abortions—because federal law prohibited federal matching funds for those abortions—complied with the constitution. *Id*. at 255, 264, 265, 266.

## B. Section 51-a Grants the Legislature Broad Constitutional Authority Over Texas Medicaid and Defeats Novartis's Arguments.

The Texas Constitution "has long reflected," through Section 51-a, "a strong interest in maximizing federal matching funds for medical assistance to the needy." *Bell*, 95 S.W.3d at 261.[14] The original Texas Constitution prohibited the Legislature from authorizing the "grant of public moneys to any individual" except in times of "public calamity." Tex. Const. art. III, § 51. But Section 51-a passed in 1933 to create an exception. It has been amended since and permits "assistance grants" to the needy that include Medicaid. *See* Tex. Const. art. III, § 51-a(a)-(b).

Section 51-a specifically grants the Legislature broad authority to provide for indigent health care: "The Legislature may provide by General Law for medical care . . . for needy persons." Tex. Const. art. III, § 51-a(b). Neither these broad grants of authority to the Legislature—nor any other "limitations herein contained"—purport to limit the Legislature's power to protect these programs from fraud through legislation. *See id.* §§ 51-a(a), (c). Nor does legislation or another constitutional provision regarding Medicaid purport to decrease the Legislature's authority over

---

[14] "Texas has participated in Medicaid since 1967 through the Texas Medical Assistance Program (TMAP)." *Bell*, 95 S.W.3d at 256 (Tex. 2002); *see also* Brief of Amicus Curiae, *Bell v. Low Income Women of Texas*, 95 S.W.3d 253 (2001) (No. 01-0061), 2001 WL 34377696, at *3-5 (Governor Perry arguing in *Bell* that "[t]he Texas Medical Assistance Program is founded upon the[] express constitutional powers" provided in Section 51-a).

11

State Medicaid, including fraud enforcement.

Subsection (c) authorizes the Legislature to maximize federal matching money and recognizes its general authority to do so. To the extent any purported "limitations and restrictions herein . . . conflict with the provisions of appropriate federal statutes" such that "federal matching money" becomes unavailable to the State for Medicaid, Section 51-a empowers the Legislature "to . . . enact such laws as may be necessary in order that such federal matching money will be available." Tex. Const. art. III, § 51-a(c). As noted above, the TMFPA's qui tam provisions increase federal funding for Medicaid. *See* 42 U.S.C. § 1396h. This Court has observed that "after initially failing to qualify for the federal financial incentive, and after falling out of compliance by virtue of the [FCA's] amendment, the Legislature has, more than once, amended the TMFPA to eliminate barriers to obtaining an increased share of Medicaid recoveries." *Xerox*, 555 S.W.3d at 538. Properly construed, Section 51-a empowers the Legislature to maximize "federal matching money" by allowing private persons to initiate qui tam actions in the name of the State to the same extent permitted by the FCA. *See* 42 U.S.C. § 1396h(a)-(b); 31 U.S.C. § 3730(b); Tex. Hum. Res. Code § 36.101.

Section 51-a grants the Legislature authority not only to govern Medicaid through legislation but also to protect State access to federal matching money. Section 51-a thus supports the Legislature's decision to provide private parties with

12

capacity and standing to represent the State in Medicaid fraud litigation. And it supports the constitutionality of the TMFPA's partial assignment of the State's interest in Medicaid fraud recoveries to private parties whose efforts lead to such recoveries for the State.

Section 51-a defeats Novartis's arguments and affirms the judiciary should extend deference to the Legislature's constitutional authority to govern Medicaid and to maximize the program's federal funding. *See* Tex. Const. art. II, § 1.

## II. HEALTH SELECTION HAS STANDING OR, ALTERNATIVELY, NEED NOT ESTABLISH STANDING GIVEN ITS AUTHORITY TO PROSECUTE THESE CLAIMS IN ITS CAPACITY AS RELATOR.

The district court properly refused to dismiss the case based on Novartis's standing challenge. Health Selection enjoys standing as partial assignee of the State's Medicaid fraud claim under the TMFPA and pursuant to the U.S. Supreme Court's analysis of an identical challenge under the FCA. Alternatively, Health Selection may continue to represent State interests in its capacity as relator because the Legislature has authorized it to do so under the TMFPA. Alternatively, the Legislature granted Health Selection standing, and the constitutional standing requirements do not apply.

13

**A. Health Selection Has Individual Standing Because the TMFPA Partially Assigns the State's Claims against Novartis to Health Selection.**

The State has standing based on Health Selection's allegations that Novartis defrauded the State's Medicaid program to the tune of millions of dollars. However, Novartis argues Health Selection, as a qui tam relator, lacks individual standing to prosecute these claims. The U.S. Supreme Court rejected the same argument against an FCA relator. *See Stevens*, 529 U.S. at 773-74. Despite Novartis's contrary protestations, the grounds supporting *Stevens*'s holding apply equally here.[15] Applying *Stevens*, Health Selection enjoys constitutional standing as partial assignee of the State's Medicaid fraud claim.

**1. Applying the U.S. Supreme Court's analysis in *Stevens*, Health Selection has standing by assignment.**

The U.S. Supreme Court in *Stevens* held qui tam relators have constitutional standing by assignment under the FCA. 529 U.S. at 773-74. The relator in *Stevens* alleged his former employer submitted false claims to the EPA in violation of the FCA. 529 U.S. at 770. Like the TMFPA, the FCA provides that "a private person (the relator) may bring a *qui tam* action 'for the person and for the United States

---

[15] Notably, as recently as 2015, this Court has distinguished "qui tam" standing under the TMFPA from standing requiring "injury-in-fact." *See In re Mem'l Hermann Hosp. Sys.*, 464 S.W.3d 686, 709, 709 n.109 (Tex. 2015) (orig. proceeding). While the Court did not explore the contours of that distinction, *Stevens* describes that difference as qui tam relators may establish standing as partial assignees who can rely on the assignor's injuries.

14

Government . . . in the name of the Government.'" *Id.* at 769. And like the TMFPA, the FCA assigns relators an interest in fraud recoveries. *Compare* 31 U.S.C. § 3730(d) *with* Tex. Hum. Res. Code § 36.110. As State attorneys have done here, the U.S. attorneys declined to intervene in *Stevens*. *Id.* at 770.[16]

The Court addressed challenges to the qui tam relator's standing. 529 U.S. at 771. While the qui tam relator argued he sought "to remedy an injury in fact suffered by the United States," the Court emphasized that "judicial power exists only to redress or otherwise to protect against injury *to the complaining party*." *Id*. (original emphasis, quote omitted). This statement reflects the argument Novartis makes.

Next, the Court considered relator's argument that the FCA grants standing by designating relators as "agent[s] of the United States" to sue on the government's behalf. *Id.* 529 U.S. at 772. The Court summarily rejected this argument because, in the Court's view, a relator's interest in fraud recoveries under the FCA represents "an interest *in the lawsuit*, and not merely the right to retain a fee." *Id.* (original emphasis). The Court concluded, for that interest, "some explanation of standing other than agency for the Government must be identified." *Id.*

Still, the Court held the relator had standing. It reasoned "that adequate basis for the relator's suit for his bounty is to be found in the doctrine that the assignee of

---

[16] The government intervened on appeal but not under the FCA. *United States ex rel. Stevens v. State of Vt. Agency of Nat. Res.*, 162 F.3d 195, 199 (2d Cir. 1998).

15

a claim has standing to assert the injury in fact suffered by the assignor." *Stevens*, 529 U.S. at 773.[17] It added, the "FCA can reasonably be regarded as effecting a partial assignment of the Government's damages claim." *Id.*;[18] *see also Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 286 (2008) (citing *Stevens* as holding "that an assignee can sue based on his assignor's injuries"); *United States, ex rel. Polansky v. Exec, Health Res., Inc.*, 599 U.S. 419, 425 (2023) ("The FCA . . . effects a partial assignment of the Government's own damages claim." (cleaned up)).[19]

*Stevens* next addressed the federal limitation of jurisdiction under the Constitution to "Cases" or "Controversies" historically amenable to the judicial process. 529 U.S. at 774. The Court concluded that the history of qui tam actions "well nigh conclusive[ly]" shows an FCA relator's action satisfies the "Cases" and "Controversies" limitation in the U.S. Constitution. *Id.* at 774-78.[20]

---

[17] While two justices dissented, they did not challenge the majority's holding on standing. *Id.* at 789-802.

[18] Responding to criticism on another issue by the dissent, the Court emphasized, "More precisely, we are asserting that a *qui tam* relator is, in effect, suing as a *partial* assignee of the United States." *Id.* at 773 n.4 (original emphasis).

[19] *Cf. United States ex rel. Laird v. Lockheed Martin Eng'g & Sci. Servs. Co.*, 336 F.3d 346, 358 (5th Cir. 2003), *abrogated on other grounds by Rockwell Int'l Corp. v. United States*, 549 U.S. 457 (2007) (citing *Stevens* for proposition that qui tam relator was a real party in interest because of partial assignment of government's claim).

[20] The Supreme Court relies on "history and tradition [to] offer a meaningful guide to the types of cases that Article III empowers federal courts to consider." *Sprint*, 554 U.S. at 274-75 (concluding,

16

The TMFPA assigned Health Selection an interest in the State's Medicaid fraud claim just like the FCA did for the relator in *Stevens* with respect to the federal government's fraud claims. *Compare* 31 U.S.C. § 3730(d) *with* Tex. Hum Res. Code § 36.110; *see also Stevens*, 529 U.S. at 772 (emphasizing facets of FCA shared with TMFPA that provided relator an "interest in the lawsuit" (emphasis omitted)). That assignment comes with the right to rely on the State's injuries to establish standing. And because the State's injury undisputedly supports standing, the district court did not err.

### 2. Texas law on assignee standing supports application of *Stevens*.

Texas has long recognized that a valid assignment supports standing. For example, when a plaintiff holds "contractually valid assignments, [it] steps into the shoes of the claim-holders and is considered under the law to have suffered the same injury as the assignors and have the same ability to pursue the claims." *Sw. Bell Tel. Co. v. Mktg. on Hold Inc.*, 308 S.W.3d 909, 916 (Tex. 2010) (citing *Stevens*).

While "assignments may be invalidated on public policy grounds," *id.*, the Legislature defines public policy. *See Greene v. Farmers Ins. Exch.*, 446 S.W.3d 761, 770 (Tex. 2014) ("The Legislature establishes public policy through its enactments."); *see also* Tex. Const. art. III, § 51-a. The assignment under the

"history and precedent are clear on the question before us: Assignees of a claim . . . have long been permitted to bring suit").

17

TMFPA is therefore consistent with public policy.

The Legislature has assigned claims by statute in other contexts. *See, e.g.,* *Stroud v. Stroud*, 733 S.W.2d 619, 620, 621 (Tex. App.—Dallas 1987, no writ) (when mother sought public aid, statute "assigned" to the State "the right to collect child support payments"); Tex. Labor Code § 417.001(b) (Texas workers' compensation subrogation law assigns insurers the right to "enforce the liability of the third party in the name of the injured employee or the legal beneficiary"); *PNC Mortgage v. Howard*, 668 S.W.3d 644, 648 (Tex. 2023) (under workers' compensation laws, the employee's claim "is transferred to the carrier," and subrogation grants an insurer "standing to assert a damages claim that initially belonged to a tort victim" (emphasis omitted));[21] Tex. Civ. Prac. & Rem. Code § 71.021 ("A personal injury action survives to and in favor of the heirs, legal representatives, and estate of the injured person.");[22] *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 850 (Tex. 2005) (estate has justiciable interest in survival claim because it transfers to estate upon decedent's death).[23]

---

[21] The Supreme Court in *Stevens* also equated subrogees with assignees. 529 U.S. at 773-74.

[22] This is a statutory transfer of rights from a person—the decedent—to a distinct entity, the estate. *See Armes v. Thompson*, 222 S.W.3d 79, 83 (Tex. App.—Eastland 2006, no pet.) ("The estate is distinct from the individual."); Tex. Estates Code § 22.012. ("Estate" refers to "decedent's property").

[23] Thus, the survival statute and Estates Code implicate both capacity and standing. The transfer of the right from a decedent to other entities or people represents a statutory assignment of a right that supports standing. On the other hand, for the estate to prosecute the claim, it must appear

18

**APP299**

Like any other assignment, contractual or statutory, the TMFPA's partial assignment of the State's Medicaid fraud claims provides relators standing to sue. Because Health Selection, as assignee, steps into the State's shoes for purposes of Medicaid fraud claims, Health Selection enjoys standing based on the State's injuries. This well-settled state law supports application of *Stevens*.

### 3. Texas standing law parallels federal standing law despite textual differences between the relevant Texas constitutional provisions and the U.S. Constitution's "cases" and "controversies" clause.

Novartis has argued the historical bases supporting *Stevens*'s holding do not apply because the "Texas Constitution does not contain the 'Cases' and 'Controversies' language" found in Article III, section 2 of the federal constitution. Petition at 20.[24] For good reason, Novartis no longer makes, and appears to have abandoned, that argument. Under the Texas Constitution, "[t]he judicial power of this State" is vested in the courts. Tex. Const. art. V, § 1. Other constitutional provisions govern standing. *See* Tex. Const. art. I, § 13 ("All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law."); Tex. Const. art. II, § 1.

---

through someone with capacity like an executor or administrator. *See Armes*, 222 S.W.3d at 84, 84 n.3; *Lovato*, 171 S.W.3d at 850-51.

[24] Novartis concludes its Brief with an irrelevant commentary about tradition's inability to save unconstitutional statutes. Brief at 44-47. Contrary to Novartis's casual dismissal, the historical underpinnings for qui tam litigation provide important context and underscore how extraordinary Novartis's position actually is. More importantly, for the reasons explained, the TMFPA qui tam provisions are constitutional. Accordingly, Novartis's argument is just a strawman.

19

Despite the textual differences between the U.S. Constitution and the Texas Constitution, the Texas standing analysis tracks the federal analysis. "Because Texas's test for constitutional standing parallels the federal test for Article III standing, [Texas courts] look to federal standing jurisprudence for guidance. . . ." *Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 776 (Tex. 2020).[25] These parallels extend to specific types of standing and other specialized issues bearing on standing. *See, e.g.*, *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 447 (Tex. 1993) (adopting the U.S. Supreme Court's test for associational standing); *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 165 (Tex. 2012) ("We adopt the federal exception to mootness for 'inherently transitory' claims.").[26]

Thus, it is no surprise Texas courts have equated standing "implicit in the [Texas] open courts provision" with standing in "cases" and "controversies" over which the federal judiciary may exercise jurisdiction. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 444; *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 164 (Tex. 2004) ("A judicial decision reached without a *case or controversy* is an advisory opinion, which is barred by the separation of powers provision of the Texas Constitution."

---

[25] *Tex. Propane Gas Ass'n v. City of Houston*, 622 S.W.3d 791, 799 (Tex. 2021) ("The Texas standing requirements parallel the federal test for Article III standing."); *Data Foundry, Inc. v. City of Austin*, 620 S.W.3d 692, 696 (Tex. 2021); *Abbott v. Mexican Am. Legislative Caucus, Tex. House of Representatives*, 647 S.W.3d 681, 690 (Tex. 2022).

[26] Mootness bears on standing because "[i]f a case becomes moot, the parties lose standing to maintain their claims." *Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001).

20

(emphasis added)).

Novartis asks the Court to veer from its parallel track with the U.S. Supreme Court's standing jurisprudence. But Novartis can cite no reason or authority supporting its extraordinary request. Because *Stevens* is consistent with Texas law on standing by assignment, the Court should apply *Stevens*.

### 4. Novartis's "damages" versus "penalty" distinction is wrong factually and, even if true, would not defeat Health Selection's standing.

*Stevens* relied on the "doctrine that the assignee *of a claim* has standing to assert the *injury in fact* suffered by the assignor" without regard to the remedy. 529 U.S. at 773 (emphasis added). Novartis nevertheless argues the Court should simply disregard *Stevens* because the FCA provides for "damages" while the TMFPA provides for "civil penalties." Brief at 19 *et seq*. (relying primarily on this Court's holding in *Xerox*).[27] In fact, the FCA and TMFPA remedies are strikingly similar. Novartis's reliance on *Xerox* to distinguish *Stevens* is misplaced.

*Xerox* considered a different issue than *Stevens*, namely "whether a party found liable for violating the TMFPA may shift the financial burden of Section

---

[27] Novartis argues the *Xerox* Court "held that comparisons to the [FCA] are 'not probative' because, while the statutes 'may be similar in aim and tactic,' they 'employ materially different language, and the language of [Texas] statutes controls the outcome here." Brief at 20. Novartis conveniently omits the sentences that immediately follow where the Court drew a connection between federal courts' application of the FCA and the Court's holding in *Xerox*, and found that the TMFPA and FCA (as well as other states' analogues) align. 555 S.W.3d at 535 (just as under the TMFPA, "federal courts have held wrongdoers may not ameliorate their punishment under federal law." (collecting cases for this proposition including FCA cases)).

21

36.052's civil remedies to other wrongdoers under the proportionate-responsibility statute." 555 S.W.3d at 526. *Xerox* does not conflict with *Stevens*. While the Court held that the TMFPA "remedy does not constitute 'damages' subject to apportionment under Chapter 33" of the Texas Civil Practice and Remedies Code, *id*. at 520, the decision was not dependent on that finding. As the Court further held, even if the TMFPA were an action to recover damages, "Chapter 33 would not apply to a TMFPA action because the two statutes are in irreconcilable tension with one another." *Id.* at 535-36 (holding Chapter 33's fault-allocation scheme conflicts with the TMFPA fraud detection and prevention tools, including incentivizing whistleblowers to come forward). Xerox's reasoning regarding the conflict with comparative fault regimes applies equally to the FCA. Moreover, "damage" versus "penalty" labels aside, the FCA and TMFPA remedies both provide for treble the amount provided as a result of the unlawful conduct plus civil penalties.[28]

As a practical matter, Novartis's "distinction" makes no difference. The focus of standing is the *injury* and not the relief. *See e.g.*, *Sprint*, 554 U.S. at 287 (in redressability context, rejecting argument that plaintiff's assignment of potential

---

[28] *Compare* 31 U.S.C. § 3729 (FCA wrongdoer "is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000 . . . plus 3 times the amount of damages which the Government sustains because of the act of that person") *with* Tex. Hum. Res. Code § 36.052, amended by S.B.745, 88th Leg. Sess., Reg. Sess. (Tex. 2023) (version of TMFPA remedy statute at time of *Xerox* actually cites federal FCA and provides for recovery of penalties for violations as well as recovery of three times the amount of Medicaid payments made as a result of misconduct).

22

recovery to nonparty defeated standing because "an assignee for collection may properly bring suit to redress *the injury* originally suffered by his assignor" (emphasis added)). Thus, whether the relief is primarily compensatory or primarily punitive in nature does not alter standing because standing focuses on the assignor's *injury*—not the character of relief. *See id.*; *cf. Brown v. De La Cruz*, 156 S.W.3d 560, 566 (Tex. 2004) ("[T]his is a penal statute that would in many instances impose a fine far beyond the damages that a purchaser is likely to suffer. . . . [T]he Legislature may grant private standing to bring such actions, but it must do so clearly.").

Perhaps more importantly, the premise of Novartis's argument is wrong. The FCA and TMFPA both provide the same type of relief for the same type injury. Both include punitive and compensatory components. In *Xerox*, this Court cited *Stevens* as "describing the civil-penalty and treble-damages remedy in the [FCA] as 'essentially punitive in nature.'" 555 S.W.3d at 527 n.52; *see also id.* at 530 n.70, 532 n.81; *Stevens*, 529 U.S. at 784-85. Indeed, *Stevens* acknowledged that it previously "suggested that damages under an earlier version of the FCA were remedial rather than punitive." *Id.* at 785. But the FCA's remedies became "punitive in nature" after amendment because it "generally imposes treble damages and a civil penalty of up to $10,000 per claim." *Id. Stevens* concluded that imposing the FCA's remedies against a state would violate "the presumption against imposition of

23

*punitive* damages on governmental entities." *Id.* at 784-85 (emphasis added). The FCA remedies *are* punitive.

*Stevens* therefore held that Congress had partially assigned the government's claim to relators while contemporaneously noting the remedies for that claim were "punitive in nature." That *Stevens* referred to assignment of "the Government's damages claim," Brief at 19, rather than "claim for penalties" makes no difference given the Supreme Court's express, contemporaneous acknowledgement that the FCA provides for punitive relief and given the parallels between the TMFPA and FCA remedies provisions. Moreover, *Stevens* never suggests it was parsing or limiting what could be assigned based on the different types of relief available under the FCA. And *Stevens*'s finding of standing did not turn at all on a holding that the FCA is an action to recover "damages" as opposed to penalties or any other form of relief.

Novartis also overlooks language from *Xerox,* which emphasized the "compensatory traits" of civil remedies like those imposed by the TMFPA:

> Monetary liability that exists even when no loss has occurred can only be a fine or a penalty, not damages. But that does not mean penalties do not and cannot have "compensatory traits." Indeed, the Legislature may choose a penalty regime precisely because harm ensuing from a wrong may be inestimable and, therefore, must be deterred and prevented. Moreover, penalties necessarily compensate in the sense that the hallmark of a penalty is that it goes *beyond* compensating for a loss.

555 S.W.3d at 530 (original emphasis, footnotes omitted); *see also Cook Cty. v.*

24

*United States ex rel Chandler*, 538 U.S. 119, 130 (2003) (explaining, when analyzing FCA relief, that "treble damages have a compensatory side, serving remedial purposes in addition to punitive objectives").

Thus, the TMFPA, like the FCA, partially assigns a claim that tends to compensate the State for losses caused by Medicaid fraud and punishes fraudsters. *Xerox* held the TMFPA does not provide for "damages" for purposes of *apportionment and contribution under Chapter 33*. *Xerox* analyzed a narrow issue that does not touch on standing at all. And its acknowledgement of TMFPA remedies' "compensatory traits" supports application of *Stevens*.

Novartis also devotes much space to set up the differences between damages and civil penalties, but it never delivers the punchline. Brief at 21-22. Novartis cites no authority for the proposition that Texas prohibits legislative assignment of civil claims that provide for relief with "compensatory traits" and a punitive component, when the State has been injured by the misconduct at issue and retains the right to the lion's share of any recovery.

Instead of delivering persuasive legal authority that undercuts *Stevens*'s application here, Novartis hyperbolically equates TMFPA qui tam actions with "criminal lawsuit[s]" that seek only to vindicate a purely "public interest." Brief at

25

22.[29] Novartis's citation to *TransUnion*, while acknowledging the parallel nature of the federal and Texas standing analyses, does not carry the point for Novartis. *Id.* (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)). *TransUnion* says nothing about qui tam actions. *TransUnion* says nothing about the Texas Legislature's authority to partially assign the State's Medicaid fraud claim to relators who contribute to the State's recovery from Medicaid fraudsters. *TransUnion* does not hold that a party with a concrete harm cannot assign its claim to another. Indeed, there is no purported assignment in *TransUnion*. And despite analyzing claims that allowed for statutory penalties, *TransUnion* nevertheless emphasized the *injury*— not the character of relief—drives the standing analysis. *Compare* 594 U.S. at 419, 423, 427-28 *with* Brief at 21.

*TransUnion* merely reaffirms the general proposition of federal law that a statute generally cannot circumvent the concrete-injury standing requirement by granting uninjured private citizens the bare right to enforce a law. *See* 594 U.S. at 427-430.[30] But the State has suffered an injury here. The Legislature has partially

---

[29] Novartis would seemingly liken Health Selection's efforts to a private person suing another for exceeding the speed limit when no one was injured—with the bare intent to enforce the law. Not true. The State has suffered an injury beyond mere violation of a law, and the TMFPA partially assigned the State's right to recover to Health Selection. Health Selection's efforts represent something more than litigating a "criminal lawsuit" aiming to right a purely "public" wrong. The State has suffered pecuniary losses, and Health Selection possesses unique information that entitles it to compensation under the TMFPA.

[30] The *TransUnion* court held that several plaintiffs established a concrete injury where the defendant disseminated credit reports to third parties that falsely suggested plaintiffs were possibly criminals and terrorists. *Id.* at 432. But with respect to other plaintiffs who suffered no injury

26

assigned the State's Medicaid fraud claim to Health Selection. Health Selection may therefore rely on the State's injury to establish standing under both *Stevens* and Texas law.

Given the parallels between the TMFPA's and FCA's relevant qui tam provisions, *Stevens*'s reasoning demonstrates Health Selection has standing as partial assignee of the State's Medicaid fraud claim. Novartis cites no authority in support of this Court's departure from its tradition of tracking federal standing rules. Novartis cannot articulate any reason for this Court to disagree with *Stevens*. And Novartis's attempts to distinguish *Stevens* wilt under weight of the law. This Court should therefore apply *Stevens* and hold the district court properly denied Novartis's 91a Motion.

## B. Alternatively, Health Selection's Statutory Authority and Capacity to Represent the State Preclude Dismissal Regardless of Health Selection's Standing.[31]

A plaintiff must have capacity and standing to sue. But capacity and standing need not reside in the same person. Regardless of whether *Stevens* applies, the TMFPA provides qui tam relators authority or "capacity" to sue on behalf of the State. And while the relator's award comes from the "proceeds of the action," it also

---

because the defendant had only maintained the misleading files internally, the court held they lacked constitutional standing. *Id.* at 433-35.

[31] Novartis agrees that the TMFPA grants Health Selection authority to represent the State in Medicaid fraud actions; it just challenges the constitutionality of that authorization, a challenge that Health Selection addresses, *infra* p. 33 *et seq*. *See* Brief at 25 *et seq*.

**APP308**

depends on the value of the relator's contribution to the litigation. Tex. Hum. Res. Code §§ 36.110(a), (a-1), (b). The relator's award can reasonably be characterized as payment for its services, akin to payment that receivers, conservators, ad litems, and executors receive for representing an entity or person with constitutional standing.

### 1. The TMFPA provides qui tam relators with capacity and authority.

The TMFPA authorizes Health Selection to represent the State in this Medicaid fraud action. Tex. Hum. Res. § 36.101(a). Regardless of whether State attorneys intervene, the government is a real party in interest, demonstrating a representative relationship between the government and Health Selection as relator. *See Laird*, 336 F.3d at 357 (government is real party in interest under FCA even if federal attorneys do not intervene); Tex. Hum. Res. Code §§ 36.101(a) (qui tam action is "for the state" and "in the name of the . . . state"), 36.110(a)(a-1) (State receives at least 70% of the recovery even if it does not intervene).

This Court has also observed that the "[TMFPA]—via qui tam provisions—*deputizes* private citizens to pursue a TMFPA action on the government's behalf." *Xerox*, 555 S.W.3d at 525. "Deputizes" denotes authority to represent the State in a defined, limited role.

Because the TMFPA provides Health Selection with authority and capacity to sue on the State's behalf, Health Selection need only establish the State's standing,

28

which is undisputed. Even if the Court holds the TMFPA does not partially assign State rights to Health Selection, the TMFPA allows Health Selection to represent the State in its capacity as relator.

**2. In its capacity as relator, Health Selection need not allege an individual injury because the State has standing.**

While Novartis previously cited *Pike v. Texas EMC Management, LLC* for the proposition that standing under a statute does not satisfy the constitutional standing requirements, *Pike*'s real import is its emphasis on the difference between "capacity" and "standing." *See generally*, 610 S.W.3d at 775. "Both capacity and standing are necessary to bring a lawsuit." *Id.* And a "party has *capacity* when it has the legal authority to act, *regardless of whether it has a justiciable interest in the controversy*." *Id.* (some emphasis added). Thus, "capacity" and "standing" need not reside in a single entity for the aggrieved party—the party with standing—to prosecute its claims. For example, minors, "incompetents," and estates may suffer a harm that supports standing, but "the law . . . grants another party the capacity to sue on their behalf." *Lovato*, 171 S.W.3d at 849. Thus, standing often resides in one person while capacity resides in another.

Contrary to Novartis's averments, it is not necessary that the real party in interest be "incompetent" for another person to represent the party's interests in litigation. *See* Brief at 23-24. For example, receivers sue in a representative "capacity" on behalf of various aggrieved parties. *See, e.g.*, *Cotten v. Republic Nat'l*

29

*Bank of Dallas*, 395 S.W.2d 930, 941 (Tex. App.—Dallas 1965, writ ref'd n.r.e.) (receiver for insolvent insurance company may "sue as the representative of the corporation and its creditors, stockholders and policyholders, for they have an interest in the corporation's assets"); Tex. Civ. Prac. & Rem. Code §§ 64.001(a), 64.033 ("A receiver may bring suits in his official capacity . . . ."); *Memon v. Nguyen*, No. 01-21-00706-CV, 2023 WL 3513135, at *4 (Tex. App.—Houston [1st Dist.] May 18, 2023, no pet.) ("The [turnover] order grants the Receiver the power to take control of all of appellants' causes of action, to initiate litigation, and to settle any litigation.").

Similarly, a power of attorney can grant the attorney-in-fact capacity to sue for the principal regardless of the principal's capacity. *See, e.g.*, *Cortes v. Wendl*, No. 06-17-00121-CV, 2018 WL 3040322, at *5, *5 n.8 (Tex. App.—Texarkana June 20, 2018, no pet.) (relying on the language of a durable power of attorney which did not depend on incapacity and holding, "The record supports the trial court's implied finding that Wendl, in her capacity as agent and attorney-in-fact for Hardy, had the capacity to bring the lawsuit on Hardy's behalf");[32] Tex. Estates Code § 752.051 (durable power of attorney may grant attorney-in-fact authority to sue even if principal is not incapacitated). While the principal *could* represent herself, she may

---

[32] Note the principal also testified in the case. *Id.* at *2.

30

provide someone else with the authority and capacity to represent her. The proposition that a relator may represent the State—even though the State *also* has capacity—therefore does not rest on novel principles. *See Rodarte v. Investeco Grp., L.L.C.*, 299 S.W.3d 400, 407 (Tex. App.—Houston [14th Dist.] 2009, no pet.) ("A plaintiff with no legally cognizable interest in the outcome of the case lacks standing to sue on its own behalf, but may be authorized to sue on behalf of another.").

Further examples of representative capacity: Corporations appear through persons granted authority in bylaws or board resolutions. *See, e.g.*, *Timbertech Inc. v. Wallboards, Inc.*, No. 14-98-00422-CV, 1999 WL 649116, at *3 (Tex. App.—Houston [14th Dist.] Aug. 26, 1999, pet. denied). Parents (and other adults) sue on behalf of children in their capacity as next friend, and executors sue on behalf of estates in a representative capacity. *See generally In re Bridgestone Americas Tire Operations, LLC*, 459 S.W.3d 565, 572–73 (Tex. 2015) (orig. proceeding) (distinguishing capacity of next friend and status of minor as real party in interest); *Ferreira v. Butler*, 575 S.W.3d 331, 334-35 (Tex. 2019) (generally distinguishing representative capacity of executor from individual capacity of devisee).

The TMFPA provides that "persons"—who possess evidence of Medicaid fraud—may represent the State in their capacity as relators. While capacity and standing are both necessary to litigate this claim, Health Selection may proceed on behalf of the State because the TMFPA grants Health Selection capacity and

31

authority to do so and because the State has standing.

**C.   Alternatively, Because the TMFPA Provides Relators Like Health Selection Standing to Sue, Constitutional Standing Requirements Do Not Apply.**

There is a long line of cases, which do not appear to be expressly abrogated, that provide the burden to establish standing under the constitution applies "*absent a statutory exception to the contrary.*" *Hunt v. Bass*, 664 S.W.2d 323, 324 (Tex. 1984) (emphasis added); *see also Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555–56 (Tex. 2000) ("Unless standing is conferred by statute, taxpayers must show as a rule that they have suffered a particularized injury distinct from that suffered by the general public in order to have standing to challenge a government action or assert a public right." (footnote omitted));[33] *Lara*, 52 S.W.3d at 178 ("As a general rule of Texas law, to have standing, *unless it is conferred by statute*, a plaintiff must demonstrate that he or she possesses an interest in a conflict distinct from that of the general public, such that the defendant's actions have caused the plaintiff some particular injury." (emphasis added)).[34]

---

[33] *Bland* also noted a "long-established exception" to the injury requirement for standing where a taxpayer sues to enjoin illegal public spending. 34 S.W.3d at 556.

[34] Texas intermediate courts of appeals continue to cite variants of this rule. *See, e.g.*, *Marauder Corp. v. Beall*, 301 S.W.3d 817, 820 (Tex. App.—Dallas 2009, no pet.) ("The Constitution requires standing to maintain suit. Standing, however, may be conferred by statute. . . . The standing analysis begins and ends with the statute itself.") (citations omitted)); *Children of the Kingdom v. Cent. Appraisal Dist. of Taylor Cty.*, 674 S.W.3d 407, 414, 415 (Tex. App.—Eastland 2023, pet. denied); *Everett v. TK-Taito, L.L.C.*, 178 S.W.3d 844, 850-51 (Tex. App.—Fort Worth 2005, no pet.).

Under the TMFPA's language, a "person"—which includes a corporation, organization, or "any other legal entity"—may bring a civil action for violations of the TMFPA on his own behalf and on the State's behalf.[35] Tex. Hum. Res. Code § 36.101(a). Under the rule cited by *Hunt*, *Blue*, and *Lara*—with support from Section 51-a—the TMFPA provides standing to Health Selection without reference to common law principles.

Health Selection is aware of recent opinions suggesting that statutory provisions defining "the class of persons authorized to sue" go to "the merits of the plaintiff's claim, not the plaintiff's standing to sue in the jurisdictional sense." *See Busbee v. Cty. of Medina*, 681 S.W.3d 391, 395 (Tex. 2023); *see also Pike*, 610 S.W.3d at 774; *Tex. Med. Res., LLP v. Molina Healthcare of Tex., Inc.*, 659 S.W.3d 424, 440, 441 (Tex. 2023). These opinions, however, do not address the Legislature's authority under Section 51-a to protect against Medicaid fraud and maximize federal funding through qui tam actions. *Supra* pp. 8-13.

## III. HEALTH SELECTION'S LIMITED AUTHORITY UNDER THE TMFPA TO PROSECUTE CLAIMS BENEFITTING THE STATE DOES NOT VIOLATE THE TEXAS CONSTITUTION.

The arguments above demonstrate Health Selection may proceed as a partial assignee of the State's claim, a "deputized" representative of the State, or with standing prescribed by statute. For its second challenge, Novartis correctly accepts

---

[35] *See* Tex. Gov't Code § 311.005(2); Tex. Hum. Res. Code § 36.001 (not defining "person").

33

the TMFPA delegates to Health Selection authority and capacity to recover money for the State in Medicaid fraud litigation. But Novartis incorrectly argues that delegation is unconstitutional.

In granting relators limited, contingent authority to prosecute Medicaid fraud claims that benefit the State, the Legislature finds ample constitutional support in Section 51-a analyzed above. *Supra* pp. 8-13. Additionally, applying the Court's century-old guidance, this legislative delegation of authority does not offend the Texas Constitution's separation-of-powers provision. Specifically, it does not unconstitutionally encroach on State attorneys' authority to represent the State. The district court properly rejected Novartis's separation-of-powers challenge.

### A. Novartis's Constitutional Challenges Fail Because Relators' Authority under the TMFPA Does Not Unequivocally Supplant State Attorneys' Authority to Represent the State in Medicaid Fraud Litigation.

Novartis does not quarrel with the Legislature's decision to permit the OAG to represent the State in all TMFPA fraud actions. Brief at 26; *see also El Paso Elec. Co. v. Tex. Dep't of Ins.*, 937 S.W.2d 432, 438 (Tex. 1996); *Brady v. Brooks*, 99 Tex. 366, 379-380, 89 S.W. 1052, 1056-57 (Tex. 1905). The Legislature has appointed attorneys general to represent the State and supervise qui tam actions pursuant to its undisputed authority. *See* Tex. Hum. Res. Code §§ 36.051-053, 36.101 *et seq.*; *see also Maud*, 200 S.W. at 376 (referencing legislative authority to create new causes of action in favor of the State and entrust OAG to prosecute those claims in trial and

34

appellate courts).

Novartis frames its complaint as presenting a separation-of-powers issue. Brief at 25. That complaint boils down to one question: Do the qui tam provisions unequivocally supplant State attorneys' authority to represent the State in Medicaid fraud litigation? *See infra* pp. 39-43 (discussing Court's analysis and holdings in *Maud* and *Camp v. Gulf Production Co.*). The answer is no because qui tam relators' authority to prosecute claims on behalf of the State remains subordinate to State attorneys' authority. *Id*. Thus, even putting aside the Legislature's authority under Section 51-a, Novartis's argument fails.

**B. The Presumption of Constitutional Validity Requires Novartis to Show the TMFPA Is Unconstitutional Beyond Any Reasonable Doubt.**

"There is always a presumption of constitutional validity with regard to legislation . . . ." *EXLP Leasing, LLC v. Galveston Cent. Appraisal Dist*., 554 S.W.3d 572, 575 (Tex. 2018); *see also Maud*, 200 S.W. at 376 ("An act of the Legislature is not to be declared unconstitutional unless plainly so. The presumption is that the Legislature acted in the light of the Constitution, with the intention to observe it rather than violate it."). "The party challenging the statute's constitutionality bears the burden of demonstrating that the enactment fails to meet constitutional requirements." *EXLP Leasing*, 554 S.W.3d at 576. If legislation is reasonably susceptible to two meanings—one that will offend the constitution and a second that complies with it—"that construction will be adopted which sustains the [legislative]

35

act rather than destroys it." *Maud*, 200 S.W. at 376; *see also* Tex. Gov't Code § 311.021(1).

When deciding the constitutionality of the qui tam statutes, the Court should uphold those statutes "unless [their] unconstitutionality be made to appear beyond any reasonable doubt." *See Koy v. Schneider*, 110 Tex. 369, 407, 221 S.W. 880, 888 (1920) (*Koy II*) (denying rehearing); *see also id.* at 882 ("[A]ny doubt as to the validity of . . . legislation is to be resolved in [the Legislature's] favor" (quotation omitted)); *Koy v. Schneider*, 110 Tex. 369, 383, 218 S.W. 479, 483 (1920) (*Koy I*) (courts must uphold statute against constitutional challenge unless Legislature was "wrong beyond a reasonable doubt" in its belief that the statute complies with the constitution). In other words, a statute should not be stricken unless "its unconstitutionality is clear and unquestionable." *Koy II*, 221 S.W. at 882.

## C. The Court Has Already Resolved Any Conceivable "Doubt" in Favor of Upholding the TMFPA's Qui Tam Provisions.

Novartis's challenge turns on the meaning of "represent" in constitutional provisions granting State attorneys the right to "represent the State" in litigation. *See* Tex. Const. art. IV, § 22; Tex. Const. art. V, § 21. But Novartis's interpretation contradicts this Court's prior decisions. Where there is any ambiguity, the presumption of constitutional validity controls.

The Court's decision in *Koy* is instructive. In *Koy*, the Legislature passed a law that permitted women to vote in "primary elections." *Koy II*, 220 S.W. at 881.

36

The issue was whether the statute violated a constitutional provision that "restrict[ed] to 'males' the privilege of voting in 'any election.'" *Id.* The Court answered the question in the negative. *Id.* at 919.[36] *Koy* turned on whether a "primary election" governed by the statute fell within the scope of "any election" in the constitutional suffrage language. *Id.* at 883. Displaying deference, the Court narrowly defined the constitutional phrase "any election" as not including "primary elections" and upheld the legislation. *See, e.g.*, *id.* at 884, 889-899.

Just as "any election" was found to be ambiguous in *Koy*, so too is the word "represent." Does the term mean "prosecute or defend every lawsuit involving the State"? Does it mean State attorneys cannot accept assistance from others? Does it require absolute exclusivity and bar others from representing the State in litigation even when State attorneys approve and monitor the case? The Court need not answer these questions because *Maud* already has.

"Represent" merely means the *authority* to control litigation in which the State is a party, whether it is continuously and actively exercised or not. *See, e.g.*, *Maud*, 200 S.W. at 376 (State attorneys permitted to allow others to assist in representing State). As explained in *Maud*, the right is "exclusive" in the sense that the Legislature cannot "unequivocally supplant" State attorneys. *See id.* at 377. But the "exclusive"

---

[36] *See also Koy I*, 218 S.W. at 483.

**APP318**

nature of this authority to "represent" the State does *not* prohibit delegation of that authority to others. *See id.*; *El Paso Elec.*, 937 S.W.2d at 439; *Terrell v. Sparks*, 104 Tex. 191, 195, 198, 135 S.W. 519, 520, 521-22 (Tex. 1911). And it certainly does not prohibit State attorneys from allowing others to assist the State as is the case here.

Because the qui tam statutes respect the Court's definition of "represent," the Court should uphold those statutes even if "serious doubt[s]" exist as to their constitutionality. *See Koy II*, 221 S.W. at 888 (quoting previous supreme court opinion for proposition that "[i]f, by reasonably fair construction it appears that the Legislature was empowered to enact the law, . . . a serious doubt of that power must be resolved in favor of the validity of the law").

## D. In *Maud* and *Camp*, the Court Has Approved Legislative Authorization of Non-State Attorneys to Prosecute Claims Benefitting the State So Long as Their Authority Does Not Supplant the Authority of State Attorneys.

For over one hundred years, the Court's analysis and holding in *Maud* has foreclosed the very argument that Novartis makes here. *See* 200 S.W. at 377. And the Court, in later opinions, continued to affirm *Maud* and permits the Legislature to empower private citizens to represent State interests in court so long as their authority remains subordinate to State attorneys' authority.

APP319

### 1. *Maud v. Terrell*

*Maud* explained what the Texas Constitution means when it grants State attorneys the right to "represent" the State in civil litigation. *Maud* arose from the state comptroller's refusal to pay for tax collection services provided by a tax collector. 200 S.W. at 375-76. The comptroller—pursuant to the challenged statute—appointed the tax collector to represent the State in efforts to collect inheritance taxes. *Id*. The case turned on the constitutional validity of the statute that empowered the comptroller to employ tax collectors to sue on behalf of and represent the State in recovering inheritance taxes for the State. *Id.*

The statute at issue authorized the comptroller to appoint "suitable" persons to "*sue* for and collect [inheritance] taxes." *Maud*, 200 S.W. at 377 (emphasis added). The statute added, "[t]he person appointed by the said Comptroller *may represent the State in any proceeding* necessary" to enforce tax collections. *Id*. (emphasis added)). The statute preserved the district or county attorneys' right to sue on "behalf of the State" and did not preclude them from "appear[ing] for the State in all suits necessary to enforce the law." *Id.*

The State's challenge of the statute in *Maud* reflects Novartis's challenge here:

> The validity of the Act is challenged upon the ground that its necessary effect is to substitute the person or persons whom the Comptroller may thus employ for the county attorneys of the State in the prosecution of suits by the State for such taxes in the district and inferior courts; and

39

> for the Attorney-General in their prosecution in the Supreme Court, supplanting them in the discharge of their constitutional duties and denying their right to perform them.

*Maud*, 200 S.W. at 376. Despite recognizing the "powers thus conferred by the Constitution upon [State attorneys] are exclusive," the Court upheld this statutory delegation of authority to represent the State. *See id.* at 376-77.

First, the Court distilled the test as "simply whether by plain and unambiguous language [the statute] *deprives* the county attorneys and the Attorney-General of their authority to prosecute in the courts suits by the State for the recovery of inheritance taxes." *Maud,* 200 S.W. at 376 (emphasis added). Stated differently, the test is whether statutory provisions "*unequivocally supplant* the county attorneys and the Attorney-General in their authority to prosecute the suits of the State for the recovery of the taxes." *Id.* at 377 (emphasis added). Applying that test, the Court held the statute was constitutional because "the provision that the person appointed by the Comptroller may represent the State . . . to enforce the collection of the taxes *does not deny* to county attorneys or the Attorney-General the right to conduct suits for the taxes." *Id.* at 377 (emphasis added). Indeed, "[t]o say that such person may so represent the State is not equivalent to a declaration that it shall be to [State attorneys'] exclusion." *Id.* at 377-78. The Court held the statute did not unlawfully purport to deny State attorneys the discretion to either reject the assistance of others in carrying out these constitutional duties or to avail themselves of those services "to

40

be rendered in subordination of their authority." *See id*. at 376.[37]

Thus, the foundational takeaways from *Maud* are (i) the Legislature cannot outright prohibit State attorneys from representing the State in litigation; (ii) courts should not read statutes *permitting* individuals other than State attorneys to represent the State as *prohibiting* State attorneys from representing the State; and (iii) statutes permitting others to litigate claims for the State are unconstitutional only if they "*unequivocally supplant* [State attorneys] in their authority to prosecute the suits of the State." *Maud*, 200 S.W. at 376, 377 (emphasis added); *see also El Paso Elec.*, 937 S.W.2d at 439 (citing *Maud* for proposition that "a statute authorizing an agency to hire outside counsel should, if possible, be construed as complying with this constitutional requirement, *even if the statute does not expressly recognize the authority of the Attorney General*" (emphasis added)).

## 2. *Camp v. Gulf Production Co*.

Despite admitting *Maud* is "foundational" authority on this issue, Brief at 27, Novartis effectively asks the Court to reject *Maud.* But *Maud*'s holding and rationale were affirmed in *Camp v. Gulf Production Co.,* when the Court revisited the

---

[37] After holding the statute did not violate the constitution, the Court opined the Legislature likely did not intend for the comptroller's designee to actually file lawsuits to collect taxes. *Id*. at 377. But that contemplation did not drive the Court's holding: "The first provision . . . may be said, literally, to empower such person to institute suits, but it does not exclude the idea that this shall be in subordination to the authority of the county attorney." *Id*. Moreover, in *Camp*, discussed next, the Court upheld the relevant statute even though it permitted a private party to file suit that would adjudicate the State's ownership of land.

propriety of legislation that permitted private persons to represent State interests in litigation. 122 Tex. 383, 391, 61 S.W.2d 773, 775-76 (Tex. 1933). *Camp* involved a statute that authorized private persons, interested in purchasing "vacant unsurveyed school land," to sue in order to determine whether the State owned the land and, thus, could sell the land to that person. *Id.* at 775, 776 ("If the suit results in the land being adjudged to be vacant . . . the land belongs to the state," and private parties prosecuting the action obtain the right to purchase that land). Like the State and relator in a qui tam action, both the State (by virtue of becoming the adjudicated owner of the land) and private parties (by virtue of obtaining the right to purchase land declared to be state-owned) stood to gain from the private-party lawsuit. *See id.*

The statute's challenger argued it improperly "adjudicate[ed] the state's title to its public land" through a private party while "exclud[ing] the Attorney General and county and district attorneys from the right to represent the State." *Id.* at 777. Thus, the Court analyzed whether the statute unconstitutionally "denie[d] [State attorneys] the right and duty of representing the state, as committed to them under section 22, art. 4, and section 21, art. 5, of the Texas Constitution." *Id.* at 775-76. Applying *Maud* and *Staples* (discussed *supra* pp. 39-41, *infra* 45-46), the Court affirmed the statute even though it made private parties "the agent of the state to

42

institute the suit on his own behalf, and on behalf of the state." *Id.* at 776-77, 778.[38]

Similar to the Section 51-a reasoning above, the Court observed the statute was consistent with the Legislature's specific constitutional authority "to supervise and control the sale of the public school lands." *Id.* at 776. And the Court upheld the statute against these constitutional challenges in part because State attorneys—regardless of these private lawsuits—retained "the rights and powers given them by the Constitution . . . to appear in any suit instituted by authority of this statute, and represent the state." *Id.* at 776-78.

The relevant rule remained clear: if the statute does not "unequivocally supplant" State attorneys, it does not unconstitutionally encroach on their authority. The TMFPA's qui tam provisions stay well within the confines of this rule. *Infra* pp. 47-54.

### E. Novartis's Challenge Relies on Inapposite Case Law that Nevertheless Upholds the Deferential *Maud* Standard.

Novartis relies heavily on a case following *Maud* where the Legislature went too far by completely *replacing* certain county attorneys. *See generally*, *Hill Cty. v. Sheppard*, 142 Tex. 358, 178 S.W.2d 261 (1944).[39] In *Sheppard*, the challenged

---

[38] While the court noted the statute was "susceptible of but two constructions with reference to its purpose and intent," the court did "not consider it necessary . . . to determine" whether the private-person-agent construction identified in this sentence or the alternative construction should govern. *Id.* at 776-77. It follows that neither construction would render the statute unconstitutional.

[39] *Sheppard* also did not involve a specific constitutional grant of legislative authority like Section 51-a.

APP324

statute provided that in certain counties with only a county attorney, (i) "the office of Criminal District Attorney is hereby created" and (ii) such "Criminal District Attorney . . . shall have and exercise, *all* such powers, duties and privileges . . . as are by Law now conferred or which may hereafter be conferred upon District and County Attorneys." *Id.* at 261-62 (emphasis added). But article V, section 21 of the Texas Constitution provides, in counties with no district attorney, the county attorney "shall represent the state in all cases" in lower courts. *Id.* at 262. After holding the statute did not create a *constitutional* office, the question became "what was the effect of the statute if it undertook to create a statutory office *to take over* the duties of the county attorney." *Id.* at 264 (emphasis added). Consistent with and citing to *Maud*, the Court found the statute constitutionally defective because it "create[d] a statutory office with power to *take over* . . . functions" which "the Constitution imposed . . . upon the county attorney." *Id.* (emphasis added). In other words, the Legislature cannot wholly supplant, supersede, and replace State attorneys with respect to their constitutional authority to represent the State. *Sheppard* merely applied *Maud*'s standard to a statute that quite literally sought to replace county attorneys.

*Staples v. State* likewise does not undermine the TMFPA's constitutionality. *See generally*, 112 Tex. 61, 245 S.W. 639 (1922). *Staples* involved a statute that capped expenditures in primary elections. *Id.* at 639. If a candidate knowingly

APP325

violated those limits, their candidacy could be challenged through "proceedings quo warranto" which the statute provided "may be instituted *at the suit* of any citizen." *Id.* at 640 (emphasis added). Citizens with no pecuniary interest sought to prosecute a quo warranto suit under that statute without State Attorney "participation" or "consent." *Id.* at 639, 640. The first issue certified to the Court was whether the statute purported to authorize private persons to "institute and maintain" quo warranto proceedings. *Id.* at 639. *The court answered this question "no"* primarily because the legislative language did not plainly conflict with the "established and well-known meaning" of "quo warranto proceedings"—state actions to protect purely public interests brought only by State attorneys though, in some circumstances, after prodding by interested individuals. *Id.* at 640-41.[40] This holding turned on statutory interpretation.

The *Staples* Court also opined on the constitutionality of the statute in light of State attorneys' constitutional authority to represent the State. *Id.* at 639, 643. Because the statutory language and legislative intent did not plainly depart from the settled parameters of quo warranto proceedings, the Court held the statute did not offend those constitutional provisions. *Id.* at 643. *Staples* does not impugn the TMFPA's constitutionality. Instead, it merely supports the proposition that so long

---

[40] The current statute more clearly states that a State attorney may file the petition "at the request of an individual relator." Tex. Civ. Prac. & Rem. Code §§ 66.002(c), 66.003(2).

45

as State attorneys retain the *right* to decline the assistance of private parties—or the private parties' representation of the State remains "in subordination to" State attorneys' authority—no offense befalls the constitution. *Id.* at 642 (quoting *Maud*).

Novartis cites *Allen v. Fisher* for the proposition "that a private plaintiff cannot be authorized to maintain a suit that *solely* seeks to vindicate a matter of public concern." Brief at 24-25 (emphasis added) (citing 118 Tex. 38, 9 S.W.2d 731 (Comm'n App. 1928)).[41] But *Allen* involved a plaintiff—who was ineligible to serve as the democratic nominee for a public office—suing to challenge another's nomination for that office. *See* 9 S.W.2d at 732. Because the plaintiff could not gain anything beyond what any other citizen might gain, the Court held the "plaintiff . . . has no authority to maintain this suit, as a voter, independently of a public official who is properly clothed with that authority." *Id.* But Health Selection, who possesses evidence of Medicaid fraud that triggers its right to payment under the TMFPA,

---

[41] The TMFPA qui tam provisions are not unique in the authority they grant private citizens to prosecute claims with a public-harm component. For example, the Legislature has empowered "[a]ny person" to enforce Texas abortion laws by suing "any person who . . . performs or induces an abortion in violation of [the subchapter titled Detection of Fetal Heartbeat]." Tex. Health & Safety Code § 171.208(a). That legislation expressly prohibits State attorneys from intervening in such actions. *Id*. § 171.208(h). In answering certified questions by the Fifth Circuit, this Court emphasized that the "Texas Heartbeat Act," through the exclusive method described under section 171.208 "may be enforced by a private civil action, that *no state official may bring or participate as a party in any such action*, that such an action is the exclusive means to enforce the requirements, and that these restrictions apply notwithstanding any other law." *Whole Woman's Health v. Jackson*, 642 S.W.3d 569, 583 (Tex. 2022) (emphasis added). This statute goes well beyond the TMFPA's authorization of relator suits given the Texas Heartbeat Act expressly prohibits action by State attorneys and other officers. This is just one example. *See* Tex. Gov't Code § 82.0651(c) (barratry).

APP327

stands apart from ordinary citizens. And unlike *Allen*, State attorneys continue to monitor, oversee, and support the case. MR116 (OAG response to 91a Motion stating, "The State retains an interest in this matter, even though it has declined to intervene" and "Texas's declination in this matter is not a comment on the merits of the case"); *see also* MR390-444 (OAG's response in Texarkana Court of Appeals). The statute in *Allen* did not assign the State's claim to the plaintiff. It did not specifically delegate authority to private persons with specialized knowledge of a violation. Unlike here, there was no constitutional provision specifically supporting the plaintiff's right to prosecute the action. Novartis's reliance on *Allen* is misplaced.

Nor does *Agey v. American Liberty Pipe Line Co.* aid Novartis's cause. 141 Tex. 379, 172 S.W.2d 972 (1943). The statute at issue did not empower a private person to represent the State, so the Court did not address the constitutional issue. *See id.* at 974-75. *Agey* did not restrict or abrogate the *Maud* standard in any way.

In sum, Novartis incorrectly argues *Maud*, *Allen*, *Staples*, and *Sheppard* undercut the constitutionality of TMFPA qui tam statutes. Novartis cites no authority that supports striking down a statute that respects State attorneys' constitutional authority and finds constitutional support in a targeted provision like Section 51-a. It is Novartis's burden to do so. But it is a burden Novartis cannot budge.

47

**F. The TMFPA Stays Within the Parameters Set by *Maud*, *Camp*, *Sheppard*, and Other Governing Case Law**.

Under the TMFPA, State attorneys expressly retain absolute control over qui tam litigation from the beginning to the end. The TMFPA remains inbounds under *Maud*, *Camp*, *Sheppard*, and other guidance discussed above. Under those authorities—and applying the TMFPA's text and the presumption of constitutionality—the TMFPA qui tam provisions are constitutional.

**1. The TMFPA does not unequivocally supplant State attorneys' authority to represent the State.**

The TMFPA authorizes private citizens to litigate Medicaid fraud claims subject to the authority of State attorneys to control, dismiss, and settle the litigation. Akin to the inheritance tax statute in *Maud*, the TMFPA "authoriz[es]" relators to "bring a civil action for a violation of Section 36.002 [defining Medicaid fraud] . . . for the state." Tex. Hum. Res. Code § 36.101(a). And like the authorization to collect taxes in *Maud*, the TMFPA does not purport to "deny" State attorneys the "right to conduct suits" for Medicaid fraud—far from it. *See, e.g.* Tex. Hum. Res. Code §§ 36.052(e) (granting OAG right to sue), 36.102 (State attorneys have authority to intervene and dismiss qui tam action); 36.107(a).

State attorneys retain authority to reject assistance by the relators and to take over the case. A relator must serve the petition and "substantially all material evidence and information the person possesses on the attorney general" before the

48

case may proceed. Tex. Hum. Res. Code § 36.102(a). A relator may not litigate the case for half a year pending State attorneys' decision to intervene. *See id.* § 36.102(b), (c). And State attorneys may dismiss the action without consulting relators. *Id.* § 36.102(e). Thus, State attorneys retain the right to wield total control, and this statutory framework is by careful design. *See Maud*, 200 S.W. at 377, 378; *Camp*, 61 S.W.2d at 776-78; *Koy II*, 221 S.W. at 886 (stating courts assume "the Legislature was familiar with previous decisions of the Supreme Court affecting the subject-matter"). State attorneys' power to displace relators or to dismiss the case altogether evinces "ultimate control" over the case. *See El Paso Elec.*, 937 S.W.2d at 436; *Maud*, 200 S.W. at 376 (framed as State attorneys' right to refuse outside assistance).

As in *Maud*, the TMFPA's authorization of private persons to sue is permissive and qualified; it does not bind or "unequivocally supplant" State attorneys. *See, e.g.*, Tex. Hum. Res. Code § 36.052(e) (granting OAG authority to sue). In qui tam actions, State attorneys may dismiss the case against a relator's wishes or intervene and effectively displace the relator. *Id.* §§ 36.102(e), 36.104(a), 36.107(b). In cases where the State chooses not to unilaterally dismiss a qui tam action or take over the direct, day-to-day management of the litigation, State attorneys elect merely "to avail themselves of the services" of relators as the law allows. *See Maud*, 200 S.W. at 377.

APP330

"If the state proceeds with the action, the state has the primary responsibility for prosecuting the action and *is not bound by an act of the person bringing the action*." Tex. Hum. Res. Code § 36.107(a) (emphasis added). And State attorneys may dismiss the action later on "notwithstanding the objections" of relators so long as the court provides relators an opportunity for a hearing on the State's motion to dismiss. *Id.* § 36.107(b).[42] Regardless of when State attorneys intervene, they may settle an action "notwithstanding the objections of the person bringing the action." *Id.* § 36.107(c). State attorneys may significantly limit the role of the relator at any time. *Id.* § 36.107(d).

Even if State attorneys elect not to intervene and permit relators to proceed, they retain the right to control the litigation by receiving copies of all pleadings filed in the action and by intervening beyond the 180-day deadline. *Id.* § 36.104(b-1). Regardless of State attorneys' decision to intervene, they may stay discovery pending their investigation into the same matter, which effectively halts the qui tam action. *Id.* § 36.108(a), (c). State attorneys may pursue the State's claim through

---

[42] While no Texas court has analyzed the issue in the TMFPA context, the most onerous burden imposed on the government to dismiss FCA claims merely requires the government to proffer "plausible" or "arguable" reasons for dismissal at which point the qui tam relators carry the heavy burden to demonstrate dismissal is "fraudulent, arbitrary and capricious, or illegal." *United States ex rel. Health Choice Alliance, L.L.C. v. Eli Lilly & Co., Inc.*, 4 F.4th 255, 267 (5th Cir. 2021). Thus, while a relator may be entitled to a "hearing," the likelihood of superseding the government's unilateral decision to dismiss is effectively null.

alternative means, including administrative proceedings. *Id.* § 36.109. The TMFPA also bars participation altogether by relators if their allegations of Medicaid fraud "are the subject of a civil suit or an administrative penalty proceeding in which the state is already a party." Tex. Hum. Res. Code § 36.113(a).

The qui tam provisions allow State attorneys to dismiss the case, to take over the case, or to authorize the private person to litigate the case on the State's behalf while State attorneys retain authority to oversee and intervene. This arrangement differs very little from the OAG's statutory right to employ a private attorney to prosecute claims on behalf of the State. *See* Tex. Hum. Res. Code § 36.105; *Sparks*, 135 S.W. at 520, 521-22. Under *Maud*'s test, the TMFPA's qui tam provisions are constitutional.

**2. Under the TMFPA, State attorneys do not cede constitutional authority if they elect not to intervene within the 180-day seal period.**

Novartis's primary criticism targets § 36.104. Brief at 33 *et seq*. That section provides that, after State attorneys decline to intervene or dismiss, the relator "may proceed without the state's participation." Tex. Hum. Res. § 36.104(a)(2), (b). However, the State attorneys retain the right to participate even without formal intervention as they have done here. *See Maud*, 200 S.W. at 377; MR116 *et seq*.; MR390 *et seq*.; SMR. Moreover, the statute expressly protects the State attorneys' right to monitor the relator's actions and to intervene later. *Id*. § 36.104(b-1).

51

Novartis gives State attorneys' authority under § 36.102 short shrift and largely ignores their untrammeled right to intervene, take over, and dismiss a case during the 180-day seal period. *See* Brief at 5 (containing lone citations to § 36.102). Even ignoring State attorneys' absolute control during the seal period, the qui tam statutes would remain constitutional. If State attorneys become displeased with the relator's management of the litigation, the State may intervene at any time "on a showing of good cause." Tex. Hum. Res. § 36.104(b-1). The "good cause" provision here requires nothing more than a pro forma showing.[43]

No Texas case law defines "good cause" in the qui tam context. But case law analyzing the FCA demonstrates "good cause" presents a nominal hurdle for the government, and upon intervening, the government takes the wheel. *United States ex rel. Polansky v. Exec. Health Res. Inc*, 17 F.4th 376, 387, 387 n.12 (3d Cir. 2021) (discussing the light burden imposed by "good cause" language and opining history of qui tam actions indicates good-cause requirement presents no separation-of-powers problem); *see also Polansky*, 599 U.S. at 433-38 (approving government dismissal through "good cause" intervention because, even if government does not intervene initially, its "views are entitled to substantial deference"); *United States ex rel. Jackson v. Ventavia Research Grp., LLC*, No. 1:21-CV-00008, 2024 WL

---

[43] This is especially true here because Health Selection does not oppose intervention.

3812294, at *6 (E.D. Tex. Aug. 9, 2024) (collecting cases and stating, "Courts, particularly in the wake of *Polansky*, have consistently permitted the Government to intervene after the seal period when the Government wants to dismiss a case because it disputes the case's merits, wants to avoid discovery and litigation costs, or finds that the case conflicts with its policies").

Thus, regardless of whether or when the State intervenes the action always remains subject to State attorneys' constitutional authority to oversee, reassess, and take over the case. And the "good cause" standard does not unconstitutionally interfere with the State's right to intervene at a later point in time.

Thus, the TMFPA does not "unequivocally supplant" State attorneys' "authority to prosecute the suits of the State." *See Maud* 200 S.W. at 377. Novartis's quarrel misunderstands the ease with which State attorneys may intervene and exercise total control of the litigation at any time. And it ignores other provisions that maintain State attorneys' ultimate control of the litigation. *See* Tex. Gov't Code § 311.021(2); Tex. Hum. Res. Code §§ 36.102(c), 36.107.

Alternatively, if the Court concludes "good cause" is a heavier burden in Texas courts than in federal courts or otherwise unduly restricts State attorneys' constitutional authority to represent the State, the Court should sever "on a showing of good cause" from Texas Human Resources § 36.104(b-1) because that language's absence would not affect other provisions of the TMFPA, including its qui tam

53

provisions.[44] *See Rose v. Doctors Hosp.*, 801 S.W.2d 841, 842, 844-45 (Tex. 1990) (where court previously held "statutory damages limitations [were] unconstitutional when applied to damages in *common law* medical malpractice actions," holding court could simply sever the reference to "common law claims" because the statute "remains complete in itself, and capable of being executed in accordance with the legislative intent, wholly independent of that which was rejected" (emphasis added)); *Comm'n for Lawyer Discipline v. Benton*, 980 S.W.2d 425, 441-42 (Tex. 1998) (holding attorney disciplinary rule against mistreatment of discharged jurors would remain in effect even without the unconstitutionally vague "or embarrass" language).

The TMFPA remains faithful to State attorneys' "right . . . to decline" qui tam actions and to the rule that qui tam relators' representation of State interests must be "in subordination to" State attorneys' authority. *See Maud*, 200 S.W. at 376. The TMFPA qui tam provisions are constitutional, and the Court should resolve any doubt—even "serious doubt[s]"—against Novartis. *Koy II,* 221 S.W. at 882, 888; *Koy I*, 218 S.W. at 483.

---

[44] Although the TMFPA does not contain a severability clause, it is not necessary to support severance. *See* Tex. Gov't Code § 311.032(c) (directing courts to apply general severance standard when legislation is silent on severability).

### 3. Novartis's reliance on the nondelegation doctrine fails.

Novartis's invocation of the nondelegation doctrine—generally referring to the delegation of *legislative* duties to others—does not apply here. *See* Brief at 35-37 (relying primarily on *Tex. Boll Weevil Eradication Found., Inc. v. Lewellen*, 952 S.W.2d 454, 469 (Tex. 1997)). *Lewellen* involved the Legislature's delegation of extensive legislative and enforcement authority to a private entity. 952 S.W.2d at 471. Novartis does not connect the nondelegation doctrine to this case. And even assuming the doctrine applies, the Court's test in *Lewellen* supports the TMFPA's qui tam statutes because (i) qui tam relators' actions are "subject to meaningful review" by State attorneys; (ii) the State, as the primarily affected party, is "adequately represented" by State attorneys who wield absolute control over the litigation; (iii) the relators' pecuniary interest is completely aligned with the State's interests; (iv) the relators' authority extends only to a single lawsuit and terminates when that litigation terminates; (v) proper relators possess important, nonpublic information necessary to prove Medicaid fraud and are represented by skilled legal counsel; and (vi) the TMFPA provides sufficient standards to guide qui tam relators by expressly providing that State attorneys retain ultimate control over Medicaid fraud litigation. *See id.* at 472 (listing factors). Thus, even if the nondelegation doctrine did apply, the TMFPA's qui tam provisions do not offend it.

55

### 4. Novartis's mistaken speculation regarding State attorneys' intentions does not control.

Novartis argues that State attorneys "affirmatively decline to press the litigation"; "decline[] to pursue the case"; or "decide that a case is not worth litigating" when they do not intervene. Brief at 32, 33, 35. This rank speculation is undermined by the OAG's July 17, 2024 brief in this proceeding and its extensive response in the Texarkana Court of Appeals. MR390 *et seq*. It is further undermined by the OAG's activities in the courts below and its anticipated arguments before this Court. MR116, MR116 n.2; SMR. It is more reasonable to believe State attorneys intend to monitor and control the case—as they have done throughout this litigation—according to the TMFPA's provisions and their constitutional authority. It is more reasonable to believe they have not intervened because they trust Health Selection and its lawyers to manage the day-to-day demands of this litigation. It is more reasonable to believe State attorneys have declined to intervene based on their desire to preserve State legal resources when private lawyers are properly managing the case. The Court has recognized State attorneys' right to "avail themselves" of assistance by others. *Maud*, 200 S.W. at 377. Even if Novartis's purported concern that cases will be brought against the State's will were legitimate, the TMFPA is expressly designed to prevent that outcome by maintaining the State's control throughout the life of qui tam proceedings. Thus, not only are Novartis's assumptions incorrect, more importantly they are completely irrelevant to the

56

constitutional analysis.

## ARGUMENT:
## THE APPELLATE PROCESS SHOULD PREVAIL

"Mandamus relief is appropriate when the trial court abuses its discretion in denying a Rule 91a motion to dismiss." *Farmers*, 621 S.W.3d at 266, 276-77 (mandamus appropriate where trial court misapplied the law by allowing *Stowers* claim to proceed where there was no settlement or judgment that exceeded policy limits). As demonstrated above, the district court did not err in any respect.

Further, "the adequacy of an appellate remedy must be determined by balancing the benefits of mandamus review against the detriments." *In re Essex Ins. Co.*, 450 S.W.3d 524, 528 (Tex. 2014) (orig. proceeding) (quote omitted). In most Rule 91a cases, there is no chance the issues will resolve themselves during the pendency of the litigation. For example, there was no chance in *Farmers* that the *Stowers* doctrine would apply in the absence of an excess judgment or settlement. *See* 621 S.W.3d at 264, 267-68. But here, given State attorneys' demonstrated interest in this case—and given their continuing right to intervene—State attorneys may intervene as this case develops. State attorney intervention would moot Novartis's constitutional challenge. And it would prevent dismissal based on Novartis's standing challenge. Unlike other Rule 91a denials that the Court has held warrant mandamus relief, mandamus would not work here to prevent the "utter[] waste[]" of time and money because any error may resolve itself. *See Essex*, 450

57

S.W.3d at 528. Mandamus relief would also interfere with State attorneys' ongoing discretion to intervene in this case. To any extent the district court erred, mandamus relief remains inappropriate.

## CONCLUSION

The Legislature intended for the TMFPA's qui tam provisions to maximize federal matching money for Texas Medicaid. That effort falls squarely within the specific constitutional provision assigning authority over Medicaid to the Legislature. Should Novartis prevail, the Texas Medicaid program will not only lose money; the ruling would unduly erode the Legislature's constitutional authority to govern Texas Medicaid in a manner that maximizes federal matching money.

Moreover, Health Selection has individual standing to sue on its own account, and the capacity and authority to sue on the State's behalf. Nothing about the TMFPA's qui tam statutes offends constitutional provisions that preserve the separation of powers and grant State attorneys authority to represent the State in litigation.

For these reasons, Health Selection respectfully requests that the Court deny Novartis's petition for mandamus.

APP339

Dated:  November 20, 2024     Respectfully submitted,

*/s/ Sam Baxter*
Samuel F. Baxter (co-lead counsel)
sbaxter@mckoolsmith.com
Jennifer L. Truelove
jtruelove@mckoolsmith.com
MCKOOL SMITH P.C.
104 East Houston, Suite 300
Marshall, Texas 75670
(903) 923-9000
Fax: (903) 923-9099

*/s/ Mark Lanier*
Mark Lanier (co-lead counsel)
Harvey Brown
Benjamin Major
Zeke DeRose
Jonathan Wilkerson
THE LANIER FIRM
10940 W. Sam Houston Pkwy N
Houston, TX 77064
(800) 723-3216
Fax:  (713) 659-2204

***Attorneys for Plaintiff and Real-Party-in-Interest Health Selection Group, LLC***

59

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on November 20, 2024 to counsel of record.

*/s/ Samuel F. Baxter*
Samuel F. Baxter

## CERTIFICATE OF COMPLIANCE

Using the "Word Count" function on Microsoft Word, Health Selection Group's Brief on the Merits contains 14,648 words, excluding the portions of the brief exempt from the word count under Texas Rule of Appellate Procedure 9.4(i)(1).

*/s/ Samuel F. Baxter*
Samuel F. Baxter

## CERTIFICATION

I certify that I have reviewed the forgoing pleading and concluded that every factual statement is supported by competent evidence included in the record.

*/s/ Samuel F. Baxter*
Samuel F. Baxter

APP341

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below:

Envelope ID: 94522528
Filing Code Description: Brief on the Merits (all briefs)
Filing Description: HEALTH SECTION GROUP, LLC'S BRIEF ON THE MERITS
Status as of 11/20/2024 2:50 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|-------------------|--------|
| Jonathan Wilkerson | 24050162 | jonathan.wilkerson@lanierlawfirm.com | 11/20/2024 2:31:50 PM | SENT |
| Samuel Baxter | 1938000 | sbaxter@mckoolsmith.com | 11/20/2024 2:31:50 PM | SENT |
| Zeke DeRose | 24057421 | zeke.derose@lanierlawfirm.com | 11/20/2024 2:31:50 PM | SENT |
| Jennifer Truelove | 24012906 | jtruelove@mckoolsmith.com | 11/20/2024 2:31:50 PM | SENT |
| Alex Brown | 24026964 | alex.brown@lanierlawfirm.com | 11/20/2024 2:31:50 PM | SENT |
| Lynne Kurtz-Citrin | 24081425 | lynne.kurtz-citrin@oag.texas.gov | 11/20/2024 2:31:50 PM | SENT |
| Jonathan Bonilla | 24073939 | Jonathan.Bonilla@oag.texas.gov | 11/20/2024 2:31:50 PM | SENT |
| Jordan Underhill | 24102586 | jordan.underhill@oag.texas.gov | 11/20/2024 2:31:50 PM | SENT |
| Meredith N.Garagiola | | mgaragiola@omm.com | 11/20/2024 2:31:50 PM | SENT |
| Deron R.Dacus | | ddacus@dacusfirm.com | 11/20/2024 2:31:50 PM | SENT |
| Eric B.Halper | | ehalper@mckoolsmith.com | 11/20/2024 2:31:50 PM | SENT |
| Radu A.Lelutiu | | rlelutiu@mckoolsmith.com | 11/20/2024 2:31:50 PM | SENT |
| Danny S.Ashby | | dashby@omm.com | 11/20/2024 2:31:50 PM | SENT |
| Ross Galin | | rgalin@omm.com | 11/20/2024 2:31:50 PM | SENT |
| Anton Metlitsky | | ametlitsky@omm.com | 11/20/2024 2:31:50 PM | SENT |
| W. MarkLanier | | WML@LanierLawFirm.com | 11/20/2024 2:31:50 PM | SENT |
| Joshua Goode | | jgoode@omm.com | 11/20/2024 2:31:50 PM | SENT |
| joel leach | | jleach@mckoolsmith.com | 11/20/2024 2:31:50 PM | SENT |
| denise lopez | | dlopez@mckoolsmith.com | 11/20/2024 2:31:50 PM | SENT |
| Mary JoToupin | | MaryJo.Toupin@oag.texas.gov | 11/20/2024 2:31:50 PM | SENT |
| Janice Garrett | | Janice.Garrett@oag.texas.gov | 11/20/2024 2:31:50 PM | SENT |
| Michael Catapano | | mcatapano@mckoolsmith.com | 11/20/2024 2:31:50 PM | SENT |
| Angel Devine | | adevine@mckoolsmith.com | 11/20/2024 2:31:50 PM | SENT |

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below:

Envelope ID: 94522528
Filing Code Description: Brief on the Merits (all briefs)
Filing Description: HEALTH SECTION GROUP, LLC'S BRIEF ON THE
MERITS
Status as of 11/20/2024 2:50 PM CST

Case Contacts

| Angel Devine | | adevine@mckoolsmith.com | 11/20/2024 2:31:50 PM | SENT |
|---|---|---|---|---|
| Hannah Mirzoeff | | hmirzoeff@mckoolsmith.com | 11/20/2024 2:31:50 PM | SENT |

APP343

FILED
24-0239
11/20/2024 3:27 PM
tex-94528158
SUPREME COURT OF TEXAS
BLAKE A. HAWTHORNE, CLERK

No. 24-0239

# In the Supreme Court of Texas

————

In re Novartis Pharmaceuticals Corporation,
*Realtor.*

————

On Petition for Writ of Mandamus
to the 71st Judicial District Court, Harrison County

————

## BRIEF ON THE MERITS FOR
## REAL PARTY IN INTEREST THE STATE OF TEXAS

————

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Aaron L. Nielson
Solicitor General

Evan S. Greene
Assistant Solicitor General
State Bar No. 24068742
Evan.Greene@oag.texas.gov

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Counsel for Real Party in Interest
the State of Texas

APP344

## Identity of Parties and Counsel

**Relator:**

Novartis Pharmaceuticals Corporation

**Counsel for Relator:**

Danny S. Ashby (lead counsel)
O'Melveny & Myers LLP
2801 N. Harwood Street, Suite 1600
Dallas, Texas 75201
(972) 360-1900
dashby@omm.com

Anton Metlitsky
Ross B. Galin
O'Melveny & Myers LLP
7 Times Square
New York, New York 10036
(212) 326-2000

Deron R. Dacus
The Dacus Firm, P.C.
821 ESE Loop 323, Suite 430
Tyler, Texas 75701
(903) 705-1117

Meredith Garagiola
O'Melveny & Myers LLP
1625 Eye Street
Washington, D.C. 20006
(202) 383-5115

Megan R. Whisler (formerly with O'Melveny & Myers LLP)

**Real Parties in Interest:**

State of Texas
Health Selection Group, L.L.C.

**Counsel for Real Party in Interest the State of Texas:**

Ken Paxton
Brent Webster
Aaron L. Nielson
James Lloyd
Amy S. Hilton
Evan S. Greene (lead counsel)
Jonathan D. Bonilla
Jordan Underhill
Lynne Kurtz-Citrin
Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
(512) 936-1845
evan.greene@oag.texas.gov

APP345

**Counsel for Real Party in Interest Health Selection Group, L.L.C.:**

Samuel F. Baxter (co-lead counsel)
Jennifer L. Truelove
McKool Smith, P.C.
104 East Houston, Suite 300
Marshall, Texas 75670
(903) 923-9000
sbaxter@mckoolsmith.com

Eric B. Halper
Radu A. Lelutiu
McKool Smith, P.C.
1301 Avenue of the Americas
New York, New York 10019
(212) 402-9400

Mark Lanier (co-lead counsel)
Harvey Brown
Benjamin Major
Zeke DeRose
Jonathan Wilkerson
The Lanier Firm
10940 W. Sam Houston Pkwy N,
Suite 100
Houston, Texas 77064
(800) 723-3216
WML@LanierLawFirm.com

APP346

# Table of Contents

                                                          Page

Identity of Parties and Counsel ............................................................................. ii

Index of Authorities ............................................................................................... v

Statement of the Case .......................................................................................... ix

Statement of Jurisdiction ....................................................................................... x

Issues Presented .................................................................................................... x

Introduction ........................................................................................................... 1

Statement of Facts ................................................................................................. 2

    I.   Legal Background ............................................................................... 2

    II.  HSG's lawsuit .................................................................................... 5

Summary of the Argument...................................................................................... 6

Argument ................................................................................................................ 8

    I.   HSG Has Standing to Maintain the Underlying Lawsuit. ......................... 8

        A.   The assignee of a legal claim has standing to assert and obtain
             redress for the assignor's injury. ........................................................ 8

        B.   *Qui tam* relators are assignees that have standing to assert and
             obtain redress for Texas's injuries under the TMFPA. ...................... 11

    II.  The TMFPA's *Qui Tam* Provisions Do Not Violate the Texas
        Constitution............................................................................................. 14

        A.   The TMFPA ensures that the Attorney General maintains
             ultimate authority over any *qui tam* lawsuit........................................ 14

        B.   Novartis's remaining arguments are unavailing.................................. 18

    III.  This Case Does Not Warrant Mandamus Relief. ..................................... 24

Prayer................................................................................................................... 26

Certificate of Compliance .................................................................................... 27

APP347

# Index of Authorities

Page(s)

**Cases:**

*Agey v. American Liberty Pipe Line Co.,*
172 S.W.2d 972 (Tex. 1943) ............................................................ 20, 23

*Bell v. Low Income Women of Tex.,*
95 S.W.3d 253 (Tex. 2002) ....................................................................... 2

*Camp v. Gulf Prod. Co.,*
61 S.W.2d 773 (Tex. 1933) ..................................................................... 19

*City of Houston v. Hous. Prof'l Firefighters Ass'n,*
664 S.W.3d 790 (Tex. 2023) .................................................................. 24

*Dallas Cnty. Mental Health & Mental Retardation v. Bossley,*
968 S.W.2d 339 (Tex. 1998) .................................................................. 14

*Data Foundry, Inc. v. City of Austin,*
620 S.W.3d 692 (Tex. 2021) .................................................................... 8

*EBS Sols., Inc. v. Hegar,*
601 S.W.3d 744 (Tex. 2020) ...................................................................15

*El Paso Elec. Co. v. Tex. Dep't of Ins.,*
937 S.W.2d 432 (Tex. 1996).......................................................... 15, 17, 23

*In re Essex Ins. Co.,*
450 S.W.3d 524 (Tex. 2014) .................................................................. 26

*In re Farmers Tex. Cnty. Mut. Ins. Co.,*
621 S.W.3d 261 (Tex. 2021) .................................................................. 25

*Heckman v. Williamson County,*
369 S.W.3d 137 (Tex. 2012) ................................................................. 8, 9

*Hill County v. Sheppard,*
178 S.W.2d 261 (Tex. 1944) .................................................................. 20

*Holy Cross Church of God in Christ v. Wolf,*
44 S.W.3d 562 (Tex. 2001) .....................................................................13

*Hooks v. Fourth Ct. of Appeals,*
808 S.W.2d 56 (Tex. 1991).................................................................... 25

*In re Kappmeyer,*
668 S.W.3d 651 (Tex. 2023)............................................................... 24, 25

*Lujan v. Defs. of Wildlife,*
504 U.S. 555 (1992) ................................................................................ 8

**APP348**

*Malouf v. State ex rels. Ellis,*
   694 S.W.3d 712 (Tex. 2024) .................................................................. 26

*Maud v. Terrell,*
   200 S.W. 375 (Tex. 1918) ...............................................15, 18, 19, 23

*McLane Champions, LLC v. Hous. Baseball Partners LLC,*
   671 S.W.3d 907 (Tex. 2023) ............................................................. 9, 14

*In re Novartis Pharm. Corp.,*
   No. 06-24-00005-CV, 2024 WL 874686 (Tex. App.—
   Texarkana 2024, orig. proceeding) ...................................................... ix

*Paxton v. Longoria,*
   646 S.W.3d 532 (Tex. 2022) ............................................................ 16, 17

*Polansky v. Exec. Health Res. Inc.,*
   17 F.4th 376 (3d Cir. 2021) .................................................................17

*In re Rogers,*
   690 S.W.3d 296 (Tex. 2024) .................................................................. 24

*In re Shire PLC,*
   633 S.W.3d 1 (Tex. App.—Texarkana 2021, orig. proceeding)........................ 26

*S.W. Bell Tel. Co. v. Mktg. on Hold, Inc.,*
   308 S.W.3d 909 (Tex. 2010) ..........................................9, 11, 12, 13

*Sprint Commc'ns Co. v. APCC Servs., Inc.,*
   554 U.S. 269 (2008) ......................................................9, 10, 11, 12

*Staples v. State,*
   245 S.W. 639 (Tex. 1922).................................................................19, 23

*State ex rel. Durden v. Shahan,*
   658 S.W.3d 300 (Tex. 2022) ................................................................. 14

*State v. Hollins,*
   620 S.W.3d 400 (Tex. 2020) ................................................................. 12

*State v. Lloyd,*
   994 S.W.2d 362 (Tex. App.—Waco 1999, no pet.)................................15, 17, 18

*Tex. Ass'n of Bus. v. Tex. Air Control Bd.,*
   852 S.W.2d 440 (Tex. 1993) ................................................................... 8

*Texas Boll Weevil Eradication Foundation, Inc. v. Lewellen,*
   952 S.W.2d 454 (Tex. 1997)................................................................ 21

*U.S. ex rel. Taxpayers Against Fraud v. Gen. Elec. Co.,*
   41 F.3d 1032 (6th Cir. 1994) ............................................................. 21, 22

*United State ex. rel. Adams v. Chattanooga Hamilton Cnty. Hosp. Auth.*,
No. 1:21-cv-84, 2024 WL 4784372 (E.D. Tenn. Nov. 7, 2024)........................22

*United States ex rel. Zafirov v. Fla. Med. Assoc., LLC*,
No. 8:19-cv-01236-KKM-SPF, 2024 WL 4349242
(M.D. Fla. Sept. 30, 2024) ........................................................................22

*Univ. of Tex. at Arlington v. Bishop*,
997 S.W.2d 350 (Tex. App.—Fort Worth 1999, pet. denied) ...........................18

*UTHSCSA v. Mata & Bordini, Inc.*,
2 S.W.3d 312 (Tex. App.—San Antonio 1999, pet. denied)............................18

*Vermont Agency of Natural Resources v. United States ex rel. Stevens*,
529 U.S. 765 (2000) ...................................... 6, 7, 9, 10, 11, 12, 13, 21, 22, 24

*In re Xerox Corp.*,
555 S.W.3d 518 (Tex. 2018) ............................................ 1, 2, 3, 4, 11, 14, 20, 22

**Constitutional Provisions, Statutes, and Rules:**

42 U.S.C.:

    §§ 1396-1396b .....................................................................................2

    § 1396a .................................................................................................2

    § 1396h(a) ...........................................................................................3

    § 1396h(b)(2) .......................................................................................3

Tex. Const.:

    art. II, § 1...........................................................................................21

    art. III, § 51-a.......................................................................................2

    art. III, § 51-a(a) ..................................................................................2

    art. III, § 51-a(b) ..................................................................................2

    art. III, § 51-a(c) ..................................................................................2

    art. IV, § 22.................................................. x, 7, 14, 15, 17, 18, 19, 22

    art. V, § 21 ...............................................................x, 7, 14, 18, 19, 22

Tex. Gov't Code § 22.002(a) ...........................................................................x

Tex. Hum. Res. Code:

    § 32.001 ...............................................................................................2

    §§ 36.001-.132.....................................................................................ix

    § 36.002 ........................................................................................ 3, 4, 6

    § 36.002(1) ...........................................................................................3

    § 36.002(2)-(13) ...................................................................................3

    § 36.007 ...............................................................................................3

**APP350**

§ 36.051 ..................................................................................................... 3

§ 36.052 ............................................................................................... 3, 13

§ 36.052(a) ...............................................................................................13

§ 36.052(a)(1) ........................................................................................ 12

§ 36.101 ............................................................................................ 11, 17

§§ 36.101-.117 ........................................................................................ 3

§ 36.101(a) ......................................................... x, 4, 11, 13, 15, 20

§ 36.102 ........................................................................................ 17, 21, 23

§ 36.102(a) ............................................................................................. 16

§ 36.102(a)-(b) ........................................................................................ 4

§ 36.102(b) ..........................................................................................5, 16

§ 36.102(b)-(c) .................................................................................. 4, 16

§ 36.102(d) ............................................................................................. 4

§ 36.102(e) ....................................................................................... 17, 18

§ 36.104 ............................................................................................... 4, 5

§ 36.104(b) .........................................................................................16, 23

§ 36.104(b-1) ................................................................................ 5, 16, 18

§ 36.107 ..................................................................................... 17, 21, 23

§ 36.107(a) .................................................................................. 5, 16, 23

§ 36.107(b) ........................................................................................... 21

§ 36.107(b)-(c) ...................................................................................5, 16

§ 36.108 ...............................................................................................5, 18

§ 36.108(a) .............................................................................................17

§ 36.109 .................................................................................................. 5

§ 36.109(a) .............................................................................................17

§ 36.109(b) .............................................................................................17

§ 36.110 ............................................................................................. 4, 11

§ 36.112 ............................................................................................... 21

**Other Authorities:**

Office of Inspector General, U.S. Dep't of Health and Hum. Servs., *State False Claims Act Reviews,* https://oig.hhs.gov/fraud/state-false-claims-act-reviews/ .................................................................................... 4

# STATEMENT OF THE CASE

*Nature and Course of Underlying Proceeding*:

Health Selection Group L.L.C. ("HSG") sued Novartis Pharmaceuticals Corporation under the *qui tam* provisions of the Texas Medicaid Fraud Prevention Act ("TMFPA"). MR.1-59.[1] Novartis filed a combined plea to the jurisdiction and Rule 91a motion to dismiss, contending that HSG lacks standing and that the *qui tam* provisions otherwise are unconstitutional. MR.61-95.

*Respondent*:

71st Judicial District Court, Harrison County
The Honorable Brad Morin

*Respondent's Challenged Action*:

The trial court denied the motion. MR.167.

*Court of Appeals*:

Sixth Court of Appeals

*Proceedings in the Court of Appeals*:

Novartis filed a petition for writ of mandamus on February 2, 2024. The court of appeals denied the petition. MR.496-501; *In re Novartis Pharm. Corp.*, No. 06-24-00005-CV, 2024 WL 874686 (Tex. App.—Texarkana 2024, orig. proceeding) (per Stevens, C.J., joined by van Cleef and Rambin, JJ.).

---

[1] Although the relevant chapter of the Human Resources Code has been renamed the "Texas Health Care Program Fraud Prevention Act," *see* Tex. Hum. Res. Code §§ 36.001-.132, the State continues to refer to the TMFPA to remain consistent with the parties' earlier briefing below and in this Court.

APP352

# STATEMENT OF JURISDICTION

The Court has jurisdiction under Texas Government Code section 22.002(a).

# ISSUES PRESENTED

The *qui tam* provisions of the TMFPA authorize a private person to bring a civil action for a violation of the Act "in the name of the person and of the state." Tex. Hum. Res. Code § 36.101(a). HSG filed a lawsuit under those provisions, contending that Novartis secured improper payments from the Texas Medicaid program in connection with the unlawful marketing of Novartis's drugs. Novartis moved to dismiss the lawsuit, arguing that HSG lacks standing and that the *qui tam* provisions otherwise are unconstitutional because they authorize a private person to represent the State in court proceedings. The trial court denied the motion. Novartis then sought a writ of mandamus seeking the same relief in the Sixth Court of Appeals. That petition was denied, too. The issues presented are:

1.  Whether the trial court abused its discretion in concluding that HSG has standing to maintain its TMFPA claims.

2.  Whether the trial court abused its discretion in concluding that the *qui tam* provisions satisfy article IV, section 22, and article V, section 21 of the Texas Constitution.

3.  Whether mandamus relief is appropriate when Novartis can appeal the denial of its motion to dismiss after final judgment is entered in this suit.

# Introduction

"[T]he limited time and financial resources of governmental regulators . . . and the increasing sophistication of Medicaid scams make chicanery difficult to uncover." *In re Xerox Corp.*, 555 S.W.3d 518, 525 (Tex. 2018) (orig. proceeding). Because Medicaid funds are limited, too, every dollar that's paid out to such fraudsters is a dollar that could have been spent to provide healthcare for the neediest Texans.

To help combat these schemes and preserve State funds, the TMFPA includes *qui tam* provisions that incentivize and deputize private whistleblowers to pursue fraud claims on the State's behalf. In the nearly thirty years that those provisions have been in effect, private citizens have assisted the State in deterring and remediating Medicaid fraud—to the tune of roughly $2 billion. But here, Novartis seeks to undo the Act's highly successful public-private partnership, contending that *qui tam* plaintiffs (like HSG) lack standing and that the challenged laws otherwise are unconstitutional for authorizing private persons to represent the State in court. Novartis is wrong on both counts.

First, HSG has standing to maintain its lawsuit as an assignee of Texas's right to redress under the TMFPA. The U.S. Supreme Court so held in an indistinguishable case recognizing a private citizen's ability to maintain federal False Claims Act claims vindicating the United States's injuries. Second, the *qui tam* provisions are constitutional because they explicitly preserve the Attorney General's authority to take over and otherwise control any *qui tam* suit brought on behalf of the State. Novartis's concern about private actors supplanting State interests via these lawsuits is unfounded. The Court should deny the petition.

## STATEMENT OF FACTS

The court of appeals correctly stated the nature of the case. *See supra* p. ix.

## I.  Legal Background

**A.**  Article III, section 51-a of the Texas Constitution authorizes the Legislature to provide "assistance grants" for "needy" persons, including "needy dependent children" and persons who are "disabled because of a mental or physical handicap." Tex. Const. art. III, § 51-a(a). Such "assistance" specifically includes funding for "medical care, rehabilitation and other similar services." *Id.* § 51-a(b).

Pursuant to that authority, in 1967, the Texas Legislature enacted the State's "Medical Assistance Program," which "enable[s] the state to provide medical assistance on behalf of needy individuals." Tex. Hum. Res. Code § 32.001. The program additionally permits Texas to participate in the federal Medicaid program, which offers matching federal funds to States that implement indigent-health-service programs meeting certain standards. *Bell v. Low Income Women of Tex.*, 95 S.W.3d 253, 255-56 (Tex. 2002) (citing 42 U.S.C. §§ 1396-1396b); *see also* Tex. Const. art. III, § 51-a(c) ("[T]he Legislature is specifically authorized and empowered to . . . enact such laws as may be necessary in order that such federal matching money will be available for assistance and/or medical care for or on behalf of needy persons.").

Because Medicaid resources are limited, however, "fraud, abuse, and waste [necessarily] divert funds that could otherwise be used to provide essential health-care services" for needy persons. *Xerox*, 555 S.W.3d at 524; *see also* 42 U.S.C. § 1396a (requiring participating States to implement measures to curb "fraud, waste, and abuse" in the Medicaid program).

2

APP355

To combat those diversions, in 1995, the Legislature enacted the TMFPA, which created a "state enforcement action" authorizing relief against any person who defrauds the Texas Medicaid program through defined "unlawful act[s]." *Xerox*, 555 S.W.3d at 522; Tex. Hum. Res. Code §§ 36.002, 36.051. The Act prohibits "knowingly mak[ing] or caus[ing] to be made a false statement or misrepresentation of a material fact . . . to receive a benefit or payment under a health care program that is not authorized or that is greater than the benefit or payment that is authorized," Tex. Hum. Res. Code § 36.002(1), along with twelve other similar fraudulent acts, *id.* § 36.002(2)-(13). The TMFPA authorizes the State to recover a slew of "civil remedies" from violators—including disgorgement of improper overpayments, interest, and other penalties. *Id.* §§ 36.007, 36.052. All told, the Court has recognized that the Act serves as "a powerful tool for targeting fraud against the Texas Medicaid program and securing the program's integrity." *Xerox*, 555 S.W.3d at 525.

**B.** To provide additional protection against Medicaid fraud, the Texas Legislature added *qui tam* whistleblower provisions to the TMFPA in 1997. Tex. Hum. Res. Code §§ 36.101-.117. Besides providing the State with assistance in rooting out fraud, those provisions allow Texas to qualify for a 10% bonus from the federal government for any Medicaid award the State secures. *See* 42 U.S.C. § 1396h(a), (b)(2) (requiring States to implement whistleblower laws that are "at least as effective in rewarding and facilitating qui tam actions for false or fraudulent [Medicaid] claims as those described in [the federal False Claims Act]"); *see also Xerox*, 555 S.W.3d at

3

538 ("[S]tates with *qui tam* laws meeting specified federal standards can retain an additional ten percent of Medicaid recoveries.").[2]

Under Texas's *qui tam* provisions, a private plaintiff (the *qui tam* relator) may bring a civil action for a violation of section 36.002 "in the name of the person and of the state." Tex. Hum. Res. Code § 36.101(a); *see also Xerox*, 555 S.W.3d at 525 (noting that the *qui tam* provisions "deputize[] private citizens to pursue a TMFPA action on the government's behalf."). The private plaintiff ultimately may recover a percentage of any proceeds awarded to the State via the lawsuit. Tex. Hum. Res. Code § 36.110.

But the Act includes several provisions designed to ensure that the State maintains control over these suits. First, before serving the defendant, the suit must be filed *in camera* and served on the Attorney General along with "a written disclosure of substantially all material evidence and information the person possesses" supporting the claims. *Id.* § 36.102(a)-(b). The Attorney General then has 180 days to review those materials. *Id.* §§ 36.102(b)-(c), 36.104. At that point, the Attorney General has two options: He may intervene in the action or decline to take over principal responsibility for the suit. *Id.*[3] During the review period, the suit remains under seal, and

---

[2] The TMFPA's *qui tam* provisions currently qualify for the federal bonus. *See* Office of Inspector General, U.S. Dep't of Health and Hum. Servs., *State False Claims Act Reviews,* https://oig.hhs.gov/fraud/state-false-claims-act-reviews/ (describing requirements and listing States that are approved for the federal bonus).

[3] The Attorney General also may move to extend the 180-day deadline for "good cause shown." *Id.* § 36.102(d).

4

the petition cannot be served on the defendant until the court orders service. *Id.* § 36.102(b).

If the Attorney General decides to intervene, he bears "the primary responsibility for prosecuting the action," leaving the *qui tam* relator with limited rights to continue as a party. *Id.* § 36.107(a). The Attorney General then may prosecute, dismiss, or settle the action "notwithstanding the objections" of the *qui tam* relator. *Id.* § 36.107(b)-(c).

If the Attorney General "declines to take over the action," on the other hand, he still enjoys the right to oversee and ultimately take over the lawsuit if necessary. *Id.* § 36.104. On request, the Attorney General must be served with all pleadings filed in the action and provided with copies of all deposition transcripts. *Id.* § 36.104(b-1). Based on receipt of that information or otherwise, the Attorney General then may intervene after the original 180-day deadline "on a showing of good cause." *Id.* In addition to this right to intervene later, the Attorney General may move to stay discovery in the *qui tam* action if discovery would interfere with the State's own investigation or prosecution of a related matter. *Id.* § 36.108. The Attorney General may also pursue an alternative remedy in a separate proceeding that can become conclusive on all parties in the *qui tam* action. *Id.* § 36.109.

## II.  HSG's lawsuit

HSG filed the underlying lawsuit contending that Novartis had "fraudulently engaged in unlawful marketing schemes and illegally reaped hundreds of millions of dollars from Texas Medicaid" relating to its promotion of certain drugs. MR.2. HSG asserted that Novartis committed multiple "unlawful acts," as defined under section

5

36.002 of the TMFPA, including "knowingly induc[ing] doctors to prescribe . . . its products" so that Novartis could receive improper payments under the Texas Medicaid program. MR.56-57. HSG sought recovery of the improper payments, statutory penalties, interest, and other fees "on behalf of Texas," along with its "Relator's share as provided by the TMFPA." MR.57-58.

In turn, Novartis filed a joint plea to the jurisdiction and motion to dismiss contending that HSG lacks standing to maintain its suit and that the TMFPA's *qui tam* provisions otherwise are unconstitutional in authorizing private parties to represent the State in court. MR.61-95. HSG responded, MR.98-115, and the State, which had declined to intervene in the underlying suit, also submitted a statement of interest supporting HSG's suit, MR.116-38. Upon consideration of the parties' briefing and oral argument, the trial court issued an order denying Novartis's motion. MR.167.

Novartis then filed a petition for a writ of mandamus raising the same arguments and seeking dismissal of HSG's lawsuit in the Sixth Court of Appeals. MR.170-247. The court of appeals issued an order and judgment denying Novartis's petition. MR.496-501.

## Summary of the Argument

**I.** HSG has standing to maintain its *qui tam* suit as an assignee of Texas's rights under the TMFPA. Although the standing requirements ordinarily require the complainant to assert her own injury, federal and Texas law have long recognized that an injured person lawfully may assign her right to recovery to another person. Once a valid assignment has occurred, the assignee steps into the shoes of the assignor and has standing to litigate any claim that the assignor could have maintained. In *Vermont*

6

*Agency of Natural Resources v. United States ex rel. Stevens*, the U.S. Supreme Court applied this principle in a directly analogous federal False Claims Act case, holding that a private *qui tam* plaintiff had assignee-standing to maintain fraud claims vindicating the United States's injuries even though the plaintiff suffered no injury himself. 529 U.S. 765, 771-74 (2000).

Because the TMFPA similarly assigns Texas's rights under the Act to private persons, a *qui tam* plaintiff like HSG has assignee-standing to maintain TMFPA claims. That HSG suffered no injury itself is irrelevant: It is suing to rectify Texas's injuries, which indisputably would confer standing on the State to maintain this lawsuit. Texas's injuries serve as an adequate basis for HSG's standing.

**II.** The TMFPA's *qui tam* provisions also comport with article IV, section 22, and article V, section 21 of the Texas Constitution. Those provisions generally require state attorneys to represent the State in court. But this Court has held that the Legislature may authorize a state agency to obtain private counsel so long as the counsel's authority is subordinate to the relevant state attorney.

The TMFPA easily satisfies that standard. At the outset, the Act provides the Attorney General with the opportunity to assume principal command over any *qui tam* suit that is filed on behalf of the State. If the Attorney General takes over the lawsuit, he may prosecute, dismiss, or settle the case over the objection of the *qui tam* relator. If the Attorney General declines to take over the action, he still enjoys the right to updates regarding the case along with the ability to intervene if necessary. Far from supplanting the Attorney General's authority to represent the State, the TMFPA preserves it at every juncture.

7

**III.** Mandamus relief is wholly unwarranted in this case. The trial court correctly denied Novartis's motion to dismiss. No case even remotely supports invalidating the nearly thirty-year-old *qui tam* provisions at issue here. But even if the trial court was wrong, Novartis has an adequate remedy by appeal. Novartis failed to point to any extraordinary circumstances supporting a right to bypass the ordinary appellate process.

## ARGUMENT

## I. HSG Has Standing to Maintain the Underlying Lawsuit.

### A. The assignee of a legal claim has standing to assert and obtain redress for the assignor's injury.

**1.** Standing is a constitutional prerequisite to maintaining a lawsuit under both federal and Texas law. *Heckman v. Williamson County*, 369 S.W.3d 137, 150-51 & n.60 (Tex. 2012). To assess standing, this Court has "adopted the federal requirements…as set forth by the United States Supreme Court." *Data Foundry, Inc. v. City of Austin*, 620 S.W.3d 692, 696 (Tex. 2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) (plurality op.)). Thereunder, a plaintiff must show: "(1) an injury in fact that is both concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) that the injury is fairly traceable to the defendant's challenged action; and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* Having adopted the federal standard, this Court "look[s] to the more extensive jurisprudential experience of the federal courts on [standing] for any guidance it may yield." *Heckman*, 369 S.W.3d at 151 n.60 (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993)).

8

To that end, the U.S. Supreme Court has explained that the standing requirements ordinarily ensure that the judicial power "exists only to redress or otherwise to protect against injury to *the complaining party*." *Stevens*, 529 U.S. at 771; *accord Heckman*, 369 S.W.3d at 155 ("[O]ur Constitution opens the courthouse doors only to those who have or are suffering an injury.").

**2.** Nonetheless, an injured person lawfully may assign her right to recovery to another person. *See*, *e.g.*, *McLane Champions, LLC v. Hous. Baseball Partners LLC*, 671 S.W.3d 907, 911-13 (Tex. 2023). And courts have "long found ways to allow assignees [of legal rights] to bring suit" to rectify injuries suffered by their assignors. *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 285 (2008). As this Court has explained, an assignee "is considered under the law to have suffered the same injury as the assignor[] and ha[s] the same ability to pursue the claims." *S.W. Bell Tel. Co. v. Mktg. on Hold, Inc.*, 308 S.W.3d 909, 916 (Tex. 2010). Consequently, an assignee has standing to maintain legal claims whenever the assignor would satisfy the standing test. *Id.*

Assignee standing applies even when the government is the injured party that assigns its claims to a private party. To wit, in *Stevens*, the U.S. Supreme Court considered "whether a private individual [could] bring suit . . . on behalf of the United States . . . under the [*qui tam* provisions of the] False Claims Act" when it was undisputed that the individual suffered no harm and was asserting only "an injury to the United States." 529 U.S. at 768, 771. Those injuries included the "injury to [the United States's] sovereignty arising from violation of its laws" along with the United States's "proprietary injury resulting from the alleged fraud." *Id.* at 771. To satisfy

9

standing requirements, *Stevens* explained, the *qui tam* relator's interest in the lawsuit "must consist of obtaining compensation for[] or preventing" the government's injuries, as contrasted with someone who had simply "placed a wager upon the outcome" of the lawsuit. *Id.* at 772.

Employing that reasoning, the Court found an "adequate basis for the relator's suit . . . in the doctrine that the assignee of a claim has standing to assert the injury in fact suffered by the assignor." *Id.* at 772-73. The Court observed that it had "routinely entertained" such assignee suits—implicitly, through the guise of "representational standing." *Id.* at 773. And because the private relator held a valid assignment of the United States's rights under the *qui tam* provisions of the False Claims Act, "the United States's injury in fact suffice[d] to confer standing on [him]." *Id.* at 774.

Eight years later, the Court reaffirmed *Stevens* and reiterated that "where assignment is at issue, courts . . . have *always* permitted the party with legal title alone to bring suit." *Sprint Commc'ns*, 554 U.S. at 285 (emphasis added). It held that assignees of payphone operators' rights under the federal Communications Act had standing to bring claims arising from the operators' injuries even though the assignees "did not originally suffer any injury" themselves and otherwise intended to remit the proceeds of the litigation to the assignors. *Id.* at 271, 286. The Court explained that the assignee-standing inquiry does not turn on the specific legal claim assigned to the plaintiff or "what the plaintiff ultimately intends to do with the money he recovers." *Id.* at 287. Simply put, an assignee "may properly bring suit to redress the injury originally suffered by his assignor." *Id.*

10

Guided by federal precedent, this Court recognizes assignee standing under the same reasoning set forth in *Stevens* and *Sprint Communications*. In *Southwestern Bell Telephone*, the Court held that a phone-bill auditor had standing to bring claims assigned to the auditor by Southwestern Bell's customers—notwithstanding that the auditor did not suffer its own injury. 308 S.W.3d at 916. As the Court explained, "[b]ecause STA holds . . . valid assignments, STA steps into the shoes of the claimholders." *Id.*

## B. *Qui tam* relators are assignees that have standing to assert and obtain redress for Texas's injuries under the TMFPA.

1. Section 36.101 of the TMFPA authorizes a private person to bring an action for civil remedies against any person who defrauds defined Texas health-care programs. Tex. Hum. Res. Code § 36.101(a). The action is brought "for the person and for the state" and "shall be brought in the name of the person and of the state." *Id.* The private plaintiff ultimately is entitled to recover a percentage of any proceeds due to the State, which percentage differs depending on whether the State intervenes and how the action otherwise proceeds. *Id.* § 36.110.

This Court has recognized that the TMFPA's *qui tam* provisions effectively "deputize[] private citizens to pursue a TMFPA action *on the government's behalf*." *Xerox*, 555 S.W.3d at 525 (emphasis added). In other words, like private relators under the federal False Claims Act, a TMFPA *qui tam* relator is "suing as a *partial* assignee" of the government's claims to rectify the government's injuries. *Stevens*, 529 U.S. at 773 n.4.

11

Consequently, a *qui tam* relator, like HSG here, has assignee-standing to maintain TMFPA claims to redress injuries suffered by the State of Texas. As in *Stevens*, those injuries include the proprietary injury resulting from the fraud, *see* Tex. Hum. Res. Code § 36.052(a)(1) (authorizing recovery of "the amount of any payment . . . provided under a health care program . . . as a result of the unlawful act"), as well as the injury to Texas's sovereignty resulting from the violation of its laws, *cf. Stevens*, 529 U.S. at 771; *cf. also State v. Hollins*, 620 S.W.3d 400, 410 (Tex. 2020) (per curiam) (explaining that "*ultra vires* conduct automatically results in harm to the sovereign as a matter of law"). That HSG "d[id] not allege that it personally suffered any injury from the conduct alleged in the petition," Novartis Br. 16, is of no moment because the TMFPA assigns Texas's rights (and corresponding injuries) to private plaintiffs like HSG. Per *Stevens* and *Southwestern Bell Telephone*, that assignment satisfies *constitutional* limits on standing, *supra* pp. 9-11, not just the statutory prerequisites to bringing an action under the TMFPA, *cf.* Novartis Br. 17-18.

**2.**  Against this backdrop, Novartis attempts to distinguish *Stevens*, contending that its "logic . . . does not apply" because the TMFPA provides for civil penalties as opposed to damages. *Id.* at 19. But there's no daylight between *Stevens* and this case. *Stevens* did not turn on the specific type of claim assigned by the government to the private plaintiff or the related remedy. The assignee-standing inquiry instead is based on the assignor's *injury*. As *Stevens* explained, when the government assigns a claim designed to "compensat[e] for" or "prevent[]" the violation of its rights, the assignee naturally "has standing to assert *the injury in fact* suffered by the assignor." 529 U.S. at 772-73 (emphasis added); *see also Sprint Commc'ns*, 554 U.S. at

12

286 ("[A]n assignee can sue based on his assignor's *injuries*." (emphasis added)); *S.W. Bell*, 308 S.W.3d at 916 ("[An assignee] is considered under the law to have suffered the same *injury* as the assignors." (emphasis added)). Put simply, if the assignor has standing to rectify an injury, then the assignee has standing, too.

Here, the Texas Legislature determined that an action for civil remedies would compensate for and prevent fraudulent acts committed against the State's health care programs. Tex. Hum. Res. Code § 36.052(a). Therefore, an assignee of such a claim, like HSG under section 36.101(a), has standing to assert and obtain redress for the State's injuries. It's no different than if the State had opted to pursue the civil-remedies claim itself. *See Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 572 (Tex. 2001) ("[A]n assignee stands in the shoes of his assignor."). Because the State indisputably would have standing to maintain the claims asserted in the underlying lawsuit, HSG has standing, too.

Implicitly recognizing that *Stevens* controls, Novartis last contends that a "sovereign remedy" like civil penalties "cannot be 'assigned' to private litigants." Novartis Br. 21. Novartis cites nothing to support that proposition. And it cannot be squared with *Stevens* itself, which confirmed that a private plaintiff could sue to rectify "the injury to [the United States's] sovereignty arising from violation of its laws." 529 U.S. at 771. In all events, the civil remedies authorized under section 36.052—including the amount of any payment provided due to the fraud, interest, and various cash penalties, Tex. Hum. Res. Code § 36.052(a)—also rectify the "proprietary injury" inflicted on the State, *Stevens*, 529 U.S. at 771; *cf.* Novartis Br. 22 (acknowledging that "[t]he government may partially assign a claim vindicating its

13

proprietary interest just like anyone else can"). Even if the statutorily authorized civil remedies are not "damages" per se, *Xerox*, 555 S.W.3d at 527, they nonetheless alleviate Texas's pocketbook injury—and therefore can be assigned under Novartis's own argument.

At bottom, the "real substance" of Novartis's standing argument, *cf. Dallas Cnty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex. 1998), is that the TMFPA's assignment provisions are void for violating the "separation of powers," Novartis Br. 22. That argument is wrong for the reasons set forth below. *Infra* pp. 14-24. And it has no bearing on the standing analysis. *See McLane Champions*, 671 S.W.3d at 913 ("[A] plaintiff does not lack standing simply because some other legal principle may prevent it from prevailing on the merits.").

Because the Texas Legislature partially assigned Texas's rights under the TMFPA to *qui tam* relators, HSG has standing to assert and rectify Texas's injuries.

## II. The TMFPA's *Qui Tam* Provisions Do Not Violate the Texas Constitution.

### A. The TMFPA ensures that the Attorney General maintains ultimate authority over any *qui tam* lawsuit.

**1.** Article IV, section 22, and article V, section 21 of the Texas Constitution allocate representational authority for the State in the state courts among the Attorney General, district attorneys, and county attorneys. *State ex rel. Durden v. Shahan*, 658 S.W.3d 300, 303 (Tex. 2022) (per curiam). Based on these provisions, the Court has explained that the Legislature cannot "*divest* these officials of their collective constitutional authority" by shifting representational power to some other attorney.

14

*El Paso Elec. Co. v. Tex. Dep't of Ins.*, 937 S.W.2d 432, 439 (Tex. 1996) (emphasis added).

At the same time, *El Paso Electric* made clear that "the Legislature may authorize an agency to retain private counsel to prosecute [an] action[], as long as such counsel's authority is subordinate" to that of the relevant state attorney. *Id.* (citing *Maud v. Terrell*, 200 S.W. 375, 376 (Tex. 1918)). The Court also confirmed that the ordinary presumption of constitutionality applies to any statute that delegates representational authority for the State to outside counsel. *Id.* As such, "a statute authorizing an agency to hire outside counsel should, if possible, be construed as complying with [article IV, section 22 of the Texas Constitution], even if the statute does not expressly recognize the authority of the Attorney General." *Id.*; *see also EBS Sols., Inc. v. Hegar*, 601 S.W.3d 744, 754 (Tex. 2020) ("[I]f a statute is susceptible to two interpretations . . . then the constitutional [one] will prevail.").

Under these standards, a statute authorizing private counsel to represent the State does not violate the Texas Constitution "unless it 'unequivocally supplant[s]' the . . . Attorney[]General in [his] authority to prosecute the suits of the State." *State v. Lloyd*, 994 S.W.2d 362, 364 (Tex. App.—Waco 1999, no pet.) (alterations in original) (quoting *El Paso Elec.*, 937 S.W.2d at 439).

**2.** The *qui tam* provisions of the TMFPA easily satisfy this forgiving constitutional standard because they *explicitly* preserve the Attorney General's authority over the prosecution of any TMFPA lawsuit filed on behalf of the State.

As discussed above, section 36.101(a) of the Act authorizes a private person to bring a civil action to rectify fraudulent acts committed against Texas health-care

15

programs "in the name of the person and of the state." *Supra* p. 11. Any person bringing such an action must initially serve a copy of the petition along with "a written disclosure of substantially all material evidence and information the person possesses" on the Attorney General. Tex. Hum. Res. Code § 36.102(a). The Attorney General then has 180 days to elect to intervene and "proceed with the action" himself. *Id.* § 36.102(b)-(c). In the meantime, the petition is filed *in camera* and remains under seal for the 180-day period or until the Attorney General decides to intervene, whichever is earlier. *Id.* § 36.102(b). The petition cannot be served on the defendant until the court orders service. *Id.*

If the Attorney General opts to proceed with the action, he takes over "primary responsibility" for handling it. *Id.* § 36.107(a). He then may prosecute, dismiss, or settle the action "notwithstanding the objections" of the *qui tam* relator. *Id.* § 36.107(b)-(c).

But even if the Attorney General "declines to take over the action" within the 180-day period, *id.* § 36.104(b), he still retains control over the lawsuit. To begin, the Attorney General is "entitled" to copies of all pleadings filed, along with copies of deposition transcripts. *Id.* § 36.104(b-1). Based on receipt of that information or otherwise, the Attorney General may choose to intervene in the action *after* the initial 180-day period has expired. *See id.* (requiring "a showing of good cause" for subsequent intervention).[4] The Attorney General may also stay the private relator's ability

---

[4] To the extent the "good cause" requirement imposes any meaningful barrier to subsequent intervention, it can and therefore should be interpreted liberally to support the constitutionality of the *qui tam* provisions. *See Paxton v. Longoria*, 646

16

to conduct discovery upon showing that the lawsuit is interfering with "the state's investigation or prosecution of a criminal or civil matter arising out of the same facts." *Id.* § 36.108(a). The action also cannot be dismissed without the consent of the Attorney General, *id.* § 36.102(e)—so he retains veto authority over any proposed settlement.

Moreover, "[n]otwithstanding [s]ection 36.101" (which authorizes a *qui tam* action), the State may elect to pursue its claim through "any alternate remedy available to the state." *Id.* § 36.109(a). And the State's alternate proceeding can become "conclusive" for all parties to any *qui tam* action proceeding under section 36.101. *Id.* § 36.109(b).

**3.** As these provisions demonstrate, the TMFPA ensures that the Attorney General may exercise his constitutional authority to represent the State in court. From the very outset, the Attorney General may choose to take over a *qui tam* action himself. *Id.* §§ 36.102, 36.107. When a statutory scheme expressly provides the State with that option, it necessarily comports with article IV, section 22. *El Paso Elec. Co.*, 937 S.W.2d at 439; *see also Lloyd*, 994 S.W.2d at 366 ("Under the Workers' Compensation Act, the State may pursue a subrogation claim in its own name or the

---

S.W.3d 532, 539 (Tex. 2022) ("Under the canon of constitutional avoidance, we should, if possible, interpret a statute in a manner that avoids constitutional infirmity." (quotation marks omitted)). Adopting a liberal construction would also be consistent with federal caselaw interpreting the federal False Claim Act's "good cause" requirement for governmental intervention. *See Polansky v. Exec. Health Res. Inc.,* 17 F.4th 376, 387 (3d Cir. 2021) ("[S]howing 'good cause' is neither a burdensome nor unfamiliar obligation.").

APP370

employee's name. Thus, the Act does not unequivocally supplant the Attorney General in his authority to prosecute the suits of the State." (cleaned up)); *accord UTHSCSA v. Mata & Bordini, Inc.*, 2 S.W.3d 312, 318 (Tex. App.—San Antonio 1999, pet. denied) (holding that "a third-party action, in which the Attorney General apparently *elected not to participate*" did not violate the separation of powers (emphasis added)); *Univ. of Tex. at Arlington v. Bishop*, 997 S.W.2d 350, 354-55 (Tex. App.—Fort Worth 1999, pet. denied) (same).

But even when the Attorney General opts to remain on the sidelines, he still may stay the relator's ability to conduct discovery that would interfere with the State's own investigation, Tex. Hum. Res. Code § 36.108, demand ongoing information about the action and intervene after the initial 180-day period expires, *id.* § 36.104(b-1), and control any proposed settlement, *id.* § 36.102(e). Simply put, the *qui tam* relator serves at the State's discretion and may proceed with a TMFPA action only as the Attorney General sees fit.

Far from "unequivocally supplant[ing]" the Attorney General's authority, *Lloyd*, 994 S.W.2d at 364, the TMFPA preserves it at every turn. As such, the challenged provisions comport with article IV, section 22, and article V, section 21 of the Texas Constitution.

## B. Novartis's remaining arguments are unavailing.

**1.** The key separation-of-powers cases that Novartis cites (at 27-32) support the constitutionality of the challenged TMFPA provisions. To begin, the "foundational case" of *Maud v. Terrell*, Novartis Br. 27, *upheld* a law authorizing the Comptroller to "sue for and collect" taxes because the statute did not "by plain and

unambiguous language . . . deprive[] the county attorneys and the Attorney General of their authority to prosecute in the court suits by the State for the recovery of inheritance taxes," 200 S.W. at 376. As the Court explained, because the statute did "not *exclude the idea*" that the Comptroller's ability to "sue for" taxes "shall be in subordination to the authority of the county attorney," *id.* at 377 (emphasis added), it was constitutional. To hold otherwise, according to the Court, a statute would have to explicitly "*deny* to county attorneys or the Attorney-General the right to conduct suits." *Id.* (emphasis added); *see also Camp v. Gulf Prod. Co.*, 61 S.W.2d 773, 777 (Tex. 1933) ("There is nothing in the instant act to indicate any purpose or intention to curtail or abridge any . . . duty . . . imposed by the Constitution . . . upon . . . the Attorney General to represent the interest of the state."). As shown above, however, the TMFPA *expressly* ensures that the Attorney General maintains the authority to conduct and control any *qui tam* action. Nothing in the Act even remotely *denies* the Attorney General such power.

*Staples v. State*, 245 S.W. 639 (Tex. 1922), also supports the constitutionality of the TMFPA. Like the TMFPA, *Staples*'s challenged law authorized private persons to initiate *quo warranto* suits "in the name of the state of Texas" and "in their own names" to prevent the placement of a candidate's name on a ballot. *Id.* Citing *Maud*, the Court held that the statute satisfied article IV, section 22, and article V, section 21, because it could be construed to preserve the state attorneys' authority by requiring the private citizen to present and receive approval for the suit from the relevant officers before it was filed. *Id.* at 642-43. As discussed above, the TMFPA explicitly

19

ensures that the Attorney General can exercise his prosecutorial discretion before the case is served on the defendant and while it proceeds. *Supra* pp. 17-18.

Novartis also points to *Agey v. American Liberty Pipe Line Co.*, but there, the Court held that the challenged statute did *not* authorize an individual to file suit on behalf of the State, 172 S.W.2d 972, 974 (Tex. 1943), which the TMFPA plainly does, Tex. Hum. Res. Code § 36.101(a). Consequently, the Court did not reach the constitutional question presented in this case. *Agey*, 172 S.W.2d at 974-75.

Finally, *Hill County v. Sheppard*, 178 S.W.2d 261 (Tex. 1944) (orig. proceeding), is inapposite. The Court held that the Legislature could not establish a statutory office for a criminal district attorney that would supplant the extant county attorney's duties. *Id.* at 264 ("We think that it is well settled that since the Constitution imposed certain duties upon the county attorney, the Legislature, in the absence of other constitutional authority therefor, could not create a statutory office with power to take over and exercise such functions."). The TMFPA creates no statutory office. Neither does it supplant the Attorney General's authority in any way. As this Court recognized, the Act instead "imbues the attorney general with broad investigative and enforcement authority and . . . deputizes private citizens to [litigate] on the government's behalf." *Xerox*, 555 S.W.3d at 525.

At bottom, the Court's precedents do not "teach" that private individuals must be "employed" by the State to pursue a lawsuit on behalf of the State. *Cf.* Novartis Br. 32; *see also id.* at 33-34 (contending that "[w]here the Attorney General . . . decide[s] that a case is not worth litigating on behalf of the State of Texas, that [must be] the end of the matter"). For over a century, this Court instead has held that a

20

statute delegating the power to represent the State to a private person is constitutional unless it patently negates the Attorney General's superior authority to represent the State in court. *Supra* pp. 14-15. The TMFPA does no such thing.

2. Novartis additionally points to *Texas Boll Weevil Eradication Foundation, Inc. v. Lewellen*, but plaintiffs there challenged a delegation of *legislative power* to a private entity under article II, section 1 of the Texas Constitution, 952 S.W.2d 454, 465-66 (Tex. 1997). No similar claim is at issue here, and Novartis made no effort to address the Court's eight-factor private-delegation test. *Cf. id.* at 472.

Novartis's related concern about "self-interested private actors" taking actions "repugnant to the public interest" via the TMFPA, Novartis Br. 36-37, is overblown because the Act ensures that the Attorney General may review, take over, and otherwise control the lawsuit from its inception, Tex. Hum. Res. Code §§ 36.102, 36.107. Indeed, the Attorney General can dismiss a meritless action over the objection of the *qui tam* relator, *id.* § 36.107(b), and the Act even provides defendants with the ability to obtain an award if a frivolous action is filed against them, *id.* § 36.112. As discussed above, *Stevens* blessed the federal False Claims Act notwithstanding similar concerns to those Novartis raises here. 529 U.S. at 772 (authorizing the *qui tam* relator to pursue a "bounty" on behalf of the United States); *id.* at 801 (Stevens, J., dissenting) (observing that the federal *qui tam* provisions would have satisfied any Article II challenge requiring the President to enforce the laws);[5] *see also U.S. ex rel.*

_____

[5] All nine justices on the U.S. Supreme Court agreed that the private *qui tam* plaintiff had standing in *Stevens*. The two dissenting justices would also have held that States

21

*Taxpayers Against Fraud v. Gen. Elec. Co.*, 41 F.3d 1032, 1041 (6th Cir. 1994) ("The qui tam provisions adopted by Congress do not contradict the constitutional principle of separation of powers. Rather, they have been crafted with particular care to maintain the primacy of the Executive Branch in prosecuting false-claims actions, even when the relator has initiated the process.").[6] Novartis's "liberty" hardly is jeopardized, *cf.* Novartis Br. 35, by a statute designed to enable private persons to assist the State with rooting out fraud and other "chicanery," *Xerox*, 555 S.W.3d at 525.

**3.** Novartis further suggests that a "saving construction" cannot salvage the TMFPA, Novartis Br. 38-39, but constitutional avoidance is unnecessary here. Although the Court is required to construe the TMFPA to preserve its constitutionality, *supra* p. 15, there is no need to resort to tools of statutory construction because the Act plainly ensures that the Attorney General may control the lawsuit from the

---

could be sued under the federal False Claims Act. *See Stevens*, 529 U.S. at 789-802 (Stevens, J., dissenting).

[6] One recent outlier federal district court decision held that the federal False Claims Act's *qui tam* provisions violate the U.S. Constitution's Appointments Clause by improperly appointing private relators as officers of the United States. *United States ex rel. Zafirov v. Fla. Med. Assoc., LLC*, No. 8:19-cv-01236-KKM-SPF, 2024 WL 4349242 (M.D. Fla. Sept. 30, 2024). There is no analogous "appointments" claim in this lawsuit, which instead is based on article IV, section 22, and article V, section 21 of the Texas Constitution. Moreover, *Zafirov* already has been criticized by another federal district court. *See United State ex. rel. Adams v. Chattanooga Hamilton Cnty. Hosp. Auth.*, No. 1:21-cv-84, 2024 WL 4784372, at *3 (E.D. Tenn. Nov. 7, 2024) ("A single, outlier trial-court decision that whistles past precedent . . . provides no basis to ignore that precedent here.").

22

moment the relator files it, Tex. Hum. Res. Code §§ 36.102, 36.107. This Court upheld the challenged statutes in *Maud* and *Staples* even though the laws did *not* explicitly preserve the Attorney General's representational authority, *supra* pp. 18-20, as the TMFPA does here. Novartis's repeated contention that private actors cannot maintain a suit on behalf of the State, Novartis Br. 38-39, cannot be squared with *El Paso Electric* and the Court's antecedent caselaw. So long as the Attorney General is not unequivocally supplanted—and he is not—the statute is constitutional.

**4.** Finally, Novartis belittles the statutory protections that apply (at 42-44) when the Attorney General "declines to take over the action" within the initial 180-day period. Tex. Hum. Res. Code § 36.104(b). Of course, those provisions apply only when the Attorney General opts *not* to assume "primary responsibility for prosecuting the action" from the outset. *Id.* § 36.107(a). That initial opportunity to assume command ensures that the Attorney General is not unconstitutionally subordinated to a private party. Even Novartis seems to recognize that preserving the Attorney General's prosecutorial discretion is what's key. *See* Novartis Br. 43 ("[R]eceiving information about an action is not the same as 'exercis[ing] . . . judgment and discretion regarding the filing of a suit.'" (citing *Agey*, 172 S.W.2d at 974)).

Moreover, the additional protections that attach when the Attorney General decides not to lead the lawsuit—*e.g.*, the right to ongoing information, subsequent

23

intervention, a stay of discovery, and veto power over any settlement—preserve the Attorney General's ability to control the case as he sees fit.[7]

## III. This Case Does Not Warrant Mandamus Relief.

Novartis's novel request to invalidate a nearly thirty-year-old statutory scheme is particularly unsuited for mandamus relief. *See In re Rogers*, 690 S.W.3d 296, 302 (Tex. 2024) (orig. proceeding) (per curiam) ("Mandamus relief is an extraordinary remedy."). To obtain such relief, the relator must show that: (1) the trial court clearly abused its discretion; and (2) there is no adequate remedy by appeal. *In re Kappmeyer*, 668 S.W.3d 651, 654 (Tex. 2023) (orig. proceeding). Novartis fails on both counts.

First, for the reasons set forth above, the trial court rightly denied Novartis's motion to dismiss, thereby upholding the challenged provisions of the TMFPA and allowing HSG to maintain its claims. *Cf. City of Houston v. Hous. Prof'l Firefighters Ass'n*, 664 S.W.3d 790, 798 (Tex. 2023) ("A party challenging a statute as unconstitutional bears a *heavy burden* to overcome th[e] presumption [of constitutionality]." (emphasis added)). Far from carrying its heavy burden, Novartis failed to point to a single case even questioning the constitutionality of the Act. Indeed, the U.S. Supreme Court *rejected* many of the arguments Novartis advances here when it held that a *qui tam* relator had standing to vindicate the United States's injuries via the federal False Claims Act. *Stevens*, 529 U.S. at 774. It's quite a stretch to contend that

---

[7] Novartis's discussion of the TMFPA's "history" (or, rather, the lack thereof), Novartis Br. 44-47, is irrelevant given this Court's caselaw upholding statutes that authorize private persons to litigate on behalf of the State.

the trial court abused its discretion when it denied Novartis what would have amounted to unprecedented relief. *Cf. Kappmeyer*, 668 S.W.3d at 655 ("A trial court abuses its discretion when it acts with disregard of guiding rules or principles or in an arbitrary or unreasonable manner.").

Second, even assuming that the trial court erred, Novartis has an adequate remedy by appeal. As this Court has explained, "[a]bsent extraordinary circumstances…a denial of a motion to dismiss…is a ruling incident to the ordinary trial process which will *not* be corrected by mandamus." *Hooks v. Fourth Ct. of Appeals*, 808 S.W.2d 56, 59 (Tex. 1991) (orig. proceeding).

Beyond avoiding "cost-intensive discovery" incident to civil litigation, Novartis Br. 48, Novartis fails to explain why it should be entitled to bypass the ordinary appellate process in the underlying case. The "cost or delay of having to go through trial and the appellate process," however, "does *not* make the remedy at law inadequate." *Hooks*, 808 S.W.2d at 60. Otherwise, every denial of every motion to dismiss or plea to the jurisdiction would afford the defendant the right to mandamus. That would take the "extraordinary" out of the "extraordinary circumstances" warranting relief.

The cases Novartis cites (at 48) affording defendants mandamus relief when trial courts had failed to grant Rule 91a motions involved clearly settled caselaw that plainly foreclosed the plaintiffs' claims. *See In re Farmers Tex. Cnty. Mut. Ins. Co.*, 621 S.W.3d 261, 267-68 (Tex. 2021) (orig. proceeding) ("[O]ur precedent has consistently recognized a *Stowers* cause of action only when the insured's liability exceeds policy limits. Longoria's claim for Farmers' negligent failure to settle within

25

policy limits has no basis in law."); *In re Essex Ins. Co.*, 450 S.W.3d 524, 527 (Tex. 2014) (orig. proceeding) (per curiam) ("Texas law does not permit Zuniga to sue Essex directly for a declaration of Essex's duty to indemnify SDT before SDT's liability to Zuniga has been determined."); *cf. In re Shire PLC*, 633 S.W.3d 1, 27 (Tex. App.—Texarkana 2021, orig. proceeding) ("Shire is not entitled to mandamus relief in this case because the law it relies upon [for dismissal of relator's *qui tam* action] is clearly not settled by any standard."). In contrast here, this Court has entertained *qui tam* TMFPA actions much like HSG's without ever questioning the constitutionality of the Act. *See*, *e.g.*, *Malouf v. State ex rels. Ellis*, 694 S.W.3d 712, 716 (Tex. 2024). No caselaw forecloses (or even undermines) HSG's TMFPA claims.

## Prayer

The Court should deny Novartis's petition for a writ of mandamus.

Respectfully submitted.

Ken Paxton
Attorney General of Texas

Aaron L. Nielson
Solicitor General

Brent Webster
First Assistant Attorney General

/s/ Evan S. Greene
Evan S. Greene
Assistant Solicitor General
State Bar No. 24068742
Evan.Greene@oag.texas.gov

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Counsel for Real Party in Interest
the State of Texas

26

## Certificate of Compliance

Microsoft Word reports that this document contains 7,561 words, excluding exempted text.

/s/ Evan Greene

Evan Greene

APP380

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below:

Alison Washburn on behalf of Evan Greene
Bar No. 24068742
alison.washburn@oag.texas.gov
Envelope ID: 94528158
Filing Code Description: Brief on the Merits (all briefs)
Filing Description: Brief on the Merits for Real Party in Interest the State of Texas
Status as of 11/20/2024 3:31 PM CST

Associated Case Party: Health Selection Group, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Jonathan Wilkerson | 24050162 | jonathan.wilkerson@lanierlawfirm.com | 11/20/2024 3:27:15 PM | SENT |
| Samuel Baxter | 1938000 | sbaxter@mckoolsmith.com | 11/20/2024 3:27:15 PM | SENT |
| Zeke DeRose | 24057421 | zeke.derose@lanierlawfirm.com | 11/20/2024 3:27:15 PM | SENT |
| Jennifer Truelove | 24012906 | jtruelove@mckoolsmith.com | 11/20/2024 3:27:15 PM | SENT |
| Alex Brown | 24026964 | alex.brown@lanierlawfirm.com | 11/20/2024 3:27:15 PM | SENT |
| Michael Catapano | | mcatapano@mckoolsmith.com | 11/20/2024 3:27:15 PM | SENT |
| Angel Devine | | adevine@mckoolsmith.com | 11/20/2024 3:27:15 PM | SENT |
| Hannah Mirzoeff | | hmirzoeff@mckoolsmith.com | 11/20/2024 3:27:15 PM | SENT |
| joel leach | | jleach@mckoolsmith.com | 11/20/2024 3:27:15 PM | SENT |
| denise lopez | | dlopez@mckoolsmith.com | 11/20/2024 3:27:15 PM | SENT |
| Eric B.Halper | | ehalper@mckoolsmith.com | 11/20/2024 3:27:15 PM | SENT |
| Radu A.Lelutiu | | rlelutiu@mckoolsmith.com | 11/20/2024 3:27:15 PM | SENT |
| W. MarkLanier | | WML@LanierLawFirm.com | 11/20/2024 3:27:15 PM | SENT |

Associated Case Party: State of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Lynne Kurtz-Citrin | 24081425 | lynne.kurtz-citrin@oag.texas.gov | 11/20/2024 3:27:15 PM | SENT |
| Jonathan Bonilla | 24073939 | Jonathan.Bonilla@oag.texas.gov | 11/20/2024 3:27:15 PM | SENT |
| Jordan Underhill | 24102586 | jordan.underhill@oag.texas.gov | 11/20/2024 3:27:15 PM | SENT |
| Evan Greene | | evan.greene@oag.texas.gov | 11/20/2024 3:27:15 PM | SENT |
| Mary JoToupin | | MaryJo.Toupin@oag.texas.gov | 11/20/2024 3:27:15 PM | SENT |
| Janice Garrett | | Janice.Garrett@oag.texas.gov | 11/20/2024 3:27:15 PM | SENT |

Associated Case Party: Novartis Pharmaceuticals Corporation

APP381

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below:

Alison Washburn on behalf of Evan Greene
Bar No. 24068742
alison.washburn@oag.texas.gov
Envelope ID: 94528158
Filing Code Description: Brief on the Merits (all briefs)
Filing Description: Brief on the Merits for Real Party in Interest the State of Texas
Status as of 11/20/2024 3:31 PM CST

Associated Case Party: Novartis Pharmaceuticals Corporation

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Meredith N.Garagiola | | mgaragiola@omm.com | 11/20/2024 3:27:15 PM | SENT |
| Danny S.Ashby | | dashby@omm.com | 11/20/2024 3:27:15 PM | SENT |
| Ross Galin | | rgalin@omm.com | 11/20/2024 3:27:15 PM | SENT |
| Anton Metlitsky | | ametlitsky@omm.com | 11/20/2024 3:27:15 PM | SENT |
| Deron R.Dacus | | ddacus@dacusfirm.com | 11/20/2024 3:27:15 PM | SENT |
| Joshua Goode | | jgoode@omm.com | 11/20/2024 3:27:15 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Alison Washburn | | alison.washburn@oag.texas.gov | 11/20/2024 3:27:15 PM | SENT |

**APP382**

FILED
24-0239
12/19/2024 3:18 PM
tex-95519035
SUPREME COURT OF TEXAS
BLAKE A. HAWTHORNE, CLERK

No. 24-0239

# In the Supreme Court of Texas

—————————————

IN RE NOVARTIS PHARMACEUTICALS CORPORATION,
*Relator.*

—————————————

On Petition for Writ of Mandamus
to the 71st Judicial District Court, Harrison County

———————————————————————

**BRIEF OF *AMICUS CURIAE* PHARMACEUTICAL RESEARCH
AND MANUFACTURERS OF AMERICA IN SUPPORT OF
RELATOR NOVARTIS PHARMACEUTICAL CORPORATION**

———————————————————————

PHILLIP M. AURENTZ
CHELSEA A. PRIEST
SIDLEY AUSTIN LLP
2021 McKinney Ave.
Suite 2000
Dallas, Texas 75201
Tel: (214) 981-3300
Fax: (214) 981-3400

SCOTT D. STEIN*
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois 60603
Tel: (312) 853-7000
Fax: (312) 853-7036
sstein@sidley.com

* *Pro hac vice*

KWAKU A. AKOWUAH*
JOSHUA J. FOUGERE*
CODY M. AKINS
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, D.C. 20005
Tel.: (202) 736-8000
Fax: (202) 736-8711
kakowuah@sidley.com

*Counsel for Amicus Curiae*

December 19, 2024

# IDENTITY OF PARTIES, *AMICUS CURIAE*, AND COUNSEL

The parties and their counsel are correctly identified in the parties' briefs on the merits. This brief is written on behalf of *amicus curiae* Pharmaceutical Research and Manufacturers of America (PhRMA). No counsel for a party in this case authored this brief in whole or in part. No person or entity—other than PhRMA, its members, or its counsel—made monetary contributions specifically for the preparation or submission of this brief.

PhRMA is represented by the following counsel:

Phillip M. Aurentz
Chelsea A. Priest
Sidley Austin LLP
2021 McKinney Ave.
Suite 2000
Dallas, Texas 75201

Scott D. Stein
Sidley Austin LLP
One South Dearborn
Chicago, Illinois 60603

Kwaku A. Akowuah
Joshua J. Fougere
Cody M. Akins
Sidley Austin LLP
1501 K Street, NW
Washington, D.C. 20005

i

# TABLE OF CONTENTS

IDENTITY OF PARTIES, *AMICUS CURIAE*, AND COUNSEL ..................I

INDEX OF AUTHORITIES ........................................................................ iii

INTEREST OF *AMICUS CURIAE* .............................................................. 1

ARGUMENT ............................................................................................... 2

    I.    The constitutional difficulties inherent in *qui tam* litigation are fatal for uninjured, professional relators like HSG. ...................................................................................... 2

        A.    Uninjured, professional relators do not serve the purposes of *qui tam* statutes. ............................................... 2

        B.    Uninjured, professional relators like HSG do not have standing. ..................................................................... 7

        C.    Separation of powers concerns are sharpened for uninjured professional relators like HSG. ........................ 13

    II.    Abusive *qui tam* litigation brought by professional relators deters beneficial regulatory practices and harms patient care. ..................................................................................... 15

PRAYER ................................................................................................... 19

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

**APP385**

# INDEX OF AUTHORITIES

**Page(s)**

**Cases**

*Agey v. Am. Liberty Pipe Line Co.,*
172 S.W.2d 972 (Tex. 1943) ........................................................ 13

*Andrade v. NAACP of Austin,*
345 S.W.3d 1 (Tex. 2011) ............................................................. 7

*Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.,*
402 U.S. 313 (1971) ...................................................................... 16

*United States ex rel. Branch Consultants v. Allstate Ins. Co.,*
560 F.3d 371 (5th Cir. 2009) ........................................................ 4

*Brown v. Todd,*
53 S.W.3d 297 (Tex. 2001) ........................................................... 7

*DaimlerChrysler Corp. v. Inman,*
252 S.W.3d 299 (Tex. 2008) ..................................................... 7, 8

*Dep't of Transp. v. Ass'n of Am. R.R.,*
575 U.S. 43 (2015) ................................................................. 13, 14

*El Paso Elec. Co. v. Texas Dep't of Ins.,*
937 S.W.2d 432 (Tex. 1996) ........................................................ 13

*Farmers Tex. Cnty. Mut. Ins. Co. v. Beasley,*
598 S.W.3d 237 (Tex. 2020) ..................................................... 7, 8

*Fin. Comm'n of Tex. v. Norwood,*
418 S.W.3d 566 (Tex. 2013) ........................................................ 12

*Heckman v. Williamson County,*
369 S.W.3d 137 (Tex. 2012) ............................................ 7, 8, 9, 12

*Hill County v. Sheppard,*
178 S.W.2d 261 (Tex. 1944) ........................................................ 13

iii

*United States ex rel. Holmes v. Northrop Grumman Corp.,*
    642 F. App'x 373 (5th Cir. 2016) ........................................................ 6

*Hughes Aircraft Co. v. United States ex rel. Schumer,*
    520 U.S. 939 (1997) ..................................................................... 14

*Leysock v. Forest Labs., Inc.,*
    2017 WL 1591833 (D. Mass. Apr. 28, 2017) ......................................... 5

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ...................................................................... 7

*M.D. Anderson Cancer Ctr. v. Novak,*
    52 S.W.3d 704 (Tex. 2001) ............................................................. 8

*Maud v. Terrell,*
    200 S.W. 375 (Tex. 1918) ............................................................. 13

*McCleskey v. Kemp,*
    481 U.S. 279 (1987) .................................................................... 14

*Oklahoma v. United States,*
    62 F.4th 221 (6th Cir. 2023) ......................................................... 14

*PPG Indus., Inc. v. JMB/Hous. Ctrs. Partners Ltd. P'ship,*
    146 S.W.3d 79 (Tex. 2004) ........................................................ 9, 10

*In re Tex. House of Reps.,*
    – S.W.3d – (Tex. Nov. 15, 2024). ................................................... 13

*Tex. Med. Res., LLP v. Molina Healthcare of Tex., Inc.,*
    659 S.W.3d 424 (Tex. 2023) ........................................................... 9

*TransUnion LLC v. Ramirez,*
    141 S. Ct. 2190 (2021) ................................................................... 8

*United States v. Eli Lilly & Co.,*
    4 F.4th 255 (5th Cir. 2021) ...................................................... 15, 16

*United States v. Quest Diagnostics Inc.,*
    734 F.3d 154 (2d Cir. 2013) ............................................................ 6

iv

*United States v. Smith,*
   55 F.3d 157 (4th Cir. 1995).................................................................13

*United States v. Students Challenging Regul. Agency Procs.,*
   412 U.S. 669 (1973) ......................................................................... 8

*United States v. UCB, Inc.,*
   970 F.3d 835 (7th Cir. 2020)................................................... 4, 15, 17

*Vt. Agency of Nat. Res. v. United States ex rel. Stevens,*
   529 U.S. 765 (2000) ...........................................................9, 10, 11

*Walburn v. Lockheed Martin Corp.,*
   431 F.3d 966 (6th Cir. 2005) ............................................................ 6

*Wang v. FMC Corp.,*
   975 F.2d 1412 (9th Cir. 1982)........................................................... 2

*In re Xerox Corp.,*
   555 S.W.3d 518 (Tex. 2018) ........................................ 3, 4, 9, 10, 17

**Statutes and Constitution**

Tex. Const. art. I, § 8 ......................................................................12

Tex. Const. art. V, § 3(a).................................................................12

Tex. Bus. & Com. Code § 17.46(b).................................................10

Tex. Hum. Res. Code § 36.002.......................................................10

Tex. Hum. Res. Code § 36.052(c)..................................................... 6

Tex. Hum. Res. Code § 36.101(a) ..................................................11

Tex. Hum. Res. Code § 36.113(b) .................................................... 3

Tex. Hum. Res. Code § 36.115......................................................3, 6

**APP388**

**Scholarly Authorities**

Dayna Bowen Matthew, *The Moral Hazard Problem with Privatization of Public Enforcement: The Case of Pharmaceutical Fraud,*
40 U. Mich. J.L. Reform 281 (2007) ..................................................17

M. Gilles, *Representational Standing: U.S. ex rel. Stevens and the Future of Public Law Litigation,*
89 Cal. L. Rev. 315 (2001).................................................................11

Tammy W. Cowart et al., *Carrots and Sticks of Whistleblowing: What Classification Trees Say about False Claims Act Lawsuits,*
17 ALSB J. Emp. & Lab. L. 1 (2019)..................................................17

**Other Authorities**

J.C. Herz, *Medicare Scammers Steal $60 Billion a Year. This Man Is Hunting Them,* Wired (Mar. 7, 2016),
tinyurl.com/ycxr2mh5.........................................................................5

## INTEREST OF *AMICUS CURIAE*

The Pharmaceutical Research and Manufacturers of America (PhRMA) is a voluntary, nonprofit association representing the country's leading research-based pharmaceutical and biotechnology companies. PhRMA's mission is to advocate public policies encouraging innovation in life-saving and life-enhancing new medicines. PhRMA's members strive to develop cutting-edge medicines, treatments, and vaccines that save, extend, and improve the lives of countless Americans. Since 2000, PhRMA's members have invested more than $1 trillion in the search for new treatments and cures.

PhRMA members proudly provide these medicines to low-income individuals by participating in various state and federal healthcare programs, including the Texas Medicaid program. Unfortunately, that participation also means that PhRMA's members are far too frequently the target of *qui tam* suits brought by uninjured and self-interested private plaintiffs. In some instances, relators rightly identify fraud and abuse in the healthcare sector. But increasingly, uninjured, professional relators seek only to squeeze a payday out of conduct that everyone else, including government regulators, thinks is not only lawful but beneficial to the healthcare system.

1

Those abuses should no longer be tolerated. While *qui tam* litigation has long tested constitutional boundaries, it surpasses those boundaries when left in the hands of uninjured, professional relators.

## ARGUMENT

**I.** **The constitutional difficulties inherent in *qui tam* litigation are fatal for uninjured, professional relators like HSG.**

*Qui tam* statutes already live on the constitutional edge. They purport to confer the government's extraordinary power to enforce the laws on unelected and unaccountable private parties. When *qui tam* statutes work as intended—encouraging true insiders to come forward—their unique features can at least serve a legitimate public goal. But in the hands of uninjured, professional relators whose only aim is to skim a return from companies' earnings, *qui tam* suits not only become a nuisance to legitimate and beneficial activity, but the constitutional difficulties of *qui tam* litigation become fatal.

**A.** **Uninjured, professional relators do not serve the purposes of *qui tam* statutes.**

**1.** *Qui tam* statutes are designed to incentivize insider whistleblowers and victims of unlawful schemes to come forward with information the government could not likely discover on its own. As one court put it, the "paradigm *qui tam* plaintiff" is "the 'whistleblowing insider.'" *Wang v. FMC Corp.*,

2

975 F.2d 1412, 1419 (9th Cir. 1982). The same is true under the Texas Medicaid Fraud Prevention Act (TMFPA): "To ferret out information about fraudulent activities, the TMFPA … coaxes wrongdoers to divulge potentially incriminating information." *In re Xerox Corp.*, 555 S.W.3d 518, 536 (Tex. 2018).

Many of the TMFPA's provisions are uniquely geared to encouraging insiders and victims to make "prompt, voluntary disclosure" of wrongdoing. *Id.* at 526. The law provides whistleblowers with protection against retaliation. Tex. Hum. Res. Code § 36.115. And whereas fraudsters who fail to come forward are subject to "substantial monetary consequences" and "onerous administrative sanctions," *Xerox*, 555 S.W.3d at 525, an insider who reports fraud cannot be liable for more than "two times the amount of the unlawfully procured payment, meaning monetary exposure … could be zero." *Id.* at 526 (citing Tex. Hum. Res. Code § 36.052(c)).

By the same token, the TMFPA seeks to incentivize reporting of otherwise undetectable misconduct. The statute generally bars *qui tam* suits based on information that has been "publicly disclosed." Tex. Hum. Res. Code § 36.113(b). But there is an exception: if the person bringing the action previously disclosed the information to the State or "has knowledge that is independent of and materially adds to the publicly disclosed" information, he

3

may sue. *Id.* This public-disclosure bar and its exception, like the corresponding provisions in the federal False Claims Act, reflects "the notion that a *qui tam* suit does not benefit the Government if the information about the fraud is already publicly known, unless the plaintiff is an original source." *United States ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371, 381 (5th Cir. 2009). Through and through, the TMFPA reflects a "strong public policy of encouraging insiders and whistleblowers to come forward." *Xerox*, 555 S.W.3d at 538.

**2.** Professional relators are neither. Take the plaintiff here, Health Selection Group, LLC (HSG). It certainly is not a whistleblower; it is not, for example, a former employee of Novartis or one of its contractors or customers. Rather, HSG is a "stand-alone LLC[ ]" formed solely for the purpose of filing this *qui tam* action. *See* Ex. A to Decl. of Brian J. McCabe in Support of the United States' Mot. to Dismiss, *U.S. ex rel. Health Choice All., LLC v. Eli Lilly & Co.*, No. 5:17-cv-123, ECF No. 192-1 (E.D. Tex.); *see also United States v. UCB, Inc.*, 970 F.3d 835, 839 (7th Cir. 2020) (describing a set of entities "formed … for the single purpose of prosecuting a separate qui tam action").

4

Nor are HSG's allegations based on knowledge it gained as an insider or victim of the alleged scheme. HSG's parent company, National Healthcare Analysis Group (NHCAG), was founded when one of its principals and his "Wall Street" "angel investor" saw "a massive business opportunity" in combing publicly available Medicare and Medicaid data for potential *qui tam* cases. J.C. Herz, *Medicare Scammers Steal $60 Billion a Year. This Man Is Hunting Them*, Wired (Mar. 7, 2016), tinyurl.com/ycxr2mh5. The only "inside" information NHCAG has is what it extracts under "false pretenses" from "potential informants" it identifies in its "database of 70,000 health care workers and their employment histories, scraped and extracted from publicly available sources." *Id.*; United States' Mot. to Dismiss at 5–6, *U.S. ex rel. Health Choice Alliance, LLC v. Eli Lilly & Co.*, No. 5:17-cv-123, ECF No. 192 (E.D. Tex.).

HSG is not alone in resorting to such tactics to try to make up for a lack of personal knowledge. A federal court in Massachusetts concluded that a relator's team of lawyers "devised and implemented an elaborate scheme of misrepresentation and deceit under the guise of a legitimate medical research study … solely for the purpose of ensuring that the complaint survived a motion to dismiss." *Leysock v. Forest Labs., Inc.*, 2017 WL 1591833,

at \*12–13 (D. Mass. Apr. 28, 2017). The U.S. Court of Appeals for the Second Circuit held that a company's former general counsel violated the ethical rule against "side-switching" when he used confidential information to bring a *qui tam* action against his former employer. *United States v. Quest Diagnostics Inc.*, 734 F.3d 154, 157–58, 161 (2d Cir. 2013). And, closer to home, the Fifth Circuit dismissed a *qui tam* claim brought by an attorney looking to cash in on confidential information he had obtained in separate litigation. *United States ex rel. Holmes v. Northrop Grumman Corp.*, 642 F. App'x 373, 375–76 (5th Cir. 2016).

**3.** The point of all this is not simply that uninjured, professional relators like HSG upset the legislative balance between incentivizing whistleblowers and "discourag[ing] opportunistic plaintiffs from bringing parasitic lawsuits." *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 970 (6th Cir. 2005). They undoubtedly do.

But uninjured, professional relators like HSG also sharpen the constitutional difficulties long associated with *qui tam* litigation. Professional relators are not bringing *qui tam* suits in an effort to recover for their own losses, *cf.* Tex. Hum. Res. Code § 36.115, or to limit their own liability, *see id.* § 36.052(c). Their overwhelming aim is a pay day—potentially a hefty one.

6

That goal leads professional relators to press sweeping legal theories and flimsy factual allegations without regard for collateral consequences and in a way fundamentally inconsistent with core constitutional limits.

**B.    Uninjured, professional relators like HSG do not have standing.**

**1.** "Standing is a constitutional prerequisite to suit." *Heckman v. Williamson County*, 369 S.W.3d 137, 150 (Tex. 2012). To establish standing in Texas, the plaintiff's injury must be "persona[l]," "concrete and particularized," and "actual or imminent, not hypothetical." *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304–05 (Tex. 2008).

Two characteristics of that test are particularly pertinent here. First, a plaintiff's generalized grievance with a bare legal violation is neither "concrete" nor "particularized." *See Andrade v. NAACP of Austin*, 345 S.W.3d 1, 8 (Tex. 2011); *accord Lujan v. Defs. of Wildlife*, 504 U.S. 555, 573–75 (1992). That is true whether the violator is a governmental entity, *e.g.*, *Brown v. Todd*, 53 S.W.3d 297, 302 (Tex. 2001) (mayor), or a private one, *e.g.*, *Farmers Tex. Cnty. Mut. Ins. Co. v. Beasley*, 598 S.W.3d 237, 238 (Tex. 2020) (insurer).

Second, the plaintiff must be "*personally* injured." *Heckman*, 369 S.W.3d at 155. A plaintiff cannot open the courthouse door by pointing to someone else's harm. That is why, for example, a class action must be

7

dismissed for lack of standing when the named plaintiff is not injured, even if other class members indisputably are. *M.D. Anderson Cancer Ctr. v. Novak*, 52 S.W.3d 704, 710 (Tex. 2001).

Demanding that plaintiffs demonstrate a personal and particularized injury "prevents the judicial process from becoming no more than a vehicle for the vindication of the value interests of concerned bystanders." *United States v. Students Challenging Regul. Agency Procs.*, 412 U.S. 669, 687 (1973). And in that way, it ultimately reflects "the Texas Constitution's separation of powers among the departments of government, which denies the judiciary authority to decide issues in the abstract." *DaimlerChrysler*, 252 S.W.3d at 304.

**2.** HSG fails the standing test at the first question. It does not allege that it is "*personally* injured." *Heckman*, 369 S.W.3d at 155. Nor could it: HSG had nothing to do with the alleged wrongful conduct and did not even *exist* when that conduct occurred. HSG, to be sure, alleges that "Novartis defrauded the State's Medicaid program." HSG Br. 14. But that is just an allegation that Novartis broke the law; it cannot confer standing any more than the bare allegation that the defendant breached a contract, *see Farmers*, 598 S.W.3d at 241–43; *see also TransUnion LLC v. Ramirez*, 141 S. Ct.

8

2190, 2205 (2021) ("[A]n injury in law is not an injury in fact."). HSG asserts, too, that the State of Texas was injured (financially) by Novartis's alleged conduct. *See* HSG Br. 14. But HSG cannot "borrow" an injury from Texas any more than a class representative can "'borrow' standing from the class." *Heckman*, 369 S.W.3d at 153–54. Applying settled tenets of Texas standing doctrine, the straightforward conclusion is that HSG has no injury, so HSG has no standing.

**3.** *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765 (2000), does not change that conclusion. *Stevens* held that a relator under the federal False Claims Act "has standing to assert the injury in fact suffered by the assignor" because the relator is effectively "the assignee" of "the Government's damages claim." *Id.* at 773. The problem for HSG is that "a TMFPA civil-remedy action is not an action for recovery of damages." *Xerox*, 555 S.W.3d at 526 (cleaned up).

That distinction matters. This Court has long recognized that not "*all*" legal claims are assignable. *PPG Indus., Inc. v. JMB/Hous. Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 87 (Tex. 2004). In particular, claims that "are personal and punitive rather than property-based and remedial" may not be assigned. *Tex. Med. Res., LLP v. Molina Healthcare of Tex., Inc.*, 659 S.W.3d

9

424, 439 (Tex. 2023). A claim under the Deceptive Trade Practices Act, for example, cannot be assigned because there is a "'personal' aspect in being 'duped'" and a "punitive rather than remedial" goal in allowing treble damages. *PPG Indus.*, 146 S.W.3d at 89. The same is true of a TMFPA claim. Each of the statute's "unlawful act[s]" describes an instance of the State personally being "duped," just as in the DTPA. *Compare* Tex. Hum. Res. Code § 36.002, *with* Tex. Bus. & Com. Code § 17.46(b). And the TMFPA's remedies, whether viewed as a whole or individually, are "undeniably punitive." *Xerox*, 555 S.W.3d at 527.

It does not matter that the Legislature has purported to assign to a relator this unassignable claim. The "personal" and "punitive" nature of a TMFPA claim vested in the State reveals that the only injury the State seeks to redress is the one to its "sovereignty arising from violation of its laws." *Stevens*, 529 U.S. at 771. Texas need not even suffer a proprietary "pocketbook injury" to prove a violation of the TMFPA claim. *See Xerox*, 555 S.W.3d at 530, 533–34; *contra* State Br. 14. The TMFPA's goal is therefore not to remedy a loss but to punish a violation of the law. *Xerox*, 555 S.W.3d at 533. And legislative assignment or not, vindicating that kind of innately sovereign interest cannot be delegated to a private party. *See* M. Gilles,

10

*Representational Standing: U.S. ex rel. Stevens and the Future of Public Law Litigation*, 89 Cal. L. Rev. 315, 341–45 (2001).

**4.** HSG also offers a grab bag of assorted additional theories in an effort to try to manufacture standing where there is none. This backfires. The sheer number of throw-everything-at-the-wall theories spotlights the simple fact that as an uninjured party, HSG lacks standing.

Take HSG's claim that it can sue as the State's representative, like a "next friend" of a minor child or an executor of a deceased's estate. HSG Br. 29–32. This theory boils down to the assertion that HSG is simply the State's agent, and that (as HSG admits) a "relator's award" is simply "payment for its services" as an agent. HSG Br. 28. *Stevens* quickly disposed of that very same argument, and rightly so: Unlike a party's attorney or guardian, a *qui tam* relator "himself" has an "an interest *in the lawsuit*, and not merely the right to retain a fee out of the recovery." 529 U.S. at 772; *see* Tex. Hum. Res. Code § 36.101(a) ("A person may bring a civil action for a violation of Section 36.002 *for the person* and for the state." (emphasis added)).

HSG's other theories can be dismissed just as quickly. It asserts that it need not have an injury because the TMFPA grants relators a cause of action. HSG Br. 32–33. But standing is a constitutional limit on Texas courts'

11

jurisdiction, *Heckman*, 369 S.W.3d at 150; it may not be abrogated by statute any more than the Legislature could decree this Court to have the final word in criminal cases, *see* Tex. Const. art. V, § 3(a) (this Court's "determinations shall be final except in criminal law matters").

HSG relatedly contends that the normal constitutional standing rules do not apply here because Article III, section 51-a grants the Legislature authority to "enact such laws as may be necessary" to obtain federal Medicaid matching funds. HSG Br. 11–13. But section 51-a can hardly be read as a blank check for the Legislature to ignore the Texas Constitution. Just as it does not, for example, authorize the Legislature to pursue federal matching funds by muzzling critics of Medicaid laws, Tex. Const. art. I, § 8, or by blessing warrantless searches of Medicaid recipients, *id.* art. I., § 9, it does not empower the Legislature to exceed constitutional limits on Texas courts' jurisdiction. *See Fin. Comm'n of Tex. v. Norwood*, 418 S.W.3d 566, 582 n.83 (Tex. 2013) ("[C]ourts' constitutional jurisdiction cannot be enlarged by statute.").

\* \* \*

12

The upshot is that HSG suffered no injury, and neither *Stevens* nor HSG's assortment of other theories can save it from that fact. It therefore lacks standing.

### C. Separation of powers concerns are sharpened in cases brought by uninjured professional relators like HSG.

**1.** The Texas Constitution "carefully apportions the duties of representing the State in district and inferior courts" among various "constitutional officers." *Hill County v. Sheppard*, 178 S.W.2d 261, 264 (Tex. 1944). The Legislature may not reallocate that authority to other government officers, *El Paso Elec. Co. v. Texas Dep't of Ins.*, 937 S.W.2d 432, 439 (Tex. 1996), or to private parties, *Agey v. Am. Liberty Pipe Line Co.*, 172 S.W.2d 972, 974 (Tex. 1943). *See also Maud v. Terrell*, 200 S.W. 375, 376 (Tex. 1918).

The Constitution's exclusive allocation of prosecutorial authority in State attorneys is not some empty technicality. Like all separation-of-powers principles, this assignment is an essential safeguard of individual liberty. *See, e.g., In re Tex. House of Reps.*, – S.W.3d –, slip op. at 22 (Tex. Nov. 15, 2024); *see also Dep't of Transp. v. Ass'n of Am. R.R.*, 575 U.S. 43, 61 (2015) (Alito, J., concurring) ("The principle that Congress cannot delegate away its vested powers exists to protect liberty."). The Constitution thus vests the State's awesome power to prosecute—including the decision *not* to

APP402

prosecute—in the hands of State officials who serve both the people and the ends of justice. *Cf. United States v. Smith*, 55 F.3d 157, 160 (4th Cir. 1995) ("[I]t is the duty of the United States Attorney not simply to prosecute but to do justice.").

**2.** Delegating prosecutorial authority to private relators "dash[es] the whole scheme." *Dep't of Transp.*, 575 U.S. at 61. Professional relators like HSG (who have no ties to the State of Texas or its residents) are "motivated" not by "the public good" but "by prospects of monetary reward." *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 949 (1997). Lacking any responsibility for pursuing the public good, profiteering relators cannot seriously be expected to conscientiously exercise the kind of public-minded "prosecutorial discretion" American law has long considered part of providing "individualized justice." *McCleskey v. Kemp*, 481 U.S. 279, 311–12 (1987). Nor can they be held accountable to the people: Transferring governmental power "to a private entity that is not elected, nominated, removable, or impeachable undercuts representative government at every turn." *Oklahoma v. United States*, 62 F.4th 221, 228 (6th Cir. 2023), *cert. denied*, 144 S. Ct. 2679 (2024).

14

## II. Abusive *qui tam* litigation brought by professional relators deters beneficial regulatory practices and harms patient care.

This case demonstrates the dangers of vesting the State's prosecutorial power in an uninjured, professional relator whose only skin in the game is a return on investment. Left unchecked, suits like this one will allow self-interested private entities to countermand the policy judgments of the State's and country's elected officials, all to the detriment of the healthcare system.

**1.** This case is part of a string of nearly identical cases brought by NHCAG affiliates against dozens of pharmaceutical companies across the country. *See United States v. Eli Lilly & Co.*, 4 F.4th 255, 259 & n.1 (5th Cir. 2021) (collecting cases). In each case, a for-profit NHCAG affiliate alleged that the company violated federal law by providing free patient education programs about the company's drugs. That profit-motivated litigation theory was itself completely incompatible with federal law: "[A]cross nine cited agency guidances, advisory opinions, and final rulemakings," federal officials had "consistently held" that patient support services like these are "[n]ot only lawful, but beneficial to patients and the public." *UCB, Inc.*, 970 F.3d at 852; *see also Eli Lilly*, 4 F.4th at 268 (similar).

15

NHCAG did not heed the government's considered decision that these lawsuits actually "undermine practices that benefit federal healthcare programs." *Eli Lilly*, 4 F.4th at 267. When the government sought to dismiss NHCAG's cases to protect the public interest, NHCAG fought dismissal tooth-and-nail. It even called the government's dismissal request a "policy of Executive Branch nullification of binding statutory authority," Br. of Appellants, *United States v. Eli Lilly & Co.,* 4 F.4th 255 (5th Cir. 2021) (No. 19-40906), 2020 WL 231331 at 52—a startling assertion given the conclusion from the Branch vested with enforcing the laws that the defendants' conduct was perfectly lawful. Perhaps NHCAG's resistance should have come as no surprise—it was frank that it had a significant "property interest" (money) on the line. *Eli Lilly*, 4 F.4th at 267. But, appropriately, the federal courts respected the views of a coordinate branch of government more than NHCAG and dismissed its suits across the board. *See id.* at 259 & n.1.

Undeterred, HSG brought this case in a transparent attempt to obtain the same pay day it couldn't get in federal court. Its allegations concern the very same conduct that the federal government has concluded is "not only beneficial but also lawful." *Id.* at 268. Texas apparently does not disagree. It

16

declined to intervene in HSG's suit, and it has studiously avoided taking a position on the merits of HSG's claims in this Court.

As the United States Supreme Court once remarked, repeat filer conduct like HSG's reflects "the aura of the gaming table," rather than a serious effort to pursue a justified claim. *See Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 329 (1971). This Court should not permit HSG— an "investment vehicl[e] for financial speculators" to "indiscriminately advance claims on behalf of the government against an entire industry that would undermine practices the federal government has determined are appropriate and beneficial to federal healthcare programs and their beneficiaries." *UCB, Inc.*, 970 F.3d at 852 (cleaned up).

**2.** Even when it does not expressly contradict public policy, frivolous *qui tam* litigation distracts the biopharmaceutical industry from developing lifesaving treatments. As regular participants in government healthcare programs, pharmaceutical companies are a frequent target for profiteering relators. At the federal level, a statistical analysis of unsealed False Claims Act settlements between 2004 and 2014 revealed that pharmaceutical companies are the most likely of any industry to have *qui tam* settlements exceeding $10 million. Tammy W. Cowart et al., *Carrots and Sticks of*

17

*Whistleblowing: What Classification Trees Say about False Claims Act Lawsuits*, 17 ALSB J. Emp. & Lab. L. 1, 13, 15 (2019). As in the federal context, the prospect of "substantial monetary consequences" and "death-penalty administrative sanctions" in Texas, *Xerox*, 555 S.W.3d  at 525–26, creates massive pressure to settle even unmeritorious claims, *see* Dayna Bowen Matthew*, The Moral Hazard Problem with Privatization of Public Enforcement: The Case of Pharmaceutical Fraud*, 40 U. Mich. J.L. Reform 281, 314 (2007) (observing this trend in federal False Claims Act litigation).

Biopharmaceutical companies offer lifesaving treatment and care. These treatments often are available to the public through State and federal healthcare programs, and the government has a clear interest in ensuring that such treatments remain available. Unmeritorious and burdensome FCA litigation interferes with that mission by discouraging programs that facilitate individual access to biopharmaceutical innovations and diverting time and resources away from the development of live-saving and life-improving drugs.

18

**PRAYER**

This Court should issue a writ of mandamus directing the district court to dismiss HSG's claims brought under the *qui tam* provisions of the TMFPA.

December 19, 2024

Respectfully submitted,

/s/ *Phillip M. Aurentz*

PHILLIP M. AURENTZ
CHELSEA A. PRIEST
SIDLEY AUSTIN LLP
2021 McKinney Ave.
Suite 2000
Dallas, Texas 75201
Tel: (214) 981-3300
Fax: (214) 981-3400

SCOTT D. STEIN
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois 60603
Tel: (312) 853-7000
Fax: (312) 853-7036
sstein@sidley.com

KWAKU A. AKOWUAH
JOSHUA J. FOUGERE
CODY M. AKINS
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, D.C. 20005
Tel.: (202) 736-8000
Fax: (202) 736-8711
kakowuah@sidley.com

*Counsel for Amicus Curiae*

19

# CERTIFICATE OF COMPLIANCE

I certify that this brief contains 3,750 words as reported by Microsoft Word.

/s/ *Phillip M. Aurentz*
Phillip M. Aurentz

December 19, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on December 19, 2024, I caused the foregoing brief to be served on counsel of record for all parties through electronic service via www.efiletexas.gov.

/s/ *Phillip M. Aurentz*
Phillip M. Aurentz

December 19, 2024

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below:

Azalea Lopez on behalf of Phillip Aurentz
Bar No. 24059404
azalea.lopez@sidley.com
Envelope ID: 95519035
Filing Code Description: Amicus Brief
Filing Description: Brief Of Amicus Curiae Pharmaceutical Research And Manufacturers Of America In Support Of Relator Novartis Pharmaceutical Corporation
Status as of 12/19/2024 3:24 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jonathan Wilkerson | 24050162 | jonathan.wilkerson@lanierlawfirm.com | 12/19/2024 3:18:01 PM | SENT |
| Samuel Baxter | 1938000 | sbaxter@mckoolsmith.com | 12/19/2024 3:18:01 PM | SENT |
| Zeke DeRose | 24057421 | zeke.derose@lanierlawfirm.com | 12/19/2024 3:18:01 PM | SENT |
| Jennifer Truelove | 24012906 | jtruelove@mckoolsmith.com | 12/19/2024 3:18:01 PM | SENT |
| Alex Brown | 24026964 | alex.brown@lanierlawfirm.com | 12/19/2024 3:18:01 PM | SENT |
| Lynne Kurtz-Citrin | 24081425 | lynne.kurtz-citrin@oag.texas.gov | 12/19/2024 3:18:01 PM | SENT |
| Jonathan Bonilla | 24073939 | Jonathan.Bonilla@oag.texas.gov | 12/19/2024 3:18:01 PM | SENT |
| Jordan Underhill | 24102586 | jordan.underhill@oag.texas.gov | 12/19/2024 3:18:01 PM | SENT |
| Evan Greene | | evan.greene@oag.texas.gov | 12/19/2024 3:18:01 PM | SENT |
| Diane Padilla | | dpadilla@sidley.com | 12/19/2024 3:18:01 PM | SENT |
| Meredith N.Garagiola | | mgaragiola@omm.com | 12/19/2024 3:18:01 PM | SENT |
| Phillip M.Aurentz | | paurentz@sidley.com | 12/19/2024 3:18:01 PM | SENT |
| Chelsea A.Priest | | cpriest@sidley.com | 12/19/2024 3:18:01 PM | SENT |
| Danny S.Ashby | | dashby@omm.com | 12/19/2024 3:18:01 PM | SENT |
| Ross Galin | | rgalin@omm.com | 12/19/2024 3:18:01 PM | SENT |
| Deron R.Dacus | | ddacus@dacusfirm.com | 12/19/2024 3:18:01 PM | SENT |
| Eric B.Halper | | ehalper@mckoolsmith.com | 12/19/2024 3:18:01 PM | SENT |
| Radu A.Lelutiu | | rlelutiu@mckoolsmith.com | 12/19/2024 3:18:01 PM | SENT |
| W. MarkLanier | | WML@LanierLawFirm.com | 12/19/2024 3:18:01 PM | SENT |
| Joshua Goode | | jgoode@omm.com | 12/19/2024 3:18:01 PM | SENT |
| joel leach | | jleach@mckoolsmith.com | 12/19/2024 3:18:01 PM | SENT |
| denise lopez | | dlopez@mckoolsmith.com | 12/19/2024 3:18:01 PM | SENT |

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below:

Azalea Lopez on behalf of Phillip Aurentz
Bar No. 24059404
azalea.lopez@sidley.com
Envelope ID: 95519035
Filing Code Description: Amicus Brief
Filing Description: Brief Of Amicus Curiae Pharmaceutical Research And Manufacturers Of America In Support Of Relator Novartis Pharmaceutical Corporation
Status as of 12/19/2024 3:24 PM CST

Case Contacts

| | | | | |
|---|---|---|---|---|
| denise lopez | | dlopez@mckoolsmith.com | 12/19/2024 3:18:01 PM | SENT |
| Mary JoToupin | | MaryJo.Toupin@oag.texas.gov | 12/19/2024 3:18:01 PM | SENT |
| Janice Garrett | | Janice.Garrett@oag.texas.gov | 12/19/2024 3:18:01 PM | SENT |
| Alison Washburn | | alison.washburn@oag.texas.gov | 12/19/2024 3:18:01 PM | SENT |
| Michael Catapano | | mcatapano@mckoolsmith.com | 12/19/2024 3:18:01 PM | SENT |
| Angel Devine | | adevine@mckoolsmith.com | 12/19/2024 3:18:01 PM | SENT |
| Hannah Mirzoeff | | hmirzoeff@mckoolsmith.com | 12/19/2024 3:18:01 PM | SENT |
| Anton Metlitsky | | ametlitsky@omm.com | 12/19/2024 3:18:01 PM | SENT |

FILED
24-0239
12/20/2024 3:46 PM
tex-95567794
SUPREME COURT OF TEXAS
BLAKE A. HAWTHORNE, CLERK

No. 24-0239

# IN THE SUPREME COURT OF TEXAS

IN RE NOVARTIS PHARMACEUTICALS CORPORATION,
*Relator*.

SIXTH DISTRICT COURT OF APPEALS CASE NO. 06-24-00005-CV,
FROM THE 71ST DISTRICT COURT IN HARRISON COUNTY, TEXAS
CAUSE NO. 23-0276 · THE HONORABLE BRAD MORIN PRESIDING

## RELATOR NOVARTIS PHARMACEUTICALS CORPORATION'S REPLY BRIEF ON THE MERITS

DANNY S. ASHBY
(Texas Bar No. 01370960)
**O'MELVENY & MYERS LLP**
2801 N. Harwood Street, Suite 1600
Dallas, Texas 75201
Telephone: +1 972.360.1900

DERON R. DACUS
(Texas Bar No. 00790553)
**THE DACUS FIRM, P.C.**
821 ESE Loop 323, Suite 430
Tyler, Texas 75701
Telephone: +1 903.705.1117

ANTON METLITSKY
ROSS GALIN
**O'MELVENY & MYERS LLP**
1301 Avenue of the Americas,
 17th Floor
New York, NY 10019
Telephone: +1 212.326.2000
(Admitted *Pro Hac Vice*)

*Counsel for Relator Novartis Pharmaceuticals Corporation*

 COUNSEL PRESS · (213) 680-2300          PRINTED ON RECYCLED PAPER

**APP413**

# TABLE OF CONTENTS

TABLE OF CONTENTS ....................................................................................... i

TABLE OF AUTHORITIES ............................................................................... ii

INTRODUCTION ............................................................................................... 1

ARGUMENT ....................................................................................................... 4

I.    HSG Lacks Standing. ...................................................................... 4

    A.    HSG and Texas's standing-by-assignment theory fails. ....... 4

    B.    Statutory standing does not satisfy or displace constitutional standing principles. ........................................ 10

    C.    Representative-capacity standing has no application here. ..................................................................................... 12

II.    The TMFPA Violates The Separation Of Powers. ................... 14

    A.    Under this Court's case law, State attorneys must control State litigation. ........................................................ 15

    B.    The TMFPA permits private attorneys to control State litigation. ................................................................. 20

III.    HSG's Novel Section 51-a and Medicaid Act Arguments Are Unavailing. ........................................................................... 28

IV.    Mandamus Relief Is Warranted. .............................................. 30

CONCLUSION AND PRAYER ......................................................................... 32

CERTIFICATE OF COMPLIANCE ................................................................. 34

CERTIFICATE OF SERVICE ......................................................................... 35

i

# TABLE OF AUTHORITIES

## Cases

*Agey v. American Liberty Pipe Line Co.*,
172 S.W.2d 972 (Tex. 1943)............................................... 16, 18, 20, 22

*Am. Liberty Pipe Line Co. v. Agey*,
167 S.W.2d 580 (Tex. App.—Austin 1942, judgment affirmed) .......... 18

*Brown v. De La Cruz*,
156 S.W.3d 560 (Tex. 2004)................................................................26

*Busbee v. Cnty. of Medina*,
681 S.W.3d 391 (Tex. 2023)................................................................11

*Camp v. Gulf Production Co.*,
61 S.W.2d 773 (Tex. 1933)........................................................ *passim*

*El Paso Electric Co. v. Texas Department of Insurance*,
937 S.W.2d 432 (Tex. 1996)................................................................19

*Farmers Tex. Cnty. Mut. Ins. Co. v. Beasley*,
598 S.W.3d 237 (Tex. 2020)................................................................11

*Flores v. Millennium Interests, Ltd.*,
185 S.W.3d 427 (Tex. 2005)................................................................10

*Heckman v. Williamson Cnty.*,
369 S.W.3d 137 (Tex. 2012)................................................................12

*Hill Country v. Sheppard*,
178 S.W.2d 261 (Tex. 1944)........................................................20, 25

*In re Farmers Tex. Cnty. Mut. Ins. Co.*,
621 S.W.3d 261 (Tex. 2021)................................................................31

*In re Prudential Ins. Co. of Am.*,
148 S.W.3d 124 (Tex. 2004)................................................................31

*In re Xerox Corp.*,
555 S.W.3d 518 (Tex. 2018)....................................................5, 8, 9, 10

**APP415**

*Jurgens v. Martin*,
  631 S.W.3d 385 (Tex. App.—Eastland 2021, mandamus denied).......13

*Maud v. Terrell*,
  200 S.W. 375 (Tex. 1918)........................................................... *passim*

*Moyer v. Moyer*,
  183 S.W.3d 48 (Tex. App.—Austin 2005, no pet.) ...............................13

*Perez v. Turner*,
  653 S.W.3d 191 (Tex. 2022)......................................................12

*Sneed v. Webre*,
  465 S.W.3d 169 (Tex. 2015).......................................................13

*Sprint Communications Co., L.P. v. APCC Services, Inc.*,
  554 U.S. 269 (2008) .................................................................6

*Staples v. State*,
  245 S.W. 639 (Tex. 1922).................................................. 16, 17, 20, 22

*State v. Lloyd*,
  994 S.W.2d 362 (Tex. App.—Waco 1999, no pet.) ................................19

*Tenet Hosps. Ltd. v. Rivera*,
  445 S.W.3d 698 (Tex. 2014)......................................................13

*Texas Boll Weevil Eradication Found., Inc. v. Lewellen*,
  952 S.W.2d 454 (Tex. 1997).......................................................27

*Texas v. Yellen*,
  105 F.4th 755 (5th Cir. 2024)......................................................30

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ..............................................................7, 8

*United States ex rel. Polansky v. Exec. Health Res., Inc.*,
  599 U.S. 419 (2023) ............................................................27, 30

*United States ex rel. Zafirov v. Fla. Med. Assoc., LLC*,
  __ F. Supp. 3d __, 2024 WL 4349242 (M.D. Fla. Sept. 30, 2024) ..27, 30

**APP416**

*Univ. of Tex. Health Sci. Ctr. at San Antonio v. Mata & Bordini, Inc.,*
  2 S.W.3d 312 (Tex. App.—San Antonio 1999, pet. denied) ........... 19, 20

*University of Texas at Arlington v. Bishop,*
  997 S.W.2d 350 (Tex. App.—Fort Worth 1999, pet. denied) ............... 19

*Vermont Agency of Natural Resources v. United States ex rel. Stevens,*
  529 U.S. 765 (2000) ....................................................................... 5, 6, 7

*Willie v. State,*
  2017 WL 3526760 (Tex. App.—Houston Aug. 17, 2017, no writ) ........ 23

## Constitutional Provisions

Tex. Const. art. I, § 6 ................................................................. 29

Tex. Const. art. II, § 1 ................................................................ 29

Tex. Const. art. III, § 10 ............................................................ 29

Tex. Const. art. III, § 51-a(a) .................................................... 29

Tex. Const. art. IV, § 22 ............................................................. 17

Tex. Const. art. V, § 21 .............................................................. 17

## Statutes

31 U.S.C. § 3729(a)(1)(G) .......................................................... 9, 10

42 U.S.C. § 1396h ...................................................................... 29

Tex. Civ. Prac. & Rem. Code § 64.001(a) .................................. 13

Tex. Estates Code § 351.101 ..................................................... 13

Tex. Hum. Res. Code § 36.052(a) ............................................... 9

Tex. Hum. Res. Code § 36.102 ................................................... 21

Tex. Hum. Res. Code § 36.102(e) .............................................. 23

Tex. Hum. Res. Code § 36.104(b) .......................................... *passim*

iv

Tex. Hum. Res. Code § 36.104(b-1) ..........................................................23

Tex. Hum. Res. Code § 36.105..................................................................24

Tex. Hum. Res. Code § 36.108..................................................................23

Tex. Hum. Res. Code § 36.109(a) .............................................................24

**APP418**

## INTRODUCTION

The Texas Medicaid Fraud Prevention Act (TMFPA), unique among Texas statutes, allows *qui tam* relators to sue on behalf of the State in circumstances where the State declines to litigate itself. As Novartis's opening brief explained, that unique legal regime is doubly unconstitutional: The relators have no constitutional standing to sue as to conduct that has not injured them, and they have no constitutional authority to litigate on behalf of the State.

Health Services Group (HSG) and the State of Texas seek to resist these conclusions but fail at every turn. As to the standing issue, they assert a standing-by-assignment theory grounded in a decision concerning the federal False Claims Act. But the federal precedent was predicated on a theory that the government was partially assigning a *damages* action to the relator, whereas this Court has already held that the TMFPA creates only civil penalties, not a damages action. That distinction makes a dispositive difference—the government (like anyone else) can assign a right to seek damages predicated on an invasion of its own proprietary interest, but it cannot assign to a private party the right to vindicate the government's *sovereign* interest. The right to seek

1

civil penalties is uniquely sovereign and thus non-delegable, so the standing-by-assignment theory fails. So do HSG's more eccentric standing arguments, which the State does not join: HSG cannot sue without constitutional standing, and its analogies to guardians ad lidem and the like are inapposite—parties have traditionally been allowed to sue on behalf of another when the beneficiary could not sue himself, but the State of Texas can (and, indeed, must) bring suit to vindicate its own interests.

As to the separation of powers, HSG and the State ignore the decisive language in this Court's precedents. Time and again, this Court has made clear that a State attorney must direct all State litigation in the same manner as if the State attorney brought the suit himself. The TMFPA, which allows a private person to press suits on behalf of the State "without the state's participation," Tex. Hum. Res. Code § 36.104(b), cannot be reconciled with that requirement. The State does not control *qui tam* suits like it does ordinary litigation— instead, the relator may press ahead without the State's approval, and may even litigate motions against the State itself. Neither HSG nor the

2

State can explain how that unprecedented structure comports with the Constitution's requirements.

Perhaps recognizing that settled constitutional law is against it, HSG chooses to open its brief with an argument never before raised in this years-long controversy. It contends that—even if HSG lacks standing, and even if the TMFPA transgresses the separation of powers—the Court should rule in HSG's favor because the Legislature has authority to issue assistance grants to vulnerable populations. That argument is as wrong as it sounds. The Legislature's authority under that provision does not authorize it to erase the separation of powers or to allow suit by uninjured parties—which is surely why the State does not join this eleventh-hour theory. Nor does the State join HSG's catastrophizing predictions that a ruling in Novartis's favor will lead to Texas being deprived of Medicaid Act matching funds—a claim that is neither relevant to this constitutional question nor persuasive as a prognostication.

It is past time to end the *qui tam* attack on the Texas Constitution. This suit cannot proceed because the State declined to bring it. HSG, as an uninjured bounty-hunter, has neither standing nor

3

constitutional authority to press the litigation on the State's behalf. Contrary to HSG's and the State's position, there is no impediment to this Court's grant of mandamus relief here. The Court should thus grant mandamus and order this suit dismissed.

## ARGUMENT

## I.   HSG LACKS STANDING.

As Novartis's opening brief explained, the Texas Constitution allows only individuals who have suffered harm to bring suit in Texas courts. HSG and Texas nevertheless insist that doctrinal exceptions excuse HSG's lack of any personal stake in this controversy—they claim that HSG has standing as Texas's assignee; and, should that route fail, HSG (but not Texas) argues that it has statutory standing, or alternatively, that it can sue in a representative capacity. Each of these arguments fail to cure the threshold jurisdictional defect in this action: HSG has not been injured by Novartis's behavior and so cannot challenge that behavior in court.

### A.   HSG and Texas's standing-by-assignment theory fails.

**1.** HSG and Texas double down on the claim that HSG has standing as the State's assignee under the Supreme Court of the United

4

States' reasoning in *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765 (2000). HSG Br. 14-17; Tex. Br. 11-12. But as Novartis explained, *Stevens*'s logic does not apply to the TMFPA. *See* Novartis Br. 19-22. *Stevens* held that a *qui tam* relator satisfied the federal Article III standing requirements because the False Claims Act "can reasonably be regarded as effecting a partial assignment of the Government's damages claim." 529 U.S. at 773. But this Court has already held that the TMFPA *does not create an assignable claim for damages*. *See* Novartis Br. 19 (citing *In re Xerox Corp.*, 555 S.W.3d 518, 526 (Tex. 2018)). And while that distinction alone should end the inquiry, HSG and the State likewise fail to rebut Novartis's explanation that *Stevens* does not apply for the independent reason that it relied on the "long tradition of *qui tam* actions in England and the American Colonies," 529 U.S. at 773, yet here there is no history of *qui tam* actions that could inform the Texas Constitution's meaning. Novartis Br. 23 n.6, 44-47. For both reasons, HSG and Texas's reliance on *Stevens* fails.

HSG and Texas nevertheless insist that *Stevens*'s reasoning applies to the TMFPA because standing-by-assignment focuses on the

5

assignor's injury rather than its claim for relief. HSG Br. 23; Tex. Br. 12-13. That is incorrect. As Novartis explained, Br. 21, an assignor does not assign an injury; it assigns a c*laim for relief.* That is why *Stevens* says that the False Claims Act can be read to effect a partial assignment of the Government's "damages *claim.*" 529 U.S. at 773; *see id.* ("[T]he assignee of *a claim* has standing to assert the injury in fact suffered by the assignor."). HSG also invokes *Sprint Communications Co., L.P. v. APCC Services, Inc.*, 554 U.S. 269 (2008), for the proposition that the "focus" of standing-by-assignment is injury. But consistent with *Stevens*, the very assignment at issue in *Sprint* transferred the assignor's "claims, demands or causes of action." 554 U.S. at 272.

HSG and the State ignore this clear doctrine, while offering no meaningful response to Novartis's explanation that *Stevens* refers to "damages" for a specific reason: only damages, not civil penalties, are assignable. The State claims that *Stevens* allows private plaintiffs to sue to rectify "the injury to [the United States's] sovereignty arising from violation of its laws." Tex. Br. 13. But its argument misreads *Stevens*, which explained that while FCA violations cause the United States two injuries—"the injury to its sovereignty arising from violation

6

of its laws (which suffices to support a criminal lawsuit by the Government) and the proprietary injury resulting from the alleged fraud"—a False Claims Act *qui tam* relator's standing is as "a *partial* assign[ee] of the Government's *damages* claim," underscoring that *Stevens* did not construe the FCA as assigning to private litigants a claim to vindicate the United States's sovereign interests, such as "criminal lawsuits."  529 U.S. at 771-73 (emphasis added).

HSG, for its part, accuses Novartis of citing no authority holding that the State cannot assign standing to remedy a sovereign interest, HSG Br. 25, but ignores both *Stevens* and *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021): "[T]he public interest that private entities comply with the law cannot be converted into an individual right by a statute that denominates it as such, and that permits all citizens (or, for that matter, a subclass of citizens who suffer no distinctive concrete harm) to sue."  *Id.* at 428-29 (internal quotation marks omitted); *see* Novartis Br. 22; *see also* PhRMA *Amicus* Br. 9-10 (collecting additional cases rejecting assignment of such claims).  While HSG observes that *TransUnion* did not involve a *qui tam* action or an assignment, HSG Br. 26, that objection misses the point.  *TransUnion* underscores that

7

because the TMFPA creates a civil penalties scheme, *not* a civil action to recover damages, *In re Xerox Corp.*, 555 S.W.3d at 526, it cannot grant HSG standing as Texas's assignee. The State's interest in ensuring "that private entities comply with the law"—i.e., it's sovereign, as opposed to proprietary, interest—"cannot be converted into an individual right" just because a statute "denominates it as such." *TransUnion*, 594 U.S. at 428-29.

Lastly, HSG claims that Novartis, by arguing that HSG has no standing by assignment, asks the Court to "veer from its parallel track" with federal principles of Article III standing. HSG Br. 21. But the whole point here is that, as a result of key differences between the federal False Claims Act and the TMFPA, the tracks are not parallel— the federal False Claims Act provides for a damages cause of action, whereas the TMFPA does not. Novartis's argument is simply that this fundamental distinction between the federal and Texas statutes leads to a different result with respect constitutional standing in Texas. *See* Novartis Br. 18-23.

**2.** HSG also makes several arguments that the State does not. Each is wrong.

HSG first argues that this Court should ignore its prior decision construing the TMFPA. HSG insists that *Xerox*—which held that the TMFPA does not authorize damages actions—is irrelevant because it did not "touch on standing." HSG Br. 21-25. But *Xerox* concluded that the TMFPA employs a "penalty scheme" rather than a civil remedy for damages. 555 S.W.3d at 534. As explained above, other precedent makes clear that causes of action for penalties cannot be assigned. Thus, *Xerox* all but resolves the standing question before this Court.

HSG next suggests that the distinction between civil penalties and damages is irrelevant because the False Claims Act and the TMFPA both provide for treble the amount provided as a result of the unlawful conduct. HSG Br. 22. That is just an attempt to relitigate *Xerox*, and in any event misunderstands the statutes at issue. While the TMFPA permits recovery of "two times the amount of the payment or the value of the benefit" provided, Tex. Hum. Res. Code § 36.052(a), the False Claims Act allows recovery of "3 times the amount of *damages which the Government sustains*," 31 U.S.C. § 3729(a)(1)(G) (emphasis added). Tying recovery to the payment or benefit in question is obviously different than tying it to the Government's *damages*. The

9

former is penal, the latter is not. *See, e.g.*, *Flores v. Millennium Interests, Ltd.*, 185 S.W.3d 427, 432-33 (Tex. 2005) (flat fine that bears no relationship to actual harm was penal in nature). And HSG's related argument (HSG Br. 23-24) that *Stevens'*s logic extends to the TMFPA because the FCA has punitive components fails for the same reason: the FCA expressly ties recovery to "damages" the Government sustains, 31 U.S.C. § 3729(a)(1)(G), standing in stark contrast to the recovery permitted by the TMFPA, which—as this Court has explained—"is fixed without regard to any loss to the Medicaid program" and thus constitutes "a penalty." *Xerox*, 555 S.W.3d at 533. *Xerox* was therefore correct to hold that the TMFPA was meaningfully different than the False Claims Act, and such differences lead to a different result as to the standing question relevant here.

### B. Statutory standing does not satisfy or displace constitutional standing principles.

Recognizing the flaws in its standing-by-assignment theory, HSG suggests that even if *Stevens* does not support its standing, the TMFPA grants HSG authority to represent Texas "in its capacity as relator." HSG Br. 28-29. Texas does not press this argument, and for good

10

reason: it is just another way of saying that the TMFPA allows HSG to ignore the rules of constitutional standing.

To its credit, HSG admits that it is "aware of recent opinions" rejecting that argument. HSG Br. 33. While some Texas courts have suggested that parties have "standing" because a statute says they do, that is because "Texas courts often apply the label 'standing' to statutory or prudential considerations that do not implicate subject-matter jurisdiction but rather determine whether a plaintiff falls within the class of persons authorized to sue." *Busbee v. Cnty. of Medina*, 681 S.W.3d 391, 395 (Tex. 2023). By contrast, constitutional standing—which is at issue in this case—"is a component of subject matter jurisdiction," and is thus "a threshold requirement to maintaining a lawsuit" regardless of statutory-standing considerations. *See* Novartis Br. 15 (quoting *Farmers Tex. Cnty. Mut. Ins. Co. v. Beasley*, 598 S.W.3d 237, 240 (Tex. 2020)). Because HSG has not been "personally injured," it cannot satisfy this threshold jurisdictional requirement regardless of

11

whether it has a statutory cause of action to bring its *qui tam* suit.

*Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 155-56 (Tex. 2012).[1]

## C. Representative-capacity standing has no application here.

HSG next suggests that it might have standing in a "representative capacity" even if it has not suffered an injury of its own. It notes that parents sue on behalf of children; receivers sue on behalf of aggrieved parties; executors sue on behalf of devisees; agents holding power of attorney sue on behalf of principals; and executives sometimes sue on behalf of corporations. HSG Br. 29-32. HSG suggests that it is similarly situated to those sorts of plaintiffs.

The State again does not join this argument, and there is again a good reason for that: The sovereign State of Texas is not similarly situated to a party without capacity, and HSG is not similarly situated to the sorts of next friends who have power to sue. *See* Novartis Br. 23-24. Parents and executors have fiduciary-type legal obligations to those they represent, who cannot sue in their own names because they are

---

[1] While HSG also observes that an exception to the injury-in-fact requirement exists for taxpayers suing to enjoin illegal public spending, HSG Br. 32 n.33, it fails to explain why this idiosyncratic doctrine—applicable only to "drastic" suits—has any relevance here. *Perez v. Turner*, 653 S.W.3d 191, 199 (Tex. 2022) (internal quotation marks omitted).

12

incompetent to do so. *See, e.g.*, Tex. Estates Code § 351.101 (duty on executors); *Tenet Hosps. Ltd. v. Rivera*, 445 S.W.3d 698, 705 (Tex. 2014) (duty on legal guardians). Persons holding power of attorney likewise "owe[] a fiduciary duty to [their] principal," as well as "a duty to account to the principal's estate for actions taken under the power of attorney." *Jurgens v. Martin*, 631 S.W.3d 385, 409 (Tex. App.—Eastland 2021, mandamus denied). Officers and directors similarly owe fiduciary duties to the corporation for which they have capacity to litigate. *See, e.g.*, *Sneed v. Webre*, 465 S.W.3d 169, 173 (Tex. 2015) (fiduciary duties of officers and directors). And receivers—the example HSG cites repeatedly, HSG Br. 28, 29, 30—are "indifferent person[s], between the parties to a cause, appointed by the court to receive and preserve the property or fund in litigation pendente lite." *Moyer v. Moyer*, 183 S.W.3d 48, 56 (Tex. App.—Austin 2005, no pet.); *see* Tex. Civ. Prac. & Rem. Code § 64.001(a) (prescribing various scenarios in which a receiver may be appointed to preserve property).

This *qui tam* suit has none of those features. Unlike parents, executors, persons with power of attorney, and persons granted authority to litigate for corporations, HSG has no fiduciary duty to act

13

in the State's interest. Unlike minors and the deceased, the State is perfectly able to sue on its own behalf. And unlike receivers, HSG was not appointed by the court, is certainly not a neutral party, and is not seeking to preserve property pending the outcome of litigation. The State is perfectly able to represent itself, so there is no need for HSG to act as the State's representative. Indeed, as described directly below, the State not only *can* litigate on its own behalf, but *must* do so under basic separation-of-powers principles, which is an independent reason to invalidate the TMFPA's *qui tam* provision.

## II. THE TMFPA VIOLATES THE SEPARATION OF POWERS.

As Novartis's opening brief explained, the Constitution requires that only State attorneys (or their employees) can litigate on behalf of the State. *See* Novartis Br. 32. That is the consistent lesson of a century of this Court's cases. *See id.* at 27-32. Those cases doom the TMFPA's *qui tam* provision, which allows private litigants to press suits that State attorneys have affirmatively declined to bring. *See id.* at 32-44.

HSG and the State fail to meaningfully grapple with this constitutional defect. Their argument rests on two basic claims. First,

14

they misread this Court's cases, ignoring the critical language that requires that a State attorney directly control every State suit. Second, they argue that the TMFPA passes constitutional muster because State attorneys have particular opportunities to become involved in the suits that private individuals press "without the state's participation." Tex. Hum. Res. Code § 36.104(b). They are wrong on both counts.

## A. Under this Court's case law, State attorneys must control State litigation.

This Court has consistently held that all public litigation must be brought by a State attorney or by his agent. The response briefs misread the relevant precedents, ignoring the language in this Court's holdings that sets out the applicable legal standards.

The critical cases from this Court require that State attorneys— not private individuals—litigate on behalf of the State. *See* Novartis Br. 27-32. That is the holding of *Maud v. Terrell*, 200 S.W. 375 (Tex. 1918), which held that the public litigation authority cannot be "devolve[d] . . . upon others." *Id.* at 376. The Court therefore construed a statute to deny private individuals the right to sue themselves, holding that they could only "cause the suit to be filed by the official

15

charged by law with that specific duty"—i.e., the State attorney, to whom the private person acts as an "assistant." *Id.* at 377-78.

The Court reiterated that holding repeatedly, requiring that a State attorney "institute[]" every State suit. *Agey v. American Liberty Pipe Line Co.,* 172 S.W.2d 972, 975 (Tex. 1943); *Staples v. State*, 245 S.W. 639, 643 (Tex. 1922). Each of the Court's cases prohibited private individuals from bringing suit, requiring that they instead ask State attorneys to litigate on their behalf. If the State attorney declined to do so, the suits could not proceed.

HSG's brief makes a hash of these precedents.[2] HSG tries to argue that *Maud* stands primarily for the rule that "courts should not read statutes *permitting* individuals other than State attorneys to represent the State as *prohibiting* State attorneys from representing the State." HSG Br. 41. If that were the only holding of *Maud*, it would not have needed to construe the statute to "subordinat[e]" the private individuals' authority to the State attorneys'. 200 S.W. at 377. And it would not have expressly held that only State officials could "cause the

---

[2] The State, for its part, correctly recognizes that *Maud* holds that private individuals can bring State litigation only "in subordination to the authority" of the State attorney. Tex. Br. 19 (quoting *Maud*, 200 S.W. at 377).

16

suit to be filed," *id.* —language that HSG ignores completely. *See* HSG Br. 40-41.

The same problem ails HSG's discussion of *Agey* and *Staples*. HSG again fails to acknowledge the language in those cases requiring that the State attorney institute the suit. Instead, it insists that what is important is that neither case held the statutes at issue in those cases to be unconstitutional. HSG Br. 45, 47. But that is because the Court construed those statutes to prohibit private control of State litigation, precisely to avoid a constitutional question. Had such constructions been impossible, the laws would have been struck down, because a "statute cannot confer a right upon private individuals to act for all where it is shown they have no interest different from all others." 245 S.W. at 641 (citing Tex. Const. art. IV, § 22; *id.* art. V, § 21).

HSG equally misreads precedent when it claims that *Camp v. Gulf Production Co.*, 61 S.W.2d 773 (Tex. 1933), "permit[s] private persons to represent State interests in litigation." HSG Br. 42. Contrary to the State's argument, *Camp* provides no support for HSG's prosecution of this civil enforcement action. The statute in *Camp* allowed a prospective purchaser of "unsurveyed" "public school land" to

17

"file suit against the county surveyor . . . to compel him to make the survey." 61 S.W.2d at 775. So the question was whether "the state is a necessary party to this action" not whether the applicant could institute or maintain a suit for the State without the Attorney General's full participation. *Id.* at 780; *see Am. Liberty Pipe Line Co. v. Agey*, 167 S.W.2d 580, 584 (Tex. App.—Austin 1942, judgment affirmed) (noting "[s]uits with similar objective have in later decisions been treated as suits *against* the State"). In *Agey*, therefore, this Court agreed that *Camp* involved issues far different from whether a private person could "institute and prosecute such a suit in the name of the State without the joinder of the Attorney General or some district or county attorney." *Agey*, 172 S.W.2d at 974-75. The answer to that question is no, as *Maud*, *Agey*, and *Staples* held. *See supra* at 15-17.

But even if *Camp* concerned whether private individuals can prosecute an action on behalf of the State, this Court made clear that they could do so only subject to complete State control. The Court required that the relevant statute be construed to give State attorneys "the right to control the litigation for the state just the same as in any ordinary suit to which the state is a party." *Camp*, 61 S.W.2d at 778.

18

In other words, it required that the private person be in a traditional principal-"agent" relationship with the State attorney, who had the "duty[] to appear in the case and represent the state." *Id.* at 777-78. Only in those limited circumstances could the statute be construed not to "curtail or abridge" the State attorneys' prerogatives. *Id.* Once more, that crucial language is absent from HSG's brief. *See* HSG Br. 42-43.

Finally, the State (but not HSG) claims that Novartis's arguments "cannot be squared with" *El Paso Electric Co. v. Texas Department of Insurance*, 937 S.W.2d 432 (Tex. 1996). Tex. Br. 23. That reliance is puzzling, because the Court in that case "express[ed] no opinion" on any question of "constitutional authority." 937 S.W.2d at 439. All that the Court did was repeat the rule of *Maud* that any private individual must be "subordinate" to a State attorney, *id.* (citing *Maud*, 200 S.W. at 377-78), which supports Novartis's argument, not the State's.[3]

---

[3] The State also cites three lower court cases. Tex. Br. 18. Each of them "addresse[d] the right of a private attorney to be compensated for efforts expended on behalf of a private client in an action against the responsible third party when an 'insurance carrier' . . . benefits from the recovery obtained by the attorney." *University of Texas at Arlington v. Bishop*, 997 S.W.2d 350, 354 (Tex. App.—Fort Worth 1999, pet. denied); *see Univ. of Tex. Health Sci. Ctr. at San Antonio v. Mata & Bordini, Inc.*, 2 S.W.3d 312, 318 (Tex. App.—San Antonio 1999, pet. denied) ("*UTHSCSA*") (similar); *State v. Lloyd*, 994 S.W.2d 362, 366 (Tex. App.—Waco 1999, no pet.) (similar). They accordingly "d[id] not involve . . . a private attorney's attempt to usurp the Attorney General's right to control the representation of the

19

## B.    The TMFPA permits private attorneys to control State litigation.

The holdings of *Maud*, *Staples*, *Agey*, and *Camp* guide the inquiry in this case.  If the TMFPA requires that a State attorney "cause the suit to be filed" or "institute[]" the suit, it falls within the bounds set in this Court's cases.  *Agey*, 172 S.W.2d at 975; *Staples*, 245 S.W. at 643; *Maud*, 200 S.W. at 377.  If it allows other actors to litigate but gives State attorneys "the right to control the litigation for the state just the same as in any ordinary suit to which the state is a party," it is also analogous to prior laws the Court has upheld.  *Camp*, 61 S.W.2d at 778.  But if it allows a private party to institute the suit *and* allows that party to proceed without requiring the State to participate "just the same as in any ordinary suit to which the state is a party," then it violates the Texas Constitution.  *See Hill Country v. Sheppard*, 178 S.W.2d 261 (Tex. 1944).

The TMFPA resoundingly fails under these principles.  It does not require State attorneys to initiate litigation, but rather allows private parties to litigate a State suit "without the state's participation."  Tex.

---

State's interest in the third-party action in the first instance," and so have no relevance to this case.  *UTHSCSA*, 2 S.W.3d at 318.

20

Hum. Res. Code § 36.104(b). And when they do so, the Attorney General has significantly less authority than he would "in any ordinary suit." The law is consequently void.

The parties agree that the TMFPA permits private parties to litigate without State approval. *See* HSG Br. 49; Tex. Br. 16. That fact alone distinguishes this case from the cases discussed above, which require that the State attorney institute or bring the suit, or at least that the State attorney have the same control as if he did so. *See supra* at 15-18.

HSG and the State make much of the fact that the State has the opportunity, early in a *qui tam* suit, to take over the litigation. Tex. Br. 15-16; HSG Br. 50; *see* Tex. Hum. Res. Code § 36.102. That is true but irrelevant to this case. Novartis's petition does not challenge the State's authority to take over a suit. *See* Novartis Br. 39. The constitutional question presented is whether a private individual can sue for the State where (as here) the Attorney General decides that the case is *not* worth bringing on the State's behalf. No case of this Court permits that maneuver. On the contrary, they hold that unless the Attorney General affirmatively "cause[s] the suit to be filed," *Maud*, 200

21

S.W. at 377, "institute[s]" suit himself, *Agey*, 172 S.W.2d at 975; *Staples*, 245 S.W. at 643, or has "the right to control the litigation for the state just the same as in any ordinary suit to which the state is a party," *Camp*, 61 S.W.2d at 778, the private action cannot proceed.

At times, the State seems to argue that its initial ability to assume responsibility for the case means that it need not have control over declined *qui tam* actions. *See* Tex. Br. 23 ("That initial opportunity to assume command ensures that the Attorney General is not subordinated to a private party."). That suggestion is incorrect. The Constitution requires that the State attorney actually exercise "authority" over all State litigation—not that he merely be comfortable with a private person wielding that power. *Maud*, 200 S.W. at 377; *see supra* at 15-18. A private prosecution of a criminal defendant would not become permissible simply because the State attorney had the opportunity to veto the action. Here, too, the initial veto power alone cannot validate the TMFPA.

Nor does the Attorney General have the same authority in a declined *qui tam* suit as he does in "any ordinary suit to which the state is a party." *Camp*, 61 S.W.2d at 778. When the Attorney General

22

declines to intervene, a *qui tam* relator may litigate the case "without the state's participation." Tex. Hum. Res. Code § 36.104(b). The relator is not required to run its arguments by the State. It can advance theories with which the State disagrees. It can even oppose motions made by the State in the action. *See, e.g.*, *Willie v. State*, 2017 WL 3526760 (Tex. App.—Houston Aug. 17, 2017, no writ). It is impossible to reconcile those facts with the notion that the State has control over the litigation.

The State and HSG's focus on ways to resolve disagreements between the State and the *qui tam* claimant only underscores this constitutional problem. True, the State can move to stay discovery that it believes is harmful (although the relator can object). Tex. Hum. Res. Code § 36.108; *see* Tex. Br. 18; HSG Br. 50. True, the State can veto potential settlements. Tex. Hum. Res. Code § 36.102(e); *see* Tex. Br. 18. True, the State can demand to receive filings in the case and can seek to intervene if it thinks the case has gone off the rails (although, again, the realtor can object). Tex. Hum. Res. Code § 36.104(b-1); *see*

23

Tex. Br. 18.[4]  And true, the State may pursue "alternate remed[ies]" in other forums and through other statutes.  Tex. Hum. Res. Code § 36.109(a); *see* Tex. Br. 17.  But those powers do not indicate that the State has absolute control over the suit.  To the contrary, the bespoke steps set out in the TMFPA confirm that the State's authority is very different than "any ordinary suit to which the State is a party."  *Camp*, 61 S.W.2d at 778.

Another provision of the TMFPA confirms as much.  As Novartis previously explained—but as HSG and the State entirely ignore—the statute permits the Attorney General to "contract with a private attorney to represent the state in an action under this subchapter with which the state elects to proceed."  Tex. Hum. Res. Code § 36.105; *see* Novartis Br. 38-39.  That conventional agency relationship stands in marked contrast to the TMFPA's *qui tam* provisions.  In the typical agency relationship, the State has total control over its contractor, and need not jump through TMFPA-specific hoops to control the suit.  The

---

[4] Both HSG and the State argue that the State should usually win contested motions to intervene.  HSG Br. 52-53; Tex. Br. 16 n.4.  But whatever the standard, it is different than that of an ordinary civil suit, in which the Attorney General would have complete control from the beginning.  Accordingly, HSG's suggestion that the Court could solve the constitutional problem by easing that standard, *see* HSG Br. 53-54, misses the mark.

24

difference between that ordinary process and the TMFPA's extraordinary one is precisely why the TMFPA fails the "any ordinary suit" test recognized in *Camp*.

Because the TMFPA gives private attorneys unprecedented control over public litigation, it is unconstitutional. *See Sheppard*, 178 S.W.2d at 263. The proper remedy is accordingly to strike down the provisions of the TMFPA allowing a private party to litigate without the State's consent. *See* Novartis Br. 38-39. Doing so would return the TMFPA to its pre-2007 state.[5] It would not prohibit the Attorney General from taking over *qui tam* litigation or from hiring contractors— whether on a contingency fee or on some other basis—to press that litigation on his behalf.

Notably, neither HSG nor the State meaningfully contests this issue. The State acknowledges that there is no "saving construction" that would allow the Court to reinterpret the declined *qui tam* provisions to preserve State attorney control. Tex. Br. 23-24. HSG

---

[5] HSG claims that "[t]he TMFPA has had qui tam provisions since 1997." HSG Br. 2 n.5. That is incorrect. The bill that it cites includes only a provision allowing the State of Texas to join federal *qui tam* litigation as a relator to the United States. The statutory provisions allowing private individuals to sue in Texas court were added in 2007. *See* Novartis Br. 6.

likewise does not propose any way to construe the TMFPA that would give State attorneys the same control as they have in ordinary State suits. Accordingly, HSG and the State have no argument that the Court can avoid the constitutional issue posed here. So where, as here, "the language of the particular enactment is unambiguous and the conflict with the Constitution is hence apparent, there is no alternative but to declare the enactment void." *Maud*, 200 S.W. at 376.

Finally, it is worth noting what HSG and the State do *not* argue. Both parties implicitly acknowledge that *qui tam* litigation is State litigation that must be controlled by State attorneys. Neither party suggests that any Texas history of *qui tam* litigation bolsters the TMFPA's constitutionality. Tex. Br. 24 n.7; HSG Br. 19 n.24; *see* Novartis Br. 44-47. Even though HSG claimed in prior briefing that *Brown v. De La Cruz*, 156 S.W.3d 560 (Tex. 2004), "eviscerates" Novartis's arguments, *see* HSG Resp. 18, HSG no longer claims that *Brown* has any bearing on this matter. *See* Novartis Br. 40-42 (explaining why, if anything, *Brown* helps Novartis). Nor does HSG or the State contest that the TMFPA is a "penal" statute, accentuating the impropriety of allowing a private party to "impose penal sanctions."

APP444

Novartis Br. 34-35 (quoting *Texas Boll Weevil Eradication Found., Inc. v. Lewellen*, 952 S.W.2d 454, 474 (Tex. 1997)).

Finally, neither HSG nor the State advances a meaningful response to Novartis's observation that "placing the power to litigate on behalf of the State in the hands of profit-seeking private entities" raises significant liberty and fairness concerns. Novartis Br. 35; *see Texas Boll Weevil,* 952 S.W.2d at 474.[6] Texas notes only that federal courts have previously approved such bounties under the federal False Claims Act. Tex. Br. 21. But the federal statute has different historical and textual underpinnings—and even so, there is a growing consensus that the False Claims Act is unconstitutional. *See United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 449-52 (2023) (Thomas, J., dissenting); *id.* at 442 (Kavanaugh, J., joined by Barrett, J., concurring); *United States ex rel. Zafirov v. Fla. Med. Assoc., LLC*, __ F. Supp. 3d __, 2024 WL 4349242, at *20 (M.D. Fla. Sept. 30, 2024). Under the Texas Constitution—which protects the separation of powers

---

[6] Both HSG and the State note that *Texas Boll Weevil* concerned "a delegation of *legislative power*," not of litigation authority. Tex. Br. 21; *see* HSG Br. 55 (similar). But the Court's observation that "[t]he basic concept of democratic rule under a republican form of government is compromised when public powers are abandoned to" private entities, 952 S.W.2d at 469, applies equally in both contexts.

27

even more stringently than its federal counterpart, *see* Novartis Br. 46-47—bounty-hunting *qui tam* claimants like HSG cannot wield State attorneys' sovereign power.[7]

## III. HSG'S NOVEL SECTION 51-A AND MEDICAID ACT ARGUMENTS ARE UNAVAILING.

Not content to brief the questions presented, HSG leads its brief with an argument that it admits it is raising for the first time. *See* HSG Br. 8 n.11. In its view, Article III, Section 51-a of the Texas Constitution, which empowers the Legislature to provide "for assistance grants" to vulnerable populations, means that the TMFPA can violate the State's separation of powers and permit suits brought by plaintiffs without constitutional standing. HSG Br. 8-13. The State does not join this absurd argument.

The fact that the Legislature is constitutionally empowered to provide funds for a certain purpose does not mean that it can violate other provisions of the Constitution when it does so. The constitutional provision that HSG invokes explicitly states that the Legislature's

---

[7] Notably, HSG never addresses Novartis's point that its entire business model is based on *qui tam* suits, and that the United States has previously determined that its litigation arguments would harm, not help, the healthcare system. Novartis Br. 8-10, 36.

28

APP446

power in this area is "subject to limitations herein contained"—language that only confirms the commonsense point that the Legislature, when acting pursuant to an enumerated power, cannot run roughshod over other constitutional guarantees. Tex. Const. art. III, § 51-a(a). So the Legislature, in providing assistance grants, is not empowered to discriminate on the basis of religion, *see id.* art. I, § 6, to pass bills without a quorum, *see id.* art. III, § 10, or—as relevant here—to violate the State's separation of powers, *see id.* art. II, § 1. HSG does not provide any authority or analysis to the contrary.

Nor is it relevant to the constitutional questions in this case whether, under the federal Medicaid Act, "[i]f the TMFPA's qui tam provisions are stricken, Texas will no longer receive a ten percent bonus from the federal government for Medicaid fraud recoveries secured by the State." HSG Br. 10; *see* 42 U.S.C. § 1396h. There is no interpretive canon suggesting that this State's Constitution should be construed to maximize federal matching funds. If standing doctrine or the separation of powers precludes *qui tam* litigation, that result will not change because a federal law encourages states to authorize *qui tam* suits.

29

Regardless, HSG's sky-is-falling argument is likely wrong. For starters, a federal court recently invalidated the False Claims Act's *qui tam* provisions; if that ruling is affirmed on appeal (as Justice Thomas indicates that it should be), then every state will have a *qui tam* regime that is "at least as effective" as the federal statute. *Zafirov*, 2024 WL 4349242, at \*20; *see Polansky*, 599 U.S. at 449-52 (Thomas, J., dissenting). And even if the federal *qui tam* provisions remain, Congress lacks power under the Federal Constitution to force this State to choose between following its separation of powers and receiving federal matching funds. *See, e.g.*, *Texas v. Yellen*, 105 F.4th 755, 767 (5th Cir. 2024) ("Congress may not use its spending power to functionally commandeer the states."). The State Attorney General is adept at litigating such suits, *see id.*, which may explain why the State does not raise the same objections as does HSG.

## IV.  MANDAMUS RELIEF IS WARRANTED.

If the Court agrees with Novartis that HSG lacks standing or constitutional authority to press this suit, it should grant mandamus relief. As this Court has repeatedly held, "[m]andamus relief is appropriate" when a trial court improperly denies a motion to dismiss.

30

*In re Farmers Tex. Cnty. Mut. Ins. Co.*, 621 S.W.3d 261, 266 (Tex. 2021); *see* Novartis Br. 48 (collecting additional cases). That is because there is no utility to forcing the parties and the courts to proceed with time-intensive litigation that suffers from threshold, purely legal defects. HSG and the State's contrary arguments are unavailing.

The State halfheartedly urges that mandamus relief is appropriate only when a case should be dismissed based on "clearly settled caselaw." Tex. Br. 25. Not so. As Novartis's opening brief observed, this Court also grants mandamus relief when addressing issues "of first impression." *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 138 (Tex. 2004); *see* Novartis Br. 48. The State does not reconcile its argument with that holding.

For its part, HSG urges that mandamus relief is inappropriate because it would "interfere with State attorneys' ongoing discretion to intervene in this case." HSG Br. 58. But the State has not intervened in the four-and-a-half years this suit has been pending. And the State's brief in this Court gives no indication that it plans to intervene now, regardless of how the Court rules on this petition. HSG has long been prosecuting this case "without the state's participation," Tex. Hum. Res.

31

Code § 36.104(b), so if such actions are unlawful, the only proper remedy is to dismiss the suit.

## CONCLUSION AND PRAYER

For the foregoing reasons, as well as those set forth in Novartis's opening brief, the Court should issue a writ of mandamus directing the district court to dismiss HSG's claims.

**APP450**

Dated:  December 20, 2024    Respectfully submitted,

O'MELVENY & MYERS LLP

*/s/ Danny S. Ashby*
Danny S. Ashby
Texas Bar No. 01370960
dashby@omm.com
2801 North Harwood Street, Suite 1600
Dallas, Texas  75201
Telephone:  +1 972 360 1900
Facsimile:  +1 972 360 1901

Anton Metlitsky
ametlitsky@omm.com
Ross Galin
rgalin@omm.com
1301 Avenue of the Americas, 17th Floor
New York, NY 10019
Telephone: +1 212 326 2000
(Admitted *pro hac vice*)

THE DACUS FIRM, P.C.

Deron R. Dacus
Texas Bar No. 00790553
ddacus@dacusfirm.com
821 ESE Loop 323, Suite 430
Tyler, Texas 75701
Telephone: +1 903 705 1117

*Counsel for Relator*
*Novartis Pharmaceuticals Corporation*

33

**CERTIFICATE OF COMPLIANCE**

This document complies with the typeface requirements of Texas Rule of Appellate Procedure 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of Rule 9.4(i) because it contains no more than 6,589 words, excluding any parts exempted by Rule 9.4(i)(1).

*/s/ Danny S. Ashby*
Danny S. Ashby

**APP452**

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2024, a true and correct copy of the foregoing brief has been filed and served on counsel of record through electronic service via www.efiletexas.gov.

/s/ *Danny S. Ashby*
Danny S. Ashby

APP453

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below:

Court Services on behalf of Danny Ashby
Bar No. 1370960
ommsvc2@omm.com
Envelope ID: 95567794
Filing Code Description: Reply Brief
Filing Description: Relator Novartis Pharmaceuticals Corporation's Reply Brief on the Merits
Status as of 12/20/2024 3:53 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Jonathan Wilkerson | 24050162 | jonathan.wilkerson@lanierlawfirm.com | 12/20/2024 3:46:34 PM | SENT |
| Samuel Baxter | 1938000 | sbaxter@mckoolsmith.com | 12/20/2024 3:46:34 PM | SENT |
| Zeke DeRose | 24057421 | zeke.derose@lanierlawfirm.com | 12/20/2024 3:46:34 PM | SENT |
| Jennifer Truelove | 24012906 | jtruelove@mckoolsmith.com | 12/20/2024 3:46:34 PM | SENT |
| Alex Brown | 24026964 | alex.brown@lanierlawfirm.com | 12/20/2024 3:46:34 PM | SENT |
| Lynne Kurtz-Citrin | 24081425 | lynne.kurtz-citrin@oag.texas.gov | 12/20/2024 3:46:34 PM | SENT |
| Jonathan Bonilla | 24073939 | Jonathan.Bonilla@oag.texas.gov | 12/20/2024 3:46:34 PM | SENT |
| Jordan Underhill | 24102586 | jordan.underhill@oag.texas.gov | 12/20/2024 3:46:34 PM | SENT |
| Evan Greene | | evan.greene@oag.texas.gov | 12/20/2024 3:46:34 PM | SENT |
| Diane Padilla | | dpadilla@sidley.com | 12/20/2024 3:46:34 PM | SENT |
| Meredith N.Garagiola | | mgaragiola@omm.com | 12/20/2024 3:46:34 PM | SENT |
| Phillip M.Aurentz | | paurentz@sidley.com | 12/20/2024 3:46:34 PM | SENT |
| Chelsea A.Priest | | cpriest@sidley.com | 12/20/2024 3:46:34 PM | SENT |
| Danny S.Ashby | | dashby@omm.com | 12/20/2024 3:46:34 PM | SENT |
| Ross Galin | | rgalin@omm.com | 12/20/2024 3:46:34 PM | SENT |
| Deron R.Dacus | | ddacus@dacusfirm.com | 12/20/2024 3:46:34 PM | SENT |
| Eric B.Halper | | ehalper@mckoolsmith.com | 12/20/2024 3:46:34 PM | SENT |
| Radu A.Lelutiu | | rlelutiu@mckoolsmith.com | 12/20/2024 3:46:34 PM | SENT |
| W. MarkLanier | | WML@LanierLawFirm.com | 12/20/2024 3:46:34 PM | SENT |
| Joshua Goode | | jgoode@omm.com | 12/20/2024 3:46:34 PM | SENT |
| joel leach | | jleach@mckoolsmith.com | 12/20/2024 3:46:34 PM | SENT |
| denise lopez | | dlopez@mckoolsmith.com | 12/20/2024 3:46:34 PM | SENT |
| Mary JoToupin | | MaryJo.Toupin@oag.texas.gov | 12/20/2024 3:46:34 PM | SENT |

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below:

Court Services on behalf of Danny Ashby
Bar No. 1370960
ommsvc2@omm.com
Envelope ID: 95567794
Filing Code Description: Reply Brief
Filing Description: Relator Novartis Pharmaceuticals Corporation's Reply Brief on the Merits
Status as of 12/20/2024 3:53 PM CST

Case Contacts

| | | | | |
|---|---|---|---|---|
| Mary JoToupin | | MaryJo.Toupin@oag.texas.gov | 12/20/2024 3:46:34 PM | SENT |
| Janice Garrett | | Janice.Garrett@oag.texas.gov | 12/20/2024 3:46:34 PM | SENT |
| Alison Washburn | | alison.washburn@oag.texas.gov | 12/20/2024 3:46:34 PM | SENT |
| Michael Catapano | | mcatapano@mckoolsmith.com | 12/20/2024 3:46:34 PM | SENT |
| Angel Devine | | adevine@mckoolsmith.com | 12/20/2024 3:46:34 PM | SENT |
| Hannah Mirzoeff | | hmirzoeff@mckoolsmith.com | 12/20/2024 3:46:34 PM | SENT |
| Anton Metlitsky | | ametlitsky@omm.com | 12/20/2024 3:46:34 PM | SENT |

RE: Case No. 24-0239                              DATE: 10/24/2025
COA #: 06-24-00005-CV                             TC#: 23-0276
STYLE: IN RE NOVARTIS PHARM. CORP.

Today the Supreme Court of Texas denied the petition for writ of mandamus in the above-referenced case. The stay order issued August 30, 2024 is lifted.  Statement of Justice Young and Justice Sullivan respecting the denial of the petition for writ of mandamus.

THE HONORABLE BRAD  MORIN
JUDGE, 71ST DISTRICT COURT
200 W HOUSTON, STE 219
MARSHALL, TX  75670
* DELIVERED VIA E-MAIL *

APP456

FILE COPY

RE: Case No. 24-0239            DATE: 10/24/2025
COA #: 06-24-00005-CV        TC#: 23-0276
STYLE: IN RE NOVARTIS PHARM. CORP.

    Today the Supreme Court of Texas denied the petition for writ of mandamus in the above-referenced case. The stay order issued August 30, 2024 is lifted.  Statement of Justice Young and Justice Sullivan respecting the denial of the petition for writ of mandamus.


JOSHUA J. FOUGERE
SIDLEY AUSTIN LLP
1501 K STREET, NW
WASHINGTON, DC  20005
* DELIVERED VIA E-MAIL *

APP457

FILE COPY

RE: Case No. 24-0239                    DATE: 10/24/2025
    COA #: 06-24-00005-CV                 TC#: 23-0276
STYLE: IN RE NOVARTIS PHARM. CORP.

    Today the Supreme Court of Texas denied the petition
for writ of mandamus in the above-referenced case. The stay
order issued August 30, 2024 is lifted.  Statement of
Justice Young and Justice Sullivan respecting the denial of
the petition for writ of mandamus.


MICHAEL H. MCGINLEY
DECHERT LLP
CIRA CENTRE
2929 ARCH STREET
PHILADELPHIA, PA  19104
* DELIVERED VIA E-MAIL *

FILE COPY

RE: Case No. 24-0239                    DATE: 10/24/2025
    COA #: 06-24-00005-CV                TC#: 23-0276
STYLE: IN RE NOVARTIS PHARM. CORP.

   Today the Supreme Court of Texas denied the petition
for writ of mandamus in the above-referenced case. The stay
order issued August 30, 2024 is lifted.  Statement of
Justice Young and Justice Sullivan respecting the denial of
the petition for writ of mandamus.


                    LINDSEY  COHAN
                    DECHERT LLP
                    515 CONGRESS AVE STE 1400
                    AUSTIN, TX  78701-3516
                    * DELIVERED VIA E-MAIL *


**APP459**

FILE COPY

RE: Case No. 24-0239          DATE: 10/24/2025
    COA #: 06-24-00005-CV              TC#: 23-0276
STYLE: IN RE NOVARTIS PHARM. CORP.

     Today the Supreme Court of Texas denied the petition
for writ of mandamus in the above-referenced case. The stay
order issued August 30, 2024 is lifted.  Statement of
Justice Young and Justice Sullivan respecting the denial of
the petition for writ of mandamus.


                    SCOTT D. STEIN
                    SIDLEY AUSTIN LLP
                    ONE SOUTH DEARBORN
                    CHICAGO, IL  60603
                    * DELIVERED VIA E-MAIL *


                                              **APP460**

**FILE COPY**

RE: Case No. 24-0239                    DATE: 10/24/2025
    COA #: 06-24-00005-CV               TC#: 23-0276
STYLE: IN RE NOVARTIS PHARM. CORP.

     Today the Supreme Court of Texas denied the petition
for writ of mandamus in the above-referenced case. The stay
order issued August 30, 2024 is lifted.  Statement of
Justice Young and Justice Sullivan respecting the denial of
the petition for writ of mandamus.


               MR. JONATHAN  WILKERSON
               LANIER LAW FIRM
               10940 W SAM HOUSTON PARKWAY N
               HOUSTON, TX  77064
               * DELIVERED VIA E-MAIL *

**APP461**

FILE COPY

RE: Case No. 24-0239                    DATE: 10/24/2025
    COA #: 06-24-00005-CV                TC#: 23-0276
STYLE: IN RE NOVARTIS PHARM. CORP.

    Today the Supreme Court of Texas denied the petition
for writ of mandamus in the above-referenced case. The stay
order issued August 30, 2024 is lifted.  Statement of
Justice Young and Justice Sullivan respecting the denial of
the petition for writ of mandamus.


                    JORDAN  UNDERHILL
                    OFFICE OF THE TEXAS ATTORNEY GENERAL
                    P.O. BOX 12548
                    AUSTIN, TX  78711
                    * DELIVERED VIA E-MAIL *


                                              APP462

FILE COPY

RE: Case No. 24-0239                          DATE: 10/24/2025
   COA #: 06-24-00005-CV                       TC#: 23-0276
STYLE: IN RE NOVARTIS PHARM. CORP.

     Today the Supreme Court of Texas denied the petition
for writ of mandamus in the above-referenced case. The stay
order issued August 30, 2024 is lifted.  Statement of
Justice Young and Justice Sullivan respecting the denial of
the petition for writ of mandamus.


                    MICHAEL SCOTT PROCTOR
                    DECHERT LLP
                    1900 K STREET NW
                    WASHINGTON, DC  20006
                    * DELIVERED VIA E-MAIL *

**FILE COPY**

RE: Case No. 24-0239                    DATE: 10/24/2025
   COA #: 06-24-00005-CV                TC#: 23-0276
STYLE: IN RE NOVARTIS PHARM. CORP.

   Today the Supreme Court of Texas denied the petition
for writ of mandamus in the above-referenced case. The stay
order issued August 30, 2024 is lifted.  Statement of
Justice Young and Justice Sullivan respecting the denial of
the petition for writ of mandamus.

            THE HONORABLE BRAD  MORIN
            JUDGE, 71ST DISTRICT COURT
            200 W HOUSTON, STE 219
            MARSHALL, TX  75670
            * DELIVERED VIA E-MAIL *

**APP464**

RE: Case No. 24-0239                    DATE: 10/24/2025
    COA #: 06-24-00005-CV               TC#: 23-0276
STYLE: IN RE NOVARTIS PHARM. CORP.

    Today the Supreme Court of Texas denied the petition for writ of mandamus in the above-referenced case. The stay order issued August 30, 2024 is lifted.  Statement of Justice Young and Justice Sullivan respecting the denial of the petition for writ of mandamus.


              PHILLIP  AURENTZ

              2021 MCKINNEY AVE STE 2000
              DALLAS, TX  75201-3351
              * DELIVERED VIA E-MAIL *

FILE COPY

RE: Case No. 24-0239                    DATE: 10/24/2025
    COA #: 06-24-00005-CV                TC#: 23-0276
STYLE: IN RE NOVARTIS PHARM. CORP.

    Today the Supreme Court of Texas denied the petition
for writ of mandamus in the above-referenced case. The stay
order issued August 30, 2024 is lifted.  Statement of
Justice Young and Justice Sullivan respecting the denial of
the petition for writ of mandamus.


                    RADU A. LELUTIU
                    MCKOOL SMITH, PC
                    ONE MANHATTAN WEST
                    395 NINTH AVENUE, 50TH FLOOR
                    NEW YORK, NY  10001
                    * DELIVERED VIA E-MAIL *

**APP466**

FILE COPY

RE: Case No. 24-0239                           DATE: 10/24/2025
    COA #: 06-24-00005-CV                         TC#: 23-0276
STYLE: IN RE NOVARTIS PHARM. CORP.

    Today the Supreme Court of Texas denied the petition
for writ of mandamus in the above-referenced case. The stay
order issued August 30, 2024 is lifted.  Statement of
Justice Young and Justice Sullivan respecting the denial of
the petition for writ of mandamus.

                    RYAN  ELLIS
                    LANIER LAW FIRM
                    10940 W. SAM HOUSTON PKWY N, SUITE
                    100
                    HOUSTON, TX  77064
                    * DELIVERED VIA E-MAIL *

APP467

FILE COPY

RE: Case No. 24-0239                    DATE: 10/24/2025
    COA #: 06-24-00005-CV                   TC#: 23-0276
STYLE: IN RE NOVARTIS PHARM. CORP.

    Today the Supreme Court of Texas denied the petition
for writ of mandamus in the above-referenced case. The stay
order issued August 30, 2024 is lifted.  Statement of
Justice Young and Justice Sullivan respecting the denial of
the petition for writ of mandamus.


                    MS. DEBBIE  AUTREY
                    CLERK, SIXTH COURT OF APPEALS
                    100 N. STATE LINE AVE., SUITE 20
                    TEXARKANA, TX  75501
                    * DELIVERED VIA E-MAIL *

APP468

FILE COPY

RE: Case No. 24-0239                    DATE: 10/24/2025
    COA #: 06-24-00005-CV                TC#: 23-0276
STYLE: IN RE NOVARTIS PHARM. CORP.

    Today the Supreme Court of Texas denied the petition
for writ of mandamus in the above-referenced case. The stay
order issued August 30, 2024 is lifted.  Statement of
Justice Young and Justice Sullivan respecting the denial of
the petition for writ of mandamus.

                    MR. DERON R. DACUS
                    THE DACUS FIRM, P.C.
                    821 E SE LOOP 323, STE 430
                    TYLER, TX  75701-0518
                    * DELIVERED VIA E-MAIL *

APP469

FILE COPY

RE: Case No. 24-0239                    DATE: 10/24/2025
    COA #: 06-24-00005-CV                    TC#: 23-0276
STYLE: IN RE NOVARTIS PHARM. CORP.

   Today the Supreme Court of Texas denied the petition for writ of mandamus in the above-referenced case. The stay order issued August 30, 2024 is lifted.  Statement of Justice Young and Justice Sullivan respecting the denial of the petition for writ of mandamus.

ALEX  J. BROWN
LANIER LAW FIRM
10940 W SAM HOUSTON PKWY N STE 100
HOUSTON, TX  77064-5768
* DELIVERED VIA E-MAIL *

APP470

RE: Case No. 24-0239                              DATE: 10/24/2025
    COA #: 06-24-00005-CV                        TC#: 23-0276
STYLE: IN RE NOVARTIS PHARM. CORP.

     Today the Supreme Court of Texas denied the petition
for writ of mandamus in the above-referenced case. The stay
order issued August 30, 2024 is lifted.  Statement of
Justice Young and Justice Sullivan respecting the denial of
the petition for writ of mandamus.



                    JONATHAN D. BONILLA
                    OFFICE OF THE TEXAS ATTORNEY GENERAL
                    P O BOX 12548
                    AUSTIN, TX  78711
                    * DELIVERED VIA E-MAIL *

**APP471**

RE: Case No. 24-0239                    DATE: 10/24/2025
    COA #: 06-24-00005-CV                TC#: 23-0276
STYLE: IN RE NOVARTIS PHARM. CORP.

    Today the Supreme Court of Texas denied the petition
for writ of mandamus in the above-referenced case. The stay
order issued August 30, 2024 is lifted.  Statement of
Justice Young and Justice Sullivan respecting the denial of
the petition for writ of mandamus.


                    MS. LYNNE  KURTZ-CITRIN
                    OFFICE OF THE TEXAS ATTORNEY GENERAL
                    PO BOX 12548
                    AUSTIN, TX  78711-2548
                    * DELIVERED VIA E-MAIL *

APP472

FILE COPY

RE: Case No. 24-0239                    DATE: 10/24/2025
    COA #: 06-24-00005-CV                   TC#: 23-0276
STYLE: IN RE NOVARTIS PHARM. CORP.

    Today the Supreme Court of Texas denied the petition
for writ of mandamus in the above-referenced case. The stay
order issued August 30, 2024 is lifted.  Statement of
Justice Young and Justice Sullivan respecting the denial of
the petition for writ of mandamus.


                    JUSTIN W.  AIMONETTI
                    DECHERT LLP
                    1900 K STREET NW
                    WASHINGTON, DC  20006
                    * DELIVERED VIA E-MAIL *


                                                    **APP473**

FILE COPY

RE: Case No. 24-0239                    DATE: 10/24/2025
    COA #: 06-24-00005-CV               TC#: 23-0276
STYLE: IN RE NOVARTIS PHARM. CORP.

    Today the Supreme Court of Texas denied the petition
for writ of mandamus in the above-referenced case. The stay
order issued August 30, 2024 is lifted.  Statement of
Justice Young and Justice Sullivan respecting the denial of
the petition for writ of mandamus.


                    MR. ZEKE  DEROSE III
                    LANIER LAW FIRM
                    10940 WEST SAM HOUSTON PKWY N, SUITE
                    100
                    HOUSTON, TX  77064
                    * DELIVERED VIA E-MAIL *

APP474

FILE COPY

RE: Case No. 24-0239                    DATE: 10/24/2025
COA #: 06-24-00005-CV                    TC#: 23-0276
STYLE: IN RE NOVARTIS PHARM. CORP.

   Today the Supreme Court of Texas denied the petition
for writ of mandamus in the above-referenced case. The stay
order issued August 30, 2024 is lifted.  Statement of
Justice Young and Justice Sullivan respecting the denial of
the petition for writ of mandamus.


MR. SAMUEL F.  BAXTER
MCKOOL SMITH, PC
104 E HOUSTON ST STE 300
MARSHALL, TX  75670-4144
* DELIVERED VIA E-MAIL *

APP475

FILE COPY

RE: Case No. 24-0239                    DATE: 10/24/2025
   COA #: 06-24-00005-CV               TC#: 23-0276
STYLE: IN RE NOVARTIS PHARM. CORP.

   Today the Supreme Court of Texas denied the petition
for writ of mandamus in the above-referenced case. The stay
order issued August 30, 2024 is lifted.  Statement of
Justice Young and Justice Sullivan respecting the denial of
the petition for writ of mandamus.


                    MR. DANNY S.  ASHBY
                    O'MELVENY & MYERS LLP
                    2801 N HARWOOD ST STE 1600
                    DALLAS, TX  75201-2692
                    * DELIVERED VIA E-MAIL *

APP476

FILE COPY

RE: Case No. 24-0239                    DATE: 10/24/2025
   COA #: 06-24-00005-CV                   TC#: 23-0276
STYLE: IN RE NOVARTIS PHARM. CORP.

     Today the Supreme Court of Texas denied the petition
for writ of mandamus in the above-referenced case. The stay
order issued August 30, 2024 is lifted.  Statement of
Justice Young and Justice Sullivan respecting the denial of
the petition for writ of mandamus.


                    ANTON  METLITSKY
                    O'MELVENY & MYERS LLP
                    1301 AVE. OF THE AMERICAS, SUITE
                    1700
                    NEW YORK, NY  10019
                    * DELIVERED VIA E-MAIL *

APP477

FILE COPY

RE: Case No. 24-0239                    DATE: 10/24/2025
   COA #: 06-24-00005-CV                   TC#: 23-0276
STYLE: IN RE NOVARTIS PHARM. CORP.

    Today the Supreme Court of Texas denied the petition
for writ of mandamus in the above-referenced case. The stay
order issued August 30, 2024 is lifted.  Statement of
Justice Young and Justice Sullivan respecting the denial of
the petition for writ of mandamus.


                    MR. W. MARK  LANIER
                    THE LANIER LAW FIRM, P.C.
                    10940 W. SAM HOUSTON PKWY N
                    SUITE 100
                    HOUSTON, TX  77064-5768
                    * DELIVERED VIA E-MAIL *


                                                    **APP478**

RE: Case No. 24-0239                    DATE: 10/24/2025
   COA #: 06-24-00005-CV                   TC#: 23-0276
STYLE: IN RE NOVARTIS PHARM. CORP.

   Today the Supreme Court of Texas denied the petition
for writ of mandamus in the above-referenced case. The stay
order issued August 30, 2024 is lifted.  Statement of
Justice Young and Justice Sullivan respecting the denial of
the petition for writ of mandamus.

                    ROSS  B.  GALIN
                    O'MELVENY & MYERS LLP
                    1301 AVE. OF THE AMERICAS, SUITE
                    1700
                    NEW YORK, NY  10019
                    * DELIVERED VIA E-MAIL *

RE: Case No. 24-0239                    DATE: 10/24/2025
COA #: 06-24-00005-CV                   TC#: 23-0276
STYLE: IN RE NOVARTIS PHARM. CORP.

    Today the Supreme Court of Texas denied the petition
for writ of mandamus in the above-referenced case. The stay
order issued August 30, 2024 is lifted.  Statement of
Justice Young and Justice Sullivan respecting the denial of
the petition for writ of mandamus.

                    MS. JENNIFER L. TRUELOVE
                    MCKOOL SMITH, PC
                    104 E HOUSTON ST, STE 300
                    MARSHALL, TX  75670-4144
                    * DELIVERED VIA E-MAIL *

**APP480**

FILE COPY

RE: Case No. 24-0239                     DATE: 10/24/2025
COA #: 06-24-00005-CV                     TC#: 23-0276
STYLE: IN RE NOVARTIS PHARM. CORP.

   Today the Supreme Court of Texas denied the petition
for writ of mandamus in the above-referenced case. The stay
order issued August 30, 2024 is lifted.  Statement of
Justice Young and Justice Sullivan respecting the denial of
the petition for writ of mandamus.

                    DISTRICT CLERK  HARRISON COUNTY
                    HARRISON COUNTY COURTHOUSE
                    200 WEST HOUSTON SUITE 234
                    MARSHALL, TX  75671
                    * DELIVERED VIA E-MAIL *

APP481

FILE COPY

```
   RE: Case No. 24-0239                    DATE: 10/24/2025
   COA #: 06-24-00005-CV                     TC#: 23-0276
STYLE: IN RE NOVARTIS PHARM. CORP.
```

     Today the Supreme Court of Texas denied the petition
for writ of mandamus in the above-referenced case. The stay
order issued August 30, 2024 is lifted.  Statement of
Justice Young and Justice Sullivan respecting the denial of
the petition for writ of mandamus.

```
                    STEVEN A. ENGEL
                    DECHERT LLP
                    1900 K STREET NW
                    WASHINGTON, DC  20006
                    * DELIVERED VIA E-MAIL *
```

**APP482**

FILE COPY

RE: Case No. 24-0239                        DATE: 10/24/2025
    COA #: 06-24-00005-CV                      TC#: 23-0276
STYLE: IN RE NOVARTIS PHARM. CORP.

     Today the Supreme Court of Texas denied the petition
for writ of mandamus in the above-referenced case. The stay
order issued August 30, 2024 is lifted.  Statement of
Justice Young and Justice Sullivan respecting the denial of
the petition for writ of mandamus.


                    KWAKU A. AKOWUAH
                    SIDLEY AUSTIN LLP
                    1501 K STREET, NW
                    WASHINGON, DC  20005
                    * DELIVERED VIA E-MAIL *


**APP483**

FILE COPY

RE: Case No. 24-0239                    DATE: 10/24/2025
    COA #: 06-24-00005-CV               TC#: 23-0276
STYLE: IN RE NOVARTIS PHARM. CORP.

    Today the Supreme Court of Texas denied the petition
for writ of mandamus in the above-referenced case. The stay
order issued August 30, 2024 is lifted.  Statement of
Justice Young and Justice Sullivan respecting the denial of
the petition for writ of mandamus.


                    MR. KENNETH W. STARR
                    LANIER LAW FIRM
                    10940 W. SAM. HOUSTON PKWY N, SUITE
                    100
                    HOUSTON, TX  77064
                    * DELIVERED VIA E-MAIL *


                                                    APP484

# Supreme Court of Texas

No. 24-0239

In re Novartis Pharmaceuticals Corporation,

*Relator*

On Petition for Writ of Mandamus

Statement of JUSTICE YOUNG and JUSTICE SULLIVAN respecting the denial of the petition for writ of mandamus.

This case presents weighty issues worthy of our full attention, and perhaps the Court should have set it for oral argument. But the decision to deny the petition is understandable given that there is a new statewide appellate court that has already held that it has jurisdiction over disputes like this one. Awaiting that court's view of the issues presented may assist this Court in its eventual and inevitable consideration of the constitutional concerns surrounding *qui tam* litigation under what is now called the Texas Health Care Program Fraud Prevention Act.

## I

"[T]he Texas Medicaid Fraud Prevention Act," as this statute was once known, "is a powerful tool for targeting fraud against the Texas Medicaid program and securing the program's integrity." *In re Xerox Corp.*, 555 S.W.3d 518, 525 (Tex. 2018) (citing Tex. Hum. Res. Code

§§ 36.001–.132); *see also* Act of May 16, 2023, 88th Leg., R.S., ch. 273, 2023 Tex. Gen. Laws 584 (expanding the statute's coverage to include two additional healthcare programs). "The statute imbues the attorney general with broad investigative and enforcement authority and—via *qui tam* provisions—deputizes private citizens to pursue a[n] action on the government's behalf." *Xerox*, 555 S.W.3d at 525.

Thus, a private "person may bring a civil action for a violation of [the Act] for the person and for the state," seeking payment of civil penalties "in the name of the person and of the state." Tex. Hum. Res. Code § 36.101(a); *see also id.* § 36.052(a) (prescribing civil remedies for which a defendant can be held liable). This so-called *qui tam* relator "shall serve a copy of the petition and a written disclosure of substantially all material evidence and information the person possesses on the attorney general," *id.* § 36.102(a), who must then decide within 180 days whether to take over the action, *id.* § 36.104(a); *id.* § 36.102(c). "If the state declines to take over the action, the person bringing the action may proceed without the state's participation." *Id.* § 36.104(b). Under certain circumstances, the State can intervene in the action after the 180-day deadline has passed. *Id.* § 36.104(b-1).

In this case, Health Selection Group, LLC (HSG) sued Novartis under the Act, alleging that Novartis bilked Texas Medicaid out of hundreds of millions of dollars through fraudulent marketing schemes. The State declined to take over the action. Novartis filed a plea to the jurisdiction and motion to dismiss in which it argued, among other things, that HSG lacked standing. The State asserted a continuing interest in the case and opposed Novartis's motion, which the trial court denied.

2

The Sixth Court of Appeals denied Novartis's ensuing mandamus petition without analysis. *In re Novartis Pharms. Corp.*, No. 06-24-00005-CV, 2024 WL 874686, at *1 (Tex. App.—Texarkana Mar. 1, 2024).

This Court does the same today, declining to take up a pair of arguments against this *qui tam* action. First, Novartis contends that because its alleged violations of the Act did not injure HSG, HSG lacks standing and the courts lack subject-matter jurisdiction. Second, it argues that the Act's *qui tam* provisions violate the separation of powers established by Article II, § 1 of the Texas Constitution, insofar as the Act allows a private litigant, rather than the attorney general, to represent the State in court. Able counsel for HSG and Novartis have joined issue on these important constitutional questions, as have the solicitor general and several sophisticated amici curiae, but for now they will remain unanswered.

## II

When it denied mandamus relief, the Sixth Court provided no meaningful analysis of Novartis's arguments about standing and separation of powers. *See* 2024 WL 874686, at *1 (recounting the mandamus standard and then announcing the conclusion that mandamus relief is denied). Our Court would surely benefit from thoughtful consideration of these difficult questions by the lower courts.

Analysis of HSG's standing is likely to begin, but probably should not end, with Justice Scalia's opinion for the Court in *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765 (2000). The *Stevens* Court held that a *qui tam* relator under the federal False Claims Act can have Article III standing as a partial assignee of

3

the government's damages claim, because "the assignee of a claim has standing to assert *the injury in fact* suffered by the assignor." *Id.* at 773 (emphasis added); *accord id.* at 771–74 (reiterating that this holding was conditioned on an "injury in fact," not merely on some violation of law). HSG may find some support in *Stevens*, to whatever extent Texas's standing doctrine "parallels the federal test for Article III standing." *Heckman v. Williamson County*, 369 S.W.3d 137, 154 (Tex. 2012); *cf. Tex. Dep't of Fam. & Protective Servs. v. Grassroots Leadership, Inc.*, 717 S.W.3d 854, 866–73 (Tex. 2025).

But the False Claims Act, "while similar in aim and tactic, employ[s] materially different language, and the language of [Texas's] statutes controls the outcome." *Xerox*, 555 S.W.3d at 535. The Act under which HSG sued Novartis "employs a penalty scheme and is not an action for the recovery of damages," with money being "exacted as punishment for either a wrong to the state or a civil wrong (as distinguished from compensation for an injured party's loss)." *Id.* at 530, 534 (internal quotation marks and citation omitted). How can it be said, given these statutory differences, that the State has some injury in fact (as opposed to an injury in law) that it could assign to a *qui tam* relator like HSG?

Consider a hypothetical law that encouraged people to report traffic violations that caused no injury: An ordinary citizen can sit at an intersection, record videos of vehicles running red lights, bring punitive civil suits, and recover monetary awards. In that scenario, the people caught on video violated Texas law, but the relator suffered no injury. The State suffered an injury in law—the violation of statutes that govern traffic. That is why we can be ticketed for speeding or other legal violations

4

even when there is no concrete harm that results. In this hypothetical, did the State suffer any injury in fact? Even if so, is it the kind that it could assign to a relator? To quote David Byrne: "I'll tell you later." *Stop Making Sense* (Arnold Stiefel Co. 1984).

As for Novartis's separation-of-powers argument, HSG will find less comfort in the United States Reports. Justice Thomas has outlined "substantial arguments that the *qui tam* device is inconsistent with Article II [of the U.S. Constitution] and that private relators may not represent the interests of the United States in litigation." *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 449 (2023) (Thomas, J., dissenting); *accord id.* at 442 (Kavanaugh, J., joined by Barrett, J., concurring); *Wis. Bell, Inc. v. United States ex rel. Heath*, 145 S. Ct. 498, 515 (2025) (Kavanaugh, J., joined by Thomas, J., concurring). Of course, Article II of the *Texas* Constitution—a "strong separation-of-powers provision," *see Abbott v. Harris County*, 672 S.W.3d 1, 3 (Tex. 2023) (citing Tex. Const. art. II, § 1)—uses very different language, but that may just generate different constitutional doubts about *qui tam* litigation. *See Tex. Boll Weevil Eradication Found., Inc. v. Lewellen*, 952 S.W.2d 454, 469 (Tex. 1997) ("[W]e believe it axiomatic that courts should subject private delegations to a more searching scrutiny than their public counterparts."). Then, too, our Constitution assigns the authority to represent the State in court to the attorney general and to county attorneys and district attorneys. *See* Tex. Const. art. IV, § 22; *id.* art. V, § 21. Does this limitation pose a problem for a private *qui tam* relator like HSG? *See, e.g., Agey v. Am. Liberty Pipe Line Co.*, 172 S.W.2d 972, 974 (Tex. 1943). Stay tuned!

5

If Texas's *qui tam* statute suffers from either of the constitutional flaws Novartis purports to identify, our legislature needs to know it soon and to hear it from a statewide court. If for no other reason, there are federal financial incentives hanging in the balance. *See Xerox*, 555 S.W.3d at 538–39 & nn.115–22 (explaining that a State "with *qui tam* laws meeting specified federal standards can retain an additional ten percent of Medicaid recoveries" (citing 42 U.S.C. § 1396h)). Whether in this case or in another one like it, the lower courts—and, eventually, this Court—ought to take up this important subject.

## III

Fortunately, the legislature recently created the Fifteenth Court of Appeals, which has "statewide jurisdiction for a range of cases that implicate the State's interests." *In re Dallas County*, 697 S.W.3d 142, 146 (Tex. 2024). The Fifteenth Court came into existence about five months after Novartis filed its mandamus petition in this Court. And the Fifteenth Court has held that it has jurisdiction over mandamus petitions like this one. *See In re Sanofi-Aventis U.S. LLC*, 711 S.W.3d 732, 737–38 (Tex. App.—15th Dist. 2025, orig. proceeding).

In that case, APBQR, LLC sued Sanofi-Aventis U.S. LLC on behalf of the State of Texas under the Act. *Id.* at 735. Sanofi moved to transfer the case to another county under the statute's default-venue provision. *Id.* The trial court denied the motion, and Sanofi filed a mandamus petition in the Fifteenth Court. *Id.*

APBQR argued that the court of appeals lacked jurisdiction. *Id.* at 736. It pointed out that the Fifteenth Court's original mandamus jurisdiction "is limited to writs arising out of matters over which the

6

court has exclusive intermediate appellate jurisdiction." *Id.* (quoting Tex. Gov't Code § 22.221(c-1)). That exclusive appellate jurisdiction includes "matters brought by or against the state." *Id.* (quoting Tex. Gov't Code § 22.220(d)(1)). According to APBQR, because "the State did not intervene in the suit," it was not a matter brought by the State and the court lacked mandamus jurisdiction. *Id.*

The Fifteenth Court rejected that argument. It noted that the suit was "brought in the name of the person and of the state." *Id.* at 737 (quoting Tex. Hum. Res. Code § 36.101(a)). On its reading of the statute, "[e]ven if the State declines to intervene, the State may step back into the litigation fray at any time and settle the action with the defendant." *Id.* (citing Tex. Hum. Res. Code § 36.107(c)). And the State receives most of any proceeds from the suit. *Id.* (citing Tex. Hum. Res. Code § 36.110(a-1)). In the court's view, therefore, "a private person bringing suit under the [Act], even when the State declines to intervene, steps into the State's shoes." *Id.* "Essentially, the person and the State are the same for purposes of the claim." *Id.* Moreover, if APBQR were correct that the Fifteenth Court's jurisdiction turned on whether the State intervened, then the State could "effectively divest [the court] of jurisdiction" by withdrawing its intervention after a party sought mandamus—an "absurd result" the court could not abide. *Id.* Having determined that its jurisdiction was secure, the court conditionally granted mandamus relief. *Id.* at 741.

We express no view here on whether the Fifteenth Court properly exercised mandamus jurisdiction in *Sanofi*. For present purposes, the important thing is that the court's analysis would seemingly allow it to exercise jurisdiction over a mandamus petition like Novartis's. Both

7

cases involve *qui tam* suits (brought under the same Act) in which the State declined to intervene. Under *Sanofi*'s logic, the suit against Novartis is also a "matter[] brought by or against the state." Tex. Gov't Code § 22.220(d)(1).

This means that a statewide court has now declared itself the proper forum to hear the grave challenges to the Act that Novartis raises here. Indeed, the Fifteenth Court indicated in *Sanofi* that other suits involving the Act were already pending before it. *See Sanofi*, 711 S.W.3d at 737 n.4. If the Act really does suffer from the constitutional deficiencies alleged by Novartis, we expect that future litigants will provide the Fifteenth Court with the opportunity to carefully consider them. The Fifteenth Court would greatly assist this Court by presenting its analysis in a written opinion. After the Fifteenth Court has weighed in, this Court will be better positioned to provide an accurate and definitive determination of the Act's constitutionality.

Indeed, at least as a formal matter, we see no reason that Novartis could not file a mandamus petition in the Fifteenth Court raising its challenges to the Act. After all, "this Court's failure to grant a petition for writ of mandamus is not an adjudication of, nor even a comment on, the merits of a case in any respect, including whether mandamus relief was available." *In re AIU Ins. Co.*, 148 S.W.3d 109, 119 (Tex. 2004). "The writ of mandamus is a discretionary writ," *Chambers v. O'Quinn*, 242 S.W.3d 30, 32 (Tex. 2007), and there are many reasons why a justice may vote to deny a mandamus petition. That is why a party could challenge the trial court's decision to compel arbitration even though two separate courts of appeals and this Court had previously denied his

8

mandamus petitions raising the same issue. *See id.* at 31–32. Lower courts are familiar with this principle. *See, e.g.*, *In re Mason-Gibson, Inc.*, No. 06-21-00120-CV, 2022 WL 452279, at *3 (Tex. App.—Texarkana Feb. 15, 2022, orig. proceeding) (entertaining a mandamus petition even though the relator had previously "filed the same mandamus petition requesting the same relief in the Texas Supreme Court" and this Court had denied relief); *In re Arpin Am. Moving Sys., LLC*, 416 S.W.3d 927, 929–30 (Tex. App.—Dallas 2013, orig. proceeding) (entertaining a mandamus petition even though the court of appeals had "denied an earlier petition for writ of mandamus filed by relator for lack of proper certification under Rule 52.3(j)").

To be sure, parties should not abuse the judicial system by flooding the courts with an endless stream of identical petitions. As a general matter, an *identical* petition should meet the same fate, if only for the sake of judicial economy. But this case's unusual circumstances likely place it in a class of one, or at most of a very few, meaning that allowing Novartis to petition the Fifteenth Court for mandamus would not risk re-urged mandamus in other cases. The legislature decided that a statewide court was needed to hear certain disputes involving state interests. When Novartis filed its petitions in the Sixth Court and in this Court, that new court did not yet exist, but it has now become operational. From now on, if *Sanofi* is correct, all such petitions will go to the Fifteenth Court and any eventual appeal from Novartis's underlying proceeding will end up in that court, too. Given that the Sixth Court did not explain why Novartis's petition lacked merit and this Court did not opine on the merits at all, it might make sense to give the court hearing any eventual

9

appeal an opportunity to assess the Act's constitutionality sooner rather than later, assuming that the other prerequisites of mandamus review are met to that court's satisfaction.

In sum, another challenge to the Act's constitutionality is likely to arise, whether from Novartis or from a future litigant. When it does, we hope that the court of appeals will take the issues seriously enough to dispose of them in a written opinion. And, in an appropriate case, we anticipate this Court settling those issues once and for all.

 

 

Evan A. Young
Justice

 

 

James P. Sullivan
Justice

**OPINION FILED:** October 24, 2025

10

Vernon's Texas Statutes and Codes Annotated
   Constitution of the State of Texas 1876 (Refs & Annos)
      Article I. Bill of Rights (Refs & Annos)

Vernon's Ann.Texas Const. Art. 1, § 13

§ 13. Excessive bail or fines; cruel or unusual punishment; open courts; remedy by due course of law

Currentness

Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted. All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law.

**Credits**
Adopted Feb. 15, 1876.

Vernon's Ann. Texas Const. Art. 1, § 13, TX CONST Art. 1, § 13
Current through the end of the 2023 Regular, Second, Third and Fourth Called Sessions of the 88th Legislature, and the Nov. 7, 2023 general election.

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Constitution of the State of Texas 1876 (Refs & Annos)
    Article II. The Powers of Government

Vernon's Ann.Texas Const. Art. 2, § 1

§ 1. Separation of powers of government among three departments

Currentness

The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: those which are Legislative to one, those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

**Credits**
Adopted Feb. 15, 1876.

Vernon's Ann. Texas Const. Art. 2, § 1, TX CONST Art. 2, § 1
Current through the end of the 2023 Regular, Second, Third and Fourth Called Sessions of the 88th Legislature, and the Nov. 7, 2023 general election.

---

**End of Document** 

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Constitution of the State of Texas 1876 (Refs & Annos)
    Article IV. Executive Department

Vernon's Ann.Texas Const. Art. 4, § 22

§ 22. Attorney General

Currentness

The Attorney General shall represent the State in all suits and pleas in the Supreme Court of the State in which the State may be a party, and shall especially inquire into the charter rights of all private corporations, and from time to time, in the name of the State, take such action in the courts as may be proper and necessary to prevent any private corporation from exercising any power or demanding or collecting any species of taxes, tolls, freight or wharfage not authorized by law. He shall, whenever sufficient cause exists, seek a judicial forfeiture of such charters, unless otherwise expressly directed by law, and give legal advice in writing to the Governor and other executive officers, when requested by them, and perform such other duties as may be required by law.

**Credits**
Adopted Feb. 15, 1876. Amended Nov. 3, 1936; Nov. 2, 1954; Nov. 7, 1972; Nov. 2, 1999.

Vernon's Ann. Texas Const. Art. 4, § 22, TX CONST Art. 4, § 22
Current through the end of the 2023 Regular, Second, Third and Fourth Called Sessions of the 88th Legislature, and the Nov. 7, 2023 general election.

---

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Constitution of the State of Texas 1876 (Refs & Annos)
    Article V. Judicial Department

Vernon's Ann.Texas Const. Art. 5, § 21

§ 21. County attorneys; district attorneys

Currentness

A County Attorney, for counties in which there is not a resident Criminal District Attorney, shall be elected by the qualified voters of each county, who shall be commissioned by the Governor, and hold his office for the term of four years. In case of vacancy the Commissioners Court of the county shall have the power to appoint a County Attorney until the next general election. The County Attorneys shall represent the State in all cases in the District and inferior courts in their respective counties; but if any county shall be included in a district in which there shall be a District Attorney, the respective duties of District Attorneys and County Attorneys shall in such counties be regulated by the Legislature. The Legislature may provide for the election of District Attorneys in such districts, as may be deemed necessary, and make provision for the compensation of District Attorneys and County Attorneys. District Attorneys shall hold office for a term of four years, and until their successors have qualified.

**Credits**
Adopted Feb. 15, 1876. Amended Nov. 2, 1954.

Vernon's Ann. Texas Const. Art. 5, § 21, TX CONST Art. 5, § 21
Current through the end of the 2023 Regular, Second, Third and Fourth Called Sessions of the 88th Legislature, and the Nov. 7, 2023 general election.

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Human Resources Code (Refs & Annos)
    Title 2. Human Services and Protective Services in General
      Subtitle C. Assistance Programs
        Chapter 36. Health Care Program Fraud Prevention (Refs & Annos)
          Subchapter C. Action by Private Persons

V.T.C.A., Human Resources Code § 36.101

§ 36.101. Action by Private Person Authorized

Currentness

(a) A person may bring a civil action for a violation of Section 36.002 for the person and for the state. The action shall be brought in the name of the person and of the state.

(b) In an action brought under this subchapter, a person who violates Section 36.002 is liable as provided by Section 36.052.

**Credits**
Added by Acts 1997, 75th Leg., ch. 1153, § 4.08, eff. Sept. 1, 1997.

V. T. C. A., Human Resources Code § 36.101, TX HUM RES § 36.101
Current through the end of the 2023 Regular, Second, Third and Fourth Called Sessions of the 88th Legislature, and the Nov. 7, 2023 general election.

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
   Human Resources Code (Refs & Annos)
      Title 2. Human Services and Protective Services in General
         Subtitle C. Assistance Programs
            Chapter 36. Health Care Program Fraud Prevention (Refs & Annos)
               Subchapter C. Action by Private Persons

V.T.C.A., Human Resources Code § 36.102

§ 36.102. Initiation of Action; Consent Required for Dismissal

Effective: September 1, 2019
Currentness

(a) A person bringing an action under this subchapter shall serve a copy of the petition and a written disclosure of substantially all material evidence and information the person possesses on the attorney general in compliance with the Texas Rules of Civil Procedure.

(b) The petition shall be filed in camera and, except as provided by Subsection (c-1) or (d), shall remain under seal until at least the 180th day after the date the petition is filed or the date on which the state elects to intervene, whichever is earlier. The petition may not be served on the defendant until the court orders service on the defendant.

(c) The state may elect to intervene and proceed with the action not later than the 180th day after the date the attorney general receives the petition and the material evidence and information.

(c-1) At the time the state intervenes, the attorney general may file a motion with the court requesting that the petition remain under seal for an extended period.

(d) The state may, for good cause shown, move the court to extend the 180-day deadline under Subsection (b) or (c). A motion under this subsection may be supported by affidavits or other submissions in camera.

(e) An action under this subchapter may be dismissed only if the court and the attorney general consent in writing to the dismissal and state their reasons for consenting.

**Credits**
Added by Acts 1997, 75th Leg., ch. 1153, § 4.08, eff. Sept. 1, 1997. Amended by Acts 2005, 79th Leg., ch. 806, § 10, eff. Sept. 1, 2005; Acts 2019, 86th Leg., ch. 97 (H.B. 2004), §§ 1, 2, eff. Sept. 1, 2019.

V. T. C. A., Human Resources Code § 36.102, TX HUM RES § 36.102
Current through the end of the 2023 Regular, Second, Third and Fourth Called Sessions of the 88th Legislature, and the Nov. 7, 2023 general election.

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Human Resources Code (Refs & Annos)
    Title 2. Human Services and Protective Services in General
      Subtitle C. Assistance Programs
        Chapter 36. Health Care Program Fraud Prevention (Refs & Annos)
          Subchapter C. Action by Private Persons

V.T.C.A., Human Resources Code § 36.104

§ 36.104. State Decision; Continuation of Action

Effective: September 1, 2013
Currentness

(a) Not later than the last day of the period prescribed by Section 36.102(c) or an extension of that period as provided by Section 36.102(d), the state shall:

  (1) proceed with the action; or

  (2) notify the court that the state declines to take over the action.

(b) If the state declines to take over the action, the person bringing the action may proceed without the state's participation. A person proceeding under this subsection may recover for an unlawful act for a period of up to six years before the date the lawsuit was filed, or for a period beginning when the unlawful act occurred until up to three years from the date the state knows or reasonably should have known facts material to the unlawful act, whichever of these two periods is longer, regardless of whether the unlawful act occurred more than six years before the date the lawsuit was filed. Notwithstanding the preceding sentence, in no event shall a person proceeding under this subsection recover for an unlawful act that occurred more than 10 years before the date the lawsuit was filed.

(b-1) On request by the state, the state is entitled to be served with copies of all pleadings filed in the action and be provided at the state's expense with copies of all deposition transcripts. If the person bringing the action proceeds without the state's participation, the court, without limiting the status and right of that person, may permit the state to intervene at a later date on a showing of good cause.

**Credits**
Added by Acts 1997, 75th Leg., ch. 1153, § 4.08, eff. Sept. 1, 1997. Amended by Acts 2005, 79th Leg., ch. 806, § 12, eff. Sept. 1, 2005; Acts 2007, 80th Leg., ch. 29, §§ 3, 4, eff. May 4, 2007; Acts 2013, 83rd Leg., ch. 572 (S.B. 746), § 2, eff. Sept. 1, 2013.

V. T. C. A., Human Resources Code § 36.104, TX HUM RES § 36.104
Current through the end of the 2023 Regular, Second, Third and Fourth Called Sessions of the 88th Legislature, and the Nov. 7, 2023 general election.

---

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
   Human Resources Code (Refs & Annos)
      Title 2. Human Services and Protective Services in General
         Subtitle C. Assistance Programs
            Chapter 36. Health Care Program Fraud Prevention (Refs & Annos)
               Subchapter C. Action by Private Persons

V.T.C.A., Human Resources Code § 36.107

§ 36.107. Rights of Parties if State Continues Action

Currentness

(a) If the state proceeds with the action, the state has the primary responsibility for prosecuting the action and is not bound by an act of the person bringing the action. The person bringing the action has the right to continue as a party to the action, subject to the limitations set forth by this section.

(b) The state may dismiss the action notwithstanding the objections of the person bringing the action if:

   (1) the attorney general notifies the person that the state has filed a motion to dismiss; and

   (2) the court provides the person with an opportunity for a hearing on the motion.

(c) The state may settle the action with the defendant notwithstanding the objections of the person bringing the action if the court determines, after a hearing, that the proposed settlement is fair, adequate, and reasonable under all the circumstances. On a showing of good cause, the hearing may be held in camera.

(d) On a showing by the state that unrestricted participation during the course of the litigation by the person bringing the action would interfere with or unduly delay the state's prosecution of the case, or would be repetitious, irrelevant, or for purposes of harassment, the court may impose limitations on the person's participation, including:

   (1) limiting the number of witnesses the person may call;

   (2) limiting the length of the testimony of witnesses called by the person;

   (3) limiting the person's cross-examination of witnesses; or

   (4) otherwise limiting the participation by the person in the litigation.

(e) On a showing by the defendant that unrestricted participation during the course of the litigation by the person bringing the action would be for purposes of harassment or would cause the defendant undue burden or unnecessary expense, the court may limit the participation by the person in the litigation.

**Credits**

Added by Acts 1997, 75th Leg., ch. 1153, § 4.08, eff. Sept. 1, 1997.

V. T. C. A., Human Resources Code § 36.107, TX HUM RES § 36.107

Current through the end of the 2023 Regular, Second, Third and Fourth Called Sessions of the 88th Legislature, and the Nov. 7, 2023 general election.

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Human Resources Code (Refs & Annos)
    Title 2. Human Services and Protective Services in General
      Subtitle C. Assistance Programs
        Chapter 36. Health Care Program Fraud Prevention (Refs & Annos)
          Subchapter C. Action by Private Persons

V.T.C.A., Human Resources Code § 36.113

§ 36.113. Certain Actions Barred

Effective: September 1, 2013
Currentness

(a) A person may not bring an action under this subchapter that is based on allegations or transactions that are the subject of a civil suit or an administrative penalty proceeding in which the state is already a party.

(b) The court shall dismiss an action or claim under this subchapter, unless opposed by the attorney general, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed in a Texas or federal criminal or civil hearing in which the state or an agent of the state is a party, in a Texas legislative or administrative report, or other Texas hearing, audit, or investigation, or from the news media, unless the person bringing the action is an original source of the information. In this subsection, "original source" means an individual who:

(1) prior to a public disclosure under this subsection, has voluntarily disclosed to the state the information on which allegations or transactions in a claim are based; or

(2) has knowledge that is independent of and materially adds to the publicly disclosed allegation or transactions and who has voluntarily provided the information to the state before filing an action under this subchapter.

(c) Repealed by Acts 2013, 83rd Leg., ch. 572 (S.B. 746), § 6.

**Credits**
Added by Acts 1997, 75th Leg., ch. 1153, § 4.08, eff. Sept. 1, 1997. Amended by Acts 2011, 82nd Leg., ch. 398 (S.B. 544), § 5, eff. Sept. 1, 2011; Acts 2013, 83rd Leg., ch. 572 (S.B. 746), §§ 4, 6, eff. Sept. 1, 2013.

V. T. C. A., Human Resources Code § 36.113, TX HUM RES § 36.113
Current through the end of the 2023 Regular, Second, Third and Fourth Called Sessions of the 88th Legislature, and the Nov. 7, 2023 general election.

---

End of Document      © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Human Resources Code (Refs & Annos)
    Title 2. Human Services and Protective Services in General
      Subtitle C. Assistance Programs
        Chapter 36. Health Care Program Fraud Prevention (Refs & Annos)
          Subchapter B. Action by Attorney General (Refs & Annos)

This section has been updated. Click here for the updated version.

V.T.C.A., Human Resources Code § 36.052

§ 36.052. Civil Remedies

Effective: April 2, 2015 to August 31, 2023

(a) Except as provided by Subsection (c), a person who commits an unlawful act is liable to the state for:

(1) the amount of any payment or the value of any monetary or in-kind benefit provided under the Medicaid program, directly or indirectly, as a result of the unlawful act, including any payment made to a third party;

(2) interest on the amount of the payment or the value of the benefit described by Subdivision (1) at the prejudgment interest rate in effect on the day the payment or benefit was received or paid, for the period from the date the benefit was received or paid to the date that the state recovers the amount of the payment or value of the benefit;

(3) a civil penalty of:

(A) not less than $5,500 or the minimum amount imposed as provided by 31 U.S.C. Section 3729(a), if that amount exceeds $5,500, and not more than $15,000 or the maximum amount imposed as provided by 31 U.S.C. Section 3729(a), if that amount exceeds $15,000, for each unlawful act committed by the person that results in injury to an elderly person, as defined by Section 48.002(a)(1), a person with a disability, as defined by Section 48.002(a)(8)(A), or a person younger than 18 years of age; or

(B) not less than $5,500 or the minimum amount imposed as provided by 31 U.S.C. Section 3729(a), if that amount exceeds $5,500, and not more than $11,000 or the maximum amount imposed as provided by 31 U.S.C. Section 3729(a), if that amount exceeds $11,000, for each unlawful act committed by the person that does not result in injury to a person described by Paragraph (A); and

(4) two times the amount of the payment or the value of the benefit described by Subdivision (1).

(b) In determining the amount of the civil penalty described by Subsection (a)(3), the trier of fact shall consider:

(1) whether the person has previously violated the provisions of this chapter;

(2) the seriousness of the unlawful act committed by the person, including the nature, circumstances, extent, and gravity of the unlawful act;

(3) whether the health and safety of the public or an individual was threatened by the unlawful act;

(4) whether the person acted in bad faith when the person engaged in the conduct that formed the basis of the unlawful act; and

(5) the amount necessary to deter future unlawful acts.

(c) The trier of fact may assess a total of not more than two times the amount of a payment or the value of a benefit described by Subsection (a)(1) if the trier of fact finds that:

(1) the person furnished the attorney general with all information known to the person about the unlawful act not later than the 30th day after the date on which the person first obtained the information; and

(2) at the time the person furnished all the information to the attorney general, the attorney general had not yet begun an investigation under this chapter.

(d) An action under this section shall be brought in Travis County or in a county in which any part of the unlawful act occurred.

(e) The attorney general may:

(1) bring an action for civil remedies under this section together with a suit for injunctive relief under Section 36.051; or

(2) institute an action for civil remedies independently of an action for injunctive relief.

**Credits**
Added by Acts 1995, 74th Leg., ch. 824, § 1, eff. Sept. 1, 1995. Redesignated from V.T.C.A., Human Resources Code § 36.004 by Acts 1997, 75th Leg., ch. 1153, § 4.01(b), eff. Sept. 1, 1997. Amended by Acts 1997, 75th Leg., ch. 1153, § 4.04, eff. Sept. 1, 1997; Acts 2005, 79th Leg., ch. 806, § 7, eff. Sept. 1, 2005; Acts 2007, 80th Leg., ch. 29, § 1, eff. May 4, 2007; Acts 2011, 82nd Leg., ch. 398 (S.B. 544), § 3, eff. Sept. 1, 2011; Acts 2015, 84th Leg., ch. 1 (S.B. 219), § 4.183, eff. April 2, 2015.

V. T. C. A., Human Resources Code § 36.052, TX HUM RES § 36.052
Current through the end of the 2023 Regular, Second, Third and Fourth Called Sessions of the 88th Legislature, and the Nov. 7, 2023 general election.

End of Document    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Human Resources Code (Refs & Annos)
    Title 2. Human Services and Protective Services in General
      Subtitle C. Assistance Programs
        Chapter 36. Medicaid Fraud Prevention (Refs & Annos)
          Subchapter C. Action by Private Persons

This section has been updated. Click here for the updated version.

V.T.C.A., Human Resources Code § 36.104

§ 36.104. Continuation or Dismissal of Action Based on State Decision

Effective: [See Text Amendments] to August 31, 2005

(a) Not later than the last day of the period prescribed by Section 36.102(c), the state shall:

   (1) proceed with the action; or

   (2) notify the court that the state declines to take over the action.

(b) If the state declines to take over the action, the court shall dismiss the action.

**Credits**
Added by Acts 1997, 75th Leg., ch. 1153, § 4.08, eff. Sept. 1, 1997.

V. T. C. A., Human Resources Code § 36.104, TX HUM RES § 36.104
Current through the end of the 2023 Regular, Second, Third and Fourth Called Sessions of the 88th Legislature, and the Nov. 7, 2023 general election.

---

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.

---

Vernon's Texas Statutes and Codes Annotated
  Human Resources Code (Refs & Annos)
    Title 2. Human Services and Protective Services in General
      Subtitle C. Assistance Programs
        Chapter 36. Health Care Program Fraud Prevention (Refs & Annos)
          Subchapter C. Action by Private Persons

---

This section has been updated. Click here for the updated version.

V.T.C.A., Human Resources Code § 36.104

§ 36.104. State Decision; Continuation of Action

Effective: May 4, 2007 to August 31, 2013

(a) Not later than the last day of the period prescribed by Section 36.102(c) or an extension of that period as provided by Section 36.102(d), the state shall:

  (1) proceed with the action; or

  (2) notify the court that the state declines to take over the action.

(b) If the state declines to take over the action, the person bringing the action may proceed without the state's participation. On request by the state, the state is entitled to be served with copies of all pleadings filed in the action and be provided at the state's expense with copies of all deposition transcripts. If the person bringing the action proceeds without the state's participation, the court, without limiting the status and right of that person, may permit the state to intervene at a later date on a showing of good cause.

**Credits**
Added by Acts 1997, 75th Leg., ch. 1153, § 4.08, eff. Sept. 1, 1997. Amended by Acts 2005, 79th Leg., ch. 806, § 12, eff. Sept. 1, 2005; Acts 2007, 80th Leg., ch. 29, §§ 3, 4, eff. May 4, 2007.

V. T. C. A., Human Resources Code § 36.104, TX HUM RES § 36.104
Current through the end of the 2023 Regular, Second, Third and Fourth Called Sessions of the 88th Legislature, and the Nov. 7, 2023 general election.

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

---

WESTLAW © 2024 Thomson Reuters. No claim to original U.S. Government Works.    **APP509**    1

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Court Services on behalf of Danny Ashby
Bar No. 1370960
ommsvc2@omm.com
Envelope ID: 108084361
Filing Code Description: Original Proceeding Petition
Filing Description: Petition for Writ of Mandamus
Status as of 11/14/2025 4:50 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Danny S.Ashby | | dashby@omm.com | 11/14/2025 4:30:06 PM | SENT |
| Litigation Calendar | | litigationcalendar@omm.com | 11/14/2025 4:30:06 PM | SENT |
| Lynne Kurtz-Citrin | 24081425 | lynne.kurtz-citrin@oag.texas.gov | 11/14/2025 4:30:06 PM | SENT |
| Jonathan Wilkerson | 24050162 | jonathan.wilkerson@lanierlawfirm.com | 11/14/2025 4:30:06 PM | SENT |
| Zeke DeRose | 24057421 | zeke.derose@lanierlawfirm.com | 11/14/2025 4:30:06 PM | SENT |
| Alex Brown | 24026964 | alex.brown@lanierlawfirm.com | 11/14/2025 4:30:06 PM | SENT |
| W. Mark Lanier | | WML@LanierLawFirm.com | 11/14/2025 4:30:06 PM | SENT |
| Radu A. Lelutiu | | rlelutiu@mckoolsmith.com | 11/14/2025 4:30:06 PM | SENT |
| Eric B.Halper | | ehalper@mckoolsmith.com | 11/14/2025 4:30:06 PM | SENT |
| Jonathan D. Bonilla | | Jonathan.Bonilla@oag.texas.gov | 11/14/2025 4:30:06 PM | ERROR |
| Jordan Underhill | | Jordan.Underhill@oag.texas.gov | 11/14/2025 4:30:06 PM | ERROR |
| Jennifer Truelove | 24012906 | jtruelove@mckoolsmith.com | 11/14/2025 4:30:06 PM | SENT |
| Samuel Baxter | 1938000 | sbaxter@mckoolsmith.com | 11/14/2025 4:30:06 PM | SENT |
| Deron Dacus | 790553 | ddacus@dacusfirm.com | 11/14/2025 4:30:06 PM | SENT |
| Meredith Garagiola | | mgaragiola@omm.com | 11/14/2025 4:30:06 PM | SENT |
| Ross Galin | | rgalin@omm.com | 11/14/2025 4:30:06 PM | SENT |
| Anton Metlitsky | | ametlitsky@omm.com | 11/14/2025 4:30:06 PM | SENT |